UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | : : : : : : : : : : : : | C.A. No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PAUL HASTINGS JANOFSKY & WALKER LLP,<br><br>Defendant. | : : : : : : : : : : : | C.A. No. 04-1256-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON & ERNIE J. KINDT,<br><br>Defendants. | : : : : : : : : : : : | C.A. No. 05-0499-JJF |

**DEFENDANT NORTHWESTERN CORPORATION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

Dated: February 2, 2006

| | |
|---|---|
| **CURTIS, MALLET-PREVOST,<br>    COLT & MOSLE LLP** | **GREENBERG TAURIG, LLP** |
| Joseph D. Pizzuro, Esq.<br>Steven J. Reisman, Esq.<br>Nancy E. Delaney, Esq.<br>Miriam K. Harwood, Esq.<br>101 Park Avenue<br>New York, New York 10178-0061<br>Tel: (212) 696-6000<br>Fax: (212) 697-1559 | Victoria Counihan, Esq. (No. 3488)<br>Dennis Meloro, Esq. (No. 4435)<br>The Nemours Building<br>1007 Northwestern Orange Street<br>Suite 1200<br>Wilmington, Delaware 19801<br>Tel: (302) 661-7000<br>Fax: (302) 661-7360 |

Co-Counsel for Defendant NorthWestern Corporation

2686958v4

NorthWestern Corporation ("NorthWestern"), defendant in the above-captioned action styled *Magten Asset Management Corp. et al. v. NorthWestern Corp.*, C.A. 04-1494-JJF (the "Magten/NorthWestern Action"), by and through its counsel, Greenberg Traurig, LLP and Curtis, Mallet-Prevost, Colt & Mosle LLP, hereby moves, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for a Protective Order limiting discovery sought by Plaintiffs Magten Asset Management Corp. ("Magten") and Law Debenture Trust Company of New York ("Law Debenture") (collectively, "Plaintiffs") in connection with the Magten/NorthWestern Action and the other above-captioned actions (collectively, the "Consolidated Actions").

## PRELIMINARY STATEMENT

NorthWestern seeks to structure an efficient and expeditious resolution of the Magten/NorthWestern Action which will avoid putting NorthWestern and its shareholders to the considerable and unnecessary expense of what otherwise promises to be a protracted and expensive litigation. Resolution of the Magten/NorthWestern Action will also advance the resolution of the two other Consolidated Actions now pending before this Court, as they involve claims against NorthWestern's officers, directors and attorneys which are derivative of the core claims asserted against NorthWestern.

By this Motion, NorthWestern asks the Court to require Plaintiffs to focus their discovery on the key relevant issue presented in this case - whether, in the context of the "Going Flat Transaction," The Bank of New York as Indenture Trustee was defrauded into executing the Third Supplemental Indenture which replaced Clark Fork LLC ("Clark Fork") as obligor on the securities known as the "QUIPS." Based upon the existing rulings in this case, in which the Bankruptcy Court already dismissed the core of the claims alleged in Plaintiffs' complaint, unless Plaintiffs can show such fraud, their claims cannot go forward.

A protective order is especially justified in this case. The alternative to the limitation on discovery which NorthWestern requests is the broad, wide-ranging discovery which Plaintiffs seek in the Consolidated Actions. More than thirty witnesses are listed in Plaintiffs' Initial Disclosures as individuals from whom they will seek deposition testimony. Plaintiffs have served broad document requests upon NorthWestern and the other defendants, seeking hundreds of thousands of pages of documents. Plaintiffs have also subpoenaed NorthWestern's accountants and financial advisers involved in its Chapter 11 bankruptcy case, and seeks both the production of documents and deposition testimony. None of that discovery is relevant to the Plaintiffs' one surviving claim.

## BACKGROUND

Understanding the basis for NorthWestern's motion requires a brief explanation of the Magten/NorthWestern Action and the rulings by the Bankruptcy Court which have already severely limited Plaintiffs' claims.

### The Genesis of the Magten/NorthWestern Action

Plaintiffs each filed a Proof of Claim against NorthWestern's bankruptcy estate in or about January 2004 (the "QUIPS Claims"), asserting that a pre-petition transaction in which substantially all of the assets of a NorthWestern subsidiary, Clark Fork, were transferred to NorthWestern, in exchange for NorthWestern's assumption of its liabilities (the "Going Flat Transaction"), constituted a fraudulent conveyance. Plaintiffs then commenced an Adversary Proceeding against NorthWestern in the Bankruptcy Court in April 2004 (the "Adversary Proceeding"), asserting that the Going Flat Transaction was a fraudulent conveyance, and seeking to: (1) avoid the transfer of assets; (2) declare that those assets were not property of the estate; and (3) impose a constructive trust upon those assets on behalf of the QUIPS holders.

–3–

Despite Plaintiffs' objections to Confirmation of NorthWestern's Chapter 11 Plan, which Plaintiffs argued improperly relied upon the assets transferred by Clark Fork to NorthWestern, the Bankruptcy Court confirmed the Plan, and NorthWestern emerged from bankruptcy as of November 1, 2004. However, under the Plan, a reserve of shares of the Reorganized Debtor was set aside in the Disputed Claims Reserve to cover a potential recovery in the event the QUIPS claimants succeeded in obtaining final judgment in their favor in litigating their claims against the estate. This Court withdrew the reference from the Bankruptcy Court in the Magten/NorthWestern Action on September 22, 2005.

### **Plaintiffs' Sole Surviving Claim in the Magten/NorthWestern Action**

Plaintiffs' original claim against NorthWestern was that the November 2002 Going Flat Transaction constituted a fraudulent conveyance. Plaintiffs alleged that the value of the assets received by NorthWestern substantially exceeded the amount of liabilities assumed and that the transaction rendered Clark Fork insolvent. Of course, Plaintiffs' claims were entirely predicated on their alleged status as creditors of Clark Fork. If in fact they had become creditors of NorthWestern as a result of the transaction, they had no claim. This was precisely the basis of NorthWestern's motion to dismiss the Adversary Proceeding in the Bankruptcy Court.

In August 2004, the Bankruptcy Court dismissed Plaintiffs' fraudulent conveyance claims, holding that as a result of the Going Flat Transaction, Clark Fork was released from all liability under the QUIPS, which had been assumed by NorthWestern, and therefore Plaintiffs lacked any standing to sue.[1] The Bankruptcy Court allowed, however, the

---

[1] *Magten Asset Management Corp. and Law Debenture Co. of New York v. NorthWestern Corp.*, Adv. Pro. No. 04-53324 (U.S. Bankruptcy Court, District of Delaware), Under Advisement Decision dated August 20, 2004, at pp. 10-11 (Docket No. 25) (Hon. Charles G. Case). A copy of the Bankruptcy Court's decision is attached as Exhibit 1 to the Affidavit of Joseph D. Pizzurro ("Pizzurro Affidavit"), dated February 2, 2006, submitted contemporaneously

Plaintiffs to pursue a theory that the release of Clark Fork had been induced by fraud because the Trustee had relied on NorthWestern's allegedly misleading financial statements.[2] Thus, Plaintiffs were left with a common law claim for fraud in the inducement.

The problem is that this claim has never been pled. It is not in the original Complaint. Its genesis appears to be in Plaintiffs' briefs in opposition to NorthWestern's motion to dismiss. Plaintiffs' subsequent First Amended Complaint, its last and only surviving pleading in this case, inexplicably fails to plead the only claim which survived the Bankruptcy Court's decision. The First Amended Complaint simply reasserts the same dismissed causes of action, adding only a claim that the Going Flat Transaction should be void as a violation of the Public Utility Holding Company Act of 1935 ("PUHCA").[3] The only attempt at a fraud allegation is contained in paragraph 68 of the First Amended Complaint, wherein Plaintiffs allege: "The Third Supplemental Indenture…was executed by BNY in reliance upon [NorthWestern's] fraudulent financial statements, while [NorthWestern] hid its true financial condition from BNY and from its investors." This sole and perfunctory allegation is all that is left of Plaintiffs' case.

### The Limited Discovery Applicable to Plaintiffs' Surviving Claim

Putting aside the substantial deficiencies of Plaintiffs' pleadings, in order to prove fraud, Plaintiffs must establish that The Bank of New York as Indenture Trustee relied on

---

herewith.

[2] Even this last thread which has kept Plaintiffs' case from being dismissed in its entirety is untenable under the terms of the relevant contractual documents and undisputed facts. Under the terms of the Indenture, the only required representation that relates to the financial condition of a new obligor assuming the QUIPS was that "immediately after giving effect to such transaction no event of default with respect to the [QUIPS] shall have occurred and be continuing." This representation was made to the Indenture Trustee and it was true in all respects. There was no immediate event of default and in fact NorthWestern continued to perform its obligations to the QUIPS holders for ten months until it filed its Chapter 11 Petition in September 2003. In short, NorthWestern's financial statements were wholly irrelevant to any representations which the Indenture Trustee received, or to which it was entitled, in connection with the release of Clark Fork. The fact is that the Plaintiffs, through their supposed fraud claim, seek greater protection than that to which they were entitled under the terms of their own contract.

[3] This claim was effectively dismissed by the Order of the Bankruptcy Court confirming NorthWestern's Plan of Reorganization. If that Order is affirmed by this Court, the PUHCA claim will not survive.

2686958v4

NorthWestern's financial statements when it executed the Third Supplemental Indenture.[4] But, in fact, The Bank of the New York has already taken the position that it was not required to examine NorthWestern's financials and was entitled to rely solely on the documentation required by, and presented to it in accordance with, the provisions of the Indenture. The Bank of New York took this position on its motion to dismiss the action commenced against it by Magten in the Delaware Chancery Court in March 2005 (*Magten Asset Management Corp. v. Bank of New York, et al.*, C.A. No. 1219-N), wherein Magten alleged that The Bank of New York had violated its duties as Indenture Trustee by executing the Third Supplemental Indenture. Upon considering The Bank of New York's arguments, the Chancellor gave Magten the choice of amending its complaint, withdrawing it without prejudice, or face dismissal. Magten withdrew the complaint in September 2005.

Given the foregoing, the only discovery required to dispose of the instant action is discovery from The Bank of New York to determine whether in fact the Indenture Trustee was defrauded in connection with the execution of the Third Supplemental Indenture. All other discovery in the case should be stayed pending a resolution of a motion for summary judgment following discovery from The Bank of New York.

### ARGUMENT

Rule 26(c) empowers the court to issue protective orders "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The protective order may direct, *inter alia,* that "the disclosure or discovery not be had" or "that certain matters not be inquired into, or that the scope of the

---

[4] Magten acquired its QUIPS well after the transfer of Clark Fork's assets to NorthWestern in the Going Flat Transaction. Thus, Magten has no fraud claim based on its own acquisition of the QUIPS and has never asserted any such claim.

–6–

disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(1),(4). *Pearson v. Miller*, 211 F.3d 57, 72-73 (3d Cir. 2000) ("a district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by a party seeking protection."). The court must apply a balancing test to assess the need for the information sought compared to the impact or harm upon the party from whom discovery is demanded. *Pansy v. Borough of Stroudsberg*, 23 F.3d 772, 787 (3d Cir. 1994).

A protective order is necessary in this case to prevent Plaintiffs from embarking upon a fishing expedition into matters which the Bankruptcy Court has already dismissed in its decision on NorthWestern's motion to dismiss Plaintiffs' Complaint. In *Johnson v. Mortham*, 164 F.R.D. 571, 572 (N.D. Fl. 1996), the court found that, in light of a prior decision granting partial summary judgment, the claims asserted in the complaint had been narrowed to a single issue, and therefore, only limited discovery relevant to that surviving issue would be allowed. The court issued a protective order under Rule 26(c)(4) to preclude the attempt to pursue broad discovery into matters unrelated to the sole issue remaining in the case, consistent with its decision granting partial summary judgment. *Id.* The same justification for a protective order exists in the Consolidated Actions.

**Plaintiffs' Discovery Requests**

Ignoring the Bankruptcy Court's August 2004 Decision and the narrow basis upon which their claims survived NorthWestern's motion to dismiss, Plaintiffs have embarked upon a quest for full-scale discovery on a wide range of issues in the Consolidated Actions. Plaintiffs' requests for production of documents directed to NorthWestern and the other defendants in the Consolidated Actions, copies of which are attached to the Pizzurro Affidavit, cover the time period January 1, 2001 to the present, and seek documents relating *inter alia*, to: the value of the assets transferred to NorthWestern in the 2002 Going Flat Transaction, the

solvency and financial condition of NorthWestern and Clark Fork prior to and following that transaction, the due diligence conducted in connection with that transaction, the consideration paid in connection with the transaction, the accuracy of NorthWestern's publicly released financial statements at the time of the transaction, regulatory applications submitted in connection with the transaction, and the Indenture Trustee's consent and acquiescence to the transfer.[5]

Plaintiffs have also served subpoenas duces tecum upon the following third parties: Lazard Freres & Co. LLC, Arthur Andersen, LLP, Houlihan Lokey Howard & Zukin Financial Advisors, Inc., Deloitte & Touche LLP, and The Bank of New York, copies of which are attached to the Pizzurro Affidavit, and have noticed depositions of these entities. Except for The Bank of New York, the third parties subpoenaed by Plaintiffs do not have information relevant to the sole issue remaining in this case – that is, whether the release of Clark Fork was obtained by fraud. Accordingly, it is NorthWestern's position that no discovery from these third parties, other than The Bank of New York, should be permitted. In addition, the discovery which Plaintiffs seek from NorthWestern and the other defendants in the Consolidated Actions on issues unrelated to the Clark Fork release should also be precluded, at least until after the Court rules on NorthWestern's anticipated summary judgment motion.

NorthWestern believes that, once discovery from The Bank of New York is obtained, it will become apparent that this last, tenuous theory of relief, which the Bankruptcy Court – in an abundance of caution – allowed Plaintiffs to explore, is without merit.

---

[5] The broad scope of Plaintiffs' discovery requests may be demonstrated by just a few examples from their document requests, which include: "All documents relating to or concerning the Transfer [of the Clark Fork assets];" "All applications and/or documents submitted to regulatory authorities in connection with the Transfer;" and "All operating agreements for Clark Fork, or any other documents setting forth any rights, duties, and/or responsibilities of any officer, employee or agent of Clark Fork." Pizzurro Affidavit, Ex. 2, Plaintiffs' Document Requests Nos. 1, 13, 28.

2686958v4

NorthWestern is prepared to go forward with discovery from The Bank of New York, including document production and depositions, following which it intends to move for summary judgment on the issue identified in the Bankruptcy Court's decision as the sole remaining basis upon which Plaintiffs could proceed against NorthWestern, that is, whether the Clark Fork release was obtained by fraud. Allowing Plaintiffs to conduct unbridled discovery into matters unrelated to that issue, which have already been dismissed by virtue of the Bankruptcy Court's August 2004 decision, would render that decision meaningless and would undercut the narrowing of issues which NorthWestern's prior motion to dismiss accomplished. Doing so would be contrary to the interests of justice, would needlessly burden NorthWestern with overbroad and expensive discovery, and would waste this Court's resources by requiring the re-litigation of issues already determined by the Bankruptcy Court.

### **NorthWestern Is A Mere Stakeholder In This Litigation**

The limited discovery which NorthWestern urges in this Motion is especially justified considering the unique circumstances of this case. NorthWestern, a Reorganized Debtor, has no intrinsic economic interest in the outcome of the Magten/NorthWestern litigation. Any judgment or settlement of Plaintiffs' claims will be satisfied out of shares of NorthWestern's issued and outstanding common stock that are set aside in a Disputed Claims Reserve created under NorthWestern's Chapter 11 Plan of Reorganization for the purpose of satisfying any remaining claims against the estate. There are presently more than enough shares in the reserve to satisfy a recovery by Plaintiffs even if they recover on the full amount of their asserted claims.[6]

---

[6] There are presently over 3 million shares of NorthWestern common stock in the Disputed Claims Reserve. This represents a value of approximately $60 million at the plan value of $20 per share, which would satisfy approximately $98 million in Class 9 allowed claims, at the rate of recovery provided for under NorthWestern's Chapter 11 Plan. The actual economic value of the shares in the reserve, based on the current market price of

2686958v4

Under the terms of the Plan, any shares remaining in the Disputed Claims Reserve after outstanding claims are resolved can never revert to NorthWestern; rather, they must be distributed to other creditors of the bankruptcy estate, specifically, those in Class 7 and Class 9. Thus, although NorthWestern must bear the cost of defending the Magten/NorthWestern Action, it has no financial stake in the property from which Plaintiffs' claims would be satisfied.

In contrast, the Class 7 and Class 9 creditors do have a financial stake in the Disputed Claims Reserve, by virtue of their right to the distribution of any shares remaining in that reserve after resolution of outstanding claims against the estate. Those creditors, represented by the Plan Committee, have taken an aggressive stance against settling the Magten litigation, and have made it abundantly clear that they will oppose any settlement unless and until they are convinced that there is merit to Plaintiffs' claims and thus some litigation risk to support the settlement. Although NorthWestern has made numerous efforts to settle Plaintiffs' claims, the opposition of the Plan Committee has proven to be a significant obstacle, since court approval of settlements is required under the Plan and difficult to obtain over the objections of competing creditors of the estate. NorthWestern submits that the limitation on discovery sought by this motion - and the summary judgment motion NorthWestern intends to bring on the heels of that discovery - would be instrumental in bringing about an early resolution of this case. Obviously, if the Court granted NorthWestern's motion, the litigation would end; however, even if the Court denied the motion, the Plan Committee would be forced to take cognizance of the potential litigation risk presented by Plaintiffs' action, thus potentially paving the way for a settlement that does not get derailed by objections and protracted litigation over settlement approval.

---

approximately $31 per share for NorthWestern's stock, is $93 million. The Bankruptcy Court recently ordered that there are to be no distributions of surplus from the Disputed Claims Reserve until the claims of the Plaintiffs in this action have been resolved.

## CONCLUSION

For the foregoing reasons, NorthWestern respectfully requests that this Court issue a Protective Order pursuant to Rule 26(c), which provides as follows: (1) that discovery in the Consolidated Actions be limited to documents and deposition testimony from The Bank of New York with respect to the issue of fraud in connection with execution of the Third Supplemental Indenture in November 2002, and the resulting release of Clark Fork from its obligations on the QUIPS; (2) that all other discovery in the Consolidated Actions be stayed, including Plaintiffs' existing subpoenas duces tecum to third parties Lazard Freres & Co. LLC, Arthur Andersen LLP, Houlihan Lokey Howard & Zukin Financial Advisors, Inc., Deloitte & Touche LLP, and The Bank of New York (in its present iteration), pending resolution of NorthWestern's motion for summary judgment.

Dated: Wilmington, Delaware
       February 2, 2006

| | |
|---|---|
| **CURTIS, MALLET-PREVOST,**<br>    **COLT & MOSLE LLP** | **GREENBERG TRAURIG, LLP**<br><br>By: /s/ Victoria W. Counihan |
| Joseph D. Pizzuro, Esq.<br>Steven J. Reisman, Esq.<br>Nancy E. Delaney, Esq.<br>Miriam K. Harwood, Esq.<br>101 Park Avenue<br>New York, New York  10178-0061<br>Tel:  (212) 696-6000<br>Fax:  (212) 697-1559 | Victoria Counihan, Esq. (No. 3488)<br>Dennis Meloro, Esq. (No. 4435)<br>The Nemours Building<br>1007 Northwestern Orange Street<br>Suite 1200<br>Wilmington, Delaware  19801<br>Tel:  (302) 661-7000<br>Fax:  (302) 661-7360 |

Co-Counsel for Defendant NorthWestern Corporation

2686958v4

## STATEMENT UNDER LOCAL RULE 7.1.1

The undersigned counsel for NorthWestern hereby certifies, pursuant to Rule 7.1.1 of the Local Rules of the United States District Court for the District of Delaware, that it has conferred in good faith, and made a reasonable effort to reach agreement, with the Plaintiffs in the Consolidated Actions with regard to the matters set forth herein prior to filing this Motion.

Dated: Wilmington, Delaware
      February 2, 2006

**GREENBERG TRAURIG, LLP**

By: /s/ Victoria W. Counihan
    Victoria Counihan, Esq. (No. 3488)
    Dennis Meloro, Esq. (No. 4435)
    The Nemours Building
    1007 North Orange Street
    Suite 1200
    Wilmington, Delaware 19801
    Tel: (302) 661-7000
    Fax: (302) 661-7360