IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGTEN ASSET MANAGEMENT CORPORATION
and LAW DEBENTURE TRUST COMPANY
OF NEW YORK,

           Plaintiffs,

  v.

NORTHWESTERN CORPORATION,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 04-1494 (JJF)

**OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION
AND LAW DEBENTURE TRUST COMPANY OF NEW YORK TO
THE MOTION OF THE PLAN COMMITTEE FOR AN
ORDER SUBSTITUTING THE PLAN COMMITTEE FOR
THE OFFICIAL COMMITTEE, OR IN THE ALTERNATIVE, TO
INTERVENE IN THE ADVERSARY PROCEEDING**

Dated:  Wilmington, Delaware
       February 13, 2006

Dale Dubé (DE No. 2863)
Elio Battista, Jr. (DE No. 3814)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Magten Asset Management Corporation

- and -

Kathleen M. Miller (DE No. 2898)
SMITH, KATZENSTEIN & FURLOW, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405

- and -

John V. Snellings (BBO No. 548791)
Francis C. Morrissey (BBO No. 567589)
Lee Harrington (BBO No. 548791)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
Telephone:    (617) 345-1201
Facsimile:    (866) 947-1732

Counsel for Law Debenture Trust Company
        of New York

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   JURISDICTION ..................................................................................................2

III   BACKGROUND ..................................................................................................2

IV.   OBJECTION.........................................................................................................6

    A.   The Plan Committee Cannot be Substituted for the Official Committee
       in the Intervention Order................................................................................6

    B.   The Plan Committee Cannot Intervene as of Right .................................................9

V.    CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*In re Caldor Corp.,*
303 F.3d 161 (2d Cir. 2002)..................................................................11

*In re Fine Paper Antitrust Litigation,*
695 F.2d 494 (3d Cir. 1982)..................................................................10

*Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,*
13 F.3d 69 (3d Cir. 1993)......................................................................8

*In re Machne Menachem, Inc.,*
304 B.R. 140 (Bankr. M.D. Pa. 2003) .....................................................8

*Mobil Oil Corp. v. Linear Films, Inc.,*
718 F. Supp. 260 (D. Del 1989).............................................................8

*NBD Bank, N.A. v. Bennett,*
159 F.R.D. 505 (S.D. Ind. 1994)...........................................................9

*In re Parks Jaggers Aerospace Co.,*
129 B.R. 265 (M.D. Fla. 1991) .............................................................11

*Phar-Mor, Inc. v. Coopers & Lybrand,*
22 F.3d 1228 (3d Cir. 1994)...........................................................10, 11

*Seedor v. America Dynasty Surplus Lines Insurance Co. (In re Elcom Techs. Corp.),*
2001 WL 1843378 (E.D. Pa. March 26, 2001) .........................................7

## STATUTES

11 U.S.C. § 105 ..................................................................................8

11 U.S.C. § 1101 ...............................................................................10

11 U.S.C. § 1102................................................................................6

28 U.S.C. § 157..................................................................................2

28 U.S.C. § 1334................................................................................2

28 U.S.C. § 1408................................................................................2

28 U.S.C. § 1409................................................................................2

## RULES

Fed. R. Civ. P. 24(a)(1) ...................................................................1, 2, 7, 9, 11

Fed. R. Civ. P. 24(a)(2) ...................................................................................9

Fed. R. Civ. P. 25(c) .................................................................................1, 6, 8

Bankr. R. 1109(b) ..................................................................................2, 9, 10, 11

120087.01600/40159921v.1

Plaintiffs Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York, in its capacity as Indenture Trustee for the QUIPS ("Law Debenture"), hereby object (the "Objection") to the Motion of the Plan Committee[1], for an Order Substituting the Plan Committee for the Official Committee, or in the Alternative, to Intervene in the Adversary Proceeding (the "Motion to Intervene") for the following reasons:

## I.    INTRODUTION

The Motion to Intervene should be denied, because neither of the grounds advanced by the Plan Committee is supported by the facts or the law.

First, the Plan Committee is not a successor in interest to the Official Committee of Unsecured Creditors (the "Official Committee"), which was formed in the chapter 11 case of defendant NorthWestern. Thus, while the Bankruptcy Court permitted the Official Committee to intervene in this proceeding (the "NorthWestern Action") prior to confirmation of the Plan when it was being litigated in the Bankruptcy Court, the Plan Committee cannot substitute in for the Official Committee under Fed. R. Civ. P. 25(c), because it does not meet the criteria specified by that rule. Unlike the Official Committee – a statutorily created body with broad fiduciary duties to protect the interests of creditors – the Plan Committee is purely a creature of Section 7.9 of the Plan, is not vested with statutory duties to protect the rights and interests of creditors, and has only the specific rights and duties expressly conferred upon it by the Plan. The Plan does not purport to transfer the Official Committee's interest in the subject matter of this proceeding to the Plan Committee, nor is there any other factual basis to contend that such a transfer of interest has taken place.

---

[1]    All capitalized terms not expressly defined herein have the meanings ascribed to them in NorthWestern Corporation's ("NorthWestern") Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").

Moreover, the Plan Committee does not meet the criteria to intervene as of right under Fed. R. Civ. P. 24(a)(1). As a threshold matter, whether or not it is meritorious, the application to intervene is untimely; it could and should have been made in or near November 2004. As to the substance, the Plan Committee is not a party in interest within the meaning of section 1109(b) of the Bankruptcy Code, even assuming arguendo the correctness of the contention that a "party in interest" under section 1109(b) is the beneficiary of a "statute of the United States confer[ring] an unconditional right to intervene" for purposes of Rule 24(a)(1), especially after confirmation of a chapter 11 plan. Here, by the terms of the Plan that created the Plan Committee, its role is limited to the right to be heard as to the desirability of any proposed settlement of Plaintiffs' claims. After NorthWestern reneged on one settlement and subsequent mediations failed to produce a renewed settlement, the Plaintiffs are now prepared to, and entitled to, litigate their claims against NorthWestern through trial and judgment on the merits. The Plan Committee may be heard if and when a settlement is reached. In the meantime, permitting intervention in the litigation of this matter would be premature, contradict the terms of the Plan, and create unnecessary duplication, cost, and delay.

## II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue is before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    BACKGROUND

Magten holds approximately 40% of the Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS"). Law Debenture is the Indenture Trustee for the QUIPS.

On April 16, 2004, Magten and Law Debenture filed the NorthWestern Action in the Bankruptcy Court based on NorthWestern's fraudulent transfer of substantially all of the utility assets of its directly owned subsidiary, Clark Fork and Blackfoot, LLC ("Clark Fork"), to

2

NorthWestern for inadequate consideration (the "Transfer") on November 15, 2002. Though the Clark Fork assets had a value well in excess of $1 billion, the total consideration received for the Transfer was the assumption of approximately $700 million of liabilities by NorthWestern. As a result of this Transfer, Clark Fork was rendered insolvent. Based on the Transfer, the Plaintiffs filed the NorthWestern Action against NorthWestern on behalf of the QUIPS holders seeking to set aside the fraudulent conveyance of the Clark Fork utility assets to NorthWestern. The QUIPS represented debt obligations of Clark Fork, which but for the Transfer would have remained solvent. The validity and effectiveness of a release purportedly exonerating Clark Fork from any liability with respect to the QUIPS and compelling their holders to look only to the insolvent NorthWestern is one of the issues to be resolved in the NorthWestern Action.

On May 14, 2004, NorthWestern filed a motion to dismiss the NorthWestern Action (the "Motion to Dismiss") [04-53324 Bankr. Docket No. 5].

On May 19, 2004, the Official Committee filed a motion to intervene in the NorthWestern Action [04-53324 Bankr. Docket No. 7]. Magten and Law Debenture filed objections to this motion [04-53324 Bankr. Docket Nos. 9, 10]. On June 16, 2004, the Bankruptcy Court entered an order allowing the Official Committee to intervene in the NorthWestern Action (the "Intervention Order") [04-53324 Bankr. Docket No. 14].

Also on June 16, 2004, Plaintiffs filed an objection to the Motion to Dismiss [04-53324 Bankr. Docket No. 16]. On August 20, 2004, the Bankruptcy Court granted in part and denied in part the Motion to Dismiss [04-53324 Bankr. Docket No. 25].

On October 4, 2004, the Plaintiffs filed their First Amended Complaint to the NorthWestern Action (the "Amended Complaint") adding claims arising under the Public Utility Holding Company Act ("PUCHA") [04-53324 Bankr. Docket No. 27].

3

Pursuant to the Plan, Magten and other holders of the QUIPS that chose to pursue the NorthWestern Action hold an Allowed Class 9 Claim to be satisfied from the Disputed Claims Reserve. Plan, p. 37, § 4.8(b)(ii).

NorthWestern emerged from bankruptcy on November 1, 2004, the date the Plan became effective (the "Effective Date").

On the Effective Date, pursuant to Section 7.9 of the Plan, the Plan Committee was established for the limited purpose of overseeing the remaining Claims reconciliation and settlement process. Pursuant to Section 7.9 of the Plan, to the extent that NorthWestern settles a disputed claim in an amount greater than $100,001, NorthWestern may settle the Claim in accordance with the provisions and procedures set forth in the First Amended and Restated By-Laws of the Plan Committee (the "Plan Committee By-Laws") (attached hereto as Exhibit A), which provides the Plan Committee the right to object to a proposed settlement, but not an absolute veto, as settlements may be approved by the Court over its objection. Exhibit A, p. 3, §1.10.

On November 3, 2004, NorthWestern filed a motion to dismiss the Amended Complaint in part, addressed to the PUCHA claims (but accepting that those claims for the original complaint that had survived the Bankruptcy Court's August 20, 2004 decision were not properly subject to the second motion to dismiss) [04-53324 Bankr. Docket Nos. 28, 29]. On November 10, 2004, the Plaintiffs filed their objection to the motion to dismiss in part the Amended Complaint [04-53324 Bankr. Docket No. 32]. The Plan Committee did not timely seek to intervene, to join that motion, or otherwise take a position on the merits of the motion. The motion to dismiss in part the Amended Complaint remains pending.

On November 17, 2004, the Plaintiffs filed a motion to withdraw the reference to the Bankruptcy Court and for consolidation with civil action number 04-1256 which was pending with this Court (the "Motion to Withdraw the Reference") [04-53324 Bankr. Docket No. 36]. The Plan

4

Committee did not timely seek to intervene, to oppose that motion, or otherwise take a position on

the merits of that motion. On September 22, 2005, this Court entered a decision and order

withdrawing the reference from the Bankruptcy Court for the NorthWestern Action.

On September 29, 2005, the Plan Committee filed a Motion in Aid of Consummation and

Implementation of the Plan for an Order Authorizing and Directing NorthWestern to Distribute

Surplus Distributions (the "Surplus Distributions Motion") [03-12872 Bankr. Docket No. 3308].

The Plan Committee bases its Surplus Distributions Motion on the fact that under the Plan, holders

of the Allowed Class 7 Claims are entitled to their Pro Rata Share of any surplus distribution held in

the Disputed Claims Reserve after all claims have been resolved.[2] The Plaintiffs timely filed a joint

objection to the Surplus Distributions Motion [03-12872 Bankr. Docket No. 3325]. NorthWestern

also filed a response to the Surplus Distributions Motion which recognized that surplus distributions

cannot be made until the Plaintiffs' claims have been resolved [03-12872 Bankr. Docket No. 3405].

The Plan Committee, thereafter, filed an omnibus reply to the Plaintiffs' joint objection and

NorthWestern's response [03-12872 Bankr. Docket No. 3410].

On January 11, 2006, the Bankruptcy Court held a hearing with respect to the Surplus

Distributions Motion and denied the relief requested by the Plan Committee [03-12872 Bankr.

Docket No. 3438]. In denying the Surplus Distribution Motion, the Bankruptcy Court held that

"Section 7.7 [of the Plan] require[s] a full resolution of all [D]isputed [C]laims before there can be a

surplus distribution." January 11, 2006 Hearing Transcript, at p. 55 (attached hereto as Exhibit B).

The Bankruptcy Court further held that "if the [Plan Committee] want[s] to get a [S]urplus

---

[2]     Section 7.7 of the Plan provides in relevant part:
        The following assets shall constitute Surplus Distributions: (i) Unclaimed Property; and (ii)
        to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an
        amount less than the Disputed Claim Amount, any excess of the amount of Cash or New
        Common Stock in the Disputed Claims Reserve attributable to such Disputed Claim over the
        amount of Cash or New Common Stock actually distributed on account of such Disputed
        Claim plus any interest, dividends or other Distributions earned thereon.
        Plan, p. 60, § 7.7.

120087.01600/40159918v.1

[Distribution], get a resolution of the Magten case. And until that case is resolved there will be no [Surplus] Distribution Order." Id. at p. 64.

It should be noted that while no surplus distributions have been made pursuant to Section 7.7 of the Plan, any surplus distribution at this time would be a windfall because the holders of Allowed Class 7 Claims have already received full distributions in accordance with their pre-petition claims. While the Plan nominally provided them only an approximate 63.6% recovery on the face value of their claims, that percentage was based on valuing the consideration distributed to them (common stock of the reorganized NorthWestern) at only $20 per share. Once the stock (ticker symbol: NWEC) began trading freely following confirmation of the Plan, the market revealed that its true value was substantially higher. In fact, the stock closed on February 10, 2006 at $32.25 per share, implying a creditor recovery of over 101%. Furthermore, according to NorthWestern, it has resolved all Disputed Class 9 Claims, with the exception of the claims asserted in this proceeding by Magten and Law Debenture. NorthWestern Response to Plan Committee Surplus Distribution Motion, p. 8, ¶ 17-18.

## IV.    OBJECTION

### A.    The Plan Committee Cannot be Substituted for the Official Committee in the Intervention Order

The Plan Committee seeks intervention in the NorthWestern Action as a "successor" to the Official Committee pursuant to Fed R. Civ. P. 25(c).

Rule 25 (c) provides in relevant part that:

"[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

The Plan Committee purports to be a successor to the Official Committee. The Official Committee is created by statute, 11 U.S.C. § 1102, whereas the Plan Committee was merely created

6

by Section 7.9 of the Plan and is not vested with any general statutory power to protect the rights and interests of all creditors. Accordingly, the Plan Committee is not a successor to the Official Committee, but is a separate and distinct entity, with only those rights and responsibilities provided for in the Plan. The Plan Committee By-Laws specifically grant rights to the Plan Committee to "assist, advise and monitor [NorthWestern's] claims reconciliation and settlement process," Exhibit A, p. 2, § 1.3, but do not grant the Plan Committee any other role. In particular, the Plan and the Plan Committee By-Laws do not give the Plan Committee any role with respect to NorthWestern's prosecution or defense of outstanding disputes such as the NorthWestern Action other than in the context of evaluating a proposed settlement. Moreover, the Plan and the Plan Committee By-Laws do not bestow upon the Plan Committee any of the other broad rights and responsibilities of the Official Committee, whether with respect to the NorthWestern Action, or otherwise.

The Plan Committee relies on Section 14.10 of the Plan, which provides that "the Official Committee continues to exist to the extent any matters pending as of the Effective Date before the Bankruptcy Court to which such [Official] Committee is party, until such matters are resolved." Plan, p. 80, § 14.10. On its face this provision demonstrates that the Motion is groundless: the Plan contemplated that the Official Committee could stay in existence in order to continue to participate in the NorthWestern Action if it so desired; this is fundamentally inconsistent with a claim that the Plan transferred the Official Committee's interest in that regard to the Plan Committee. If the Plan had wished to authorize the Plan Committee to take over the Official Committee's role with respect to participation in the NorthWestern Action, it could have and would have said so.[3]

The Plan Committee argues that, despite the authorization provided by § 14.10 of the Plan, the Official Committee is now effectively defunct because all of its members chose to resign.

---

[3]    By contrast, in Seedor v. Am. Dynasty Surplus Lines Ins. Co. (In re Elcom Techs. Corp.), 2001 WL 1843378, No. 98-13343SR (E.D. Pa. March 26, 2001), the official committee and estate representative were permitted to prosecute an adversary proceeding subsequent to confirmation where the confirmed plan expressly gave them the exclusive right to prosecute causes of action post-confirmation on behalf of the estate.

7

Motion to Intervene, p. 7, ¶ 20.  But it provides no authority for its argument that this creates a

vacuum that the Plan Committee is somehow entitled to fill.  The Official Committee's interest

simply was not transferred to the Plan Committee either by the terms of the Plan or otherwise, and

without the "transfer of interest" specifically required by the text of Rule 25(c), there can be no

substitution.  See Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp 260, 272-73 (D. Del 1989)

(only merger subsequent to filing of lawsuit, not prior "close relationship" between two

corporations was sufficient to justify substitution under 25(c)); see also Luxliner P.L. Export, Co. v.

RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir. 1993) (a "transfer of interest" for purposes of Rule 25(c)

occurs only "when one corporation becomes the successor to another by merger or other acquisition

of the interest" of the original corporate party).

     The Plan Committee also argues that the Court should grant substitution pursuant to the

Court's residual equitable powers under § 105 of the Bankruptcy Code, supposedly in order to

protect the interests of the unsecured creditor constituents, "including ensuring that assets

earmarked for distribution on account of allowed creditor claims are used for such purpose."

Motion to Intervene, p. 6, ¶ 18.  It cites no authority whatsoever for the proposition that § 105 can

or should trump the express language of Rule 25(c).  See In re Machne Menachem, Inc., 304 B.R.

140, 144 (Bankr. M.D. Pa. 2003) (court would not utilize §105 of the Bankruptcy Code to override

an express provision in the Bankruptcy Code).  Moreover, the Plan Committee has misstated the

role provided to it under § 7.9 of the Plan.  The Plan Committee is not a fiduciary to a creditor

constituency like the Official Committee.  The Plan does not give it any unbounded power of

oversight, but only a clearly-defined role, limited both as to substance and procedure, with respect

to a potential settlement.  If and when the parties are able to agree on a settlement, the Plan

Committee will then be fully able and fully entitled to exercise its rights.  Nor is there any credible

possibility that the Disputed Claims Reserve will be diverted from "distribution on account of

8

allowed creditor claims." The ultimate outcome of the NorthWestern Action will establish whether or not Plaintiffs' claims against NorthWestern should be allowed, and in what amount. Plaintiffs will be able to recover from these funds only upon allowance of their claims, whether in part or in full.

**B.      The Plan Committee Cannot Intervene as of Right**

In the alternative, the Plan Committee argues that it may intervene as of right in the NorthWestern Action pursuant to Fed. R. Civ. P. 24(a)(1) because section 1109(b) of the Bankruptcy Code confers upon the Plan Committee the unconditional right to do so. This argument is equally meritless.

Fed. R. Civ. P. 24(a)(1) provides:

> (a) Intervention of Right.
> Upon timely application anyone shall be permitted to intervene in an action:
> (1)      when a statute of the United States confers unconditional right to intervene.

Significantly, the Plan Committee does not claim a right to intervene under the separate test of Rule 24(a)(2) but relies solely on 24(a)(1), claiming that Bankruptcy Rule 1109(b) is a "statute" giving it an unconditional right to intervene. Nor would a claim under 24(a)(2) have any merit. See NBD Bank, N.A. v. Bennett, 159 F.R.D. 505, 507 (S.D. Ind. 1994) (motion to intervene pursuant to 24(a)(2) denied when court found that "adequacy of representation [was] established when no collusion [was] shown between the representative and the opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of [its] duty"; fact that defendant lacked same economic incentives as proposed intervenors to oppose relief sought by plaintiff was insufficient to support intervention as of right).

9

But even without considering the substantive weaknesses of the Plan Committee's application, it should be denied as untimely. The timeliness of a motion to intervene is "determined from all the circumstances." In re Fine Paper Antitrust Litigation, 695 F.2d 494, 500 (3d Cir. 1982). Here, the Plan Committee has been in existence for over fifteen months (with the Official Committee apparently effectively defunct for the same period), with the NorthWestern Action pending during that entire period. All of the arguments the Plan Committee raises now could and should have been raised in November 2004; there are no new or changed circumstances.

As shown above, the Plan Committee was happy to let NorthWestern respond to Plaintiffs' Amended Complaint without seeking to intervene; it was likewise happy to let NorthWestern respond to the Motion to Withdraw the Reference without seeking to intervene, despite the fact that in both instances the Official Committee was already defunct and, thus, unable to take a position on the motions. There is no explanation for the Plan Committee's belated change of heart and no excuse given for the delay. The application should, therefore, be denied as untimely.

Even if deemed timely, the application to intervene is not supported by the facts or the law. Bankruptcy Rule 1109(b) states in relevant part that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The Plan Committee is not a "party in interest" within the meaning of Rule 1109(b). It is neither itself a creditor nor is it a creditors' committee, since "creditors' committee" as defined in 11 U.S.C. 1101 means only a statutory official committee with fiduciary duties to creditors, which as discussed above the Plan Committee is not. Since the Plan Committee is not an official committee, it simply does not fall within the holding of cases such as Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228 (3d Cir. 1994) (official unsecured creditors' committee of debtor a party in

10

interest pursuant to 1109(b) and, thus, entitled to intervene in adversary proceeding under Rule 24(a)(1)).[4]

Moreover, whatever basis there may be for a presumption that a bankruptcy trustee or debtor in possession cannot be counted on to handle pending litigation in a manner appropriately protective of the interest of potentially-affected creditors, that presumption should not apply to the post-reorganization management of NorthWestern, who are now generally permitted to manage their business and its affairs without ongoing court approval or oversight. See In re Parks Jaggers Aerospace Co., 129 B.R. 265, 267 (M.D. Fla. 1991) ("At confirmation the property of the estate is revested in the debtor except as provided in the plan, and the debtor proceeds on its way without further court supervision, except as provided in the plan. Normally there is no need for further supervision by a trustee or a creditors' committee").

Permitting intervention would lead to unnecessary duplication of effort, additional expense for all parties, and, inevitably, further delay.   If the Plan Committee is permitted to intervene, the Plan Committee, together with its counsel and advisors will duplicate the efforts of NorthWestern and its representatives. In particular, there is no reason why another party with separate counsel should be permitted to serve discovery requests on Plaintiffs and question Plaintiffs' witnesses, when that party has no interest at stake in the litigation distinct from NorthWestern's own interest.

While there is no dispute that the holders of Allowed Class 7 Claims who the Plan Committee claims to represent will benefit economically to the extent NorthWestern successfully defends the action, the Plan Committee offers no basis or even a speculation, much less a conclusion, that NorthWestern will not, in fact defend the case appropriately.  There is no reason to

---

[4]   The Plan Committee cites to In re Caldor Corp., 303 F.3d 161, 169 (2d Cir. 2002) to support its contention that section 1109(b) provides the Plan Committee with an "absolute" right to intervene in an adversary proceeding under F.R.C.P. 24(a)(1).  The Plan Committee's reliance on this case is misplaced.  Unlike the Plan Committee which is a creature of the Plan charged with the limited responsibility to "assist, advise and monitor" post-confirmation settlement of claims, the committee in Caldor was a committee of loan holders charged with the responsibility of protecting its members in the course of Caldor's bankruptcy proceedings.

11

believe NorthWestern would "take a dive" and allow a multi-million dollar judgment to be entered in Plaintiffs' favor just to spite the Plan Committee and those it claims to represent. If NorthWestern seeks to settle the case and the Plan Committee believes the proposed settlement amount is too high given the potential risks and rewards of pursuing the NorthWestern Action through trial and judgment, it will have the express right to object and be heard. That is all that is necessary to protect its legitimate interests; intervention will only cause disruption and delay without conferring any needed benefit on the creditors.

To the extent the Plan Committee believes it may need access to discovery material in order to evaluate the merits of a proposed settlement, that concern is premature (especially given the failure of both the original settlement and the most recent attempt at mediation) and permitting it to intervene as a party would be an unnecessary and an overbroad solution. If the Plan Committee wishes to ensure that any confidentiality order entered with respect to discovery material provides that confidential material may be shared with the Plan Committee, under appropriate circumstances and subject to suitable safeguards, to the extent necessary to enable to Plan Committee to carry out its functions as provided for in the Plan, Plaintiffs are certainly willing to consider in good faith any reasonable proposal in that regard.

12

## CONCLUSION

WHEREFORE, the Plaintiffs respectfully request that (i) this Motion to Intervene be denied

for the reasons stated herein; and (ii) grant any such other relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
        February 13, 06

                        BLANK ROME LLP

                        *Dale R. Dubé*

                        Dale Dubé (DE No. 2863)
                        Elio Battista, Jr. (DE No. 3814)
                        1201 Market Street, Suite 800
                        Wilmington, DE 19801
                        Telephone:  (302) 425-6400
                        Facsimile:  (302) 425-6464

                             - and -

                        FRIED, FRANK, HARRIS, SHRIVER
                           & JACOBSON LLP
                        Bonnie Steingart
                        Gary L. Kaplan
                        John W. Brewer
                        One New York Plaza
                        New York, NY 10004
                        Telephone: (212) 859-8000
                        Facsimile:  (212) 859-4000

                        Counsel for Magten Asset Management Corporation

SMITH, KATZENSTEIN & FURLOW, LLP

   /s/ Kathleen M. Miller
Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405

- and -

NIXON PEABODY LLP
John V. Snellings (BBO No. 548791)
Francis C. Morrissey (BBO No. 567589)
Lee Harrington (BBO No. 548791)
100 Summer Street
Boston, MA  02110
Telephone:    (617) 345-1201
Facsimile:    (866) 947-1732

Counsel for Law Debenture Trust Company
of New York