# TAB 1



Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re ELCOM TECHNOLOGIES CORPORATION
Debtor
James Wade SEEDOR, M.D. and Paul Kouch,
Plaintiffs
v.
AMERICAN DYNASTY SURPLUS LINES
INSURANCE COMPANY, Zurich American
Insurance Company, TIG Specialty Insurance
Company, National Union Fire Insurance Company
of Pittsburg, PA, Stonewall Insurance Company,
Kurt F. Gynne, Trustee and Official Committee of
Unsecured Creditors Defendants
No. 98-13343SR.

March 26, 2001.

Opinion

RASLAVICH, Bankruptcy J.
*1 The Court has before it the following four motions:
1. *Motion of Defendant American Dynasty Surplus Lines ("American Dynasty") to Compel Arbitration and Stay Adversary Proceeding;*
2. *Motion of Defendant Zurich Insurance Company ("Zurich") to Compel Arbitration and Stay Adversary Proceeding;*
3. *Motion of Defendant TIG Specialty Insurance Company ("TIG") to Compel Arbitration and Stay Adversary Proceeding;*
4. *Motion of Defendant National Union Fire Insurance Co. ("National Union") to Compel Arbitration and Stay Adversary Proceeding;*

As the titles of these Motions suggest, all share a common theme, to wit: a demand by the insurance company defendants herein ("Movants") for a stay of proceedings in this adversary action and referral of the parties' dispute to binding arbitration. Answers in opposition to these requests have been filed by the Plaintiffs and oral arguments were heard December 20, 1999, and January 24, 2000. The issues raised, of which there are several, have all been extensively briefed.

Most of the relevant factual background is agreed to by the parties. In March, 1998, Elcom filed a chapter 11 petition in this Court. A Chapter 11 Trustee, (Kurt F. Gwynne, Esquire) and an official committee of unsecured creditors were subsequently appointed. In August 1998, the Court confirmed a liquidating plan of reorganization filed jointly by the Trustee and the Creditors Committee. Among other things, the plan appointed the Trustee and the Creditors Committee as the Bankruptcy estate's exclusive representatives to prosecute estate causes of action post-confirmation.

In July 1998, the Trustee and the Creditors Committee filed an adversary proceeding ("the Gwynne Action") against certain of Elcom's former directors, officers and employees, including the two plaintiffs in the instant action. [FN1] In the Gwynne Action the Plaintiffs seek recovery of alleged fraudulent conveyances and damages for alleged breaches of fiduciary duty. An amended complaint in the Gwynne Action was filed in September 1998. Of the amended complaint's 32 counts, 28 are asserted by the Trustee and four by the Creditors Committee; three of the Committee's four causes of action are identical to claims asserted by the Trustee.

FN1. *Kurt F. Gwynne, Trustee, and Official Committee of Unsecured Creditors v. Robert A. Vito, Myrddin L. Jones, John Wade Seedor, Robert Kouch, Robert B. Sando, Stephen B. Pudles, C.B. Patel, Louis Petriello* Adversary Docket No. 98-435.

The Movant insurance companies are the issuers of directors and officers liability insurance policies ("

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

D & O Insurance Policies") which relate to years in which certain of the present Plaintiffs' alleged misdeeds occurred. The Plaintiffs in this suit ("the Seedor Action") have made demand on these insurance companies for defense costs and/or indemnification. The Movants, however, have all disclaimed coverage, prompting the Seedor Plaintiffs to initiate the present action. In it they seek, inter alia, a declaration that coverage is available to them under the policies of insurance in question. The Insurers stand on their original position as to coverage. They all argue, however, that the question itself is subject to compulsory arbitration based on clauses contained in the underlying insurance policies, and that the coverage question must therefore be referred for resolution to an arbitration panel. The Seedor Plaintiffs have made several discrete arguments in response. Their threshold jurisdictional argument, however, applies to all of the Movants, and hence will be considered collectively as to all. Other arguments which the Seedor Plaintiffs make, and which relate only to certain of the Movants, will be discussed separately herein.FN2

> FN2. Details of the polices in question are not in dispute. American Dynasty is the issuer of a "primary" $5,000,0000 insurance policy for the period June 3, 1996 through June 3, 1997. TIG provided first layer excess liability coverage in the amount of $5,000,000 for the period January 1, 1997 through June 3, 1997. Zurich provided a second $5,000,000 layer of liability coverage (i.e., coverage for liability in excess of $10,000,000) for the period January 1, 1997 through June 3, 1997. As "excess" insurers, TIG and Zurich issued policies which "follow the form" of the policy issued by the primary insurer, American Dynasty. The pertinent arbitration clause as to them, accordingly, is that which is contained in the American Dynasty policy. That is, if the American Dynasty clause is held to be valid and enforceable herein, any claims under the policies issued by TIG and Zurich must also go to arbitration. National Union is the issuer of a separate $10,000,000 primary liability insurance policy for the primary term, May 31, 1997 through August 3, 1998, and "discovery" term August 3, 1998 through August 3, 1999. National Union's policy thus has its own separate arbitration clause.

*2 Arbitration Agreements Are Generally Enforceable In Accordance With Their Terms. This fundamental proposition is one on which the parties, despite their many differing views, can at least agree. The arbitration provisions at issue herein are governed by the Federal Arbitration Act ("FAA") 9 U.S.C. § 1 et seq. which provides for the liberal enforcement of arbitration agreements, in pertinent part, as follows:
A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Seedor Plaintiffs stress, nevertheless, that a cautious approach is in order where an arbitration demand is interposed in the setting of a litigation pending in Bankruptcy Court. In this respect, Plaintiffs cite In re U.S. Lines, Inc., 197 F.3d 631 (2d Cir.1999) (petition for certiorari filed January 31, 2000, No. 99-1273) for the proposition that Bankruptcy Courts have the discretion not to enforce arbitration clauses when they conflict with the provisions, legislative history, or purposes of the Bankruptcy Code. Even the Seedor Plaintiffs acknowledge, however, that any discretion not to enforce an arbitration clause is very limited, particularly where the matter at issue in the litigation before the Bankruptcy Court is determined to be non-core. Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 885 F.2d 1149 (3d Cir.1989). The Movants, for their part, believe this actually understates the case. They read Hays as holding that the Bankruptcy Court has no jurisdiction whatsoever to deny enforcement of a valid arbitration agreement in a non-core matter.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Arguably, however, that overstates the holding of *Hays*. In *Hays*, the Circuit Court observed that:
we know of ... [no provisions in the text of the bankruptcy laws] suggesting that arbitration clauses are unenforceable in a non-core adversary proceeding in a district court to enforce a claim of the estate. To the contrary, as we have already noted, the text of the Bankruptcy Code embodies the principle that pre-petition contract rights are enforceable in a bankruptcy proceeding except to the extent the Code specifically provides otherwise and there are no contrary provisions applicable to this situation.

885 F.2d at 1157.

Although strong medicine, this seems something less than the blanket prohibition which the Movants proffer. Indeed, were the prohibition an absolute one, there would arguably have been no need for the Circuit Court to include explanatory language, such as it did later in *Hays*, as follows:
we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code. Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration-certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.

*3 *Id.* at 1161.

It seems that the Circuit Court has not closed the door on there conceivably arising in the future some set of circumstances that might justify the denial of an arbitration request in a non-core matter. The Court thus rejects the Movants' argument that *Hays* represents a bright line test, although the Court agrees that *Hays* most clearly sets up a formidable hurdle to any request for the non-enforcement of an arbitration clause in a non-core matter. In itself, this question is actually of little moment, however,

because no attempt to clear such hurdle has been made by the Seedor Plaintiffs, or for that matter by the Gwynne Plaintiffs, the latter being supporters of the Seedor Plaintiffs' cause herein. [FN3] Rather, both sets of Plaintiffs have advanced the argument that the instant dispute represents a core, as opposed to a non-core matter, thus requiring both a different analysis and out come than might be dictated by *Hays*.

FN3. Both the Trustee, or the Estate Representative, as he denominates himself post-confirmation, and the Creditors Committee have, via separate motion, sought leave to intervene in this action as of right under 11 U.S.C. § 1109(b) and F.R.C.P. 24(a)(1); see also, F.R.B.P. 7024. The essence of this request is unopposed, as "a party in interest" has a right to intervene in an adversary proceeding. *See: Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1230-31 & 1241 (3d Cir.1994); *Matter of Marin Motor Oil, Inc.*, 689 F.2d 445, 449-457 (3d Cir.1982), *cert. denied sub nom*., 459 U.S. 1206, 1207 (1983). American Dynasty, however, notes that the Gwynne Plaintiffs seek an Order deeming them to be *Plaintiffs* in this action. In this respect, American Dynasty notes that the Gwynne Plaintiffs themselves have no direct claim against the defendants herein and, furthermore, that they have filed no pleading of their own, as is required of an intervening plaintiff under F.R.C.P. 24(c). The Gwynne Plaintiffs do not assert that they possess a direct right of action in this lawsuit, and the Court indeed discerns their position as essentially supportive of the Seedor Plaintiffs. The Court finds it unacceptable to permit their intervention in an undesignated capacity, as American Dynasty would apparently suggest, and accordingly will admit them as Plaintiffs. In doing so, the Court acknowledges the pleading requirement of F.R.C.P. 24(c) but notes that several courts have held that technical non-compliance will not necessarily result in the denial of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 4
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

intervenor's Motion if the grounds are otherwise clear and no prejudice is shown. *See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd,* 782 F.Supp. 870, 874 (S.D.N.Y.1991); *Marshall v. Meadows,* 921 F.Supp. 1490, 1492 (E.D.Va.1996), *appeal dismissed by* 105 F.3d 904 (4th Cir.1997); *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 474-75 (9th Cir.) *cert. denied, sub nom.,* 506 U.S. 868 (1992) The Court finds such circumstances present here.

The two sets of Plaintiffs are correct that in core proceedings, which frequently implicate more pressing bankruptcy concerns, the Court's discretion not to enforce an arbitration clause is wider than in a non-core matter. Movants do not seriously disagree, and indeed, various courts have so stated. Citations to relevant decisions appear throughout the parties' memoranda of law. *See, e.g., In re Barry Weinstock,* No. 96-31147, Advs. No. 99-0056, 1999 WL 342764 (Bankr.E.D.Pa. May 25, 1999); *In re Sacred Heart Hosp. of Norristown,* 181 B.R. 195 (Bankr.E.D.Pa.1995); *In re FRG,* 115 B.R. 72 (E.D.Pa.1990); *In re Pocono Springs Co.,* No. 97-13535, Advs. No. 97-232, 1997 WL 347906 (Bankr.E.D.Pa.June18, 1997); *In re CGE Ford Heights, L.L.C.,* 208 B.R. 825 (Bankr.D. Del 1997); *In re Statewide Realty Co.,* 159 B.R. 719 (Bankr.D.N.J.1993). The Seedor Plaintiffs are probably correct, moreover, when they assert that referral of core matters to arbitration is not the norm. To avail oneself of this tendency, however, one must of course establish that the matter at hand is in fact core. Though vigorously maintained, the Seedor Plaintiffs' position on this key point is untenable.

The Third Circuit's recent decision in *Halper v. Halper,* 164 F.3d 830 (3d Cir.1999), articulates the framework for an analysis of this jurisdictional question. Specifically, a Court looks to two sources to determine if a matter is core. *Id.* at 836. First, the Court must consult the illustrative, non-exhaustive list of core proceedings set forth in 28 U.S.C. § 157(b). Second, the Court must inquire whether the proceeding: 1) invokes a substantive right provided by Title 11; or 2) is a proceeding that by its nature could arise only in the context of a bankruptcy case. *Id.* at 836.

Plaintiffs contend that this lawsuit qualifies under either of the foregoing bases. As to the first, they cite subsections (A) and (L) of 28 U.S.C. § 157(b)(2), which provide, as follows:
Core proceedings include, but are not limited to -
*4 (A) matters concerning the administration of the estate; ...
(L) confirmations of plans; ...

*Id.*

The Seedor Plaintiffs attempt to bring themselves within the ambit of subsection (A) above by arguing that this lawsuit is, in essence, an action to determine which counts in the Gwynne Action belong to the Trustee, Gwynne, and which belong to his co-plaintiff, the Creditors Committee. Such a question might presumably be answered simply by reference to the amended complaint filed in the Gwynne action. The Plaintiffs, however, insist that no hasty conclusion can be drawn. This apparently stems from the fact that the Movant insurance companies' disclaimer of coverage is predicated on a reservation in the underlying insurance policies known as the "insured v. insured exclusion." Briefly, these provisions purport to exclude from coverage under the subject policies (which were issued to Elcom) suits brought against Elcom's Directors and Officers by, *inter alia,* Elcom itself, and/or a successor to Elcom, including a Trustee in Bankruptcy. It appears the Seedor Plaintiffs will argue that, at a minimum, those counts in the Gwynne action asserted by his co-plaintiff, the Creditors Committee, are not barred by the foregoing exclusion. The precise status of the two Gwynne Plaintiffs, *vis a vis,* the Defendants in the Gwynne action is, accordingly, of paramount importance to the Seedor Plaintiffs herein. More to the point, the resolution of the question, in their view, implicates a question of which causes of action form property of the Bankruptcy Estate and which do not, presumably because they belong to creditors and may only be asserted by the Creditors Committee. A proceeding to determine what constitutes property of the Bankruptcy Estate, the Seedor Plaintiffs argue, is indisputably a core

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

matter. Jurisdiction is therefore said to lie under 28 U.S.C. § 157(b)(2)(A).

The Seedor Plaintiffs' second argument for 28 U.S.C. § 157 core jurisdiction proceeds from their first, as they argue that the status of the co-plaintiffs in the Gwynne Action, *vis a vis,* the Gwynne Defendants, requires an interpretation of the language of the confirmed plan of reorganization. Once again, therefore, the Plaintiffs see core jurisdiction, this time under 28 U.S.C. § 157(b)(2)(L). By deduction, and without further elaboration, the Seedor Plaintiffs conclude that core jurisdiction under the second of the *Halper* criteria (i.e., a proceeding that by its nature could arise only in the context of a bankruptcy case) also lies. The Court finds these arguments wanting.

The Court agrees with the Movants that the Seedor Plaintiffs' arguments rest on a mis-characterization of the present lawsuit. No disagreement is raised by any of the Movants as to who or what entity is asserting claims against the Defendants in the Gwynne Action. On the contrary, the Movants acknowledge the separate identity of the two distinct Plaintiffs in the Gwynne action, and the causes of action which they respectively assert. The Movants' argument here in is, quite simply, that given who the Plaintiffs in the Gwynne action are, coverage under the D & O Insurance Policies in question is not available. This presents a clear question of interpretation of the pertinent insurance policies, not the Elcom Plan of Reorganization. The relationship of this dispute to the Elcom Plan of Reorganization is only tangential. The Seedor Plaintiffs' argument to the contrary seems little more than the manufacture of controversy to avoid a self-evident fact and the outcome which follows from it. Such contrivance must be rejected.

*5 The Seedor Plaintiffs make two additional but unpersuasive arguments in furtherance of their assertion of core jurisdiction. First, they argue that the present dispute is core because it concerns an alleged post-petition breach of a pre-petition contract. Several decisions in this and other jurisdictions would support that general proposition. FN4 As Movants note, however, every reported decision on this issue has involved litigation by the Debtor, or its successor in interest as plaintiff. There is no decision which supports the proposition that an insurance coverage dispute between two non-debtors is core, and this Court declines to so hold here.

> FN4. *In re Sacred Heart Hosp. of Norristown,* 181 B.R. 195, 202 (Bankr.E.D.Pa.1995); *In re Nutri/System, Inc.,* 159 B.R. 725, 726 (E.D.Pa.1993); *In re 222 Liberty Associates,* 110 B.R. at 196, 199 (Bankr.E.D.Pa.1990); *In re Jackson,* 90 B.R. 126, 129-30 (Bankr.E.D.Pa.1988), *aff'd* 118 B.R. 243 (E.D.Pa.1990); *Valley Forge Plaza v. Fireman's Fund Ins. Co.,* 107 B.R. 514, 517-18 (E.D. Pa 1989); *In re West Electronics,* 128 B.R. 900, 903-04 (Bankr.D.N.J.1991); *Kent. v. Cigna U.S. Adjustment Corp.,* Nos. 95-14602DAS, 96-1227DAS, 96-1238DAS, 1997 WL 20507, at *5 (Bankr.E.D.Pa. Jan. 15, 1997).

The Seedor Plaintiffs' final argument is that this matter should be viewed as core because its outcome could possibly benefit the estate. In this regard, the Seedor Plaintiffs assert, as do the Gwynne Plaintiffs, that the insurance policies in question may prove to be the only meaningful source of potential recovery for the Gwynne Plaintiffs, because the Gwynne Defendants will themselves be unable the satisfy the enormous damages the Gwynne Plaintiffs will seek if they are successful in that action. It is clear under *Halper,* however, that even as suming *arguendo* the truth of this argument, it can at best only provide the basis for non-core jurisdiction. It will not, in other words, support a finding of core jurisdiction.

In sum, the Court rejects the Seedor Plaintiffs' argument that the issues presented in this litigation invoke the Court's core jurisdiction. Other things being equal, the Court would therefore give effect to the arbitration clauses in the American Dynasty and National Union policies and send the parties' coverage dispute to arbitration without further discussion. Additional discussion is required, however, as the Seedor Plaintiffs have made certain

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 6
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

separate and distinct non-jurisdictional challenges to each of the arbitration clauses in question. These will be considered individually below.

### I. American Dynasty

The parties agree that a Court presented with a Motion to Compel arbitration under the FAA must initially decide: 1) whether a valid arbitration clause exists; and 2) whether the dispute falls within the substantive terms of that arbitration clause. *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 650 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-28 (1985); *Paine Webber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990); *Ohio Casualty Ins. Co. v. The Southern Corp.,* Civ. No. 98-CV-6187, 1999 WL 236733 (E.D.Pa. Apr. 22, 1999). The Seedor Plaintiffs are correct, furthermore, that the scope of an arbitration agreement will be determined by reference to state law principals of contract formation. *First Options of Chicago Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) . On this point, Pennsylvania law is well established. In interpreting an insurance policy the Court must ascertain the intent of the parties as manifested by the language of the policy. *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 469 A.2d 563, 566 (Pa.1983) When the language of a policy is clear and unambiguous, it must be given its plain and ordinary meaning. *Pennsylvania Manufacturers Ass'n Ins. Co. v. Aetna,* 233 A.2d 548, 551 (Pa.1967). When a provision of a policy is ambiguous, on the other hand, it must be construed in favor of the insured. *Standard Venetian Blind,* 469 A.2d at 566. Courts are cautioned, nevertheless, to read policy provisions to avoid ambiguities and not torture the language to create them. *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.* 655 F.2d 521, 524 (3d Cir.1981).

*6 The American Dynasty policy includes an arbitration endorsement which states, in pertinent part, as follows:

### Arbitration Endorsement

This endorsement modifies insurance provided under the following:
Directors And Officers Liability And Company Reimbursement Policy
It is agreed that Clause VI is amended to include the following additional General Condition:
Any controversy arising out of or relating to this policy or the breach thereof shall be settled by binding arbitration in accordance with the rules of the American Arbitration Association (herein "AAA") then in effect....

American Dynasty, and the following form carriers, Zurich and TIG, all urge that the present dispute, *i.e.,* whether the policy responds to the claims asserted against the Seedor Plaintiffs in the Gwynne Action, falls squarely within the meaning of the above arbitration endorsement. The Seedor Plaintiffs did not dispute this contention in their initial response to the American Dynasty Motion to compel Arbitration. In supplemental responses, however, they do. Of significance to their somewhat belated argument is the following endorsement, separately included in the American Dynasty policy.

### Pennsylvania Service of Suit

It is agreed that in the event of the failure of the insurer(s) or Underwriters hereon to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Karen Holley Horrell, General Counsel, Agricultural Excess and Surplus Insurance Company, 580 Walnut Street, Suite 725, Cincinnati, OH 45202; that in any suit instituted against any one of them upon this contract the Insurer(s) or Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal....

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 7
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

As a threshold matter, the Seedor Plaintiffs contend that the present dispute most directly implicates the language of the service of suit endorsement, because in this lawsuit they have alleged that American Dynasty has failed to pay an amount (defense costs and, if necessary, damages) which they claim is due under that policy. Accordingly, they urge the Court to give the Service of Suit clause effect and deny the present Motion to Compel Arbitration. In the alternative, the Seedor Plaintiffs insist that when read together the two endorsements are, at a minimum, in conflict. As the insured, they argue that under applicable non-bankruptcy law this ambiguity must be resolved in their favor.

American Dynasty, *et al.*, resist the very notion that there is any ambiguity whatsoever between the arbitration and Service of Suit endorsements. However, their argument in this respect is not entirely convincing. An ambiguity exists where a contract is reasonably susceptible to more than one construction and is capable of being understood in more than one sense. *Reliance Insurance Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir.1997); *Gamble Farm Inn. Inc. v. Selective Ins. Co.,* 656 A.2d 142, 143-44 (Pa.Super.1995). Certainly that can be said here. The plain language of the two endorsements in issue here does indeed seem inconsistent. Each of the endorsements is broadly worded and seemingly all inclusive. It hardly seems implausible therefore to suggest that they are inconsistent or overlapping. The contrary position of American Dynasty *et al.* appears predicated on their understanding of the reason for the presence of a Service of Suit clause in an insurance policy. In this respect, they note that under Pennsylvania law, all "surplus lines" policies (that is, policies issued by out-of-state insurers, such as American Dynasty) are required to have included in them a Service of Suit endorsement subjecting the insurer to the jurisdiction of any court within the United States. See 31 Pa.Code § 123.63. The purpose of this legislation, they argue, is remedial, to wit: to ease possible burdens which an insured might encounter in obtaining jurisdiction over a foreign insurance carrier. Recognition of this prophylactic function, it is suggested, should alone dispel the notion that there is any conflict between the arbitration and Service of Suit endorsements in the subject policy. While there is not an enormous amount of case law on point, there is significant support for the American Dynasty view in reported decisions. The principal case on which American Dynasty *et al.* rely is *Hart v.. Orion Ins. Co.,* 453 F.2d 1358 (10th Cir.1971), where the 10th Circuit rejected the notion of any conflict between an arbitration clause and a service of suit clause, stating:

*7 We find no inconsistency. The purpose of Condition 14 [the service of suit clause] is to ease possible burdens which the insured might encounter in obtaining jurisdiction of the insurer, which is incorporated under the laws of England and has its principal place of business in London. The assent of the insurer to jurisdiction does not prevent it from raising a defense [arbitration] based on policy terms.

*Id.* at 1361.

Other courts have agreed. *Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's, London Subscribing to Ins. Evidenced by Policy No. 757/CJ940589,* Civ A. No. 96-1627, 1996 WL 495157, at *2 (E.D.La. Aug. 30, 1996) (" [T]he arbitration clause, on its face, requires arbitration of the dispute between the parties and ... the service of suit clause provides a means to enforce any resulting arbitration award,...."); *Ideal Mut. Ins. Co. v. Phoenix Greek Ins. Co,* No. 83 Civ. 4687-CSH, 1984 WL 602, at *2 (S.D.N.Y. July 3, 1984)(service of suit clauses "cannot be read to constitute a waiver of the broad arbitration clauses" ); *Continental Cas. Co. v. Certain Underwriters at Lloyd's,* No. C-92-4094-DLJ, 1993 WL 299232, at *5 (N.D.Cal. July 21, 1993) ("Plaintiff's novel interpretation of the two clauses eviscerates the arbitration clause and runs contrary to common sense."); *NECA Ins., Ltd. v. National Union FireIns. Co.,* 595 F.Supp. 955, 958 (S .D.N.Y 1984) (service of suit clause "does not by its terms limit the obligation to arbitrate but simply provides a consent to jurisdiction to enforce payments by Reinsurers granted through arbitration").

The Seedor Plaintiffs concede the underlying statutory purpose of the American Dynasty Service of Suit clause, and indeed, the point does not appear open to dispute. *Consolidated Sun Ray Inc. v. Steel*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 8
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Ins. Co. of America,* 190 F.Supp 171, 174 (E.D.Pa.1961) (Service of Suit clause is designed to assure that insured would not have to travel to the domicile of the insurer to assert its legal rights under the policy). [FN5] They nevertheless adhere to the position that the language of the two endorsements is inconsistent and ambiguous, and hence that applicable principals of state contract law must provide the reconciliation. They are not alone in this view. The Seedor Plaintiffs find support in *Thiokol Corp. v. Certain Underwriters at Lloyd's, London,* Civil No. 1:96-CV-028 B, 1997 U.S. Dist. LEXIS 8264 (D.Utah, May 6, 1997); and *Transit Casualty Co. Inc. In Receivership v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392 (Mo.App.1998). In *Transit,* in particular, the Court held that:

> FN5. Having said as much, the Court acknowledges an appeal to the Seedor Plaintiffs' argument that the legislative purpose as described in *Consolidated Sun Ray,* is not necessarily served by resolving the present dispute in favor of American Dynasty, since it will require the Seedor Plaintiffs to assert their rights to coverage in a remote forum.

The language of the service of suit clause cannot, as the Reinsurers here assert, pertain only to the enforcement of an arbitration award. The plain language of the clause does not mention or otherwise refer to the word 'arbitration,' nor does it refer to Art. XXII governing arbitration. Moreover, the Reinsurers' interpretation would render the words 'amounts claimed to be due' meaningless; it would change the contract to read 'amounts awarded by an arbitration panel.' Such is not what the service of suit clause specifies. Rather, the clause clearly refers to a unilateral claim by Transit, not an arbitration award resolving disputed claims of both parties.
*8 *Transit* 963 S.W.2d at 397-98; accord, *Thiokol,* 1997 U.S. Dist. LEXIS 8264, at *13-14.
[Lloyds] argues that where, as here, an insurance policy contains both an arbitration clause and a service of suit clause, the service of suit clause merely provides for submission to jurisdiction in a proceeding in aid of arbitration (e.g. to enforce an arbitral award) and that the service of suit clause does not in any way eliminate the requirement that coverage disputes be arbitrated. To accept Lloyd's interpretation and impose arbitration on *Thiokol* in this case however would not only construe the clauses in the insurer's favor, but also subvert, rather than harmonize, the service of suit clause to the arbitration clause.

*Thiokol,* 1997 U.S. Dist. LEXIS 8264, at *13-14.

The division of authority in this area lends support to the Seedor Plaintiffs' assertion of the existence of an ambiguity. *See Little v. MGIC Indemnity Corp.,* 836 F.2d 789-796 (3d Cir.1987) ("that different courts have arrived at conflicting interpretations of ... [a] policy is strongly indicative of its essential ambiguity"). Secure in the foregoing, the Seedor Plaintiffs, as noted, argue that, as the insured, all ambiguities must be resolved in their favor. *Curcio v. John Hancock Mutual Life Ins. Co.,* 33 F.3d 226, 231, (3d Cir.1994) ("the *contra proferentum* doctrine holds that ambiguities in an insurance policy are to be resolved in favor of the insured."). In the alternative, the Seedor Plaintiffs rely on another equally well established rule of contract interpretation, to wit: specific provisions control general ones. *See PBS Coal, Inc. v. Hardhat Mining, Inc.,* 632 A.2d 903, 906 (Pa.Super.1993) On this score, the Seedor Plaintiffs cast the service of suit clause as the specific clause dealing, as it does, with the failure to pay a claimed amount. In contrast, they characterize the arbitration clause as "catch all" language encompassing, as it does, any controversy arising out of or relating to the policy or a breach thereof. Finally, the Seedor Plaintiffs observe that under Pennsylvania law Courts construing contracts should avoid contract interpretations that would render a particular clause or section meaningless. *Sun Co., Inc. v. Brown & Root Braun, Inc.,* Nos. Civ. A. 98-6504, 98-5817, 1999 WL 681694 (E.D. Pa. Sept. 2 1999)(citing, *Friestad v. Travelers Indemn. Co.,* 393 A.2d 1212, 1217 (Pa.Super.1978); *Stern Enterprises v. Penn State Mutual Ins. Co.,* 302 A.2d 511 (Pa.Super.1993). In this respect, the Seedor Plaintiffs posit that their interpretation of the two endorsements in issue is the only way to harmonize

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

https://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B0055800000...   2/13/2006

Not Reported in F.Supp.2d                                                                                    Page 9

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

them. This last point, however, proves the Seedor Plaintiffs undoing.

This Court will respectfully disagree with courts which have determined that the collective terms of arbitration and service of suit clauses, such as those herein, are unambiguous. Regardless of the underlying statutory basis of the service of suit clause, its plain language cannot readily be squared with the language of the arbitration clause. When read together the clauses are ambiguous as that term has been defined in Pennsylvania, indeed in the entire Third Circuit. This alone, however, does not see the Seedor Plaintiffs to victory. Other things being equal, the Court would resolve the ambiguity in favor of the Seedor Plaintiffs. As the Third Circuit recently noted, however, generalized doctrines of contract interpretation are not to be applied in a vacuum. *James v. Zurich-American Ins. Co., of Illinois,* ___ F.3d ___, Civil A. Nos. 98-7543, 98-7542, 2000 WL 141240 at *4-7. (RLF) (3d Cir. Feb. 9, 2000) (rejecting *contra proferentum* construction of ambiguous insurance policy term where consistent practical construction of parties resolved doubt.) Before resort to *contra proferentum,* therefore, the Court must ask, indeed is constrained to ask, whether there is a construction of the two endorsements which, if adopted, will eliminate the ambiguity and give harmony to all provisions of the contract. Rather than the interpretation proffered by the Seedor Plaintiffs, it is the interpretation proffered by the Movants which accomplishes this. In this respect, it might be said that the Seedor Plaintiffs have proved too much. The Seedor Plaintiffs argue that their demand for defense costs and indemnity falls within the language of the American Dynasty Service of Suit clause. Arguably it does, as it represents the "claim for an amount due under the policy." At bottom, however, all that an insured ever looks to from an insurer is the payment of money when the subject policy of insurance is invoked. The insurer on the other hand, will insist, for its part, that the terms of the policy be observed as a pre-condition to any such payment. Any adverse decision by the insurer *vis a vis,* the insured, in whatever context, might ultimately be used as the basis for invoking service of suit jurisdiction, because if carried to its logical extension, it would result in the failure by the insurer to pay an amount claimed by the insured to be due under the policy. Paradoxically, therefore, it is the very ambiguity upon which the Seedor Plaintiffs rely which compels a ruling against them. Their interpretation of the Service of Suit clause would wholly eviscerate the arbitration clause because no dispute is incapable of eventually being fit within the ambit of the Seedor Plaintiffs' expansive interpretation of the Service of Suit clause. Given the Seedor Plaintiffs' interpretation of the Service of Suit clause, it is that clause, rather than the arbitration clause, which is the more general and less specific. More significantly, it is their interpretation, therefore, which violates fundamental principals of Pennsylvania contract law by rendering the conflicting arbitration clause meaningless. Accordingly, it is their interpretation, and not the one proffered by American Dynasty, *et al.* which must be rejected. In reaching this determination, the Court reiterates its concern that notwithstanding the strident rhetoric of the Movants to the contrary, this is a difficult, complex question. It is helpful to note, therefore, that the result reached herein is consistent with that well established body of law which articulates a strong presumption in favor of arbitration where some doubt exists. *See Moses H. Cone Hospital v. Mercury Cosntr. Corp.,* 460 U.S. 1, 24-25 (1983) (" The [Federal] Arbitration Act establishes that, as a matter of governing federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.").

*9 Another issue bears brief mention here. As a corollary to the above argument, the Seedor Plaintiffs contend that a ruling in their favor must obtain on the basis of the "reasonable expectations" doctrine. In this respect they cite, *Reliance Ins. Co.* 121 F.3d at 903; and *Collister v. Nationwide Life Insurance Co.,* 388 A.2d 1346, 1353 (Pa.1978), *cert denied,* 439 U.S. 1089 (1979), *accord Britamco Underwriters, Inc. v. Grzeskiewicz,* 639 A.2d 1208, 1210 (Pa.Super.1994), *appeal discontinued,* 647 A.2d 895 (Pa.1994), as follows:
Pennsylvania case law, expressed in *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 338

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 10

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

A.2d 1346 (1978) and restated in *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920 (1987), dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured.

*Reliance Ins. Co.* 121 F.3d at 903; *Accord, Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1309-12 (3d Cir.1994).

The Seedor Plaintiffs argue that American Dynasty and the following form insurers "bear the heavy burden of establishing by clear and convincing evidence" that the Seedor Plaintiffs do not have a reasonable expectation that their claims for failure to pay defense costs can be litigated in this Court, and that mandatory arbitration of that issue has not, in fact, been waived. Without elaboration, the Seedor Plaintiffs state in their brief that the Movants have not met this burden of proof. The Court disagrees. This argument appears predicated entirely on the Seedor Plaintiffs position on the contract ambiguity question, and their assumed vindication on that point. No other evidence or argument going to this issue has been offered. As the Court has resolved the ambiguity question adversely to the Seedor Plaintiffs, it in turn concludes that, *a fortiori,* the Seedor Plaintiffs had no reasonable expectation that arbitration would not apply in this instance, or if they did, that it had been waived by the Movants. The Court therefore rejects this particular argument without further discussion.

A final argument which the Seedor Plaintiffs raise as to American Dynasty *et al.,* is that referral of the parties' coverage dispute to arbitration should be denied because such referral would conflict with the Pennsylvania Bad Faith Statue. 42 Pa.C.S.A. § 8371 . As the Seedor Plaintiffs have also made this argument with respect to National Union, the Court, for clarity, will defer its discussion thereof at present, returning to the issue after consideration of the principal arguments which the Seedor Plaintiffs raise as to National Union.

II National Union

As discussed above, a Court presented with a Motion to Compel arbitration under the FAA must decide whether a valid arbitration clause exists, and whether the parties' dispute falls within the substantive terms of the clause. *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. at 650; *Mitsubishi Motors Corp.,* 473 U.S. at 625-28; *Ohio Casualty Ins. Co. v. The Southern Corp.,* 1999 WL 236733, at *5; *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1114 (3d Cir.1993) (citing *Paine Webber, Inc. v. Hartman,* 921 F.2d at 511).

*10 Leaving aside the core versus non-core jurisdictional argument which the Seedor Plaintiffs have collectively asserted against all of the Movants, the challenge of the Seedor Plaintiffs, as to American Dynasty and the following form carriers, Zurich and TIG, centered, as discussed, on the latter of the foregoing tests, *i.e.,* the scope of the clause. Its challenge to the arbitration clause found in the National Union policy, in contrast, is premised on the former of the tests, to wit: the validity of the arbitration clause. Specifically, the Seedor Plaintiffs contend that the National Union arbitration clause is unenforceable because it is an unconscionable contract of adhesion. Analysis of this charge requires careful scrutiny of the particular language found in the subject clause and careful attention to applicable principals of non-bankruptcy law.

The arbitration clause in the National Union policy is found at Paragraph 17 thereof. It is reproduced here in its entirety.
17. ARBITRATION
It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of loss, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 11
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Any party may commence such arbitration proceeding in either New York, New York; Atlanta, Georgia; Chicago, Illinois; or Denver Colorado. The arbitrators shall give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusion of this policy are to be construed in an evenhanded fashion as between the parties, including without limitation, where the language of this policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party of parties, and in accordance with the intent of the parties.)
The written decision of the arbitrators shall be provided to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs.
Each party shall bear equally the expenses of the arbitration.

Both parties point to the decision in *Denlinger Inc. v. Dendler*, 608 A.2d 1061, 1066-68 (1992) as the starting point for the required analysis. There, the Pennsylvania Superior Court held:
*11 First, for a contract term to be unconscionable, the party signing the contract must have lacked a meaningful choice in accepting the challenged provision. Second, the challenged provision must " unreasonably favor" the party asserting it.

*Id.,* at 1068.

The Seedor Plaintiffs maintain that National Union's arbitration clause satisfies both of the above elements. As to the lack of a meaningful choice, the Seedor Plaintiffs stress that under Pennsylvania Law it has long been recognized that insurance contracts are not freely negotiated agreements between parties of equal status. *Reliance Ins. Co.,* 121 F.3d at 955; *Collister v. Nationwide Life Insurance Co.,* 388 A.2d at 1353. On this score, National Union faults the Seedor Plaintiffs for purportedly relying exclusively upon decisions reaching this conclusion in the context of consumer automobile insurance policies. They maintain that Pennsylvania law calls for individual evaluation of the particular circumstances and parties to determine whether any given policy of insurance is a contract of adhesion. *Denlinger Inc. v. Dendler,* 608 A.2d at 1067. National Union then argues that the instant unconscionability argument fails because the present policy was an agreement "between two commercial entities for the benefit of sophisticated corporate officers and directors." National Union maintains that there was meaningful choice here: that is, if Elcom did not care for the arbitration clause it could have elected to go elsewhere for coverage. Similarly, if the Seedor Plaintiffs were not satisfied with the coverage as purchased by Elcom, National Union says that they could and should have resigned their positions. The Court will accept National Union's call for a case by case analysis in circumstances such as these. Having given individual attention to the present facts, however, the Court rejects National Union's arguments, and finds in favor of the Seedor Plaintiffs on the issue of meaningful choice.

General statements as to the adhesive nature of insurance contracts are probably found, for the most part, in consumer cases. There are several decisions, however, which make the same point in commercial settings, *see, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.,* 469 A.2d at 566-67; *In re American Medical Imaging Corp.,* 133 B.R. 45, 53 (Bankr.E.D.Pa.1991) (quoting *In re CS Assoc.,* 121 B.R. 942, 954 (Bankr.E.D.Pa.1990)), including specifically disputes involving D & O insurance. *Little v. MGIC Indem. Corp.,* 649 F.Supp 1460, 1463, 1468-69 (W.D.Pa.1986), *aff'd,* 836 F.2d 789 (3d Cir.1987); *Ameriwood Indus. Int'l Corp. v. American Cas. Co. of Reading,* 840 F.Supp. 1143, 1151 (W.D.Mich.1993). Moreover, even where some level of sophistication may be assumed from the business setting of a transaction, this alone is not determinative. A demonstration of sophistication in insurance matters in particular is required where an insurance policy is otherwise shown to be a contract of adhesion. *See Brokers Title Co. Inc. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174, 1177 (3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 12

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1979)(insurance policy was not a contract of adhesion where the insureds were insurance professionals who dealt with policy exclusions in their business); *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.,* 553 F.Supp. 425, 429 (E.D.Pa.1981)("[T]he key aspect of *Brokers Title* is that the insured there, unlike the insured here, was in the insurance business."), *rev'd on other grounds,* 789 F.2d 214 (3d Cir.1986); *Myrtil v. Hartford Fire Ins. Co.,* 510 F.Supp. 1198, 1203 (E.D.Pa.1981) (no showing that insured knew anything about insurance or that insured obtained policy in a manner other than as a typical purchaser of insurance).

*12 The arbitration provision in question here is contained in National Union's standard, preprinted form. Not even National Union contends that there was any negotiation over it. The Seedor Plaintiffs are correct that the very arguments which National Union makes betray the adhesive nature inherent in this contract by virtue of the lack of any meaningful choice. Of significance here, both cite to a 1980 decision of the Dauphin County Court of Common of Pleas, where the Court stated:

The term 'contract of adhesion' was first used in French legal analysis in 1901. (Salleilles, De Le Declaration de Volonte 220). It was introduced into Anglo-American Jurisprudence by Edwin W. Patterson in 1919 (Patterson, the Delivery of a Life-Insurance Policy, 33 Harv. L. Ref. 198, 222), and since has become common in legal writing.

'The term [contract of adhesion] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the ' adherer' cannot obtain the desired product or service save by acquiescing in the form agreement.'

*V.J. Hajjar Associates, Inc. v. Medical Service Ass'n. of Pa.,* 15 Pa. D. & C.3d 251, 256-57, (Pa.Com.Pl.1980)(quoting *Steven v. Fidelity and Casualty Co. of New York,* 377 P.2d 284, 297 (Cal.1963).

This Court agrees that National Union's "take it or leave it" stance as to Elcom's purported choice renders the circumstances almost an object lesson of the point in issue. As applied to the Seedor Plaintiffs themselves, the Court finds no different result in order, as there is no suggestion that either of these individuals have any particular knowledge of insurance matters.

Having demonstrated the first of the required two tests, *i.e.,* the lack of a meaningful choice, the Seedor Plaintiffs concede that they must still demonstrate that the challenged provision unreasonably favors the party enforcing it. Surprisingly, in its reply brief National Union seems to dispute this. National Union argues, without authority, that there is no cause for the Court to examine the substance of the present arbitration clause once it makes a threshold determination as to unconscionability. Having decided the threshold question adversely to National Union, its argument in the latter respect is not necessarily helpful to it. Regardless, however, the Court has assumed herein that the Seedor Plaintiffs face a conjunctive test. Indeed, this determination has particular significance for reasons to be more fully discussed, *infra.*

The arguments which the Seedor Plaintiffs make as to the unreasonableness test are twofold. First, they observe that the National Union arbitration clause requires the arbitrators to apply Delaware law to the parties' dispute, even though neither of the parties to the transaction have any connection to that state. Second, they observe that in resolving the underlying coverage dispute, the text of the arbitration clause expressly prohibits the arbitrators from considering certain well established pro-insured rules of policy construction, such as *contra proferentum* and the doctrine of reasonable expectations. That the language of the National Union's arbitration endorsement does so is clear from its text. Why it does so is left open to question. As hereinbefore noted, National Union has asserted that this question is beyond the appropriate scope of the Court's inquiry into the enforceability of the arbitration clause. National Union accordingly has made no response to the Seedor Plaintiffs charge that the selection of Delaware law, and the inclusion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 13

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

of the aforesaid prohibitions, unreasonably favors National Union so as to render the arbitration clause unconscionable and thus unenforceable. This may have been a miscalculation on the part of National Union, since the Court has found this to be a proper area of inquiry and, indeed, agrees with the Seedor Plaintiffs that the content of the particular arbitration clause renders it unconscionable and, at least partially, unenforceable.

*13 The Seedor Plaintiffs cite initially to the decision of the U.S. Supreme Court in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404 (1967), which held that questions concerning the enforceability of an arbitration clause are to be adjudicated by Courts, as opposed to the arbitrators who would be selected pursuant to the relevant clause:
Accordingly, if the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the "making" of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Prima Paint Corp.,* 388 U.S. at 403-404(internal footnote omitted); *see also, Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission,* 387 F.2d 768, 771 (3d Cir.1967) (construing *Prima Paint* as holding "only where the claim of fraud ... goes specifically to the arbitration provision itself should it be adjudicated by the court rather than the arbitrator.").

The Seedor Plaintiffs next stress that the *Prima Paint* holding has been extended to situations where a claim is made that an arbitration clause in an insurance policy is unconscionable.
In fact, the *Prima Paint* doctrine has been applied to several contractual defenses, including: illegality; consensual requirements such as whether a draft was intended to be a finalized contract and mutual mistake; authority issues, such as ultra vires; supervening event issues, such as frustration of purpose; consensual defenses such as duress, ' overreaching,' and *unconscionability:* procedural requirements such as time limits on submission of claims against seller for defective goods; and statue of limitations running on the contract containing the arbitration clause. Some questions concerning scope of the arbitration clause may also be referred to arbitration. The doctrine may also be applied to issues relating to modification, waiver, and other termination of the arbitration agreement.

*Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc.,* Civ A. No. 96-4659, 1998 WL 252353, at *7 (E.D.Pa., May 11, 1998)(emphasis added) (quoting Ian R. MacNeil *et al.,* 2 *Federal Arbitration Law,* § 15.3.2 (1994) (footnotes omitted)). *Accord, Barker v. Golf USA, Inc.,* 154 F.3d 788, 791 (8th Cir.1998)( "claim that arbitration clause lacks mutuality of obligation, is unconscionable, and violates public policy" must be decided by the court, not by an arbitrator), *cert denied,* 119 S.Ct. 796 (1999); *In re Knepp,* 229 B.R. 821, 834-838 (Bankr.N.D.Ala.1999).

Finally, the Seedor Plaintiffs note that an unconscionability inquiry as grounds for challenging an arbitration clause has expressly been held to be an appropriate inquiry for a court asked to enforce such clause under the FAA:
*Section 2* of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2 (emphasis added). Repeating our observation in *Perry,* the text of § 2 declares that state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' 482 U.S. at 492, n. 9, 107 S.Ct., at 2527, n. 9. Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. *See, Allied-Bruce Terminix Cos. Inc., v. Dobson,* 513 U.S. 265, 281 (1995) [add'l citations omitted.].

*14 *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 686-87 (1996). *Accord, Barker v. Golf USA, Inc.,* 154 F.3d at 791 ("claim that arbitration clause lacks mutuality of obligation, is unconscionable, and violates public policy" must be decided by the court, not by an arbitrator); *Northwestern Nat. Ins. Co. v. U.S. Healthcare, Inc.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 14
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

1998 WL 252353, at *6-7.

The Court thus considers as appropriately before it the question of whether the terms of National Union's arbitration clause themselves render the arbitration clause unconscionable. As noted above, the Court answers this inquiry in the affirmative.

National Union is a Pennsylvania corporation which maintains its place of business in New York, NY. Elcom is a Pennsylvania corporation which had its principal place of business in Pennsylvania. The Seedor Plaintiffs are both residents of Pennsylvania. Under the relevant arbitration clause not even the arbitration itself would take place in Delaware. There is, in other words, no apparent connection between the parties and the State of Delaware. National Union, for its part, offers no explanation. As the Seedor Plaintiffs note, a choice of law provision that has no substantial relationship to the parties' transaction is not enforceable.

The law of the state chosen by the parties to govern a contract shall be followed by the forum court *unless the chosen state has no substantial relationship to the parties or the transaction* or application of the chosen state's law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.

*Meritor Sav. Bank v. Peppertree Associates,* Civ A. No. 90-2317, 1991 WL 91562 (E.D.Pa. May 29, 1991) (emphasis added) (citing Restatement (Second) of Conflicts § 187(2), and *Sunguard Services Co. v. Joint Commuter Center, Inc.,* Civ. A. No. 88-8367, 1989 WL 37147 (E.D.Pa. Apr. 14, 1989)).

It is duly noted that the National Union policy itself does not generally specify the application of Delaware law for resolution of policy disputes. Rather, the choice of law provision is contained only in the arbitration endorsement. This lends some credence to the charge of the Seedor Plaintiffs that the choice of law provision was specifically included by the insurer for the purposes of " stacking the deck" against its insured. It is less clear that, by itself, the choice of law provision accomplishes this purpose, since Delaware law recognizes both the doctrine of *contra proferentum* and reasonable expectations. *New Castle County, Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa,* 174 F.3d 338, 343 (3d Cir.1999). The direction that Delaware law guide arbitrators in the construction of the National Union policy is thus something of a curiosity here. Much less ambiguous in its import, however, is the express elimination of any pro-insured rules of construction under the terms of the National Union arbitration clause. The doctrines of *contra proferetunn* and reasonable expectations exist in recognition of the unique dynamics of the insurer-insured relationship. Their observance by courts is an effort to redress an historically acknowledged bargaining inequity between these parties relative to the negotiation of the "fine print" in contracts of insurance. There seems little doubt that the language found in the National Union arbitration clause is an effort to vitiate the prophylactic effect of the doctrines its language excludes. In the absence of any explanation to the contrary, the Court so concludes. In this respect, accordingly, the Court finds that the National Union arbitration clause is unconscionable.

*15 The Seedor Plaintiffs make one further argument in support of their challenge to the National Union arbitration clause which the Court finds unconvincing, but which it will briefly address. Under the National Union policy, the expenses of any arbitration are to be borne evenly by the parties. The Seedor Plaintiffs point out that National Union, in the first instance, has refused to advance defense costs. They argue that this, in turn, has left them unable to deal not only with such defense costs, but also with the costs of an arbitration. This entire scenario, they argue, bespeaks unconscionability. The Court disagrees. Although the Court notes the protestations of the Seedor Plaintiffs, it has before it no competent evidence which speaks to any of the financial matters they raise. No evidentiary hearing was held in connection with the present motions. Certainly, without more, the Court is in no position to reach an informed opinion as to the various facts which allegedly underpin this particular argument. Even if one assumes their accuracy, however, the logic of the Seedor Plaintiffs is dubious. As National Union observes, arbitration under the policy might

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 15

Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

arguably be quicker and less expensive, since it is binding in nature and not subject to successive reviews on appeal. Once again, however, this merely invites conjecture. Rather than doing so, the Court here declines the Seedor Plaintiffs' request to find the National Union arbitration clause unconscionable due to the expenses associated therewith.

The Seedor Plaintiffs final attack on the National Union arbitration clause proceeds on a different tack. They argue that because the parties to the National Union policy are Elcom and National Union, they, the Companies' officers and directors, are not bound to arbitrate their demand for coverage. Once again, the Court quickly disagrees. The Seedor Plaintiffs are no doubt correct in their contention that arbitration is not to be forced upon persons who have not agreed to arbitrate their grievances. National Union is likewise correct, however, that the Seedor Plaintiffs are intended third party beneficiaries of the National Union Insurance policy and, as such, are vulnerable to the terms of the contract just as they might be enforced between Elcom and National Union. This would include the obligation to arbitrate where a valid and enforceable arbitration clause exists. See *Johnson v. Pennsylvania National Insurance Co.,* 594 A.2d 296, 298-300 (Pa.1991); *Jewelcor Jewelers and Dist. Inc. v. Corr.,* 542 A.2d 72, 80 (Pa.Super.1988), *appeal denied sub. nom., Granjewel Jewelers and Dist., Inc. v. Corr.,* 569 A.2d. 1367 (Pa.1989).

The remaining question, which is not so readily dispatched, is what result follows from the Court's determination that the arbitration clause in the National Union policy is unconscionable. National Union has argued that a victory by the Seedor Plaintiffs on this score will be a pyrrhic one, for they maintain that if the arbitration clause is unconscionable, the entire contract of insurance must be found void. The Seedor Plaintiffs, however, respond that it is only the arbitration clause itself which must be struck. For the most part, the Seedor Plaintiffs have the better part of this disagreement. They are correct, in other words, that under well settled Pennsylvania law, the doctrine of unconscionability can be a defense to the enforcement of an allegedly unfair contract or provision in a contract.

*16 [A] contract is not invalid merely because it is a contract of adhesion. '[F]inding a contract to be one of adhesion means nothing more that the court must review its terms for fairness ...' *Corbin on Contracts,* § 559C at 327 (1980 Supp.).... To be fair, a contract of adhesion must not give one party all the benefits while giving the other party all of the burdens of the contract. *Corbin, supra,* § 559F at 331. The terms of a contract of adhesion must be reasonably adapted to advance a legitimate purpose of the party that drafted the contract.

*Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 664 F.Supp., 969, 973-74 (E.D.Pa.1987) (quoting *Melso v. Texaco, Inc.,* 532 F.Supp. 1280, 1297-98. (E.D.Pa.), *aff'd,* 696 F.2d 983 (3d Cir.1982)). *Accord, Seus v. John Nuveen & Co.,* 146 F.3d 175, 184 (3d Cir.1998), *cert. denied.,* 525 U.S. 1139 (1999); *Stebok v. American General Life & Acc. Ins.* 715 F.Supp. 711, 714 (W.D.Pa.) *aff'd,* 888 F.2d 1382 (3d Cir.1989).

In this instance, the above instruction mandates that the arbitration clause be "reasonably adapted" to advance a legitimate purpose of the party that drafted it. This instruction does not mandate that the arbitration clause be struck in its entirety, only that it be rendered fair to both sides. Under the present circumstances, there are good reasons to abide by this instruction. For the reasons discussed at length, *supra,* this Court has determined that the coverage dispute as between the Seedor Plaintiffs and American Dynasty, *et al.,* is arbitrable. The same rationale (*i.e.,* jurisdiction) dictates that the coverage dispute with National Union be arbitrated. Indeed, the jurisdictional question here is not as close; there is no service of suit clause dispute between these parties since National Union is a domestically licensed insurance company. The difference here lies in the terms of the National Union arbitration clause. In view of this, the Court deems the appropriate result to be the enforcement of the essence of the National Union clause, *i.e.,* referral of the parties' coverage dispute to arbitration, but only after first striking from that clause those terms which have herein been found to be objectionable, to wit: the designation of Delaware law and the elimination of the two

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 16
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

pro-insured rules of contract construction. This seems to the Court particularly advisable, since to do otherwise would create a scenario where two essentially similar coverage disputes would be litigated in separate forums-one in an arbitration and one in this Court. This would portend duplication of effort and possibly inconsistent rulings, all of which strikes the Court as a most unsatisfactory outcome.

The Court's decision in this regard is not affected by one final argument which the Seedor Plaintiffs have raised, although the same does have some merit. In Count 5 of their Complaint, the Seedor Plaintiffs allege that in refusing to advance defense costs, and in disclaiming coverage, American Dynasty and National Union are both guilty of acts and omissions which constitute bad faith under Pennsylvania law. They accordingly have stated a cause of action for compensatory and punitive damages under Pennsylvania's "bad faith" statute. 42 Pa.C.S.A. § 8371. The Seedor Plaintiffs assert that this particular claim is not subject to arbitration, but instead mut be tried by a Court. American Dynasty, *et al.,* said little, if anything, by way of response to this proposition, although National Union resists it. The Seedor Plaintiffs, however, clearly have the better part of this disagreement, and the Court agrees with them that the bad faith claim in Count 5 of the Seedor Action cannot be referred to arbitration. *Nealy v. State Farm Mut. Auto. Ins. Co.,* 695 A.2d 790, 794 (Pa.Super.1997), *allocatur denied,* 717 A.2d 1028 (Pa.1998). National Union argues that this Court is free to disregard the decision in *Nealy* and cites *Walsh v. Allstate Ins. Co.,* Civ. A. No. 91-5858, 1992 WL 41328 at *1 (E.D.Pa. March 2, 1992) as an example of a decision where a Court declared a bad faith claim arbitrable. *Walsh* is wholly inapposite, however, and as the Seedor Plaintiffs note, it was decided before *Nealy,* not after it. Moreover, the Seedor Plaintiffs correctly observe that this Court does not possess the unfettered latitude to disregard *Nealy* which National Union posits.

*17 When a state's highest court has not spoken on a subject, we must attempt to predict how that tribunal would rule. *Kowalsky v. Long Beach Township,* 72 F.3d 385, 387 (3d Cir.1995). In making such determinations, we give due deference to the decisions of lower Pennsylvania courts. *Winterberg v. Transp. Ins. Co.* 72 F.3d 318, 322 (3d Cir.1995). *The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise. City of Philadelphia v. Lead Indus. Ass'n Inc.,* 994 F.2d 112, 123 (3d Cir.1993); *Rolick v. Colins Pine Co .,* 925 F.2d 661, 664 (3d Cir.1991).

*U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., Ins.* 80 F .3d 90, 93 (3d Cir.1996) (Emphasis added). *Accord, West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236-38 (1940); *Polselli v. Nationwide Mut. Fire Ins. Co.,* 126 F.3d 524, 529 n. 3 (3d. Cir.1997); *Travelers Indem. Co. of Illiniois v. DiBartolo,* 131 F.3d 343, 348 (3d Cir.1997); *Milan v. American Vision Center,* 34 F.Supp.2d 279, 281 (E.D.Pa.1998).

National Union does, however, ultimately make one persuasive point, which is that the Court, could, as an alternative, stay proceedings on the Seedor Plaintiffs bad faith claim pending the resolution of the underlying coverage dispute. If the coverage decision is decided adversely to the Seedor Plaintiffs, the bad faith claim likely becomes moot. If the Seedor Plaintiffs prevail, the bad faith issue is preserved. To deny arbitration on the basis of the presence of a bad faith claim alone strikes the Court as a bad precedent to set. It would be all too easy, in other words, to include a bad faith claim as a corollary to a coverage lawsuit merely to provide the means to circumvent an otherwise enforceable arbitration clause. While the Court in no way implies that this has occurred here, it nevertheless remains convinced that, with no other legitimate basis on which to deny arbitration, doing so by reason of the existence of the instant bad faith claim would be permitting the "tail to wag the dog." Thus, while the Court is somewhat reluctant to bifurcate this litigation, for the reasons expressed here in it will do so, staying this litigation and referring all matters but the Seedor Plaintiffs' bad faith claim to arbitration, albeit under the terms of the clause circumscribed as hereinbefore detailed.

An appropriate Order follows:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 17
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

E.D.Pa.,2001.
In re Elcom Technologies Corp.
Not Reported in F.Supp.2d, 2001 WL 1843378 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.