## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

MAGTEN ASSET MANAGEMENT CORPORATION
and LAW DEBENTURE TRUST COMPANY OF NEW
YORK,

               Plaintiffs,

           v.

NORTHWESTERN CORPORATION,

               Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. 04-1494-JJF

---

## NORTHWESTERN CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF THE PLAN COMMITTEE FOR AN ORDER SUBSTITUTING THE PLAN COMMITTEE FOR THE OFFICIAL COMMITTEE, OR IN THE ALTERNATIVE, TO INTERVENE IN ADVERSARY PROCEEDING

Dated: February 14, 2006

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**

Joseph D. Pizzuro, Esq.
Steven J. Reisman, Esq.
Nancy E. Delaney, Esq.
Miriam K. Harwood, Esq.
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

**GREENBERG TRAURIG, LLP**

Victoria Counihan, Esq. (No. 3488)
Dennis A. Meloro, Esq. (No. 4435)
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, Delaware  19801
Tel:  (302) 661-7000
Fax:  (302) 661-7360

*Co-Counsel for Defendant NorthWestern Corporation*

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ........................................................................................... 2

**PRELIMINARY STATEMENT** ..................................................................................... 3

**BACKGROUND** .............................................................................................................. 5

The Official Creditors' Committee Appointed in NorthWestern's Bankruptcy Case ................ 6

The Disputed Claims Reserve and the Creation of the Plan Committee Under
NorthWestern's Chapter 11 Plan .................................................................................... 7

**ARGUMENT** ................................................................................................................... 9

I.   THE PLAN COMMITTEE CANNOT BE "SUBSTITUTED" IN THE
     PLACE OF THE OFFICIAL CREDITORS' COMMITTEE .................................... 9

II.  THE PLAN COMMITTEE SHOULD NOT BE ALLOWED TO
     INTERVENE AS OF RIGHT ................................................................................. 12

III. EVEN IF INTERVENTION IS PERMITTED, THE PLAN COMMITTEE
     SHOULD NOT BE GIVEN BROADER RIGHTS TO PARTICIPATE IN
     SETTLEMENT NEGOTIATIONS THAN IT IS ACCORDED PURSUANT
     TO THE PLAN COMMITTEE BY-LAWS AND NORTHWESTERN'S
     CHAPTER 11 PLAN .............................................................................................. 15

**CONCLUSION** .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 701 F. Supp. 1157
(W.D. Pa. 1988) ....................................................................................................... 10

*In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985).................................................. 13, 14

*In re Ionesphere Clubs, Inc.*, 101 B.R. 844 (Bankr. S.D.N.Y. 1989)............................ 14

*Joubert v. ABN Amro Mortgage Group, Inc.*, 411 F.3d 452 (3d Cir. 2005)................... 12

*Luxline P.L. Export Co. v. RDI/Luxline, Inc.*, 13 F.3d 69 (3d Cir. 1993)..................... 10

*State Bank of India v. Prasad Chalasani (In re Prasad Chalasani)*, 92 F.3d 1300
(2d Cir. 1996)......................................................................................................... 10

*Unofficial Comm. Of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56
(D. Del. 1995) ........................................................................................................ 13

**Statutes and Rules**

11 U.S.C § 105(a) ....................................................................................................... 12

11 U.S.C. § 1102........................................................................................................ 11

11 U.S.C § 1103.......................................................................................................... 11

11 U.S.C. § 1109(b) ............................................................................................. 3, 12, 13

Fed. R. Bankr. Pro. 9019............................................................................................. 9

Fed. R. Civ. Pro. 24(a)(1) ...................................................................................... 3, 12

Fed. R. Civ. Pro. 25(c) ........................................................................................ 3, 9, 10

NorthWestern Corporation ("NorthWestern"), defendant in the above-captioned action (the "Magten/NorthWestern Action"), by and through its counsel, Greenberg Traurig, LLP and Curtis, Mallet-Prevost, Colt & Mosle LLP, respectfully submits this brief in opposition to the Motion Of The Plan Committee For An Order Substituting The Plan Committee For The Official Committee, Or In The Alternative, To Intervene In Adversary Proceeding (the "Motion"), filed with this Court on February 1, 2006.

## PRELIMINARY STATEMENT

The Plan Committee's Motion should be denied in its entirety. There is no basis for "substitution" of the Plan Committee as a party to this action in the place of the Official Committee of Unsecured Creditors of NorthWestern's bankruptcy case. There has been no "transfer of interest" to justify such substitution, as required under FRCP 25(c). Nor can the Plan Committee claim to be the "successor" to the Official Creditors' Committee, as it is not vested with the same broad duties and function as that entity. The role which the Plan Committee seeks in its Motion would in fact exceed the scope of its purpose and powers -- expressly delineated in its By-Laws and NorthWestern's Chapter 11 Plan of Reorganization -- which are specifically limited to "overseeing the remaining claims reconciliation and settlement process" with respect to claims against NorthWestern's bankruptcy estate. Neither NorthWestern's Plan of Reorganization nor the By-Laws of the Plan Committee contemplated active participation in litigation against the debtor, and the Court should not grant the Plan Committee an *ex post facto* expansion of its powers beyond those originally prescribed.

There is also no basis for the Plan Committee to intervene in this action under FRCP 24(a)(1) as a "party in interest" under Section 1109(b) of the Bankruptcy Code. The Plan Committee is not one of the parties enumerated in Section 1109(b) and therefore is not entitled to

3

the presumption that it is a "party in interest" entitled to intervene. Thus, the Plan Committee

must show not only that it has a direct stake in the outcome of the Magten/NorthWestern Action,

but also that its interests are not adequately represented by existing parties to the proceedings,

i.e., Northwestern. The Plan Committee cannot meet this burden.

NorthWestern has at all times since the inception of Plaintiffs' action vigorously

defended against the claims herein. NorthWestern twice moved to dismiss Plaintiffs'

complaints, and recently moved for a Protective Order limiting discovery and attempting to

streamline the litigation process in anticipation of a motion for summary judgment. The Plan

Committee simply cannot show that its active participation in this action would improve the

chances of defeating Plaintiffs' claims against NorthWestern, or that its interests are not aligned

with NorthWestern's. The only sure result of the Plan Committee's intervention would be to

escalate the costs of the litigation, to the detriment of NorthWestern. The Plan Committee will

undoubtedly look to NorthWestern to reimburse the Plan Committee's fees and expenses

incurred in connection with intervening in this action under the compensation provisions of its

By-Laws – potentially forcing NorthWestern to pay twice for the defense of Plaintiffs' claims.

Although NorthWestern will object to such reimbursement as unnecessary on the grounds that

intervention exceeds the scope of the Plan Committee's duties, it can expect even more costs

associated with litigation over the question of reimbursement.

Finally, even if the Plan Committee is allowed to intervene in this action, the Plan

Committee must not be granted the extraordinary power which it seeks in its Motion – that is, to

be named as "a mandatory party to any settlement negotiations" with regard to this action.

Entitling the Plan Committee to be a "mandatory" participant in settlement negotiations would

effectively empower the Plan Committee to control, rather than merely participate in this

litigation. Granting that request would also vest the Plan Committee with greater powers than it is accorded under its own By-Laws and under NorthWestern's Chapter 11 Plan, which afford it merely the right to be given notice and an opportunity to object to proposed settlements of claims against NorthWestern's estate. The Plan Committee should not be allowed to use the vehicle of this intervention motion to impermissibly expand the role and powers to which it has been accorded.

## BACKGROUND

1.     The Magten/NorthWestern Action was originally commenced as an Adversary Proceeding in NorthWestern's Chapter 11 bankruptcy case in April 2004, in order to resolve claims asserted by the Plaintiffs herein against NorthWestern's bankruptcy estate (the "QUIPS Claims").

2.     The QUIPS Claims assert that a pre-petition transaction in which the assets of a subsidiary of NorthWestern were transferred to NorthWestern, in exchange for its assumption of liabilities, was a fraudulent conveyance. Plaintiffs seek to avoid the transfer, declare that those assets were not property of the bankruptcy estate, and impose a constructive trust upon those assets.

3.     While this action was an Adversary Proceeding pending in the Bankruptcy Court, NorthWestern actively litigated in defense of Plaintiffs' claims, twice moving to dismiss Plaintiffs' complaint, first in May 2004 and again in November 2004. NorthWestern was successful in obtaining partial dismissal of Plaintiffs' claims on its first motion to dismiss, in which the Bankruptcy Court agreed that Plaintiffs' standing to sue NorthWestern was dubious.

4.     This Court withdrew the reference from the Bankruptcy Court in this matter on September 22, 2005.

5

5.    NorthWestern recently moved for a Protective Order to limit Plaintiffs'

discovery to the single, narrow issue which remains in this case pursuant to the Bankruptcy

Court's prior ruling, following which NorthWestern intends to move for summary judgment that

it believes will terminate the litigation.

### The Official Creditors' Committee Appointed in NorthWestern's Bankruptcy Case

6.    The Office of the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "Official Creditors' Committee") in NorthWestern's Chapter 11

bankruptcy case on September 30, 2003.

7.    On May 19, 2004, the Official Creditors' Committee filed a Motion to

Intervene in the Magten/NorthWestern Action when it was pending as an Adversary Proceeding

in the Bankruptcy Court prior to withdrawal of the reference.  [Adv. Pro. No. 04-53324, Docket

# 7.]  The Bankruptcy Court granted the motion on June 16, 2004 (the "Intervention Order").

[Adv. Pro. No. 04-53324, Docket # 14.]  The Official Creditors' Committee joined in

NorthWestern's first motion to dismiss Plaintiffs' complaint in the Magten/NorthWestern

Action.  [Adv. Pro. No. 04-53324, Docket # 17; 21.]

8.    Pursuant to Section 14.10 of NorthWestern's Chapter 11 Plan of

Reorganization (the "Plan"), all Committees created in connection with NorthWestern's

bankruptcy case "shall continue to exist" after the Effective Date of the Plan (November 1,

2004), with respect to: "(iii) any matters pending as of the Effective Date before the Bankruptcy

Court to which such Committee is party, until such matters are resolved."

9.    Accordingly, by operation of Section 14.10 of the Plan, the Official Creditors'

Committee was expressly authorized to continue to participate in the Magten/NorthWestern

Action, which was a pending Adversary Proceeding in the Bankruptcy Court as of the Effective

Date, and which is still not resolved. However, the members of the Official Creditors' Committee voluntarily disbanded their committee after the Effective Date, and no longer participated in the litigation of Plaintiffs' claims, which NorthWestern has continued to defend on its own to date.

### The Disputed Claims Reserve and the Creation of the Plan Committee Under NorthWestern's Chapter 11 Plan

10.    NorthWestern's Chapter 11 Plan became effective as of November 1, 2004 (the "Effective Date"), at which time NorthWestern emerged from bankruptcy as the Reorganized Debtor. However, as of the Effective Date, there remained significant outstanding claims asserted against NorthWestern's bankruptcy estate which had not yet been resolved -- including Plaintiffs' QUIPS Claims which are the subject of the Magten/NorthWestern Action. Accordingly, the Plan provided for the establishment of a reserve of NorthWestern New Common Stock (the "Disputed Claims Reserve"), from which outstanding claims against the estate would be satisfied in the event they were subsequently deemed allowed by the Bankruptcy Court.

11.    Under the terms of the Plan, after the resolution of outstanding disputed claims against the estate, any shares of New Common Stock remaining in the Disputed Claims Reserve do not revert to NorthWestern. Rather, they are to be distributed pro rata to the holders of Allowed Class 7 and Class 9 Claims.

12.    NorthWestern's Chapter 11 Plan also provided for the creation of a so-called "Plan Committee," which was formed "for the purpose of overseeing the remaining Claims reconciliation and settlement process." (Plan, Section 7.9.)

13.    Upon information and belief, the Plan Committee currently consists of three members who held unsecured Allowed Class 7 Claims against NorthWestern's bankruptcy

estate: Avenue Capital Group, Fortress Investment Group LLC, and Harbert Distressed Investment Master Fund Ltd.

14.    The By-Laws of the Plan Committee, as amended on February 25, 2005 (the "By-Laws"), describe the purpose of the Plan Committee in Section 1.3, as follows: "The purpose of the Plan Committee shall be to assist, advise and monitor the Reorganized Debtor's claims reconciliation and settlement process." A copy of the By-Laws is attached as Exhibit A.

15.    The By-Laws set forth specific procedures in Section 1.10 (the "Claims Reconciliation Procedures"), which define the Plan Committee's role with respect to settlements of claims. These provisions were amended in February 2005, shortly after NorthWestern's proposed settlement with Plaintiffs was abandoned after vigorous opposition by the Plan Committee.

16.    Section 7.9 of the Plan provides that, with respect to settlements resulting in an Allowed Claim against the estate greater than $100,001, the "Reorganized Debtor may settle the claim, in accordance with the provisions and procedures set forth in the Plan Committee by-laws, which provides the Plan Committee with, among other things, the right to object [to] such claims."

17.    Under the Claims Reconciliation Procedures, NorthWestern must provide the Plan Committee with notice of proposed settlements in excess of $100,000 at least ten days prior to: (i) the filing of a motion by NorthWestern seeking Bankruptcy Court approval of the proposed settlement, and (ii) "the execution of any material agreement relating to the proposed settlement." The Plan Committee has ten days to review the proposed settlement. Regardless of whether the Plan Committee agrees to the terms of settlement in advance or not, NorthWestern may submit the proposed settlement for approval by the Bankruptcy Court:

If the Plan Committee objects to any such settlement, the Plan Committee and the Reorganized Debtor shall negotiate in good faith to resolve outstanding issues. If the parties cannot resolve their dispute, the Reorganized Debtor may file an application with the Bankruptcy Court seeking approval of such disputed settlement under Bankruptcy Rule 9019 standards and the Plan Committee reserves its rights to object to such settlement. (By-Laws, Section 1.10.1.3)

18.    Thus, the Plan Committee does not have veto power or approval rights with regard to proposed settlements of claims against NorthWestern's bankruptcy estate, but merely the right to review and object to proposed settlements.

19.    The Plan Committee has not participated in the litigation of the Magten/NorthWestern Action at any time since the committee came into existence on November 1, 2004.

## ARGUMENT

### I.

### THE PLAN COMMITTEE CANNOT BE "SUBSTITUTED" IN THE PLACE OF THE OFFICIAL CREDITORS' COMMITTEE

20.    The Plan Committee cannot merely be "substituted" as a party in the Magten/NorthWestern Action in the place of the Official Creditors' Committee. Such "substitution" is not permissible under Rule 25(c) and would also violate the Plan, which expressly authorized the Official Creditors' Committee to continue in existence and carry out its functions with regard to the Magten/NorthWestern Action, if it deemed necessary.

21.    The Plan Committee's reliance upon FRCP 25(c) as a basis for substitution by virtue of a supposed "transfer of interest" is misplaced. Rule 25(c) provides:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

22.    There has been no "transfer of interest" here for purposes of Rule 25(c). This is not the kind of situation contemplated by Rule 25(c), such as when a "transfer of interest" is made to a successor corporate entity from the original corporate party after a merger or acquisition. *See, e.g., Luxline P.L. Export Co. v. RDI/Luxline, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 701 F. Supp. 1157, 1170 (W.D. Pa. 1988) (granting plaintiff's motion to join the undisputed successor operator of defendant's assets in a patent infringement case). *See also State Bank of India v. Prasad Chalasani (In re Prasad Chalasani)*, 92 F.3d 1300 (2d Cir. 1996) (denying substitution under Rule 25(c) of a different creditor when original creditor voluntarily dismissed complaint against debtor and there was "no proof of any transfer or assignment" from original creditor to alleged successor).

23.    It is noteworthy that the Plan Committee cites no authority for its proposition that substitution under Rule 25(c) is appropriate by virtue of some "transfer of interest." Thus, the Plan Committee is relegated to the argument that substitution should be allowed because: "[a]s a practical matter, the Plan Committee has served as the post-Effective Date successor to the Official [Creditors] Committee and operates to protect the rights and interests of the same unsecured creditor body." Motion, at p. 7, ¶ 20. But in fact, the Plan Committee has not acted as the "successor" to the Creditors' Committee.

24.    Under Section 14.10 of the Plan, the only post-Effective Date role for the Official Creditors' Committee is to continue to participate in the matters pending before the court where the committee has been made a party. The Official Creditors' Committee was a party to the Magten/NorthWestern litigation, yet its members resigned and the Committee ceased to exist. By voluntarily disbanding the committee and discontinuing participation in this litigation, it must be assumed that the Official Creditors' Committee deemed that the interests of other creditors of

the bankruptcy estate were adequately represented by virtue of NorthWestern's continued defense of the QUIPS claims, and that it was unnecessary to take an active role. If the Plan Committee was acting, "as a practical matter," as successor to the Official Creditors' Committee, and if its constituents indeed needed representation, the Plan Committee would have sought to intervene at that point in time. It did not, despite the fact that the litigation was active and on-going. The Plan Committee's lack of involvement in this action subsequent to the disbanding of the Official Creditor's Committee after the November 1, 2004 Effective Date belies its current position that it has served as the effective "successor" to the Official Creditor's Committee.

25.    In addition, there is a substantial difference between the role of the Official Creditors' Committee and the Plan Committee. The Plan Committee, which was created under the Plan, was not formed as the successor to the Official Creditors' Committee, which was created by operation of Sections 1102 and 1103 of the Bankruptcy Code, nor does it have the same purpose, function, or role. Under both the Plan and its own By-Laws, the Plan Committee is specifically limited to "overseeing the remaining claims reconciliation and settlement process" (Plan, Section 7.9) and "to assist, advise and monitor the Reorganized Debtor's claims reconciliation and settlement process" (By-Laws, Section 1.3). The role and power which the Plan Committee now seeks in its Motion is far broader than that contemplated in the operative documents by which it was created, and would exceed the scope of its duties and functions.

26.    For example, the Plan Committee's request that it be named as "a mandatory party for purposes of any settlement negotiations" would grant it broader rights and powers than the Plan Committee By-Laws, which provide only for notice and an opportunity to object to proposed settlements. Similarly, the Plan Committee's request to "participate in and have access to all discovery" would also exceed the scope of its duties under the Plan and By-Laws, which

11

provide simply for a voice at the final stage of the claims settlement process, not active

involvement in the litigation underlying such settlements.

## II.

## THE PLAN COMMITTEE SHOULD
## NOT BE ALLOWED TO INTERVENE AS OF RIGHT

27.    The Plan Committee's alternative argument, that it should be allowed to

intervene as of right under FRCP 24(a)(1), because it is a "party in interest" under Section

1109(b) of the Bankruptcy Code, should also be rejected

28.    FRCP 24(a)(1) provides for intervention as of right "when a statute of the

United States confers an unconditional right to intervene." The Plan Committee relies upon

Section 1109(b) of the Bankruptcy Code as the purported basis for its right to intervene. That

Section provides:

> A party in interest, including the debtor, the trustee, a creditors'
> committee, an equity security holders' committee, a creditor, an
> equity security holder, or any indenture trustee, may raise and may
> appear and be heard on any issue in a case under this chapter [11 of
> the Bankruptcy Code].

29.    The Plan Committee presumes, without justification, that it qualifies as a

"party in interest" within the meaning of Section 1109(b). However, as it not one of the

enumerated parties specified in Section 1109(b), it is not entitled to a presumption of status as a

"party in interest" entitled to an absolute right of intervention.

30.    The Bankruptcy Code does not contain a definition of the term "party in

interest." Consequently, the court "must determine on a case by case basis whether the

prospective party in interest has a sufficient stake in the proceeding so as to require

representation" within the meaning of Section 1109(b). *In re Amatex Corp.*, 755 F.2d 1034 (3d

Cir. 1985). *Amatex* is the seminal case in the Third Circuit interpreting the term "party in

interest" under Section 1109(b) of the Bankruptcy Code. There the Court made clear that it is not enough that the party have a stake in the proceedings. Rather the prospective party in interest must have a sufficient stake in the proceeding <u>so as to require representation</u>. 755 F.2d at 1042-44. Thus the court in *Amatex* inquired whether or not the parties already involved in the proceedings had interests similar to the party seeking to intervene. Concluding there were none, the court directed that a representative of that party be appointed and allowed to participate in the case as a party in interest. *Id.*

  31. This same two-part analysis to determine whether an intervenor is a "party in interest" under Section 1109(b), i.e., whether the movant has a stake in the outcome of the proceedings and whether that interest is already adequately represented by other parties to the action, has been applied in the District of Delaware and elsewhere. *See, e,g, Unofficial Comm. Of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56 (D. Del. 1995) (debtor's noteholders had a "practical stake in the outcome of the proceedings," and required "their own spokesperson" in order for their interests to be adequately represented in Chapter 11 case*); In re Ionesphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (consumers advocate group did not warrant intervention as "party in interest" in bankruptcy case of debtor airline, where, *inter alia,* there was no showing that the "flying public's" interests were not being adequately represented by other airline industry experts already retained in the case).

  32. Not surprisingly, the Plan Committee's argument completely ignores the second prong of the *Amatex* analysis. But the fact is that the Plan Committee does not require its own representation in the Magten/NorthWestern Action. There is no basis upon which the Plan Committee can argue that NorthWestern's defense of the Magten/NorthWestern Action is or has

been deficient in any manner, or that its participation would make any difference in the outcome of this case – except for escalating the costs of litigation.

33.    As it has done with regard to all disputed claims against its estate throughout the course of its Chapter 11 bankruptcy case, NorthWestern has vigorously defended the QUIPS claims since the inception of the original Adversary Proceeding. (Indeed, it is precisely because NorthWestern has been so successful in resolving disputed claims against the estate in its favor that there is a surplus in the Disputed Claims Reserve at all.) The Plan Committee has not, and cannot, argue otherwise. NorthWestern twice moved to dismiss the Plaintiffs' complaints, and was successful in persuading the Bankruptcy Court that Plaintiffs lacked standing. Most recently, NorthWestern filed a Motion for a Protective Order to limit Plaintiffs' improper attempt to obtain discovery on issues which were already determined to be irrelevant by the Bankruptcy Court. NorthWestern has pursued and will continue to pursue all available defenses to the claims asserted in the Magten/NorthWestern Action.

34.    In short, it is not necessary for the Plan Committee to intervene and participate in the Magten/NorthWestern Action in order to protect the interests of its constituents. On the other hand, allowing such intervention would clearly have a negative impact upon the Reorganized Debtor and its shareholders, by escalating the costs of the litigation. This is particularly so if, in the event intervention is permitted, the Plan Committee then looks to NorthWestern for reimbursement of the fees and expenses incurred by the Plan Committee in participating in the litigation. The Plan Committee has already made known to NorthWestern that it expects full reimbursement of its legal fees and expenses incurred in connection with the Magten/NorthWestern litigation. While NorthWestern takes issue with this position -- since it believes that intervention in the litigation is beyond the scope of the Plan Committee's duties -- it

faces the possibility of paying double to defend Plaintiffs' claims against the estate, plus the costs of possible further litigation with the Plan Committee over reimbursement.

35.    Thus, the Plan Committee's current posture puts NorthWestern in the potential position of paying twice to defend the Magten/NorthWestern Action – once for its own counsel, and once for the Plan Committee – while the Plan Committee obtains free reign to participate in the litigation, at NorthWestern's cost. Placing such a burden upon NorthWestern would be entirely inequitable and should not permitted by the Court.

## III.

### EVEN IF INTERVENTION IS PERMITTED, THE PLAN COMMITTEE SHOULD NOT BE GIVEN BROADER RIGHTS TO PARTICIPATE IN SETTLEMENT NEGOTIATIONS THAN IT IS ACCORDED PURSUANT TO THE PLAN COMMITTEE BY-LAWS AND NORTHWESTERN'S CHAPTER 11 PLAN

36.    In the event that this Court permits the Plan Committee to intervene in the Magten/NorthWestern Action, the Plan Committee should nevertheless not be granted the extraordinary power which it has requested in its Motion: that is, an Order "naming the Plan Committee as a **mandatory party for purposes of any settlement negotiations**" concerning the Adversary Proceeding. (Motion, p. 6, ¶16; Proposed Order, at p. 2) (emphasis added)).

37.    There is no basis for vesting the Plan Committee with such power, which is essentially to control – not just "participate" in the litigation. Even if it is allowed to intervene as a "party," the Plan Committee is not entitled to be a "mandatory" participant in settlement negotiations. Again, this request illustrates the Plan Committee's attempt, through the intervention motion, to impermissibly expand its powers beyond the scope of the duties, purpose, and function accorded to it under the terms of the Plan and its own By-Laws. Those operative documents provide the Plan Committee with the right to be given notice and an opportunity to

15

object to proposed settlements.  The blatant overreaching for additional powers which the Plan

Committee's Motion seeks should be rejected by the Court.

## CONCLUSION

38.    For the foregoing reasons, NorthWestern respectfully requests that the Plan

Committee's Motion be denied.

Dated: Wilmington, Delaware
       February 14, 2006


**CURTIS, MALLET-PREVOST,**
    **COLT & MOSLE LLP**

Joseph D. Pizzuro, Esq.
Steven J. Reisman, Esq.
Nancy E. Delaney, Esq.
Miriam K. Harwood, Esq.
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

**GREENBERG TRAURIG, LLP**

By: _____
    Victoria Counihan, Esq. (No. 3488)
    Dennis A. Meloro, Esq. (No. 4435)
    The Nemours Building
    1007 North Orange Street
    Suite 1200
    Wilmington, Delaware  19801
    Tel:  (302) 661-7000
    Fax:  (302) 661-7360

*Co-Counsel for Defendant NorthWestern Corporation*