IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-1494-JJF<br>)<br>)<br>)<br>)<br>) |

**OMNIBUS REPLY OF THE PLAN COMMITTEE TO
OBJECTIONS TO MOTION FOR AN ORDER SUBSTITUTING THE PLAN
COMMITTEE FOR THE OFFICIAL COMMITTEE, OR IN THE
ALTERNATIVE, TO INTERVENE IN ADVERSARY PROCEEDING**

Dated: February 21, 2006

| | |
|---|---|
| **PAUL, WEISS, RIFKIND,**<br>**WHARTON & GARRISON LLP**<br><br>Alan W. Kornberg, Esq.<br>Kelley A. Cornish, Esq.<br>Margaret A. Phillips, Esq.<br>1285 Avenue of the Americas<br>New York, New York 10019-6064<br>Tel: (212) 373-3000<br>Fax: (212) 757-3990 | **THE BAYARD FIRM**<br><br>Neil Glassman, Esq. (No. 2087)<br>Charlene D. Davis. Esq. (No. 2336)<br>Eric M. Sutty, Esq. (No. 4007)<br>222 Delaware Avenue, Suite 900<br>Wilmington, Delaware 19899<br>Tel: (302) 650-5000<br>Fax: (302) 658-6395 |

Co-Counsel for the Plan Committee

618239v1

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................3

THE FLAWED ATTEMPT AT SETTLEMENT ..................................................................4

SURPLUS DISTRIBUTIONS ................................................................................................5

ARGUMENT ..........................................................................................................................7

    I.    THE PLAN COMMITTEE IS THE *DE FACTO* SUCCESSOR TO THE OFFICIAL COMMITTEE ................................7

    II.    THE PLAN COMMITTEE IS ENTITLED TO INTERVENE AS OF RIGHT ................................................................10

CONCLUSION .....................................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*In re Amatex Corp.*, 755 F.2d at 1034 (3d Cir. 1988).................................................10, 11, 12, 14

*In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794
(E.D. Pa. 2000) ........................................................................................................................11

*In re Orlando Investors, L.P.*, 103 B.R. 593 (Bankr. D.Pa. 1989) .................................................12

*Unofficial Committee of Zero Coupon Noteholders* v. *The Grand Union
Company*, 179 B.R. 56 (D. Del. 1995) ....................................................................................13

*U.S.* v. *Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994)..........................................................11

## Statutes

11 U.S.C. §105................................................................................................................................10

11 U.S.C. § 1109(b) .......................................................................................................................10

## Rules

Fed. R. Civ. P. 24(a)(1)..................................................................................................................10

Fed. R. Bankr. P. 7024...................................................................................................................10

The Plan Committee (the "Plan Committee"), successor to the Official Committee of Unsecured Creditors (the "Official Committee") and appointed in the chapter 11 case of NorthWestern Corporation ("NOR" or the "Reorganized Debtor"), pursuant to Section 7.9 of Northwestern's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"), by its undersigned counsel, respectfully submits this omnibus reply to (i) the objection dated February 13, 2006 (the "Plaintiffs Objection"), [Docket No. 68] of Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture," collectively with Magten, the "Plaintiffs") to the Motion of the Plan Committee for an Order Substituting the Plan Committee for the Official Committee, or in the Alternative, to Intervene in the Adversary Proceeding dated February 1, 2006 (the "Motion")[1] [Docket No. 53] and (ii) the opposition dated February 14, 2006 of NOR to the Motion (the "NOR Objection," collectively with the Plaintiffs Objection, the "Objections") [Docket No. 69].

For the reasons set forth below, the Plan Committee, respectfully requests this Court overrule the Objections and grant the relief requested by the Motion.

## PRELIMINARY STATEMENT

By their Objections NOR and the Plaintiffs are attempting to shut out the representative of a key party in interest to the above-captioned adversary proceeding (the "Adversary Proceeding") based on the pretense that NOR may be trusted to protect the interests of holders of Class 7 and Class 9 Claims (as defined in the Plan).

---

[1] All capitalized terms used herein but not defined have the meanings ascribed to them in the Motion.

618234v1

The outcome of the Adversary Proceeding will determine what, if any, portion of the remaining shares of the Reorganized Debtor's common stock held in a reserve established pursuant to Section 7.5 of the Plan (the "Disputed Claims Reserve") will be distributed to the Plaintiffs, with the balance going to the holders of allowed Class 7 and Class 9 Claims. As a result, the outcome of the Adversary Proceeding, which concerns the sole outstanding disputed prepetition claim against NOR, falls squarely within the Plan Committee's responsibilities to oversee the "[C]laims reconciliation and settlement process." See §7.9 of the Plan.

NOR has admitted that it has no stake in the shares in the Disputed Claims Reserve or in the outcome of the Adversary Proceeding, aside from eliminating its legal costs.[2] As the mere custodian of the shares in the Disputed Claims Reserve, NOR's interests simply are not aligned with unsecured creditors holding Class 7 and Class 9 Claims. Thus, absent the Plan Committee's participation in the Adversary Proceeding, the unsecured creditors are at risk of a windfall allocation to the Plaintiffs of the remaining shares. Indeed, NOR's prior track record in previously agreeing to a flawed and unreasonable settlement of Plaintiffs' prepetition claims, which the Bankruptcy Court denied upon objection by the Plan Committee[3] speaks volumes for the need for Plan Committee intervention here. For these reasons and those set forth more fully below, the Objections are without merit and should be overruled.

---

[2]  See NOR Objection, at pp. 7, ¶ 11; and 14, ¶34; NOR's Memorandum in Support of Motion for Protective Order dated February 2, 2006 [04-1494 Docket No. 56] at p. 10; Letter from NOR dated January 27, 2006 at p. 2, a copy of which is attached hereto as Exhibit A (the "January 27 Letter").

[3]  See Memorandum decision and order dated March 10, 2005 of Bankruptcy Court [03-12872 Bankr. Docket No. 2910 and 2911], copies are attached as Exhibit B and Exhibit C, respectively.

## BACKGROUND

1. On October 8, 2005, the Bankruptcy Court issued a decision [03-12872 Bankr. Docket No. 2276] confirming the Plan and overruling multiple objections to the Plan. Such ruling was implemented by order dated October 19, 2004 (the "Confirmation Order") [03-12872 Bankr. Docket No. 2238].

2. On October 25, 2004, Magten filed its Notice of Appeal of the Confirmation Order [03-12872 Bankr. Docket No. 2266]. The appeal of the Confirmation Order (the "Confirmation Appeal") remains pending, with parties, including the Plan Committee,[4] having briefed both a motion to dismiss on the grounds of equitable mootness as well as the substantive issues raised by the appeal.

3. Shortly after entry of the Confirmation Order, the Plan became effective on November 1, 2004 (the "Effective Date"), and was substantially consummated by December 29, 2004, as evidenced by the Notice of Substantial Consummation of the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on December 29, 2004 [03-12872 Bankr. Docket No. 2519].

4. Upon the Effective Date, as provided by Section 7.9 of the Plan, the Plan Committee was appointed to oversee the claims reconciliation and settlement process.[5]

---

[4] In connection with the appeal of the Confirmation Order, Civil Action 04-1389, the Plan Committee, as the successor to the Official Committee, filed (i) a Joinder in Support of NorthWestern's Motion to Dismiss Consolidated Appeals of Magten Asset Management Corporation dated June 10, 2005 [04-1389 Docket No. 57], (ii) a Reply to and Joinder in Support of NorthWestern's Reply to Magten Asset Management Corporation's Memorandum of Law in Support of Opposition to Motion to Dismiss and Joinder of the Plan Committee dated July 12, 2005 [04-1389 Docket No. 62], and (iii) a Joinder in Support of NorthWestern's Reply Brief dated August 12, 2005 [04-1389 Docket No. 69]. In addition, over the Plaintiffs' objections, the Plan Committee was permitted to participate in two Court-ordered mediations regarding the Confirmation Order with the Plaintiffs and NOR.

[5] The Plan Committee consists of three members, Avenue Capital Group, Fortress Investment Group LLC and Harbinger Capital Partners (f/k/a Harbert Distressed Investment Master Fund Ltd.), who are either former members of the Official Committee or entities who hold unsecured Allowed Class 7 Claims.

5. On December 7, 2004, as a result of Magten's Confirmation Appeal, the Bankruptcy Court entered an order (the "Stay Order") [04-53324 Bankr. Docket No. 52] staying the Adversary Proceeding pending resolution of the Confirmation Appeal.[6] Specifically, the Bankruptcy Court found that "since the issues on appeal are also now presented for decision to this Court, and indeed, the pending litigation encompasses those issues, this Court is without jurisdiction to try [Case] No. 04-53324 until there has been final resolution of those issues at the appellate level." See Stay Order at pp. 3-4. Thus, because the Confirmation Appeal remains pending and "encompasses" the issues in the Adversary Proceeding, the Adversary Proceeding remains stayed. However, in anticipation of this Court's decision on the Confirmation Appeal, the Plaintiffs and NOR have commenced discovery activities with respect to the Adversary Proceeding. Most recently, on February 2, 2006, NOR filed a Motion and Memorandum of Law in Support for a Protective Order seeking to limit the scope of the Plaintiffs' discovery requests [04-1494 Docket Nos. 55, 56][7]. The Plaintiffs filed an opposition to the Motion for a Protective Order on February 13, 2006 [04-1494 Docket No. 66].

## THE FLAWED ATTEMPT AT SETTLEMENT

6. On February 22, 2005, the Plaintiffs filed a joint motion pursuant to Bankruptcy Rule 9019 (the "9019 Motion") [03-12872 Bankr. Docket No. 2832] for approval of an alleged settlement agreement negotiated by NOR and Magten (the "2005 Settlement"). In addition to violating the express terms of the substantially consummated Plan, the 2005 Settlement was unreasonably rich to Magten, fell short of the standards for

---

[6] A copy of the Stay Order is attached as Exhibit D.

[7] A copy of the Memorandum of Law in Support of the NOR's Motion for a Protective Order is attached as Exhibit E.

approval of a settlement or compromise under Bankruptcy Rule 9019, and improperly used shares from the Disputed Claims Reserve to settle claims between the Plaintiffs and third parties, including NOR's professionals and certain formers officers of Clark Fork and Blackfoot LLC (a subsidiary of NOR). In negotiating the 2005 Settlement, NOR did not include the Plan Committee or its advisors in the negotiations with Magten. Moreover, contrary to the requirements of the Plan and the Plan Committee's by-laws in effect at the time of the 2005 Settlement, NOR released the proposed terms of the 2005 Settlement to the public prior to the Plan Committee having had a chance to review its terms.

7.   On March 2, 2005, the Plan Committee timely filed an objection to the 9019 Motion. After a contested hearing on March 8, 2005, the Bankruptcy Court denied the 9019 Motion by a memorandum decision and order dated March 10, 2005 because, among other reasons, the 2005 Settlement violated the express terms of the Plan. See the Bankruptcy Court's memorandum decision dated March 10, 2005, a copy of which is attached as Exhibit B.

**SURPLUS DISTRIBUTIONS**

8.   The terms of the Plan provide that NOR shall continue to settle Disputed Claims (as defined by the Plan) after the Effective Date. Upon Disputed Claims becoming allowed claims, they are to be satisfied from the shares in the Disputed Claims Reserve established pursuant to Section 7.5 of the Plan. In connection therewith, on October 25, 2004, NOR filed its Notice of Establishment of Claim Reserve Pursuant to Section 7.5 of the Plan and Paragraph 27 of the Confirmation Order [03-12872 Bankr. Docket. No. 2270], creating a reserve containing approximately 13.5% of the Reorganized Debtor's common stock (the "New Common Stock") issued on the Effective

Date. Within the Disputed Claims Reserve, by stipulation and order entered on November 3, 2004 [03-12872 Bankr. Docket No. 2317], NOR has created a segregated reserve for the claims at issue in this Adversary Proceeding of 787,339 shares of New Common Stock, which would be the distribution specified under the Plan for a $25 million allowed Class 9 Claim.

9.  Currently, the only Disputed Claims outstanding are those of the Plaintiffs. All other Disputed Claims have been resolved and satisfied with the result that there are approximately 3 million shares of New Common Stock remaining in the Disputed Claims Reserve valued at approximately $98 million. See NOR's Memorandum of Law in Support of Motion for Protective Order at p. 9, n. 6.

10. The Plan further provides that NOR is required to distribute surplus shares available in the Disputed Claims Reserve on a *pro rata* basis to holders of Allowed Class 7 and Class 9 Claims after the Effective Date in accordance with Section 7.7 of the Plan.[8] See Plan at § 7.7.[9] The Plan Committee represents such holders (the same creditors

---

[8] Contrary to the arguments asserted in the Plaintiffs' Objection that surplus distributions in compliance with Section 7.7 of the Plan are somehow inequitable because NOR's New Common Stock has increased in value subsequent to the Effective Date, creditors have a legitimate expectation that they are to receive subsequent distributions in accordance with Section 7.7 of the Plan every six months following the Effective Date. Such entitlement of creditors does not hinge on the future value of the New Common Stock, whether it is more or less than the value that was ascribed to it in connection with Plan confirmation.

[9] Section 7.7 of the Plan provides as follows: "The following assets shall constitute Surplus Distributions: (i) Unclaimed Property; and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, any excess of the amount of Cash or New Common Stock in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash or New Common Stock actually distributed on account of such Disputed Claim plus any interest, dividends or other Distributions earned thereon. On each Subsequent Distribution Date, the holders of Allowed Claims shall receive a Pro Rata Share in the Surplus Distributions attributable to such holders' Class; provided, however that the Reorganized Debtor shall not be under any obligation to make Surplus Distributions on a Subsequent Distribution Date unless the aggregate market value of the Surplus Distributions (which value shall be based on the intrinsic value as of the Effective Date) to be distributed on such Subsequent Distribution Date exceeds $50,000 in any Class; provided, further that if the Final Distribution required under this Plan is less than $25,000 in aggregate market value in any Class such Surplus Distributions shall revest in Reorganized Debtor. Plan at § 7.7.

represented by the Official Committee) with respect to, among other matters, ensuring that such post-Effective Date distributions are made.

11. On September 29, 2005, the Plan Committee filed its Motion in Aid of Consummation and Implementation of the Plan for Order Authorizing and Directing NorthWestern Corporation to Distribute Surplus Distributions in accordance with Section 7.7 of the Plan (the "Surplus Distribution Motion") [03-12872 Bankr. Docket No. 3308]. On October 12, 2005, the Plaintiffs filed an objection [03-12872 Bankr. Docket No. 3325], and on January 3, 2006, NOR filed its response [03-12872 Bankr. Docket No. 3405], both of which sought to prevent a distribution from the Disputed Claims Reserve to unsecured creditors and to stay further implementation of the Plan.

12. After a contested hearing on January 11, 2006, the Bankruptcy Court entered an order on February 7, 2006 [03-12872 Bankr. Docket No. 3438], denying the Surplus Distribution Motion on the basis that NOR was not required to comply with Section 7.7 of the Plan until Plaintiffs' claims asserted in the Adversary Proceeding were resolved, notwithstanding the Bankruptcy Court's finding that the Disputed Claims Reserve contained surplus shares. The Plan Committee filed its Notice of Appeal of such order on February 7, 2006 [03-12872 Bankr. Docket No. 3441].

## ARGUMENT

### I.

### THE PLAN COMMITTEE IS THE DE FACTO SUCCESSOR TO THE OFFICIAL COMMITTEE

13. In the Objections, NOR and the Plaintiffs argue that the Plan Committee may not be substituted for the Official Committee pursuant to Bankruptcy Rule 7025 and Federal Rule 25. Specifically, NOR and the Plaintiffs assert that there was no formal

transfer of interest, and that the Plan Committee, as a creature of the Plan (as opposed to statute), may not act, and has not acted, as successor to the Official Committee, and that to grant the requested substitution would somehow violate the Plan.

14. Since the Effective Date, as a result of the resignation of the Official Committee members, the Plan Committee has for all practical purposes stepped into the shoes of the Official Committee and diligently represented the interests of the same body of creditors as that represented by the Official Committee. The Plan Committee has participated actively in matters arising in this stage of the chapter 11 case, including several efforts to resolve the Adversary Proceeding. And, as noted above, the members of the Plan Committee consist of three members (one, a former member of the Official Committee), all of whom are holders of unsecured Allowed Class 7 Claims against NOR's estate.

15. The Plan Committee is charged with protecting the interests of NOR's unsecured creditors during the final stages of NOR's chapter 11 cases. One of the key creditor interests is maintaining the Plan's integrity by ensuring that all unsecured creditors receive their rightful recoveries in a timely manner. To fulfill its obligations, contrary to the arguments in the Objections, neither the Plan nor the Plan Committee's Amended and Restated By-Laws (the "By-Laws") contain language expressly prohibiting the Plan Committee from doing something other than "objecting" to a proposed settlement presented to it by NOR. As a result, the Plan Committee, acting as the successor to the Official Committee has, among other things, submitted appellee briefs in pending appeals to which it is a party, participated in two separate Court-ordered mediations with the Plaintiffs, objected to unreasonable settlement proposals, moved to

compel parties, including NOR, to comply with the terms of the Plan as written, and filed a joinder[10] in support of NOR in this Adversary Proceeding. Attached as Exhibit F is an appendix of the pleadings filed to date by the Plan Committee, as successor to the Official Committee.

16. Moreover, other parties have recognized the role of the Plan Committee as the successor to the Official Committee. Specifically, the Plan Committee was allowed to participate in two Court-ordered mediations (over the Plaintiffs' objections), and the Bankruptcy Court, in overruling certain objections of Magten to the proposed settlements of various Disputed Claims, noted the Plan Committee's role in protecting the interests of NOR's unsecured creditors in the post-Plan Effective Date period. See Transcript of Hearing held on August 10, 2005 before the Honorable John L. Peterson [03-12872 Bankr. Docket No. 3292] at pp. 13-20, a copy is attached hereto as Exhibit G.

17. In support of the Objections, NOR and the Plaintiffs argue that the Motion should be denied because the Plan Committee did not formally move to substitute or intervene in the Adversary Proceeding earlier than February 1, 2006 "despite the fact that the litigation was active and ongoing." See NOR Objection at p. 11, ¶ 24. However, this argument ignores that the Adversary Proceeding was neither active nor ongoing because it was stayed shortly after the Effective Date. See Stay Order. Thus, there was no need for the Plan Committee to file a motion to substitute or intervene until now, nor is it clear that a request for substitution or intervention would have necessarily been entertained previously by the Court.[11] As set forth more fully in the Motion, the Plan Committee

---

[10] See footnote 11, below.

[11] NOR and the Plaintiffs are also incorrect in their assertions that the Plan Committee did not participate in the Adversary Proceeding prior to entry of the Stay Order. The Plan Committee did in fact, prior to the Stay Order, file a Joinder in Reorganized Debtor's Brief in Opposition to Motion and

determined to seek substitution or intervention as a result of the recent discovery activities of NOR and the Plaintiffs in anticipation of a decision on the Confirmation Appeal and termination of the stay.

18.  Although there may not exist a formal instrument or document transferring the Official Committee's interests to the Plan Committee, since its inception, the Plan Committee has operated as the *de facto* successor to the Official Committee as a result of the Official Committee's practical inability to protect those interests. Accordingly, it is appropriate for the Court to substitute the Plan Committee for the Official Committee in the Adversary Proceeding to ensure that the interests of holders of Class 7 and Class 9 Claims are adequately represented.

## II.

## THE PLAN COMMITTEE IS ENTITLED TO INTERVENE AS OF RIGHT

19.  The objecting parties also oppose the Plan Committee's alternative request for an order allowing the Plan Committee to intervene in the Adversary Proceeding as of right pursuant to Bankruptcy Rule 7024, Federal Rule 24(a)(1) and sections 105(a) and 1109(b) of the Bankruptcy Code. Specifically, the objecting parties argue that the request for intervention is not timely, that the Plan Committee does not qualify as a party in interest within the meaning of section 1109(b) of the Bankruptcy Code, and that it has failed to satisfy the applicable test for intervention set forth in In re Amatex Corp., 755 F. 2d 1034 (3d Cir. 1988)

20.  The Plan Committee's request to intervene as of right is clearly supported by Third Circuit case law as fully set forth in the Motion, and neither Objection cites any

---

Memorandum of Plaintiffs in Support of Motion for Stay of Adversary Proceedings Pending Resolution of Motion to Withdraw the Reference dated December 3, 2004 [04-53324 Bankr. Docket No. 46].

618234v1                                           10

authority or case law refuting this. Accordingly, the Objections should be overruled, and the Plan Committee should be allowed to intervene in the Adversary Proceeding.

21.     "Timeliness" is not just a function of counting days; it is determined by a totality of circumstances. U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 (3d Cir. 1994). As set forth more fully above, the Motion is timely because the Adversary Proceeding has been *stayed* since December 2004. The change in circumstance that prompted the filing of the Motion are the recent discovery activities of NOR and the Plaintiffs. In addition, it has become increasingly clear that NOR's interests are no longer aligned with the constituents of the Plan Committee, and may in fact be adverse thereto. Specifically, the flawed 2005 Settlement and NOR's statements in the January 27 Letter demonstrate that its priorities are in avoiding additional legal fees and protecting the interests of its professionals and former officers of its subsidiary by using creditor property in the Disputed Claims Reserve to resolve claims against such parties. Such actions and statements belie NOR's assertions that "it is not necessary for the Plan Committee to intervene and participate in the [Adversary Proceeding] in order to protect the interests of its constituents." See January 27 Letter and NOR Objection at p. 14, ¶34.

22.     The Objections also argue that the Plan Committee's request for intervention should be denied because it is not a party in interest within the meaning of section 1109(b) of the Bankruptcy Code. Contrary to these arguments, courts in this Circuit have consistently interpreted the scope of section 1109(b) broadly to include parties other than those expressly listed in the statute. In re Amatex Corp., 755 F. 2d at 1042 ("it is clear, however, that the term 'party in interest' is not limited by the small list of examples in section 1109(b)"); In re Camden Ordnance Mfg. Co. of Ark., Inc., 245

B.R. 794, 807 (E.D. Pa. 2000) ("Section 1109(b) of the Bankruptcy Code provides a non-exclusive list of 'parties of interest'"). Courts have noted that section 1109(b) "was designed to insure that all who have a sufficient stake in the outcome of a [bankruptcy] proceeding be heard" In re Orlando Investors, L.P., 103 B.R. 593, 597 (Bankr. D.Pa. 1989). The Court of Appeals for the Third Circuit has interpreted the phrase "party in interest" to refer to anyone who "has a sufficient stake in the proceeding so as to require representation," including parties with prospective interests. In re Amatex Corp., 755 F. 2d at 1042 (holding that future asbestos claimants were sufficiently affected by the reorganization proceeding to be termed "parties in interest" and remanding to reconsider motion to intervene).

23.  Because the Adversary Proceeding is the single outstanding matter involving the "claims reconciliation and settlement process" and will determine the remaining recoveries due to holders of allowed unsecured claims, it implicates directly the Plan Committee's duties under the Plan. As the ultimate beneficiaries of the shares in the Disputed Claims Reserve, such unsecured creditors unquestionably have a "sufficient stake" in the proceeding to require representation.

24.  The Objectors contend that the Plan Committee is prohibited from intervening because it has failed to satisfy the "second prong" of Amatex which requires the Plan Committee to establish that it "requires representation" and that there is not already a party to the proceeding with interests similar to the Plan Committee. See NOR Objection at p. 13, ¶ 30. NOR's own words contradict such assertion; it has admitted that it "has no intrinsic economic interest in the outcome of the [Adversary Proceeding]" and that the beneficiaries of the shares in the Disputed Claims Reserve, the holders of Class 7

and Class 9 Claims, are the true parties in interest. See NOR's Memorandum of Law in Support of Motion for Protective Order at pp. 9-10.

25. Despite NOR's focus on minimizing its litigation expenses, and its prior efforts to settle the Plaintiffs' claims at any cost, NOR would have this Court believe that its interests are aligned with those of the Plan Committee. Such argument is not credible.

26. Moreover, both this Court and the Bankruptcy Court have recognized the centrality of the Plan Committee's role in these matters. The Plan Committee was permitted to participate in mandatory mediation with the Plaintiffs and others, and on July 1, 2005, the Bankruptcy Court entered an order granting the Plan Committee's motion to intervene in yet another adversary proceeding commenced by Magten against NOR to overturn the Plan, this time pursuant to section 1144 of the Bankruptcy Code. See Exhibit E to the Motion. Accordingly, it cannot seriously be argued that the Plan Committee is not a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.

27. Similar to the unofficial committee of noteholders in Unofficial Committee of Zero Coupon Noteholders v. The Grand Union Company, 179 B.R. 56 (D. Del. 1995), because of the creditors' direct interest in the shares in the Disputed Claims Reserve, the constituents of the Plan Committee have more than "a sufficient practical stake" in the outcome of the proceedings at hand to be a "party in interest" and, as described above, the Plan Committee's interests are not aligned with NOR or any other party to the Adversary Proceeding. Nor is it the Plan Committee's intention to duplicate NOR's efforts. What the Plan Committee seeks is the ability to participate in the Adversary Proceeding and, when appropriate, file papers, participate in discovery and be

represented at settlement negotiations. Further, as discussed above, neither the Plan nor the By-Laws prohibit the Plan Committee from participating in the Adversary Proceeding. In addition, because the issues to be decided with respect to the Adversary Proceeding are encompassed by the Confirmation Appeal, the Plan Committee, as a party to the Confirmation Appeal, should also be a party to the Adversary Proceeding. Accordingly, the Plan Committee has satisfied the requirements of <u>Amatex</u> and should be permitted to intervene in the Adversary Proceeding.

## CONCLUSION

28. For the foregoing reasons and the reasons set forth in the Motion, the Plan Committee respectfully requests that this Court overrule the Objections and grant the relief requested by the Motion and such other and further relief as is just and proper.

Dated: February 21, 2006

THE BAYARD FIRM

By: _____
Neil Glassman (#2087)
Charlene D. Davis (#2336)
Eric M. Sutty (#4007)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 650-5000

and

PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
Alan W. Kornberg
Kelley A. Cornish
Margaret A. Phillips
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Attorneys for the Plan Committee