Exhibit G

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Case No. 03-12872 (JLP) |
| | . | |
| NORTHWESTERN CORPORATION, | . | 824 Market Street |
| | . | Wilmington, Delaware 19801 |
| | . | |
| Debtor. | . | August 10, 2005 |
| . . . . . . . . . . . . . | . . | 10:30 a.m. |

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE JOHN L. PETERSON
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:                    Greenberg Traurig , LLP
                                   By:  WILLIAM E. CHIPMAN, JR., ESQ.
                                   The Brandywine Building
                                   1000 West Street
                                   Suite 1540
                                   Wilmington, DE  19801

                                   Paul, Hastings, Janofsky &
                                     Walker, LLP
                                   By:  KERI C. CHAYAVADHANANGKUR, ESQ.
                                   600 Peachtree Street, N.E.
                                   Atlanta, GA  30308
                                   (Telephonic Appearance)

                                   Roberts, Mlotkowski & Hobbes, PC
                                   By:  CAROLINE D. DENNISON, ESQ.
                                   8270 Greensboro Drive
                                   Suite 850
                                   McLean, VA  22102

Audio Operator:                    Jason Smith

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd.):

| For the Debtor: | Womble, Carlyle, Sandridge & Rice<br>By:  WILLIAM CAPP, ESQ.<br>One Atlantic Center<br>1201 West Peachtree Street<br>Suite 3500<br>Atlanta, GA   30309 |
|---|---|
| | By:  THOMAS KNAPP, ESQ. |
| For AT&T: | Lowenstein Sandler, PC<br>By:  GEORGE E. PATTERSON, JR., ESQ.<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>(Telephonic Appearance) |
| | Elzufon Austin Reardon Tarlov<br>  & Mondell, P.A.<br>By:  CHARLES J. BROWN, III, ESQ.<br>300 Delaware Avenue<br>Suite 1700<br>P.O. Box 1630<br>Wilmington, DE   19899 |
| For U.S. State Dept.: | U.S. Department of Justice<br>By:  MATTHEW J. TROY, ESQ.<br>(Telephonic Appearance) |
| For Milbank, Tweed,<br>Hadley & McCloy, LLP: | Milbank Tweed Hadley & McCloy,<br>  LLP<br>By:  RYAN DeFORD, ESQ.<br>375 Park Avenue<br>Suite 3601<br>New York, NY   10152<br>(Telephonic Appearance) |
| For Magten: | Fried, Frank, Harris, Shriver<br>  & Jacobson, LLP<br>By:  GARY L. KAPLAN, ESQ..<br>One New York Plaza<br>New York, NY   10004 |
| For Law Debenture: | Nixon Peabody, LLP<br>By:  JOHN V. SNELLINGS, ESQ.<br>100 Summer Street<br>Boston, MA   02110<br>(Telephonic Appearance) |

**J&J COURT TRANSCRIBERS, INC.**

3

APPEARANCES (Cont'd.):

For Richard Hylland:            Stevens & Lee
                                By:  JOHN D. DEMMY, ESQ.
                                1105 North Market Street
                                7th Floor
                                Wilmington, DE  19801

For Merle Lewis:                Fox Rothschild LLP
                                By:  NEAL J. LEVITSKY, ESQ.
                                Citizens Bank Center
                                919 North Market Street
                                Suite 1400, 14th Floor
                                Wilmington, DE  19801

For National Union              White and Williams LLP
Fire Insurance Company          By:  MARC S. CASARINO, ESQ.
of Pittsburgh, PA:              824 North Market Street
                                Suite 902
                                Wilmington, DE  19801

For First Interstate            Werb & Sullivan
Bank:                           By:  AMY D. BROWN, ESQ.
                                Tenth Floor
                                300 Delaware Avenue
                                P.O. Box 25046
                                Wilmington, DE  19899

For the Plan Committee:         The Bayard Firm
                                By:  ERIC M. SUTTY, ESQ.
                                222 Delaware Avenue
                                Suite 900
                                P.O. Box 25130
                                Wilmington, DE  19899

For James Murphy:               Eckert Seamans Cherin & Mellott, LLC
                                By: RONALD S. GELLERT, ESQ.
                                4 East 8th Street, Suite 200
                                Wilmington, Delaware 19801

For the Official                Paul, Weiss, Rifkind, Wharton
Committee of Unsecured            & Garrison LLP
Creditors:                      By:  MARGARET A. PHILLIPS, ESQ.
                                     EPHRAIM I. DIAMOND, ESQ.
                                1285 Avenue of the Americas
                                New York, NY 10019
                                (Telephonic Appearance)


                      **J&J COURT TRANSCRIBERS, INC.**

4

APPEARANCES (Cont'd.):

For Plaintiffs,              Lyons, Doughty & Veldhuis, PC
Agenda Item 15:              By:  HILLARY VELDHUIS, ESQ.
                             1288 Route 73, Suite 310
                             Mount Laurel, NJ  08054

**J&J COURT TRANSCRIBERS, INC.**

5

**I N D E X**

| WITNESSES FOR THE DEBTOR | PAGE |
|---|---|
| RORY SULLIVAN | |
|    Direct Examination by Ms. Dennison | 29 |
|    Cross Examination by Mr. Snellings | 39 |
|    Redirect Examination by Ms. Dennison | 43 |
| | |
| ROGER SHRUM | |
|    Direct Examination by Ms. Dennison | 58 |
|    Cross Examination by Mr. Coleman | 79 |

| EXHIBITS | | IDENT. | EVID. |
|---|---|---|---|
| A | Affidavit of Mr. Sullivan | 32 | |
| Debtor-1 | Proof of Claim | 59 | 60 |
| Debtor-2 | Response | 60 | 60 |
| Debtor-3 | Report, 6/17/03 | 69 | 83 |
| Debtor-4 | Bonus Calculations | 76 | 83 |

**J&J COURT TRANSCRIBERS, INC.**

6

1        THE COURT:  The number of persons that I think are on

2   the telephone appearances; Margaret Phillips, from Paul Weiss

3   and Ephraim Diamond; Paul Weiss.  Are they present?

4        MS. PHILLIPS:  Yes, Your Honor.

5        MR. DIAMOND:  Yes, Your Honor.

6        THE COURT:  All right.  George Patterson, from

7   Lowenstein Sandler, AT&T?

8        MR. PATTERSON:  Yes, Your Honor.

9        THE COURT:  Matthew Troy, from the U.S. State

10  Department -- or Department of Justice?

11       MR. TROY:  Yes, Your Honor.

12       THE COURT:  Ryan deFord, from Milbank, Tweed?

13       MR. DeFORD:  Yes, Your Honor.

14       THE COURT:  And counsel for NorthWestern, Paul

15  Hastings?

16       MS. CHAYAVADHANANGKUR:  Yes, Your Honor.

17       THE COURT:  Patrick Coleman?

18       MR. COLEMAN:  Yes, Your Honor.

19       THE COURT:  Let's have the appearances, then, for

20  counsel in Wilmington.

21       MR. CHIPMAN:  Good morning, Your Honor.  William

22  Chipman; Greenberg Traurig, for the debtor.

23       MR. KAPLAN:  Good morning, Your Honor.  Gary Kaplan,

24  from Fried, Frank, on behalf of Magten.

25       MR. DEMMY:  Your Honor, John Demmy, of Stevens and

**J&J COURT TRANSCRIBERS, INC.**

1  Lee, for Richard Hylland.

2          MR. LEVITSKY:  Good morning, Your Honor.  Neal

3  Levitsky, from Fox Rothschild, for Merle Lewis.

4          MR. CASARINO:  Good morning, Your Honor.  Marc

5  Casarino, from White and Williams, LLP, for National Union Fire

6  Insurance Company of Pittsburgh, PA.

7          MS. BROWN:  Good morning, Your Honor.  Amy Brown;

8  Werb and Sullivan, on behalf of First Interstate Bank and

9  Mazula (phonetic) Parking Commission.

10          THE COURT:  Very well.

11          MR. SUTTY:  Good morning, Your Honor.  Eric Sutty, of

12  the Bayard Firm, on behalf of the Plan Committee.

13          MR. BROWN:  Good morning, Your Honor.  Charles Brown,

14  from Elzufon Austin, on behalf of AT&T.

15          MR. GELLERT:  Good morning, Your Honor.  Ronald

16  Gellert, from Eckert Seamans, on behalf of James Murphy.

17          THE COURT:  Counsel, here on --

18          MS. DENNISON:  Good morning, Your Honor.  Carol

19  Dennison, on behalf of the debtor.

20          MR. CAPP:  Good morning, Your Honor.  William Capp

21  (phonetic), for NorthWestern.

22          MR. KNAPP:  Thomas Knapp (phonetic), on behalf of

23  NorthWestern.

24          THE COURT:  Anyone else?  I'll take up the matter

25  dealing with the notice of emergency motion to extend time to

**J&J COURT TRANSCRIBERS, INC.**

8

1  present a claim of Patrick Coleman, filed by Patrick Coleman on
2  August the 8th of '05.  Coleman contends that he did not get
3  timely notice of this proceeding, although I notice that the
4  proof of mailing that was made by the debtor's counsel shows
5  that he was on the telecopies that were mailed out on August
6  the 1st, '05.  What's the position of the debtor?
7         MS. DENNISON:  Good morning, Your Honor.  Carol
8  Dennison, on behalf of the debtor.  It is, in fact, the
9  debtor's position that Mr. Coleman was properly served with the
10 agenda at the place of address noticed on his claim form,
11 consistent with what's reflected on the agenda.  When he
12 advised me -- when I spoke with him -- we also sent him another
13 copy, at his request.  But he was served when everyone else was
14 served.
15        THE COURT:  Mr. Coleman?
16        MR. COLEMAN:  Your Honor, I was not served.  And this
17 is not the first time that I was not served by counsel, for
18 various hearings.
19        THE COURT:  Now, what do you want the continuance to
20 do?
21        MR. COLEMAN:  To have witnesses available and to
22 subpoena records, in order to be available for the hearing,
23 regarding the claim.
24        THE COURT:  Any objection --
25        MS. DENNISON:  If I could be heard, Your Honor?

**J&J COURT TRANSCRIBERS, INC.**

9

1          THE COURT:  Go ahead.

2          MS. DENNISON:  This claim objection was filed, Your

3    Honor, in February -- on February 1st.  And there was an

4    objection deadline, that was shortly thereafter, in March.

5    This claimant has had almost seven months to conduct discovery,

6    to the extent that discovery was necessary.  The agenda has

7    carried this from month to month, with the hope that a

8    settlement could be reached.  A settlement offer was made last

9    week.

10          We also note, for the record, that we're prepared to

11   proceed today.  We have Mr. Roger Shrum in the courtroom, who

12   can testify as to NorthWestern's position on why this claim

13   should be disallowed or substantially reduced.  We also believe

14   that the request for 120 day continuance is absurd, in light of

15   the fact that this has been a pending matter, where there's

16   clearly a dispute since March.  And there's been no effort by

17   the claimant to seek to do discovery, whether on an informal or

18   a formal basis.

19          And we'd note for the Court, as the Court is aware,

20   that this debtor has conducted informal discovery in most

21   cases, in connection with the claim resolution process.  This

22   is the first that anybody has been advised that this plaintiff

23   wishes to do discovery.  And we don't believe that were the

24   Court to consider continuing this matter, that a 120 days is

25   appropriate.

**J&J COURT TRANSCRIBERS, INC.**

10

1       Lastly, we would note for the Court that none of the

2  individuals identified in Mr. Coleman's emergency request for a

3  continuance are current employees of NorthWestern.

4  NorthWestern does not have control over and, indeed, cannot

5  produce any of those individuals.  And we'd note for the record

6  that were that the case, we did make inquiry, to see if there

7  was some way that we can, perhaps, expedite it.  But none of

8  these witnesses that Mr. Coleman says that he wants to do

9  discovery on are NorthWestern witnesses.

10       So with that, Your Honor, we think that their request

11 is untimely.  We think that this claimant is a -- based on his

12 communications with us and the Court -- it's clear that he is a

13 sophisticated businessperson and understands this process, and

14 that had he desired to take discovery, that he should have done

15 so after his objection was filed, rather than sitting on his

16 rights, letting them lapse until this claim came on for

17 hearing.

18       So we would ask the Court to deny his motion, in the

19 first place.  But in the second place, we would say that if the

20 Court is going to consider it, that it be a 30 day extension,

21 because this claim determination should not be delayed any

22 further.

23       THE COURT:  All right.  Mr. Coleman, how about your

24 response?

25       MR. COLEMAN:  I have, through the process of this --

**J&J COURT TRANSCRIBERS, INC.**

11

1  with former officers of NorthWestern -- made dozens of calls
2  regarding the process of this claim.  And I, as of last August
3  -- with Mr. Chipman -- had e-mailed him regarding what the
4  process was regarding the settlement, and was told that I would
5  be notified in due time as to the process regarding settlement
6  conferences.

7      So I have made dozens of calls to counsel to
8  NorthWestern throughout this process, and would have been happy
9  if I had been told you may prepare for today, to be exactly
10  prepared.  I have been waiting for almost two years to have had
11  an opportunity to be available to present, and being notified
12  five or six days before a hearing that's to take place in
13  Butte, Montana.  It's simply not reasonable.

14      And while it may not need to be 120 days, it would
15  need to be a minimum of 60 days, in order to gather the
16  witnesses together to be present.  And in terms of what Ms.
17  Dennison said about settlement, no one from legal counsel on
18  the debtor's side has called me regarding this matter, until
19  last Thursday -- ever.

20      THE COURT:  What have you been doing to get these
21  witnesses deposed, since you filed your claim?  What do you
22  think -- you're supposed to assert yourself into this process.
23  And you've got the right to ask for the depositions.  You can
24  notice them up.  It's a contested case.  You can utilize the
25  Federal Rules of Civil Procedure.  You haven't done any of

**J&J COURT TRANSCRIBERS, INC.**

12

1  that.

2      MR. COLEMAN:  I was under the impression that a time

3  frame for settlement would happen, and that we would be sitting

4  down -- that they would ask to sit down with us.  We would talk

5  about what was to be stipulated or not stipulated, and at that

6  point, go through a discovery process.  And that's why I had

7  asked them Monday if they were going to respond in writing, so

8  I would know what parts of my claim they had the most concerns

9  with.  At this point, I have no idea -- with regard to the

10 claims -- what their concerns are.

11     THE COURT:  It looks like they're concerned with the

12 whole claim.  I'm going to deny your motion to extend the time.

13 And we'll get to the hearing on it later this morning.

14     The following items on the agenda on claims are

15 vacated, as the claims have been withdrawn on August the 9th,

16 2005.  Item Number 9, the claim of the Internal Revenue

17 Service, Claim 1066; Item Number 10, the claim of Nebraska

18 Department of Revenue, Claim 1001; Item Number 13, the

19 objection to the claim of Westchester Fire Insurance Company

20 and other insurance companies, Claims Number 630 and 885; and

21 Item Number 22, claims of Valerie Bergen, Numbers 549 and 959.

22     Before we get into the rest of the agenda, I am

23 prepared to rule on the Magten's omnibus objection to the

24 NorthWestern's motions to settle various claims, pursuant to

25 Federal Rule of Bankruptcy Procedure 9019.  The Plan Committee

13

1 has filed a reply, resisting NorWest motion -- West objection
2 -- as has the debtor, NorthWestern. And the Court has read the
3 replies, and also, Magten's omnibus objection.

4       The omnibus objection of Magten involves the disputed
5 claims on motions, which are docketed in Numbers 3162, 3163,
6 3164, 3217, 3219, 3224, 3196, 3197, 3198, 3199, 3208, and 3197.
7 Added to this -- the agenda calendar -- were the claims
8 involving Murphy, Hylland, Lewis -- no, Murphy, Lewis and
9 Charter -- and objections have been filed by Magten to the
10 latter two claims; Charter and Lewis.

11       This Court has previously stated its position at the
12 June hearing, relative to Magten's objection. And let me just
13 refresh that, for the record. On June the 30th, 2005, Magten
14 objected -- at that time -- objected to certain NorWest
15 motions, pursuant to -- filed -- pursuant to 9019. The Court
16 found no merit in Magten's argument, and approved the June 9019
17 motions at a hearing held on July the 12th, 2005. Magten, once
18 again, has reviewed the -- renewed -- the same basis for the
19 objection in the pending motions, with one exception, which
20 I'll get to later.

21       The Plan Committee is charged with protecting the
22 interests of NorthWestern's unsecured creditors, during the
23 final stages of this Chapter 11 case. The primary purpose of
24 the Plan Committee is to oversee the claims reconciliation and
25 settlement process. One of those key interests is to ensure

**J&J COURT TRANSCRIBERS, INC.**

14

1  that all unsecured creditors receive their rightful recoveries

2  in a timely manner.  The Plan Committee asserts that in filing

3  its objections -- and this is joined in by NorthWestern --

4  Magten seeks to prevent both the allowance of the proposed

5  allowed claims, as well as further distributions from the

6  disputed claims reserve; matters which fall within the Plan

7  Committee's review.

8          For example, on June 30th, 2005, the debtor filed

9  personal injury 9019 motions, seeking this Court's approval of

10 various settlement agreements, between NorWest -- NorthWestern

11 -- and the claimants, involving personal injury and wrongful

12 death claims.  On June 21 and 22, 2005, subsequent motions were

13 filed under Rule 9019 -- which are now set for hearing -- for

14 approval of various settlements between the claimants and this

15 disputed claim, involving litigation matters, legal fees, and

16 employee benefits, as well as a multitude of claims asserted by

17 former directors and officers.  Subsequent to the motion,

18 additional claims were filed on -- for settlement -- on behalf

19 of Murphy, Rourke (phonetic), Charter and Lewis.

20         Each of the 9019 motions provide that upon entry of

21 an order approving such motion, the claimant shall be deemed to

22 have an allowed claim in the amount set forth in the letter

23 agreements executed by the claimant's counsel, and would

24 receive a pro rata share of new common stock on the disputed

25 claims reserves.

**J&J COURT TRANSCRIBERS, INC.**

1   By the objections from Magten, Magten states to --
2   objects to -- the allowance of the proposed allowed claims
3   filed, on its allegations that the disputed claim reserve was
4   not sufficiently funded.   Magten seeks a stay of the claims
5   resolution process, and asserts that neither allowance of the
6   disputed Class 9 claims, nor distribution from the claims
7   reserve may occur until after its complaint -- filed under
8   Section 1144 of the Code -- has been fully and finally
9   resolved.   That action has been stayed by prior order of this
10  Court.

11  In its objections, Magten further argues that the
12  filing of that complaint under 1144 -- along with
13  NorthWestern's alleged admissions, respecting the inadequacy of
14  the disputed claims reserve -- Magten's mischaracterization to
15  this Court's decision denying the QUIP's 9019 motion should
16  effectively halt the reorganized debtor's ongoing efforts to
17  consensually resolve outstanding claims.   But contrary to what
18  Magten contends, the Plan Committee and NorthWestern properly
19  assert that a halt to the claims process would be inequitable.

20  In laying the foundation for its argument, Magten
21  relies on what it characterizes as this Court's prior finding
22  on the disputed claims reserve is insufficient.   A review of
23  the record, however, and my review of the order, reveals that
24  that reliance is misplaced.   First, Magten wholly misconstrues
25  the Court's decision denying the QUIP's 9019 motion, as lay in

**J&J COURT TRANSCRIBERS, INC.**

1  support to its argument of being -- the reserve -- being
2  underfunded.  In denying the Court's 9019 motion, the Court
3  found that the terms of the alleged settlement expressly
4  violated the terms of the plan, and that Magten's ultimate
5  proposal raised  -- for the first time, I might add, on oral
6  argument -- to dip into the disputed claims reserve was an
7  untenable solution.

8          Second, the arguments put forth that the hearing on
9  the QUIP's 9019 motion did not address the sufficiency of the
10 claim reserve, per se, and it hasn't been addressed to this
11 date.  Rather, they address NorthWestern's ability to evade the
12 claims reserve, to afford Magten the economic equivalent of a
13 quick settlement, to the detriment of the Class 7 creditors.

14         It seems to me to be totally inconsistent for Magten
15 to say it's okay for it to invade the claims reserve, but
16 doesn't allow that right to go to the other end -- secure the
17 claims of the other unsecured creditors.  The fact of the
18 matter is that the disputed claims should be resolved on the
19 merits, at least to the proposed settlements, under the
20 standards set forth in Coram Healthcare Corporation, 315 BR
21 321.

22         I hold that Magten's unsupported allegations, found
23 in the 1144 complaint, are insufficient to halt NorWest claims
24 resolution and settlement process.  And I might add that that
25 process has been successful in settling numerous contested

**J&J COURT TRANSCRIBERS, INC.**

1 claims, well below the amount that the claimants had asserted
2 were due to them.  It is clear that the claim should and must
3 be settled, to determine whether the disputed claims reserve is
4 unfunded.  To date, there is no such find.

5      Magten asserts that unless NorthWestern agrees to
6 segregate sufficient common stock from the disputed claims
7 reserve, to satisfy the full amount of the non-accepting QUIP's
8 holder's claim, the proposed claims that are now subject to
9 allowance must not be taken up.  I think, significantly, that
10 Magten demands are contrary to the terms of the stipulation and
11 order establishing the disputed claims reserve between
12 Northwest and the QUIP indentured trustee, Law Debenture, which
13 provides that NorWest has no obligation to replenish the
14 disputed claims reserve.

15      In the absence of unsupported relief, Magten demands
16 this Court halt the number of claims that share in that
17 reserve.  I will not do so.  Contrary to Magten's assertions,
18 it would be inequitable to halt the claims resolution process,
19 pending a resolution of the 1144 proceeding.  The Court's stay
20 of that order makes it clear that the resolution of that
21 complaint is not right for immediate resolution.  It would
22 severely and inequitably hold up the entire post-confirmation
23 administration of this estate; a situation clearly created by
24 Magten's appeal of the order of confirmation of the plan.
25      The plan provides for a clear mechanism for resolving

18

1   these disputed claims, under Section 7.4 and 7.6.  Once

2   resolved, the plans require NorthWest to make a distribution on

3   account of such allowed claims, as soon as practical, following

4   its allowance.  Magten's request would indefinitely prohibit

5   compliance with the confirmed plan.

6         The orders approving the settlements of the former

7   directors and officers and other personal injury actions at the

8   -- after the July hearing -- were final and -- or have not been

9   appealed by Magten.  It's clear to me that once I had held that

10  the -- basically, at the July hearing -- that Magten's delaying

11  tactics were not meritable -- had no merit -- that now it is

12  apparent -- and no appeal having been made -- under the law of

13  the case doctrine, once an issue has been decided, the parties

14  may not re-litigate that issue in the same case.

15        So I am going to overrule the omnibus objection of

16  Magten, to the continuance of this hearing, relative to the

17  settlement of the number of security claims which we have

18  before the Court today.

19        I might further state that Magten's latest objection

20  -- filed yesterday -- objects to the hearing of the Lewis and

21  Charter claims, due to the lack of the 20 day notice.  But it

22  concedes that the Court can cause -- may shorten the time.  I

23  think the cause exists to conclude those litigation matters, as

24  well, as they have been pending for months.  And certainly,

25  Magten had got an opportunity to determine the merits of the

**J&J COURT TRANSCRIBERS, INC.**

19

1  litigation during the period of time.

2       I have to reiterate that compromise is generally

3  favored in bankruptcy. A consensual resolution of claims

4  minimizes litigation and expedites the administration of the

5  bankruptcy estate. Under Rule 9019 of the Federal Rules of

6  Bankruptcy Procedures, the approval of a compromised settlement

7  is well within the sound discretion of the Court. In approving

8  the settlement, the Court should not have to be content with

9  the settlement as the best possible compromise. Rather, the

10 Court must only conclude that the compromise of settlement

11 falls within the reasonable range of litigation possibilities.

12 Restated, that is, the settlement need only be above the lowest

13 point of a range of reasonableness.

14      In determining whether to approve the settlement, the

15 bankruptcy court should consider the probability of success of

16 a litigation -- underlying litigation -- the complexity of the

17 extents and delay involved, the possibility of possible

18 difficulties in administrating the estate in the paramount

19 interest of the creditors. Additionally, the Court should

20 defer to the debtor's judgment, so long as there are legitimate

21 business justifications to the action. And I must also defer

22 and give credit to the position taken by the Plan Committee,

23 relative to the settlement on the merits of each of these

24 claims.

25      And therefore, we're going to proceed to hear the

**J&J COURT TRANSCRIBERS, INC.**

20

1 calendar, relative to these 9019 motions, and decide them in an

2 appropriate manner.

3        MR. KAPLAN:  Your Honor, can I be heard?  It's Gary

4 Kaplan, from Fried Frank, on behalf of Magten.

5        THE COURT:  You may, sir.

6        MR. KAPLAN:  Thank you, Your Honor.  Your Honor, I'm

7 not going to reargue points that -- I understand Your Honor's

8 decision fairly clearly.  But, you know, I do think that there

9 is a simple way to avoid Magten being required to continue

10 objecting -- to continue to raise its point -- so that we don't

11 get to a point, at the end of the day, when our claim is

12 ultimately allowed and everybody turns around and says, sorry.

13 There's no stop left for you guys, because the reserve has been

14 totally wiped out.  And then somebody looks at us and says,

15 well, where were you when all these claims were being allowed

16 in the process?

17        And I think, very simply, Your Honor, what we would

18 be looking for would be both the debtor and the Plan Committee

19 -- who I understand Your Honor is giving significant deference

20 to -- what we would like from them is a representation;

21 whenever they are seeking this Court's allowance of claims,

22 that they represent to the Court that the disputed claims

23 reserve is sufficiently funded, so that it ultimately, all

24 disputed claims are allowed; that they will receive the full

25 distribution to which they're entitled to under the plan,

**J&J COURT TRANSCRIBERS, INC.**