UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | : : : : : : : : : | |
| Plaintiffs, | : | C.A. No. 04-1494-JJF |
| v. | : | |
| NORTHWESTERN CORPORATION, | : | |
| Defendant. | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : : : | |
| Plaintiff, | : | |
| v. | : | |
| PAUL HASTINGS JANOFSKY & WALKER LLP, | : | C.A. No. 04-1256-JJF |
| Defendant. | : | |
| MAGTEN ASSET MANAGEMENT CORPORATION, | : : : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 05-0499-JJF |
| MIKE J. HANSON & ERNIE J. KINDT, | : | |
| Defendants. | : | |

**DEFENDANT NORTHWESTERN CORPORATION'S REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER**

Dated: February 21, 2006

| | |
|---|---|
| **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP** | **GREENBERG TRAURIG, LLP** |
| Joseph D. Pizzurro, Esq.<br>Steven J. Reisman, Esq.<br>Nancy E. Delaney, Esq.<br>Miriam K. Harwood, Esq.<br>101 Park Avenue<br>New York, New York  10178-0061<br>Tel:  (212) 696-6000<br>Fax: (212) 697-1559 | Victoria Counihan, Esq. (No. 3488)<br>Dennis A. Meloro, Esq. (No. 4435)<br>The Nemours Building<br>1007 North Orange Street<br>Suite 1200<br>Wilmington, Delaware  19801<br>Tel:  (302) 661-7000<br>Fax: (302) 661-7360 |

*Co-Counsel for Defendant NorthWestern Corporation*

2712956v4

## TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Statutes**     **Page**

Fed. R. Civ. Proc. 26(c) .................................................. 1

11 U.S.C. § 1144 ....................................................... 3

15 U.S.C. § 79(a) ....................................................... 7

NorthWestern Corporation ("NorthWestern"), defendant in the above-captioned action styled *Magten Asset Management Corp. et al. v. NorthWestern Corp.*, C.A. 04-1494-JJF (the "Magten/NorthWestern Action"), by and through its counsel, Greenberg Traurig, LLP and Curtis, Mallet-Prevost, Colt & Mosle LLP, respectfully submits this Reply Memorandum of Law in Further Support of its Motion for a Protective Order (the "Motion") pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, limiting discovery sought by Plaintiffs Magten Asset Management Corp. and Law Debenture Trust Company of New York (collectively, "Plaintiffs") in connection with the Magten/NorthWestern Action and the other above-captioned actions (collectively, the "Consolidated Actions").

## PRELIMINARY STATEMENT

Every one of the Plaintiffs' claims against NorthWestern, as well as the claims asserted in the other two Consolidated Actions, is predicated on the Plaintiffs' status as creditors of NorthWestern's subsidiary Clark Fork & Blackfoot ("Clark Fork"). Therefore, for any of their claims to survive, Plaintiffs must prove that the release of Clark Fork as obligor on the QUIPS, as a consequence of NorthWestern's assumption of that debt in the Going Flat Transaction in November 2002, was procured by fraud. If Plaintiffs cannot meet this threshold requirement, their claims must be dismissed. The discovery which NorthWestern proposes, relating to The Bank of New York's release of Clark Fork, is directly calculated to yield specific evidence on the one dispositive issue which remains in this case.

Plaintiffs' opposition to NorthWestern's Motion ignores this fundamental fact. While the Protective Order sought by NorthWestern will lead to the efficient resolution of the Consolidated Actions, the alternative urged by Plaintiffs, a wide-ranging fishing expedition into all manner of collateral issues requiring the production of hundreds of thousands of documents

and the depositions of scores of witnesses, disregards the one key issue left in this case and will result in unnecessary expense and burden on NorthWestern.

Plaintiffs mischaracterize NorthWestern's Motion and seek to run from the clear holding of the Bankruptcy Court's August 2004 Decision in this action, from the allegations of their own Amended Complaint, and from the Indenture, the contract which governs their rights as holders of the QUIPS. However, viewed in the light of these three governing documents, the narrow contours of Plaintiffs' one surviving theory of relief become clear.

Plaintiffs' suggestion that NorthWestern's motion is somehow untimely hardly bears a response. Plaintiffs never served NorthWestern with any discovery requests in this action until January 24, 2006.[1] NorthWestern filed its Motion for a Protective Order nine days later, on February 2, 2006. Far from being a litigation delay "tactic," NorthWestern's Motion is an entirely reasonable proposal that is designed to get at the heart of the critical issue in this case, without protracted, burdensome and unnecessary discovery that will cost all parties, as well as this Court, enormous resources.

In reality, it is Plaintiffs who have employed the litigation "tactics," demanding wide-ranging, burdensome discovery to pressure NorthWestern into surrendering before Plaintiffs have even shown they are entitled to bring their claims. Indeed, the three Consolidated Actions before this Court are but a small part of the litigation warfare that Plaintiffs have waged against NorthWestern for the last two years, during which Plaintiffs have commenced nearly a dozen actions against NorthWestern and its officers and professionals. Throughout the course of NorthWestern's Chapter 11 bankruptcy case, Plaintiffs opposed NorthWestern's Chapter 11 Plan

---

[1] This action was stayed by the Bankruptcy Court in December 2004. This Court withdrew the reference in September 2005, while the stay was still in effect, and the parties submitted the matter to mediation in December 2005, prior to the commencement of discovery.

of Reorganization (the "Plan"), appealed the Bankruptcy Court's Order confirming the Plan (the "Confirmation Order Appeal"), commenced a separate action to revoke the Confirmation Order under Section 1144 of the Bankruptcy Code, objected to settlements with other creditors, objected to and appealed fee awards for NorthWestern's bankruptcy counsel and financial advisors, and brought third party actions against NorthWestern's attorneys, officers and directors. Plaintiffs' two-year slash-and-burn strategy has been aimed all along at extracting a recovery on their claims beyond what was otherwise provided for them under NorthWestern's Plan.

NorthWestern is eager to resolve this litigation, which will permit the closing of its Chapter 11 case. Contrary to Plaintiffs' contention, NorthWestern is fully prepared to defend the claims herein, but it will not simply acquiesce to an overbroad and unbridled inquiry into matters not properly at issue. It is obvious that Plaintiffs intend to move forward with no regard to the fact that the issues in this case have been substantially narrowed by the Bankruptcy Court, and seek to create as much expense and damage as possible. The Protective Order which NorthWestern seeks in this Motion is reasonable, and especially critical in light of Plaintiffs' history of litigation tactics in its multiple actions against NorthWestern.

# ARGUMENT

## I.

### PLAINTIFFS' DISCOVERY REQUESTS IGNORE THE RULING OF THE BANKRUPTCY COURT

In their opposition to NorthWestern's Motion, Plaintiffs attempt to distort the ruling of the Bankruptcy Court and the issues which remain for determination in this case. Essentially, Plaintiffs have not yet proven that they have standing to bring their claims at all, and the Bankruptcy Court's decision left them only one avenue to pursue in order to prove such standing: that is, they must show that the release of Clark Fork from its obligations on the QUIPS was obtained by fraud.

A brief review of the Bankruptcy Court's August 2004 decision will dispel any confusion created by Plaintiffs.

In May 2004, NorthWestern moved to dismiss Plaintiffs' original complaint, asserting that Plaintiffs lacked standing to bring a fraudulent transfer claim against NorthWestern. The basis of the motion was that Plaintiffs were no longer creditors of Clark Fork because Clark Fork had been released from its obligations on the QUIPS. In its August 2004 Decision, the Bankruptcy Court agreed with NorthWestern, and held that Plaintiffs lacked standing to sue NorthWestern, and could not assert any claims unless they could show that the release of Clark Fork was void *ab initio* because it had been procured by fraud. The analysis which follows from that decision may be summarized in four points:

> (i) Plaintiffs have no standing to assert their claims for a fraudulent conveyance unless they are creditors of Clark Fork;

> (ii) Plaintiffs are not creditors of Clark Fork unless the release of Clark Fork's obligations to pay the QUIPS was invalid;

> (iii) The release of Clark Fork was not invalid unless it was induced by fraud;

(iv) In order for the release of Clark Fork to have been induced by fraud, The Bank of New York must have been intentionally misled by reliance upon false information provided by NorthWestern.

It is the last point in the analysis on which NorthWestern proposes that discovery proceed, in order to determine what information was reviewed and relied upon by The Bank of New York in connection with the execution of the Third Supplemental Indenture which released Clark Fork from its obligations on the QUIPS. That is the factual question which addresses the one issue left open by the Bankruptcy Court's decision as to whether Plaintiffs may proceed with their claims.[2]

Plaintiffs now argue that the fraud on the Trustee was NorthWestern's failure to disclose at the time of the Going Flat Transaction that it was "hopelessly insolvent." (Pl. Opp. at p. 1.).[3] Aside from the fact that Plaintiffs have never pled this supposed fraud, this contention has already been considered, and rejected, by the Bankruptcy Court in its August 2004 Opinion.

Plaintiffs had argued to the Bankruptcy Court that NorthWestern's financial statements and representations at the time of the Going Flat Transaction constituted assurances of solvency. Judge Case rejected this argument and held that under the terms of the Indenture, the solvency of the party assuming the QUIPS obligations, here NorthWestern, was not required, stating:

---

[2] Arguably, even this point does not require discovery, since, as discussed in Point III, below, the only representations to which the Trustee was entitled under the Indenture were that the party assuming the obligations was an entity formed under the laws of the United States and that, immediately after the transfer there would be no event of default. The Trustee did receive these representations and they were true. Thus, there can be no fraud. Nevertheless, NorthWestern is willing to proceed with limited discovery as to the circumstances involving The Bank of New York's execution of the Third Supplemental Indenture.

[3] References to "Pl. Opp." are to Plaintiffs' Memorandum of Law, filed with this Court on February 13, 2006, in opposition to NorthWestern's Motion.

> Plaintiffs' argument is flawed. Plaintiffs read [the language of the Indenture] as a guarantee of solvency by Debtor upon executing the transfer. It is not. The language only requires that Debtor assume the obligations, not that it actually be able to perform the obligations. Debtor in fact did assume the obligations.

August 2004 Decision, at p. 5 (Pizzurro Aff., Ex. 1).[4]

Thus, the Bankruptcy Court has already ruled in its August 2004 Decision that NorthWestern's solvency is not an issue that has any bearing on the claims asserted by Plaintiffs in this action. Accordingly, the discovery which Plaintiffs seek regarding NorthWestern's solvency – either from NorthWestern or its accountants, financial advisors, or other parties – is not relevant and should not be allowed.[5]

## II.

### PLAINTIFFS' AMENDED COMPLAINT DOES NOT PLEAD FRAUD ALLEGATIONS WHICH JUSTIFY THE DISCOVERY THEY SEEK

In their opposition brief, Plaintiffs assert that they require discovery "to establish that NorthWestern perpetrated a fraud by transferring certain key assets from Clark Fork at a time when NorthWestern knew it was hopelessly insolvent." (Pl. Opp. at p. 1) This misleading description of the matters at issue in this case does not withstand scrutiny.

First, as noted above, the Bankruptcy Court's decision makes clear that NorthWestern's solvency is not a relevant issue in this case. Moreover, Plaintiffs' own Amended Complaint contains no allegations that NorthWestern knew it was insolvent at the time of the transfer or that it misrepresented its solvency to the Trustee. Thus, Plaintiffs simply could not, and have not, stated a claim based on NorthWestern's solvency.

---

[4] References to the "Pizzurro Aff." are to the Affidavit of Joseph D. Pizzurro, Esq., dated February 2, 2006, submitted with NorthWestern's opening Memorandum of Law in support of this Motion.

[5] NorthWestern does not concede that it was insolvent at the time of the transfer of the Clark Fork assets to NorthWestern or the execution of the Third Supplemental Indenture, or that its financial statements were fraudulent.

Plaintiffs' latest effort to re-cast their claims and distance themselves from the allegations of their own Amended Complaint to justify extensive discovery should be rejected. No matter how many different ways they try to describe their claims, Plaintiffs cannot escape the fact that, as a threshold matter, they must be creditors of Clark Fork in order to bring their claims (a requirement that Plaintiffs have never challenged). None of Plaintiffs' claims are predicated on the insolvency of NorthWestern. The critical, dispositive question here is the one identified by the Bankruptcy Court: whether the release of Clark Fork was invalid because it was induced by fraud. That is the only question on which Plaintiffs should be allowed to obtain discovery at this point in time.

After narrowly escaping dismissal, Plaintiffs were instructed by the Bankruptcy Court's August 2004 Decision that their claims would be dismissed unless they could show that the release of Clark Fork had been procured by fraud. Plaintiffs re-pleaded and filed their First Amended Complaint in October 2004, which added a single new allegation addressed to the purported invalidity of the Clark Fork release. This new allegation, set forth in Paragraph 68, states that the Third Supplemental Indenture was executed by The Bank of New York "in reliance upon the Debtor's fraudulent financial statements" (First Amended Complaint, ¶ 68).[6]

This one new allegation is all that Plaintiffs could muster in response to the Bankruptcy Court's August 2004 Decision. While Plaintiffs would like to continuously conjure up new theories as the basis for their claims, the discovery they seek must accord with the

---

[6] Plaintiffs also added a new claim based upon the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79(a) et seq. ("PUHCA") which faces certain dismissal as a matter of *res judicata*, as it was already dismissed by the Bankruptcy Court in the context of confirmation of NorthWestern's Plan. In the PUHCA claim, Plaintiffs argued that the entire Going Flat Transaction (including the release of Clark Fork's obligations on the QUIPS) was void *ab initio* because NorthWestern supposedly made misrepresentations in its applications to government regulatory authorities under this statute. After the Bankruptcy Court rejected this argument when Plaintiffs raised it as an objection to confirmation of the Plan in the course of NorthWestern's bankruptcy case, NorthWestern moved to dismiss the PUHCA claim. The Bankruptcy Court did not rule on the motion, however, because the same issue was presented in Plaintiffs' Confirmation Order Appeal, and the Bankruptcy Court lacked jurisdiction to determine the

allegations they have pleaded in their own Amended Complaint. Thus, NorthWestern is prepared to proceed with discovery on the issue which was identified by Plaintiffs themselves – that is, what information was considered and relied upon by The Bank of New York when it executed the Third Supplemental Indenture which released Clark Fork from its obligations on the QUIPS. There is no basis for the wide-open discovery demanded by Plaintiffs regarding collateral matters.

### III.

### THE CONTRACTUAL TERMS GOVERNING THE QUIPS REVEAL THAT THE FACTUAL DISCOVERY WHICH PLAINTIFFS SEEK IS IRRELEVANT

The essence of Plaintiffs' grievance against NorthWestern has always been that -- in the words of the Bankruptcy Court -- the transfer of Clark Fork's assets and liabilities to NorthWestern in 2002 changed Plaintiffs' status as creditors "at the top of the heap of Clark Fork's creditors" to "the bottom of the heap of [NorthWestern's] creditors." (August 2004 Decision, at p. 4.) Plaintiffs have desperately tried to find some basis in the circumstances surrounding the 2002 transfer of assets and liabilities in order to frame a right to relief that would undo that transaction and restore their prior status as creditors "at the top of the heap" of Clark Fork. It is this desperate, undefined search that is behind Plaintiffs' broad discovery requests. However, just as the Bankruptcy Court's August 2004 Decision and the allegations pled in the First Amended Complaint fail to justify the discovery which Plaintiffs demand, an examination of the contracts governing the QUIPS also makes clear that Plaintiffs' discovery requests are overbroad and unnecessary.

---

issue until that appeal was decided by the District Court.

2712956v4                                   8

The fact is that the terms of the Indenture governing the QUIPS do not protect the QUIPS holders from the subordination of their interests to other creditors which occurred in the Going Flat Transaction. The QUIPS are subordinated unsecured debt. The reversal of fortune which Plaintiffs now bemoan was a risk that was always present under the terms of the QUIPS. The QUIPS holders could not complain if Clark Fork itself had borrowed and subordinated the QUIPS interests to subsequent creditors, or if Clark Fork granted those subsequent creditors a security interest in the utility assets. This would be true even if Clark Fork became over-leveraged in the process. The same is the case with respect to the subordination of the QUIPS interests to NorthWestern's senior creditors; there is simply no basis to complain because this outcome is permitted under the contractual terms governing the QUIPS.

In addition, under the terms of the Indenture and Trust Agreement, which prescribe the duties and responsibilities of the Trustee of the QUIPS, the only representations which the Trustee required and was entitled to obtain in order to execute the supplemental indenture evidencing the transfer of QUIPS obligations was that the party assuming the obligations was an entity validly organized and existing under the laws of the United States and that, immediately after giving effect to the transaction, no Event of Default would occur.[7] (A copy of the Indenture is annexed as Exhibit A to the Supplemental Affidavit of Joseph D. Pizzurro, Esq., dated February 21, 2006, submitted contemporaneously herewith ("Supp. Pizzurro Aff.").)

---

[7] Plaintiffs incorrectly imply that the language in Section 1102(b) of the Indenture concerning "lapse of time" refers to an event which occurs at some point well after the date of the transfer. In fact, this language derives from the provisions contained in Section 801 of the Indenture, which defines the circumstances constituting Events of Default. For example, non-payment of interest due on the QUIPS does not become an "Event of Default" until after the lapse of a 30-day time period, during which time the non-payment is not cured. (Indenture, at Section 801(a), Supp. Pizzurro Aff., Ex. A.) But the Indenture is very clear that the event itself, which may after time become an event of default, must occur immediately after the transfer.

Clark Fork provided an Officer's Certificate and an Opinion of Counsel containing the representations required in Section 1102 of the Indenture, and such representations were true. In fact, there was no immediate event of default. After the November 15, 2002 transaction which transferred the QUIPS obligations from Clark Fork to NorthWestern, NorthWestern made the next two payments due on the QUIPS, first in December 2002 and then in March 2003. In June 2003, a properly noticed deferral was invoked by NorthWestern.[8] It was not until ten months after the transfer, when NorthWestern filed for Chapter 11 bankruptcy protection on September 14, 2003, that an "Event of Default" occurred. Whatever "immediate" means, it does not mean ten months later.

Thus, the accuracy of NorthWestern's financial statements, or its solvency, at the time of the transfer of assets would have had no relevance to The Bank of New York. As Trustee, The Bank of New York required merely the certificate of a company officer and an opinion of counsel stating that the conditions precedent set forth in Section 1101 of the Indenture had been met.

NorthWestern intends to move for summary judgment based upon the terms of the operative documents described above, as these are questions which can be decided as a matter of law. Accordingly, the broad factual discovery which Plaintiffs seek would serve no purpose and therefore such discovery should be precluded.

---

[8] Under the Indenture, the obligor could defer interest payments on the QUIPS for up to five years without defaulting.

IV.

## PLAINTIFFS' ACTIONS AGAINST NORTHWESTERN'S ATTORNEYS, OFFICERS AND DIRECTORS WILL NOT SURVIVE IF THE CLAIMS AGAINST NORTHWESTERN ARE DISMISSED

Plaintiffs strain to find a basis for arguing that their broad discovery requests should be allowed in the two other Consolidated Actions even if they are limited in the Magten/NorthWestern action. That suggestion simply makes no sense. First, the parties have specifically agreed to the consolidation of the actions for purposes of pre-trial discovery. Plaintiffs cannot now pull back from that choice because they are faced with the prospect of a Protective Order limiting discovery. Second, it is entirely logical for discovery in the three actions to proceed in tandem. If NorthWestern's Motion for a Protective Order is granted, allowing Plaintiffs to obtain the same broad discovery from NorthWestern's officers, directors, and attorneys would undercut such an order and render it meaningless.

In addition, notwithstanding Plaintiffs' arguments to the contrary, their claims against NorthWestern's officers, directors and attorneys will not survive if the underlying claim against NorthWestern is dismissed. As Plaintiffs themselves state, the entire basis for their claims against Hanson and Kindt is that they breached some fiduciary duty owing to the QUIPS holders "not to engage in any transaction that would render Clark Fork insolvent and unable to perform its obligations with respect to the QUIPS."[9] (Pl. Opp. at p. 12.) Of course, if NorthWestern prevails on a motion for summary judgment, it will mean that the QUIPS holders are not creditors of Clark Fork. Thus, Clark Fork's ability to pay on the QUIPS becomes irrelevant and the complaint against Hanson and Kindt will of necessity be dismissed.

---

[9] The basis for Plaintiffs' assertion that, as creditors of Clark Fork they were owed a fiduciary duty, is their allegation that just before the Going Flat Transaction Clark Fork was in the "zone of insolvency." However, in the Amended Complaint against NorthWestern, Plaintiffs allege no less than four separate times that Clark Fork was solvent and adequately capitalized prior to the transaction (Amended Complaint at ¶ 3, 82, 83 and 98). Plaintiffs also assert Clark Fork's solvency in their brief opposing this Motion, at p. 4. Plaintiffs cannot have it both ways and

Likewise, Plaintiffs' claims against NorthWestern's attorneys for "aiding and abetting" or "conspiracy" in connection with the supposed fraudulent transfer and the alleged breach of fiduciary duties by Messrs. Hanson and Kindt cannot survive if Plaintiffs' claims against NorthWestern and Messrs. Hanson and Kindt fail. The action against Paul Hastings is wholly derivative of the claims asserted in Plaintiffs' actions against NorthWestern and Messrs. Hanson and Kindt. Obviously, there can be no liability on an "aiding and abetting" or "conspiracy" theory in the absence of liability for the primary wrongful conduct that is alleged.

The fact is that the limited discovery afforded under the proposed Protective Order sought by NorthWestern, and the subsequent motion for summary judgment, will dispose of all of these actions. Thus, the Protective Order should apply in all three Consolidated Actions.

---

these inconsistent pleadings alone should result in a dismissal of the complaint against Hanson and Kindt.

## CONCLUSION

For the reasons set forth above and in its opening Memorandum of Law in support the Motion, NorthWestern respectfully requests that this Court grant its Motion for a Protective Order.

Dated: Wilmington, Delaware
       February 21, 2006

| | |
|---|---|
| **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP** | **GREENBERG TRAURIG, LLP** <br><br> By: _/s/ DGL_ |
| Joseph D. Pizzurro, Esq. <br> Steven J. Reisman, Esq. <br> Nancy E. Delaney, Esq. <br> Miriam K. Harwood, Esq. <br> 101 Park Avenue <br> New York, New York  10178-0061 <br> Tel: (212) 696-6000 <br> Fax: (212) 697-1559 | Victoria Counihan, Esq. (No. 3488) <br> Dennis A. Meloro, Esq. (No. 4435) <br> The Nemours Building <br> 1007 North Orange Street <br> Suite 1200 <br> Wilmington, Delaware  19801 <br> Tel:  (302) 661-7000 <br> Fax: (302) 661-7360 |

Co-Counsel for Defendant NorthWestern Corporation

2712956v4

13