IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>        Plaintiffs,<br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>        Defendant. | Civil Action No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>        Plaintiff,<br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT,<br><br>        Defendants. | Civil Action No. 05-499-JJF |

**REPLY SUPPLEMENTAL SUBMISSION OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Dale R. Dubé (DE No. 2863)
Bonnie G. Fatell (DE No. 3809)
**BLANK ROME LLP**
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

Bonnie Steingart
Gary Kaplan
John W. Brewer
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Magten Asset Management Corp.*

Kathleen M. Miller (DE No. 2898)
**SMITH KATZENSTEIN & FURLOW LLP**
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

- and -

John V. Snellings
Amanda D. Darwin
**NIXON PEABODY LLP**
100 Summer Street
Boston, MA 02110-2131
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

*Counsel for Law Debenture Trust Company of New York*

Dated: January 25, 2007

Plaintiffs respectfully submit this supplemental reply in further support of their motion to compel, as directed by the Special Master at the January 15, 2007 telephonic conference.

Defendants' supplemental submission dated January 23 (D.I. 113 in case 04-1494) intentionally misstates the issue of the relevance of the ongoing SEC investigation into NorthWestern's financial statements. The issue is not whether the SEC is investigating the so-called going-flat transaction ("Transfer") as such. The SEC documents are relevant to these actions because the SEC is investigating NorthWestern's issuance of materially false financial statements during the period in which the Transfer occurred. In light of Judge Case's prior decision, what is being litigated here is whether NorthWestern was enabled to consummate the Transfer because NorthWestern had issued false financial statements concealing its true financial condition and concealed the fact that it was insolvent and would be unable to meet the obligations to Clark Fork's creditors NorthWestern had purportedly assumed in connection with the Transfer.[1]

Moreover, Defendants' repetition of the claim (D.I. 113 at 9) that the SEC's investigation is somehow irrelevant because the SEC is not looking at problems with the reported financial results of the assets looted from Clark Fork or NorthWestern's other regulated utilities businesses is wholly disingenuous. That the falsity in the consolidated statements related to the concealed failure of NorthWestern's non-utility businesses (D.I. 113 at 9) simply emphasizes the

---

[1] We do note that Defendants now indicate a willingness to enter into a stipulation as to both the falsity of financial statements and "the knowledge of NorthWestern executives in issuing those financial statements" (D.I. 113 at 6-7; the latter point goes well beyond what was suggested at the January 15 hearing). We have invited Defendants to provide us in advance of the January 29 hearing with a draft of what they would be prepared to stipulate to in this regard. While we are willing to consider in good faith any such proposal, we believe that it may be premature. Without fuller discovery enabling us to understand the full scope of the concealed wrongdoing, it will be difficult to assess the reasonableness of any particular admission proposed by the Defendants. After discovery, when both sides have an equal understanding of the underlying facts, it may be easier to stipulate to various issues so as to streamline matters for trial.

point, which is that it was the overall falsity of the consolidated statements, regardless of its source, which enabled NorthWestern to consummate the Transfer. Indeed, that the business and assets of Clark Fork were valuable and capable of generating positive cash flow which could be used to satisfy the creditors of NorthWestern's other money-losing ventures is precisely what made the Transfer beneficial to NorthWestern but prejudicial to Clark Fork's creditors, including the Plaintiffs. This powerfully incentivized NorthWestern to postpone the inevitable disclosure of the failure of its other businesses until after the Transfer had been consummated.

The Defendants' attempt to conjure up a controversy about the exact scope of the issues raised by the pleadings is nothing more than a red herring, because the false financial statements that induced regulators and other Clark Fork creditors to permit the Transfer to go forward were exactly the same financial statements that induced the indenture trustee to permit the Transfer to go forward, and are exactly the same financial statements now under scrutiny by the SEC.[2] That regulatory approvals were initially obtained in early 2002 while the Transfer was not consummated until November is neither here nor there, because Plaintiffs have never alleged that only the three 10-Q's issued in the six months prior to the date of the Transfer (i.e., those which NorthWestern subsequently restated) were false. Indeed, the First Amended Complaint specifically alleges (¶¶ 37, 38, 51) that NorthWestern was already insolvent (contrary to its publicly-issued financial statements) at and prior to the February 15, 2002 date of its acquisition of the equity of Clark Fork (referred to in the pleading by its prior name of MPLLC) – a time

---

[2] Defendants (D. I. 113 at 6) admit that in denying their prior motion for protective order Judge Farnan accepted that discovery was necessary on 1) whether NorthWestern's public statements about its financial condition were false and misleading (including misleading by omission); 2) whether NorthWestern knew or should have known that those statements were false; and 3) whether "but for those false statements, NorthWestern would not have been able to consummate the Transfer." Their groundless arguments about the pleadings go only to the third of these issues, claiming that the illustrative example of reliance by Bank of New York given in a prior brief should be deemed exclusive, although there are a number of different independently sufficient paths which would have blocked consummation of the Transfer but for the false statements. But the documents from the SEC investigation would all be relevant to the first and second issues in any event, making any dispute about the exact scope of the third issue irrelevant to NorthWestern's obligation to produce them.

well before NorthWestern had even issued its 10-K for 2001.[3] For its part, the SEC has already brought public charges that there were intentional material misstatements in NorthWestern's publicly-issued financials for 2001 as well as 2002. See Steingart Declaration, Exh. N (submitted with Plaintiffs' Motion to Compel).

Even though the scope of the current pleadings is a red herring, it may be helpful to the Special Master for us to clarify the record. Judge Case's decision <u>denied</u> NorthWestern's motion to dismiss; it found the then-existing pleading adequate and did not require plaintiffs to file an amended complaint providing detail about the fraudulent scheme invalidating the release on which NorthWestern sought to rely. Thus, the First Amended Complaint was not intended to, and did not, focus on the fraudulent scheme, since the prior allegations had been deemed legally sufficient. Rather, its focus was on adding allegations relating to NorthWestern's violations of the Public Utilities Holding Company Act of 1935 ("PUHCA"). (PUHCA was subsequently repealed by Congress in 2005.)

Although it filed a motion challenging the newly-added PUHCA allegations, NorthWestern nonetheless answered the First Amended Complaint. It did not move to dismiss it under Rule 9(b) for failure to describe the fraudulent scheme with particularity, nor did it even raise failure to plead fraud with the requisite particularity as an affirmative defense in its answer, although it raised a dozen other affirmative defenses. See Exh. A (Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint, Other

---

[3] In any event, the notion that the Montana Public Service Commission would have taken no further action between its initial approval of the Transfer in February and its consummation in November if NorthWestern had publicly admitted its insolvency in the interim is fanciful in the extreme.

Than Objection to the QUIPS Litigation Claim, dated March 14, 2005) (the "Amended Answer").[4]

But, as we previously explained, none of this is relevant because proof of the fraudulent scheme will be relevant at trial only in response to NorthWestern's affirmative defense of release. See Fed. R. Civ. P. 8(c) (specifying "release" as an affirmative defense); Amended Answer p. 15 (raising alleged lack of standing and alleged lack of status as creditors of Clark Fork as affirmative defenses, in both cases apparently based on the purported release of Clark Fork in connection with the Transfer). The law simply does not require a plaintiff to anticipate and negate affirmative defenses in its pleadings, much less do so subject to the heightened requirements of Rule 9(b). See Flight Systems, Inc. v. Electronic Data Systems Corp., 112 F.3d 124, 127-29 (3d Cir. 1997) (plaintiff not required to plead facts in complaint sufficient to overcome anticipated statute of frauds defense given various potential grounds for avoiding defense that might be developed during discovery); Fed. R. Civ. P. 7(a) (no reply to be filed to defendant's answer unless ordered by court). Indeed, just a few days ago a unanimous Supreme Court squarely held that the federal courts lacked the authority absent a directly-applicable statute to impose heightened pleading requirements that effectively required plaintiffs to negate a potential affirmative defense in their complaint. See Jones v. Bock, No. 05-7058 (Jan. 22. 2007 – attached as Exh. B).[5]

---

[4] Any potential 9(b) objection was therefore waived. Huff v. Nationwide Ins. Co., 167 B.R. 53, 58 n.4 (W.D. Pa. 1992), aff'd, 989 F.2d 487 (3d Cir. 1993) (table case); Todaro v. Orbit Int'l Travel, Ltd., 755 F. Supp. 1229, 1234 (S.D.N.Y. 1991).

[5] Statute of limitations defenses admittedly may not always provide the best analogy, since in some circumstances the untimeliness of the claim, absent tolling, may appear on the face of the complaint. Jones, slip op. at 14. The Fruehauf case Defendants cite was apparently such a case, where plaintiff had admitted that the claims in the complaint were untimely on their face absent a tolling claim such that it became necessary for the tolling theory to be sufficiently pled in the complaint to avoid dismissal on a 12(b)(6) motion. Here, by contrast, Plaintiffs have alleged that they were and are creditors of Clark Fork, and NorthWestern has denied those allegations. Notice pleading requires no more.

4

For their part, defendants Hanson and Kindt offer no argument that documents related to the SEC investigation are not relevant to establishing what they knew or should have known with respect to NorthWestern's solvency and ability to meet the obligations it was purportedly assuming as of the date of the Transfer.[6]

Finally, on January 22, NorthWestern responded to Plaintiffs' second set of document requests, which as previously noted sought among other things all documents related to the SEC investigation out of an excess of caution, even though Defendants have still not explained how they were arguably not responsive to the first set of requests. The response generally refuses to provide documents to all but two of the requests. See Exh. D (Defendant NorthWestern Corporation's Response and Objections to Plaintiffs' Second Request for Production of Documents dated January 22, 2007). Beyond the pure relevance issue already discussed, none of the other objections are well-taken.[7]

We look forward to discussing these issues further with the Special Master on January 29. We believe that all parties would be best served by the setting of clear deadlines so that they can work together to complete discovery consistent with the schedule ordered by the Court.

For all of the foregoing reasons as well as those previously briefed, the Motion to Compel should be granted with such other and further relief as the Special Master deems appropriate.

---

[6] They mention the separate claims against them only in a footnote disingenuously noting the undisputed fact that Magten did not own QUIPs as of the date of the Transfer. But they fail to acknowledge that they previously sought summary judgment on this ground before the case was transferred to Delaware and lost, because Magten has standing to assert the claims of the trustee, who was indisputably a Clark Fork creditor prior to the Transfer. See Exh. C (Order and Decision Denying Defendants' Motion for Summary Judgment dated January 27, 2005). This holding is binding on Hanson and Kindt as law of the case.

[7] For example, there is no basis for a defendant to refuse to produce documents in its possession because they could allegedly also be obtained from third parties. As to supposed burden, the claim that production of documents related to the SEC investigation raises "confidentiality and privacy" issues (Def. Supp. at 9) can of course be addressed by an appropriate confidentiality agreement, and plaintiffs have already provided comments on a draft agreement prepared by NorthWestern's counsel. The reference to the need to review these documents for work product issues (id.) is mystifying, however, since the Third Circuit has unequivocally held that there can be no work product protection for documents produced to the SEC. Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427-31 (3d Cir. 1991).

Dated: Wilmington, Delaware
January 25, 2007

**BLANK ROME LLP**

/s/ Dale R. Dubé
Dale R. Dubé (DE No. 2863)
Bonnie G. Fatell (DE No. 3809)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management Corporation

Dated: Wilmington, Delaware
January 25, 2007

**SMITH KATZENSTEIN & FURLOW LLP**

/s/ Kathleen M. Miller
Kathleen M. Miller
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile:  (302) 652-8405

- and -

**NIXON PEABODY LLP**
John V. Snellings
Amanda D. Darwin
100 Summer Street
Boston, MA 02110-2131
Telephone: (617) 345-1000
Facsimile:  (617) 345-1300

Counsel for Law Debenture Trust Company of New York

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January, 2007, I served by hand delivery and electronic filing the REPLY SUPPLEMENTAL SUBMISSION OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS using CM/ECF which will send notification of such filing(s) to the following:

Special Master John E. James
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT
 & TUNNELL LLP
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Denise Seastone Kraft, Esquire
EDWARDS ANGELL PALMER &
 DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

David A. Jenkins, Esquire
SMITH KATZENSTEIN &
 FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

I also certify that, on this 25th day of January, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
BROWNING, KALECZYC, BERRY
 & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061

Jesse H. Austin, Esq.
PAUL, HASTINGS, JANOFSKY &
 WALKER, LLP
600 Peachtree Street, N.E.
Atlanta, GA 30308

Dennis E. Glazer, Esquire
Paul Spagnoletti, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue, Room 3004
New York, NY 10017

_____
Dale R. Dubé (I.D. No. 2863)