# EXHIBIT A

Case 1:04-cv-01494-JJF   Document 128-2   Filed 03/28/2007   Page 2 of 19

EPS Judicial Process Service, Inc.
29-27 41st Avenue, Suite 812
Long Island City, NY 11101
Telephone: 718-472-2900
Facsimile: 718-472-2909

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MAGTEN ASSET MANAGEMENT CORPORATION,
& LAW DEBENTURE TRUST COMPANY OF
NEW YORK,

                Plaintiff (s),

      -against-

Index No. 04-1494-JJF
Pending in the U.S. District
Court for the District of
Delaware
AFFIDAVIT OF SERVICE

NORTHWESTERN CORPORATION,

                Defendant (s).
-------------------------------------------------------------------- X
MAGTEN ASSET MANAGEMENT CORPORATION,

                Plaintiff (s),

      -against-

Index No. 05-499-JJF
Pending in the U.S. District
Court for the District of
Delaware

MIKE J. HANSON and ERNIE J. KINDT,

                Defendant (s).
-------------------------------------------------------------------- X
STATE OF NEW YORK    )
                  :s.s.:
COUNTY OF QUEENS    )

      ANTHONY CALDERON, being duly sworn deposes and says:

      I am not a party to this action and am over the age of eighteen years, and reside in the State of New York.

      On the 23rd day of March, 2007, at approximately 4:0005 p.m. at 123 Main Street, White Plains, New York, I served a true copy of the SUBPOENA IN A CIVIL CASE, in the above-entitled action upon THE BANK OF NEW YORK, by personally delivering to and leaving thereat a true copy of the above mentioned document with Dell Orletta . At time of service, Ms. Orletta identified herself as the Legal Administrative Assistant for The Bank of New York and as a person authorized to accept service of process for The

The Bank of New York and as a person authorized to accept service of process for The Bank of New York. Also at time of service, I tendered Ms. Orletta the $60.00 witness fee and traveling expenses for The Bank of New York.

Ms. Orltta is a Caucasian female, approximately 50-55 years of age, 5'3" tall, 160 lbs with light hair, light eyes and wore glasses.

Sworn to before me this
23rd day of March, 2007

NOTARY PUBLIC

CLENDY J. CALDERON
Notary Public, State of New York
No. 01CA6115564
Qualified in Queens County
Commission Expires September 7, 2008

ANTHONY CALDERON
Organization License No. 1155020

A088 Subpoena in a Civil Case (12/06)

## Issued by the
# United States District Court

### SOUTHERN DISTRICT OF NEW YORK

Magten Asset Management Corporation
& Law Debenture Trust Company
of New York,

       Plaintiffs

v.

NorthWestern Corporation,

       Defendant

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 04-1494-JJF
Pending in the U.S. District Court for the District of
Delaware

Magten Asset Management Corporation

       Plaintiff

v.

Mike J. Hanson and Ernie J. Kindt,

       Defendants

Civil Action No. 05-499-JJF
Pending in the U.S. District Court for the District of
Delaware

To:    The Bank of New York
       101 Barclay Street
       New York, NY 10286

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above proceedings.

| PLACE | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above proceedings. The testimony will be recorded by stenographic and/or sound-and-visual means.  See attached Schedule B

| PLACE | DATE AND TIME |
|---|---|
| Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004-1980 | Wednesday, May 2, 2007,<br>10:00a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004-1980 | Wednesday, April 11, 2007,<br>4:00p.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

Any subpoenaed organization not a party to this adversary proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorney for Plaintiff Magten Asset Management Corp. | March 23, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8000

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty and perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.
(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## **Schedule A**

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, Magten Asset
Management Corporation ("Magten") requests that The Bank of New York ("BONY") produce
for examination, inspection and copying at the offices of Fried, Frank, Harris, Shriver &
Jacobson, LLP One New York Plaza, New York, New York at 4:00 p.m. on April 11, 2007 all of
the documents described below which are in the possession, custody or control of BONY, or of
any persons acting on its behalf.

## **REQUESTS FOR PRODUCTION**

### **REQUEST NO. 1**

All documents relating to or concerning the Transfer.

### **REQUEST NO. 2**

Documents sufficient to indicate the name, title, and/or acts undertaken with respect to
the Transfer, of any employees, officers or directors of Clark Fork or NorthWestern that were
involved in the Transfer.

### **REQUEST NO. 3**

All documents relating to or concerning the value of the Transferred Assets, any analysis
performed to value such assets, and/or all communications concerning such valuation.

### **REQUEST NO. 4**

All documents relating to or concerning the value of any consideration paid or to be paid
by NorthWestern to Clark Fork in connection with the Transfer, any analysis performed to value
such consideration, and/or all communications concerning such consideration.

### **REQUEST NO. 5**

All documents relating to communications with members of the Board of Directors

including, without limitation, presentations, proposals, minutes and resolutions of all board meetings and all written consents or actions taken by the Board of Directors, and any other materials (and all drafts thereof) provided to or by the members of the Board of Directors that concern or relate to the Transfer.

## REQUEST NO. 6

All legal opinions, fairness opinions, appraisals or other third party professional advice given in connection with the Transfer, the Transferred Assets, the QUIPS Indentures, Second Supplemental Indenture, Third Supplemental Indenture, and/or the Montana Medium-Term Notes Indenture.

## REQUEST NO. 7

All documents concerning the Trust Agreement and/or Guarantee Agreement.

## REQUEST NO. 8

All documents concerning the QUIPS and/or the QUIPS Indenture.

## REQUEST NO. 9

All documents concerning the Second Supplemental Indenture.

## REQUEST NO. 10

All documents concerning the Third Supplemental Indenture.

2

### REQUEST NO. 11

All documents constituting or concerning any communications involving any of the QUIPS

Trustees, the Montana Trustee, NorthWestern and/or CSFB concerning the Transfer and/or the

Transferred Assets, including, but not limited to, any request for the release of claims against

Clark Fork and any purported release of such claims.

### REQUEST NO. 12

All documents reflecting communications between CSFB and NorthWestern concerning

the Transfer or NorthWestern's 2003 Credit Facility.

### REQUEST NO. 13

All applications and/or other documents submitted to regulatory authorities in connection

with the Transfer.

### REQUEST NO. 14

All documents relating to any and all analyses, reports, summaries, opinions, advice or

similar evaluations concerning or relating to the financial condition of NorthWestern at any time

between 2001 and the present.

### REQUEST NO. 15

All documents relating to or concerning the publicly issued financial statements for

NorthWestern for the fiscal year ended 2001 through the present.

### REQUEST NO. 16

All documents relating to any and all analyses, reports, summaries, opinions, advice or

similar evaluations concerning or relating to the financial condition of Clark Fork at any time

between 2001 and the present.

3

**REQUEST NO. 17**

All documents relating to or concerning the publicly issued financial statements for Clark Fork for the fiscal year ended 2001 through the present.

**REQUEST NO. 18**

All documents concerning any possible or actual restatement of any publicly issued financial statements of Clark Fork and/or NorthWestern including, without limitation, any communications with any governmental agency.

**REQUEST NO. 19**

All documents relating to Deloitte & Touche's review of financial information, operating, and other data related to NorthWestern.

**REQUEST NO. 20**

All documents relating to Deloitte & Touche's review of financial information, operating, and other data related to Clark Fork.

**REQUEST NO. 21**

All documents relating to Arthur Andersen's review of NorthWestern's financial or accounting information between 2001 and 2003.

**REQUEST NO. 22**

All documents concerning or relating to NorthWestern's accounting policies in effect at any time between 2001 and the present.

4

**REQUEST NO. 23**

All documents relating to communications with members of the Board of Directors including, without limitation, presentations, proposals, minutes and resolutions of all board meetings and all written consents or actions taken by the Board of Directors, and any other materials (and all drafts thereof) provided to or by the members of the Board of Directors that concern or relate to the Financial Statements including, without limitation, the restatement of the Financial Statements for the first three quarters of the fiscal year ended 2002.

**REQUEST NO. 24**

All documents relating to communications regarding the audit committee including, without limitation, presentations, proposals, minutes and resolutions of all board meetings, and any other materials (and all drafts thereof) provided to or by the members of the audit committee that concern or relate to the Financial Statements including, without limitation, the restatement of the Financial Statements for the first three quarters of the fiscal year ended 2002 and any investigation or inquiry concerning the Financial Statements.

**REQUEST NO. 25**

All documents concerning any analysis performed as of or prior to the date of the Transfer to determine whether following the Transfer NorthWestern would be able to pay its liabilities (including without limitation the liabilities it had assumed with respect to the Junior Debentures and the QUIPS) as they became due in the ordinary course of its business.

**REQUEST NO. 26**

All documents constituting or concerning any instructions given by NorthWestern to any officer, employee or agent of Clark Fork, including without limitation Hanson and Kindt, to execute documents or take other actions in connection with the Transfer.

5

**REQUEST NO. 27**

All documents concerning any actual or potential write down by NorthWestern of the Expanets Investment.

**REQUEST NO. 28**

All operating agreements for Clark Fork, or any other document setting forth any rights, duties, and/or responsibilities of any officer, employee or agent of Clark Fork.

**REQUEST NO. 29**

All documents reflecting any compensation paid to any law firm(s), investment bank(s), accountant(s), and/or other financial advisor(s) in connection with the Transfer.

## Schedule B

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Magten will take the deposition of one or more representatives of BONY on May 2, 2007 at 10:00 a.m. at the offices of Fried, Frank, Harris, Shriver & Jacobson, LLP One New York Plaza, New York, New York before an officer qualified to administer oaths. Magten intends to record the deposition by videotape and/or by stenographic means. The deposition shall continue from day to day until completed. You are invited to attend and cross-examine.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, BONY is required to designate one or more officers, directors, managing agents or other persons to testify, who have knowledge about the following matters:

1.  Your production of documents called for in Schedule A to this subpoena.
2.  All of your actions and communications related to the Transfer, the Second Supplemental Indenture, and the Third Supplemental Indenture.
3.  Your knowledge of NorthWestern's creditworthiness, financial condition, liquidity, and anticipated future cash flow at and prior to the date of the Transfer.

6

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.    "All" means "any and all," and "any" means "any and all."

2.    "Arthur Andersen" means Arthur Andersen LLP, its agents, attorneys, affiliates, representatives and all other persons acting in concert with it or on its behalf.

3.    "Board of Directors" shall mean all current and former members of the board of directors of NorthWestern Corporation, its affiliates, subsidiaries and predecessors or sucessors in interest.

4.    "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

5.    "CSFB" shall mean Credit Suisse First Boston its agents, attorneys, affiliates, representatives and all other persons acting in concert with it or on its behalf.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

7.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

8.    "Deloitte & Touche" means Deloitte and Touche LLP, its agents, attorneys, affiliates, representatives and all other persons acting in concert with it or on its behalf.

7

9.      "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

10.     "Expanets Investment" means all equity investments made in or loans extended to Expanets, Inc. by NorthWestern.

11.     "Guarantee Agreement" shall mean that certain Guarantee Agreement dated as of November 1, 1996, by and between The Montana Power Company as guarantor and The Bank of New York as guarantee trustee and any and all amendments, supplements, revisions and addendums thereto.

12.     "Junior Debentures" means the Junior Subordinated Interest Debentures which The Montana Power Company issued pursuant to its Indenture (For Unsecured Subordinated Debt Securities relating to Trust Securities) dated November 1, 1996.

13.     "The McGreevey Class Action" shall mean all litigation relating to the action styled McGreevey, et al. v. The Montana Power Company, et al. filed in the United States District Court for the District of Montana.

14.     "Montana Medium-Term Notes Indenture" shall mean that certain Indenture for Unsecured Debt Securities dated December 1, 1989 by and between The Montana Power

8

Company and Citibank, N.A., as trustee and any and all amendments, supplements, revisions and addendums thereto.

15.    "Montana Trustee" shall mean Citibank, N.A. as trustee under the Montana Medium-Term Notes Indenture and any and all predecessors and/or successors in interest thereto.

16.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

17.    "NorthWestern's 2003 Credit Facility" means that senior secured credit facility by and between NorthWestern and Credit Suisse First Boston, among others, dated February 10, 2003, including all drafts amendments, supplements, addendums and revisions thereto.

18.    "Paul Hastings" means Paul Hastings Janofsky & Walker LLP, its agents, attorneys, affiliates, representatives and all other persons acting in concert with it or on its behalf.

19.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

20.    "QUIPS" means the Series A 8.45% Quarterly Income Preferred Securities issued by Montana Capital Power Trust I pursuant to the Trust Agreement between The Montana Power

9

Company, The Bank of New York, and various other persons dated on or about November 1, 1996.

21.     "QUIPS Indenture" shall mean that certain indenture for Unsecured Subordinated Debt Securities relating to Trust Securities dated November 1, 1996 by and between The Montana Power Company and The Bank of New York, as trustee, and all drafts, amendments, supplements, addendums and revisions thereto including, but not limited to the Second Supplemental Indenture and the Third Supplemental Indenture and the notes that were issued pursuant to such documents.

22.     "QUIPS Trustees" shall mean The Bank of New York as trustee under the QUIPS Indenture, The Bank of New York as property trustee under the Trust Agreement, The Bank of New York as guarantee trustee under the Guarantee Agreement and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative trustees under the Trust Agreement, together with any and all predecessors and/or successors in interest thereto.

23.     "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

24.     "Second Supplemental Indenture" shall mean that certain indenture dated August 13, 2002 by and between NorthWestern Energy, LLC as successor by merger to The Montana Power Company, NorthWestern, and The Bank of New York, as trustee and all drafts, amendments, supplements, addendums and revisions thereto.

10

25.     "Third Supplemental Indenture" shall mean that certain indenture dated
November 15, 2002 by and between NorthWestern and The Bank of New York as trustee and all
drafts, amendments, supplements, addendums and revisions thereto.

26.     "Transfer" means the transfer of the Transferred Assets from Clark Fork to
NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and
all strategies for the eventual acquisition and direct ownership of the Transferred Assets by
NorthWestern.

27.     "Transferred Assets" means those assets that were transferred from Clark Fork to
NorthWestern on or about November 15, 2002.

28.     "Trust Agreement" shall mean that certain Amended and Restated Trust
Agreement dated as of November 1, 1996, among The Montana Power Company as depositors
and The Bank of New York as property trustee, The Bank of New York (Delaware) as Delaware
trustee and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative
trustees and any and all amendments, supplements, revisions and addendums thereto.

## INSTRUCTIONS

1.     Every request shall be answered separately and fully in writing. If any answer or
part of any answer is based upon information and belief rather than personal knowledge, you
shall state that it is made on that basis.

2.     If any part of a request is objected to, the reasons for the objection should be
stated with particularity. If an objection is made to part of any item or category, the part should
be specified.

11

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of BONY, or any documents that were generated or received by BONY or otherwise came into existence or were utilized by BONY through the date of production. This request also calls for the production of documents kept or maintained by counsel for BONY, and/or other professionals utilized by BONY.

6.    A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.    A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.    If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

(a) the date of the document;

(b) the name of each person to whom the document is addressed;

(c) the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

(d) the name of each person who signed or authored the document;

(e) the title and job description of each person identified in (b), (c), and (d) above;

12

(f) the subject of the document and the number of pages in the document;

(g) the specific privilege claimed and the grounds for any such claim; and

(h) the name and address of the person who has custody of the document.

9.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental as soon as further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

13