# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 04-1494-(JJF)<br>)<br>)<br>)<br>)<br>)<br>) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. Action No. 05-499 (JJF)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NORTHWESTERN CORPORATION'S EMERGENCY CROSS MOTION FOR AN ORDER TRUNCATING THE BRIEFING SCHEDULE UNDER LOCAL RULE 7.1.2 AND SETTING AN IMMEDIATE TELEPHONIC HEARING AND FOR AN ORDER THAT PLAINTIFFS AND THEIR COUNSEL IMMEDIATELY COMPLY WITH THEIR OBLIGATIONS PURSUANT TO PARAGRAPH 8 OF THE STIPULATED <u>PROTECTIVE ORDER OF MARCH 21, 2007</u>**

## PRELIMINARY STATEMENT

On April 13, 2007, Plaintiffs filed an emergency motion seeking, among other things, an order determining the status of documents previously produced by NorthWestern Corporation ("NorthWestern") that NorthWestern belatedly seeks to recall under inadequate and

unsubstantiated claims of inadvertent production and privilege.[1] On April 16, 2007, NorthWestern filed a cross-motion seeking, among other things, an order that Plaintiffs immediately cease making any use of the documents NorthWestern seeks to recall, return any and all copies of the documents to counsel for Northwestern or destroy said documents and any and all copies thereof and provide an immediate certification that such destruction has occurred, destroy any and all notes, memoranda or other work product based upon or derived from the documents and provide an immediate certification that such destruction has occurred, and that Magten and its counsel be sanctioned in the amount of costs incurred by Northwestern in connection with its motion.[2]

As an initial matter, NorthWestern's cross-motion is entirely unnecessary. The appropriate disposition of the documents NorthWestern seeks to recall has already been placed before the Court by Plaintiffs' motion and, thus, NorthWestern's cross-motion is simply redundant. Additionally, Plaintiffs' counsel advised NorthWestern's counsel on the afternoon of April 13, 2007, hours before NorthWestern sent its letter to the Special Master, that Plaintiffs were refraining from making use of any of the allegedly inadvertently produced documents

---

[1] Plaintiffs are also seeking orders: (a) shortening the briefing schedule under Local Rule 7.1.2 and setting a hearing date before the Special Master; (b) compelling defendant NorthWestern to produce documents that are not privileged (including certain documents disclosed to the SEC); (c) compelling the NorthWestern Defendants to produce legible versions of documents that were produced in illegible form; (d) extending the deadline for completing depositions until a time following the production of the subject documents, to permit Plaintiffs' counsel and the deponents (many of whom are third parties scheduled to be deposed during the next few weeks at various locations throughout the Midwest) to adequately prepare to address all relevant topics and documents during the initial deposition of each witness; and (e) awarding Plaintiffs reasonable fees, expenses and costs as sanction for NorthWestern's failure to comply with their discovery obligations.

[2] The cross-motion appears to be a follow-up to Joseph D. Pizzurro's April 13, 2007 letter to the Special Master, presumably filed because the letter was a procedurally improper method of obtaining the relief NorthWestern sought. In response to Mr. Pizzurro's letter, Plaintiffs indicated in a letter to the Special Master, also on April 13, 2007, that the issues raised in Mr. Pizzurro's letter were addressed in their Memorandum of Law in support of their Emergency Motion. Plaintiffs are now responding to the points made in NorthWestern's cross-motion at greater length than in Mr. Pizzurro's letter.

pending the resolution of Plaintiffs' motion. *See* Declaration of Bonnie Steingart filed herewith ("Steingart Decl.") ¶ 3-4. NorthWestern has conspicuously failed to disclose this fact in its brief. Indeed, Plaintiffs' counsel also advised NorthWestern's counsel of the imminent filing of our Emergency Motion prior to its filing and service, so that NorthWestern was also fully on notice that the issue of the supposedly inadvertently produced documents was already being brought before the court for orderly resolution. Steingart Decl. ¶ 3.

NorthWestern's cross-motion is simply the latest in a line of obstructionist tactics adopted by NorthWestern to disrupt fact discovery in this case. At the very point when depositions should be under away and the previously scheduled discovery cutoff is imminent, NorthWestern has suddenly demanded the return or destruction of thousands of pages of documents, produced as far back as January, based on its unsubstantiated claims that the documents are privileged and were produced inadvertently. In their Memorandum of Law in support of their motion ("Pl. Mem."), Plaintiffs demonstrated that it is under no obligation to take action in response to NorthWestern's letter dated April 5, 2007 (the "Demand Letter"), requesting return or destruction of allegedly privileged documents either under paragraph 8 of the confidentiality stipulation approved by the Court in these cases (D.I. 121 -- the "Confidentiality Order") or under Fed. R. Civ. P. 26(b)(5)(B). The defects in NorthWestern's Demand Letter are not cured in its cross-motion.

Additionally, NorthWestern's obstructionist tactics continue. On the very same day that NorthWestern filed its cross-motion, it also sent a letter, its fourth, requesting the return or destruction of an additional 23 ranges of Bates-numbers from NorthWestern's prior document production. This latest request brings the total number of pages of allegedly inadvertently produced privileged documents to over 3,000 pages, and just as the previous requests,

NorthWestern provides no basis to explain or substantiate the claim that the documents listed were produced inadvertently or were privileged, despite the express requirement of Fed. R. Civ. P. 26(b)(5)(B) (emphasis added) that a party making a claim that documents produced in discovery are subject to a claim of privilege must notify the receiving party of both the "claim *and* the basis for it." Like the previous two letters dated April 12, 2007, the latest letter does not even attempt to claim that any of the allegedly privileged documents were logged on either NorthWestern's March 23, 3007 or its tardy supplemental April 5, 2007 privilege log. *See* Pizzurro Aff. Exhs. 6-8.

## ARGUMENT

I. **Plaintiffs Have Complied Fully With Their Obligations Under the Confidentiality Order and Under Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure**

NorthWestern argues that pursuant to paragraph 8 of the Confidentiality Order, "once a receiving party gets notice of the inadvertent production of documents subject to a claim of privilege, those documents must be returned to the producing party or destroyed." Def. Mem. at 3. This is neither a correct statement of Plaintiffs' obligation under paragraph 8 of the Confidentiality Order, nor under Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.

As described extensively in Plaintiffs' motion, NorthWestern's Demand Letter does not meet the requirements of paragraph 8 of the Confidentiality Order. Thus, Plaintiffs are under no obligation to return or destroy the documents. As discussed in more detail below, NorthWestern's attempts to show the requirements of paragraph 8 are met are unavailing.

Contrary to NorthWestern's assertion that "Magten and its counsel have brazenly violated the clear and unambiguous terms of . . . Rule 26(b)(5)(B) of the Fed. R. Civ. P." (Def. Mem. at 2), Plaintiffs have complied with the letter and spirit of the Rule. Fed. R. Civ. P.

26(b)(5)(B) specifically grants a party that is notified that information was produced that may be subject to a claim of privilege, with the right to "present the information to the court under seal for a determination of the claim."[3] This is exactly what Plaintiffs have done. Further, NorthWestern's claim that having "copied [the documents], bound them, and sent them to local counsel who offered them to the Special Master for review" is a "clear violation of Paragraph 8 [of the Confidentiality Order]" is preposterous. Def. Mem. at 5. The language of Rule 26(b)(5)(B) expressly provides for placing the disputed documents in front of a court for its review. In fact, the very cases cited by NorthWestern demonstrate that it is entirely appropriate to present the documents that are alleged to be inadvertently produced for review by the court. *See IBM Corp. v. Comdisco Inc.*, C.A. No. 91-C-07-199, 1992 WL 149502, at *2 n.1 (Del. Super. June 22, 1992) (noting that the inadvertently produced document was produced for the court's *in camera* review); *In re Circon Corp. S'holder Litig.*, No. C.A. 15165, 1998 WL 409166, at *1-3 (Del.Ch. July 6, 1998) (discussing the specific contents of the documents that were subject of a claim of inadvertent production).

Additionally, Plaintiffs have chosen the most prudent course of action given the timing of NorthWestern's Demand Letter and the volume of documents that are alleged to be inadvertently produced. NorthWestern's Demand Letter, and subsequent letters, were delivered months after the documents were produced and demands the return or destruction of over 3,000 documents that constitute several thousand pages and fill six large three-ring binders, and which were produced as part of different productions. Furthermore, the Demand Letter was delivered as Plaintiffs were in the midst of preparing for depositions.

---

[3] Given that NorthWestern is expressly relying on Fed. R. Civ. P. 26(b)(5)(B) as well as the Confidentiality Order in its cross-motion, and expressly invoked Rule 26(b)(5)(B) in its original Demand Letter and all three of its follow-up letters thereto, it cannot claim that Plaintiffs cannot avail themselves of the procedure expressly set out in Rule 26(b)(5)(B).

Under these circumstances, it would be extraordinarily time-consuming and distracting for Plaintiffs to track down and redact notes and work product going back over three months and relating any of almost 100 documents (comprising over 3,000 pages). This could potentially require Plaintiffs to review all their internal work product generated over several months of intensive litigation. Indeed, the Advisory Notes to Rule 25(b)(5)(B) expressly contemplate that in a situation where the "receiving party may have incorporated the information into protected trial-preparation materials" it would be excessively burdensome, and thus not necessary, for the receiving party to return or destroy the documents and derivative work product before the dispute has been resolved by the court. Thus, after advising NorthWestern's counsel that Plaintiffs were refraining from making use of any of the allegedly inadvertently produced documents, Plaintiffs chose to follow the procedure outlined in Fed. R. Civ. P. 26(b)(5)(b) and place the issue in front of the Court.[4]

Additionally, it would not only be burdensome from Plaintiffs to return or destroy the allegedly inadvertently produced documents, it would likely be wasteful and counterproductive. Many of the documents that are the subject of the Demand Letter are likely to be subject to Plaintiffs' motion to compel the production of non-privileged documents – amounting to hundreds upon hundreds of separate items improperly withheld by NorthWestern.[5] *See* Pl. Mem.

---

[4] Contrary to NorthWestern's claim, Plaintiffs have not "admitted that [we are] continuing to make use of" (Def. Mem. at 5) the allegedly inadvertently disclosed documents, nor are we, in fact, making use of them. In a letter dated April 11, 2007, Plaintiffs' counsel advised NorthWestern that it was generally reserving its rights with respect to use of the documents. Plaintiffs' counsel subsequently advised NorthWestern on April 13, before either the cross-motion or its predecessor letter were sent, that Plaintiffs were refraining from making use of any of the allegedly inadvertently produced documents. Prior to informing NorthWestern, plaintiffs had already notified all persons working on the matter of NorthWestern's assertion of privilege and that there should be no further use or reference to such documents until the issue was resolved. Steingart Decl. ¶ 2-4.

[5] NorthWestern's continuing failure to provide any cross-references between the documents it has demanded the return of and its privilege log (to the extent it claims the documents were logged) makes it impossible at

at 14-22. It makes no sense to return or destroy documents (and especially derivative work product) that NorthWestern may very well be compelled to produce Plaintiffs as a result of a pending motion.

Finally, NorthWestern is now apparently demanding in effect the return or destruction of the originals of all of its document production – privileged or nonprivileged. The documents were produced not in hard copy on disks, and the documents in dispute were intermixed with other documents not in dispute on the same disks. While NorthWestern indicated by email on April 10 that it would be providing replacement disks of the relevant segments of its production with the documents in dispute omitted (*see* Exhibit A to Plaintiffs' Motion, attaching that email to counsel's certificate), thus acknowledging that it was unreasonable for plaintiffs to surrender the original disks absent replacements, over a week has gone by, and no replacement disks have been provided. Steingart Decl. ¶ 6.

## II. Plaintiffs Are Under No Obligation to Return or Destroy the Previously-Produced Documents

As fully addressed in Plaintiffs' memorandum of law in support of their motion, NorthWestern's Demand Letter is not adequately justified under either Paragraph 8 of the Stipulated Protective Order or under Rule26(b)(5)(b) because the notice of inadvertent production was not given promptly, the Demand Letter provides no substantiation of its assertion that the production of the documents was inadvertent, and the Demand Letter provides no basis from which to evaluate the claim of privilege, other than a blanket statement that "[t]he following documents contain attorney work product and attorney client privileged information." *See* Pl. Mem. at 9-14. NorthWestern has not shown anything that suggests otherwise in its brief.

---

present to determine the exact extent of the overlap, since the wrongfully withheld documents are identified by privilege log number, not Bates number range.

7

First, as Plaintiffs explained in great detail in their brief, the Demand Letter does not comply with the requirements of Rule 26(b)(5)(B), which requires any request for the return of allegedly privileged documents to include both "the claim *and* the basis for it." *See* Def. Mem. at 13. Further, the Advisory Committee notes state that the notice given "should be as specific as possible in identifying the information and stating the basis for the claim." *Id.* NorthWestern's Demand Letter and subsequent letters provide absolutely no basis to evaluate the claim that any of the documents are privileged and there is ample evidence that many of the documents are likely to not be privileged. *Id.* at 12-13. In the face of this clear authority, Northwestern does not even attempt to provide any basis for its claim that the documents were privileged and claims that it is "under no obligation at all, either under Paragraph 8 of the Order or Rule 26, to demonstrate to Magten that the Designated Documents are privileged." Def. Mem. 8. This response is obviously insufficient.

Second, as discussed in Plaintiffs' motion, NorthWestern's request for return was not made promptly, as the Confidentiality Order expressly requires as one of the prerequisites to return. *See* Pl. Mem. at 9-10. NorthWestern mistakenly asserts that it is clear that promptness of notice is governed by "the date on which a party discovers the inadvertent production…not the date of the production" and cites to four cases to support its position. Def. Mem. at 5-6. None of these cases suggest that there is a hard and fast rule with respect to this issue and in fact, Delaware courts have often looked to the date of production, not notice, when considering the promptness of notice. *See In re Hechinger Inv Co.*, 303 B.R. 18, 25 (D. Del. 2003) (citing the period of time between the production of the documents and the request to return the documents as a basis for finding that the privilege had been waived). In each of the cases cited by Defendant, involving entirely different facts than those present here, the court looked to the

overall circumstances of production and the producing party's discovery of the problem for purposes of determining whether production was "inadvertent" in the relevant sense.

In *Comdisco, Inc.*, 1992 WL 149502, at *1, the court denied the defendant's motion to compel production of a document that had been inadvertently produced, after noting that an "elaborate review process" had been set up in order to avoid inadvertent disclosure. As discussed below, there is no evidence of an "elaborate review process" in this case and the circumstances suggest otherwise. *See* Pl. Mem. at 10. Defendant's reliance on *Circon Corp.*, 1998 WL 409166, is also misplaced. There the court found that the privilege never existed with respect to the documents at issue and any discussion contained in the opinion regarding the promptness of providing notice was dicta. *Id.* at *6  In fact, the court actually noted that determination of whether a request by a producing party to destroy inadvertently produced documents is tardy is a fact intensive inquiry and found both the seven months between the production of the documents and the discovery that allegedly privileged documents had been produced and the six weeks between the discovery and the notice to the receiving party relevant. *Id.* at *4. *See also Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 165 (D. Del. 2001) (finding that there was no waiver of privilege of a document that had been used during depositions where counsel for the producing party only learned of the privileged nature of the document as a result of conversations with a witness while preparing the witness for a deposition); *Monsanto Co. v. Aetna Casualty and Surety*, No. 88-C-JA-118, 1994 WL 315238, *6 (Del. Super. May 31, 1994) (considering date of the notice of inadvertent production, as opposed to the date of the production, because the party holding the privilege was not the party that produced the documents in question).

Furthermore, it should be noted that the courts in *Comdisco* and *Monsanto* also considered the volume of the privileged documents, which was one page in Comdisco, (*Comdisco*, 1992 WL 149502, at *1) and in *Monsanto* "remarkably small" in comparison to the "great" scope of discovery. *Monsanto,* 1994 WL 315238, at *6. Needless to say, the thousands of pages that Defendant has now claimed are privileged is a far more substantial amount than the documents in question in those cases.

Third, Plaintiffs demonstrated in its brief that NorthWestern had not substantiated its assertion that the production was inadvertent in its Demand Letter and that the information available to Plaintiffs suggest the contrary. *See* Pl. Mem. at 10-11. NorthWestern's principal response is that "once a producing party states that the production of a privileged documents was inadvertent that ends the inquiry. . ." Def. Mem. at 7. A self-serving statement that the documents were inadvertently produced is obviously insufficient and NorthWestern has provided no additional information that substantiates this assertion.

NorthWestern states only that it produced 485,000 pages of documents in a "relatively short time" and that "[t]he possibility that there could be the inadvertent production of privileged documents was clear to all concerned." Def. Mem. at 7. This specious categorizing of the circumstances and size of the production is a self-serving, misrepresentative statement. First, NorthWestern's claim of the burden of producing 485,000 pages of documents in a short period is greatly exaggerated. As explained in our motion, NorthWestern produced over 3,000 Excel spreadsheets, which were virtually illegible because they have been printed in a fractured form. Pl. Mem. at 19-21. These spreadsheets collectively constitute over 300,000 pages (often being scattered across dozens or hundreds of pages as a result of the formatting problem that renders them unusable), or approximately 62% of the total pages produced. *See* Steingart Decl. ¶ 5. It is

implausible to assume that NorthWestern's counsel spent much, if any, time reviewing these illegible documents. Second, the claim that NorthWestern was required to produce these documents in an excessively compressed time period is groundless. The document requests were served in January 2006 and the previous stay of discovery was lifted in early October 2006, over five months prior to the document production deadline ultimately imposed by the Special Master. The fact that NorthWestern did not attempt to produce documents in any serious volume until January 2007 (only after Plaintiffs were forced to file a motion to compel production) is a problem entirely of their own making and should provide no justification for the alleged inadvertent production. *See* Pl. Mem. at 5.

Regardless of the time frame and the number of documents produced, as Plaintiffs pointed out in their motion, in order to make a claim of inadvertent production, the producing party or its counsel must show that it took reasonable steps to avoid inadvertent production. *See* Pl. Mem. at 11; *see also Hechinger*, 303 B.R. at 25 (finding that the document "screening process" must have been ineffective where a paralegal or attorney reviewing the documents would have see that the documents were attorney work product as they were clearly marked as such); *Amgen, Inc. v. Hoeschst Marion Roussel, Inc.*, 190 F.R.D. 287, 292 (D. Mass 2000) (finding that "conduct that merely described the act of document production. . . falls short of demonstrating precautions intended to prevent inadvertent disclosure."); *Comdisco*, 1992 WL 149502, at *1 (noting the "elaborate review process to avoid inadvertent disclosure").

Northwestern has failed to provide any evidence whatsoever, either in its Demand Letter, or in its brief, as to what, if any, review process was undertaken prior to production, much less that it was a process reasonably designed to prevent disclosure – a legal prerequisite for characterizing the production of any privileged documents that nonetheless slipped through the

cracks as "inadvertent." In fact, counsel for NorthWestern admits they were aware as early as January 12, 2007 of flaws in its document production process that allowed privileged documents to be produced and was aware on or around February 10, 2007 that nonresponsive and unreviewed documents had been produced.[6] *See* Pizzurro Aff. ¶¶ 5-6. Thus, NorthWestern was aware as early as January that there were problems with its document production, yet it admits that it did no further review for inadvertent production until April 3, two and a half weeks after the close of document production and while crucial depositions were beginning. *See* Def. Mem. at 6. Indeed, NorthWestern is now claiming document productions prior to February 10, 2007 included inadvertently produced documents and that even documents that were initially withheld for privilege and then produced after subsequent review were inadvertently produced. *See id.* at 11. Clearly, NorthWestern did not have a process in place that was reasonably designed to prevent inappropriate disclosure.

Finally, in light of the above, NorthWestern's request for sanctions is entirely without basis and requires no further discussion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that NorthWestern's emergency cross motion should be denied in all respects.

---

[6] Contrary to any suggestion by NorthWestern, plaintiffs fully complied with the requests dated January 12, 2007 and February 10, 2007, which NorthWestern made reasonably promptly after production of the documents at issue.

Dated: Wilmington, Delaware
April 18, 2007

| | |
|---|---|
| **BLANK ROME LLP** | **SMITH, KATZENSTEIN & FURLOW, LLP** |
| /s/ David W. Carickhoff<br>Dale R. Dubé (DE No. 2863)<br>Bonnie G. Fatell (DE No. 3809)<br>David W. Carickhoff (DE No. 3715)<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464 | /s/ Kathleen M. Miller<br>Kathleen M. Miller (DE No. 2898)<br>800 Delaware Avenue, 7th Floor<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405 |
| - and - | -and- |
| **FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**<br>Bonnie Steingart<br>Gary L. Kaplan<br>John W. Brewer<br>One New York Plaza<br>New York, NY 10004<br>Telephone: (212) 859-8000<br>Facsimile: (212) 859-4000 | **NIXON PEABODY LLP**<br>John V. Snellings<br>Amanda Darwin<br>100 Summer Street<br>Boston, MA 02110<br>Telephone: (617) 345-1201<br>Facsimile: (866) 947-1732 |
| Counsel for Magten Asset Management Corporation | Counsel for Law Debenture Trust Company of New York |

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2007, I served by hand delivery and electronic filing the Plaintiffs' Memorandum of Law in Opposition to NorthWestern Corporation's Emergency Cross Motion for an Order Truncating the Briefing Schedule Under Local Rule 7.1.2 and Setting an Immediate Telephonic Hearing and for an Order that Plaintiffs and Their Counsel Immediately Comply With Their Obligations Pursuant to Paragraph 8 of the Stipulated Protective Order of March 21, 2007, using CM/ECF which will send notification of such filing(s) to the following:

### BY EMAIL AND HAND DELIVERY

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

I also certify that, on this 16th day of April, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

### BY EMAIL AND FEDERAL EXPRESS (NEXT MORNING DELIVERY)

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

_/s/ David W. Carickhoff_
David W. Carickhoff (DE No. 3715)

120087.01600/40168376v.1