## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1494-(JJF) |
| NORTHWESTERN CORPORATION, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. Action No. 05-499 (JJF) |
| MICHAEL J. HANSON and ERNIE J. KINDT, | ) ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION SEEKING ORDERS (a) SHORTENING THE BRIEFING SCHEDULE UNDER LOCAL RULE 7.1.2 AND SETTING A HEARING DATE BEFORE THE SPECIAL MASTER; (b) DETERMINING PRIVILEGE STATUS OF DOCUMENTS NORTHWESTERN SEEKS TO RECALL UNDER CLAIM OF INADVERTENT PRODUCTION AND PRIVILEGE; (c) COMPELLING THE PRODUCTION OF NON-PRIVILEGED DOCUMENTS; (d) COMPELLING THE PRODUCTION OF DOCUMENTS PRODUCED IN ILLEGIBLE FORM; (e) EXTENDING THE PERIOD FOR COMPLETING DEPOSITIONS; AND (f) ASSESSING FEES AND COSTS AGAINST NORTHWESTERN**

Plaintiffs, by and through their counsel, respectfully submit this memorandum of law in

support of their emergency motion (the "Motion") pursuant to Rules 26(d), 34 and 37 of the

Federal Rules of Civil Procedure for the entry of orders (a) shortening the briefing schedule

under Local Rule 7.1.2 and setting a hearing date before the Special Master; (b) determining the

status of documents previously produced by NorthWestern Corporation ("NorthWestern") that

NorthWestern belatedly seeks to recall under unsubstantiated claims of inadvertent production and privilege; (c) compelling defendant NorthWestern to produce documents that are not privileged (including certain documents disclosed to the SEC); (d) compelling the NorthWestern Defendants to produce legible versions of documents that were produced in illegible form; (e) extending the deadline for completing depositions until a time following the production of the subject documents, to permit Plaintiffs' counsel and the deponents (many of whom are third parties scheduled to be deposed during the next few weeks at various locations throughout the Midwest) to adequately prepare to address all relevant topics and documents during the initial deposition of each witness; and (f) awarding Plaintiffs reasonable fees, expenses and costs as sanction for NorthWestern's failure to comply with its discovery obligations.

## PRELIMINARY STATEMENT

Magten has been compelled to bring this Motion on an emergency basis in order to seek relief from numerous, separate but interrelated tactics adopted by NorthWestern which are disrupting and obstructing Magten's ability to complete crucial fact discovery in these cases. Depositions are beginning and the cut-off is only weeks away, yet NorthWestern has refused to produce hundreds of relevant nonprivileged documents and refused to provide legible replacement copies of hundreds more documents produced in illegible form. Even worse, they have suddenly demanded the return or destruction of thousands of pages of documents, produced as long ago as January, based on unsubstantiated claims that they were privileged and supposedly produced inadvertently. Accordingly, we are seeking a resolution of the status of the documents subject to the improper demand for return by placing them under seal before the Special Master, as expressly permitted by Fed. R. Civ. P. 26(b)(5)(B), and for compelled

2

production of the wrongfully withheld documents as well as legible replacements for the illegible documents[1].

In a crucial development since the Special Master last ruled on NorthWestern's obstructive conduct, the federal Securities & Exchange Commission ("SEC") entered an order in early March finding that NorthWestern had committed numerous violations of the federal securities laws in connection with its publicly issued financial statements during 2002 and requiring it to cease and desist from future violations. (This order – the "Cease and Desist Order" – is Exhibit 1 to the Declaration of John W. Brewer ("Brewer Decl.") filed concurrently herewith.) These financial statements, which the SEC found to be materially false and misleading, are the exact same financial statements NorthWestern used to carry out the November 2002 fraudulent transfer of assets that is the subject of this litigation.[2] *See* Brewer Decl. Exh. 1 at p. 2 ("During the first three quarters of 2002, NorthWestern filed quarterly and current reports with the [SEC] that materially misstated NorthWestern's financial position and misrepresented or did not disclose required information about its non-utility businesses . . ."). The order also highlights the fact that these false filings materially concealed NorthWestern's financial condition and were published during a time that NorthWestern issued both debt and equity securities (*id.* at ¶9 p.4). It was also during this period that the fraudulent transfer occurred. In addition, in the first deposition conducted on April 12, Kipp Orme, who was NorthWestern's CFO from February 2001 to August 2003, invoked the Fifth Amendment in response to each and every question.

---

[1]   A set of the documents which are the subject of NorthWestern's demand for return, filling six thick binders, has been assembled at the offices of Magten's Delaware counsel and will be delivered to the Special Master as may be directed.

[2]   The relationship between the subject matter of the SEC's investigation and this lawsuit is described at length in a prior submission to the Special Master, D.I. 111.

NorthWestern agreed to entry of the Cease and Desist Order pursuant to a settlement ending the SEC's multi-year investigation as against it as an entity. However, the SEC's inquiry into the fraud and securities law violations at NorthWestern is ongoing. In recently served interrogatory responses, NorthWestern admitted that numerous former officers, including its entire senior management team as of 2002, have received "Wells notices," which are the formal indication that the SEC's enforcement staff is considering recommending the filing of charges.[3]

In order to secure leniency from the SEC for itself, NorthWestern attempted to shift blame to its former management by waiving privilege and giving the SEC hundreds of documents allegedly subject to attorney-client privilege and work product protection. But NorthWestern has refused to produce those highly relevant documents to Magten despite the Third Circuit's clear and unequivocal holding in *Westinghouse Electric Corp. v. Republic of Philippines*, 951 F. 2d 1414 (3d Cir. 1992), that such disclosure to the SEC automatically waives any protection from discovery in other litigation. Even worse, NorthWestern's privilege log falsely and deceptively failed to disclose that hundreds of withheld documents had been shared with the SEC. Only on April 9, two and a half weeks after their privilege log was due, did they admit the truth, while still refusing to provide the documents despite the lack of any basis on which to avoid the controlling force of the *Westinghouse* decision. As detailed below, there are also numerous other documents where the information on the face of the log demonstrates that they cannot be privileged.

---

[3]     *See* Brewer Decl. Exh. 2 (Response to Interrogatories, at Response no.3). The senior management figures facing SEC charges include the then CEO (Lewis), COO (Hylland), CFO (Orme – who refused to answer questions at his deposition in this case by invoking his Fifth Amendment right against self-incrimination), and General Counsel (Jacobson).

4

Before describing the particulars of NorthWestern's current disruptive and obstructive tactics, it may be helpful to review briefly their history of prior obstruction of discovery.

On January 24, 2006, Magten served NorthWestern with a First Request for Production of Documents (the "First Request"). Upon receipt of the First Request, NorthWestern moved for a protective order and, relying on Local Rule 30.2, refused to produce any documents while the motion was pending with the Court. D.I. 55. Seven months later, by order dated September 29, 2006, the Court denied the motion in their entirety. D.I. 86.

Thereafter, NorthWestern continued to use stall tactics to avoid producing responsive documents. On December 15, 2006, Magten filed a Motion to Compel Production of Documents and for Expenses (the "First Motion to Compel") for the reasons set forth in greater detail in its First Motion. D.I. 99.

On January 29, 2007, the Special Master conducted a hearing on the First Motion to Compel. The Special Master treated the transcript of that hearing as his report and recommendation to the Court, *see* Brewer Decl. Exh. 3 at 116:4-7 and D.I. 116, and that report and recommendation was subsequently adopted as an order of the Court. D.I. 119. That order directed NorthWestern (i) to complete the production of documents by March 16 and (ii) to produce its privilege log relating to that production by March 23:

> I am going to require NorthWestern to have substantially completed its production of documents in response to these two document requests, except for good cause shown, **no later than March 16, 2007** with a privilege log relating to that production **no later than March 23**.

*See* Brewer Decl. Exh. 3 at 114:20-115:3.

This provides the contextual background for the more recent round of obstructive tactics.

5

## DISCUSSION

### A.   Entry of an Order Shortening the Briefing Period and Setting a Hearing Date Before the Special Master Is Critical to Completing Discovery.

Consolidated fact discovery in these cases closes within weeks. D.I. 94. Even at this late date, NorthWestern is refusing to produce, under claim of privilege, hundreds upon hundreds of critical documents that either do not appear to be privileged or are clearly not privileged. These include documents as to which NorthWestern has waived privilege by disclosing them to the SEC and/or other third parties. Barely a week ago, NorthWestern began to demand the return of thousands of pages of documents that it had previously produced, including some documents produced over 3 months ago, on the claimed basis of inadvertent production and privilege.[4]

NorthWestern's tactics in failing to produce non-privileged documents and demanding the return of thousands of pages of documents previously produced threaten Plaintiffs' ability to address all relevant topics and documents on the eve of deposition discovery. Unless the period for deposition discovery is extended, time will not permit Plaintiffs to recall witnesses to question them about documents that are currently shielded by NorthWestern's tactics. In the case of third party witnesses who will be deposed pursuant to subpoena (including former officers of NorthWestern who participated in the fraudulent transfer), it may be difficult to recall them at all.

Viewed against the backdrop of the Scheduling Order, NorthWestern's tactics necessitate that Plaintiffs seek to expedite the Special Master's consideration and determination of the issues raised by the Motion. Specifically, Plaintiffs seek to shorten the briefing period provided under Local Rule 7.1.2, so that the Special Master can begin his consideration of fully briefed issues

---

[4]    On April 10 and 12, 2007, NorthWestern's counsel identified additional tranches of documents it claims were inadvertently produced, together with a demand for the return or destruction of same.

120087.01600/40168316v.1

within one week. To accomplish this, Plaintiffs respectfully request that the Special Master shorten to three (3) days the time for NorthWestern to respond to the Motion. To further speed the process, Plaintiffs will agree to waive their right to file a reply brief. Additionally, Plaintiffs respectfully request that the Special Master schedule a hearing to consider the substantive issues raised by the Motion, at the Special Master's earliest convenience. A proposed form of order shortening the briefing interval and scheduling a hearing is respectfully attached to the Motion at tab B.

**B.    There Is No Obligation to Return, Destroy or Sequester the Previously-Produced Documents Under either the Confidentiality Order Entered in these Cases or Rule 26(b)(5)(B).**

NorthWestern's counsel Jennifer Bagnato sent a letter addressed to Magten's counsel John Brewer (the "Demand Letter;" *see* Brewer Decl. Exh. 4) by email late at night (approximately 11 pm; *see* Brewer Decl. Exh. 5) on April 5, 2007, which was Holy Thursday. Mr. Brewer had previously advised the other parties' counsel that he would be away from the office and not checking messages due to his observance of Good Friday and Easter. *See* Brewer Decl. Exh. 6. Mr. Brewer thus did not have an opportunity to read the letter until Easter Monday, April 9.

The Demand Letter demands the return or destruction of 70 different ranges of Bates-numbers from NorthWestern's prior document production, some of which ranges are not individual documents but collections of documents over a thousand pages long. Cumulatively, the documents subject to the Demand Letter constitute several thousand pages and fill six large three-ring binders. The documents were produced by NorthWestern at various dates going back as far as January 11 of this year.

7

The Demand Letter asserts that slightly over half of the items requested correspond to items on the privilege log NorthWestern gave Magten on March 23 -- the final deadline imposed by the Special Master's previous order for the log, but does not provide any explanation of which Bates-numbers of documents previously produced correspond to which entry on the log -- a log with over 1,600 entries.[5] The Demand Letter concedes that the remaining 30 items were not included in that log, but claims (again without cross-referencing any specific entries, thus making the assertion impossible to verify) that those items were included on an untimely purported supplemental log sent to Magten on April 5, 2007 -- almost two weeks after the deadline for completing the log. That supplemental log (see Brewer Decl. Exh. 8, including an updated names index) contains over 120 additional entries, indicating that in addition to the 30 items which NorthWestern demanded be returned at least 90 additional documents had neither been produced by the March 16 deadline for production nor included on the privilege log by the March 23 deadline for its completion.

We have prepared a chart (see Brewer Decl. Exh. 9) which shows which items subject to the Demand Letter were produced on which dates, and which are and are not said to have been included on the privilege log by the March 23 deadline.

The Demand Letter purports to be based both on newly enacted Fed. R. Civ. P. 26(b)(5)(B) and paragraph 8 of the confidentiality stipulation approved by the Court in these cases (D.I. 121 -- the "Confidentiality Order"). The Demand Letter is not adequately justified under either basis.

Paragraph 8 of the Confidentiality Order provides in pertinent part that (emphasis added) "*Inadvertent* production of material *subject to* work-product immunity, the attorney-client

---

[5]      The log, together with an accompanying names key is Brewer Decl. Exh. 7.

8

privilege or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege, provided that the producing party shall *promptly* notify all receiving Parties in writing of such inadvertent production." The paragraph then provides for the return or destruction "[u]pon reasonable notice" of (emphasis added) "*such* inadvertently produced documents." Thus, as set out at length in the letter of April 11 from Magten's counsel to NorthWestern's counsel (*see* Brewer Decl. Exh. 10), an obligation to return or destroy documents only arises when: (a) the documents are, in fact, subject to privilege; (b) their production was, in fact, inadvertent, *and* (c) notice of the inadvertent production was given promptly. In other words, it is clear that there is no obligation to return or destroy documents which are not in fact privileged; there is no obligation to return or destroy previously privileged documents whose production was not in fact inadvertent (which would waive privilege); and there is no obligation to return previously privileged documents where the request for return is not made promptly after the inadvertent production (the delay in requesting return again waiving privilege).

As we explained to NorthWestern's counsel, it does not appear that any of the three requirements, much less all three, have been satisfied here. It is obvious from the face of the Demand Letter, when compared to the timeline of production set forth in Brewer Decl. Exh. 9, that the request for return was not made promptly, especially in the context of a case where document production had been ongoing for months. Over half of the items were produced in January or early February. Less than a quarter were produced in the 30 days prior to the date of the request. NorthWestern's several prior requests for return or destruction of allegedly inadvertently produced privileged material, all of which we voluntarily complied with, were by

9

contrast made within much shorter periods of time after the production. *See, e.g.*, Brewer Decl. Exh. 11.

The promptness requirement is no mere formality. The burden of complying with a request to return or destroy documents (and also to identify and purge notes or work product based on those documents) increases exponentially as time goes by, as counsel work with the documents for deposition or trial preparation. In a fast-moving case like this one, where return is demanded months after production as depositions are commencing and the end of fact discovery approaching, the prejudice caused by untimely notice is particularly dramatic. Indeed, the promptness requirement avoids the possibility of deliberate delay in requesting return of documents for the purpose of making such a demand at the most disruptive time for the adversary's case preparation. It cannot be assumed that the belated timing of NorthWestern's demand at just the point when it would be most disruptive to comply with is sheer coincidence.

The Demand Letter also provides no substantiation for its assertion that the production of the documents in question was inadvertent, rather than a conscious decision being second-guessed long after the fact,

# REDACTED

REDACTED

For another example, NorthWestern requested the return of 13 items from their January 25 production as to which they previously requested return of allegedly inadvertently produced materials (*see* Brewer Decl. Exh. 11), demonstrating that they did not consider these documents to have been inadvertently produced even when they had already double-checked that portion of their production for just that purpose. Indeed, they have even requested the return of 7 items from their belated March 23 production, which consisted of almost 25,000 pages of additional documents NorthWestern said at the time (*see* Brewer Decl. Exh. 12) had not been produced by the March 16 deadline imposed by the Special Master because they had been withheld on the basis of a privilege claim they had subsequently determined was not tenable, again demonstrating that a focused and affirmative determination to produce was made.

Moreover, even documents produced accidentally can not be deemed "inadvertently produced" for purposes of avoiding waiver unless the producing party or its counsel took reasonable, even if not foolproof, steps to avoid such production. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287 (D. Mass. 2000) (holding privilege waived when producing party's counsel failed to take reasonable precautions); *In re Hechinger Inv. Co.*, 303 B.R. 18, 25 (D. Del. 2003) (noting relevance of inadequate precautions to analysis). Significantly, in *Amgen* the court considered both the volume of supposedly inadvertently produced material (3821 pages, comparable to that at issue here) and lack of prompt notice as evidence of that failure to take reasonable precautions. 190 F.R.D. at 293. Here, there is no information at all as to how the "inadvertent" production occurred and what safeguards were in place.

11

Finally, the Demand Letter does not provide any basis to evaluate its claim that any of the documents referenced were privileged in the first place, inadvertence and promptness aside. While it claims that each of the items was either included on the original March 23 log or the belated and untimely April 5 log, it does not match up any of the 70 items it references by number to any of the approximately 1750 items on the log as purportedly supplemented.[6] Without such a cross-reference, NorthWestern has not complied with Rule 26(B)(5)(A) by stating the basis for its claim of privilege – which *a fortiorari* means it has not stated a basis for a conclusion that the claim is well-taken.

Even if the log entries were specified, there can be no presumption that privilege is established. As discussed (*infra* and *supra*), NorthWestern belatedly admitted on April 9 that literally hundreds of documents on its log had been disclosed to the SEC (causing a waiver of privilege under the controlling Third Circuit *Westinghouse* rule). Separately, hundreds of items on the log are not entitled to any privilege based on the information shown on the face of the log. We strongly suspect that many of the items subject to the Demand Letter are non-privileged on one or both of these grounds.

Others are or may be non-privileged for yet additional reasons.

# REDACTED

Moreover, the Demand Letter admits that 30 of the 70 items referenced were not included on the privilege log by the March 23 deadline imposed by the

---

[6]    Two further letters received from NorthWestern's counsel on April 12 (Brewer Decl. Exhs. 13 and 14) demand the return of additional documents, without even claiming they had been logged, much less identifying log numbers. These demands fail for the same reasons as the Demand Letter does.

Special Master, meaning any otherwise valid privilege claim as to those documents has been waived. *Get-A-Grip, II, Inc. v. Hornell Brewing Co.*, 2000 U.S. Dist. LEXIS 11961, at *10 (E.D. Pa. Aug. 8, 2000) (because log was provided after court-imposed deadline, "any claim of attorney-client privilege and/or the work product doctrine have been deemed waived as untimely asserted").

In their April 11 letter to Magten's counsel (*see* Brewer Decl. Exh. 15), NorthWestern's counsel focused on newly-enacted Rule 26(b)(5)(B), apparently considering it more favorable ground, because unlike the Confidentiality Order its text: (a) does not expressly specify that a return request be made "promptly"; (b) does not expressly specify that the prior production have been inadvertent; and (c) applies to documents that are "subject to a [presumably good-faith] claim of privilege" as opposed to the stricter requirement of the Confidentiality Order that the documents actually be "subject to . . . the attorney-client privilege." However (even beyond the implausibility of any claim that the rule is meant to allow indefinite delay or reclamation of documents where production was not inadvertent), this alternative ground does not assist NorthWestern.

Rule 26(b)(5)(B) expressly requires any request for return of allegedly privileged documents to include both "the claim and the basis for it." The Advisory Committee notes state (in their third paragraph) that the notice given "should be as specific as possible in identifying the information and stating the basis for the claim" and "sufficiently detailed so as to enable the receiving party and the court to understand the basis for the claim and to determine whether waiver has occurred." NorthWestern has provided the claim but not its basis, both because of its failure to provide privilege log cross-references as described above and its failure to provide any information about the circumstances of the allegedly inadvertent production. A self-serving

13

recital that the documents are privileged and their production was inadvertent with exactly zero supporting detail is obviously insufficient.

For all of these reasons, the Demand Letter does not give rise to any obligation for Plaintiffs to take any action in response under either the Confidentiality Order or Rule 26(b)(5)(B). Nonetheless, in an effort to promote an orderly resolution of the dispute, Plaintiffs have elected to invoke the adjudication process contemplated by the Rule and "promptly present the information to the court under seal for a determination of the claim."[7]

## C.   Immediate Production Should Be Ordered of Improperly Withheld Documents Which Are Not Privileged.

There are a number of different categories of documents wrongly withheld based on a groundless claim of privilege (collectively, the "Subject Documents").

**Documents Voluntarily Disclosed to SEC**. The Third Circuit has unequivocally held in *Westinghouse* that voluntary production of otherwise privileged documents to the SEC irrevocably waives any privilege or work product protection in subsequent civil litigation against other adversaries. 951 F.2d at 1425, 1429. There are those who believe that disclosure to the SEC should not cause such waiver: a highly controversial potential amendment to the Federal Rules of Evidence would support that view, and a few courts outside the Third Circuit have disagreed with *Westinghouse*. But unless and until there is supervening legislative change, this question is settled in the Third Circuit.[8]

---

[7]    As noted above, a five-binder set of the materials in dispute is at the offices of Magten's Delaware counsel, awaiting the Special Master's instructions for delivery.

[8]    Moreover, the Third Circuit's rejection of any claim that privilege can be maintained once documents are disclosed to the SEC is consistent with the strong majority position among the circuits. *See In Re Qwest Communications Int'l Inc. Securities Litig.*, 450 F.3d 1179 (10th Cir. 2006) (collecting cases).

14

NorthWestern has not only withheld hundreds of documents which *Westinghouse* mandates be produced, it provided an intentionally incomplete and deceptive privilege log to conceal the magnitude of what it had done. Only after repeated demands on Magten's part did NorthWestern finally admit, on April 9, that hundreds of withheld documents on its log had been provided to the SEC although the initial log had failed to so disclose. *See* Brewer Decl. Exh. 16.

This was hardly an inadvertent oversight, because NorthWestern had been repeatedly placed on notice of the issue. The history is set forth in correspondence attached to the Brewer Declaration and summarized briefly here.

On March 14, 2007, counsel for Magten wrote to counsel for NorthWestern to remind them that disclosure of documents to the SEC had waived any privilege or work product protection that might otherwise apply to those documents, based on the controlling law of the Third Circuit's opinion in *Westinghouse. See* Brewer Decl. Exh. 17. That letter went on to say, however, that if NorthWestern refused to accept the binding force of *Westinghouse* it was obliged to expressly disclose on its privilege log which documents it was withholding had been disclosed to the SEC.

On March 23, 2007, the deadline imposed by the Special Master, NorthWestern produced its privilege log. *See* Brewer Decl. Exh. 7. That log did not disclose any documents as having been received by the SEC, except for a handful (items 1512 through 1519) as to which no privilege was asserted but which were claimed to be withheld on the basis of Fed. R. Evid. 408. Rule 408, of course, limits admissibility at trial but provides no privilege from production. *NAACP Legal Defense Fund v. United States Dept. of Justice*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) (production ordered because Rule 408 is intended to limit introduction of evidence at trial, not to be a broad discovery privilege).

15

On March 29, 2007, Magten's counsel sent a letter   REDACTED

demanding supplementation

of the log as well as immediate production of the non-privileged documents withheld on bogus

Rule 408 grounds.[9] *See* Brewer Decl. Exh. 18.

NorthWestern did not respond to this demand until April 9, when it finally and belatedly

disclosed that approximately 400 of the entries on its privilege log had been shared with the

SEC, although the initial log had concealed that legally dispositive fact. NorthWestern

nonetheless stated that it would not produce these documents, nor would it produce the

documents withheld on Rule 408 grounds and not even claimed to be privileged. *See* Brewer

Decl. Exh. 16.

NorthWestern's position is untenable under *Westinghouse*, and its concealment of the

crucial fact about the documents it was withholding shows that it knew so. Privilege has been

waived as to all of these documents, and NorthWestern should be compelled to produce them

immediately, as well as the alleged Rule 408 material that was not even arguably privileged in

the first instance.[10] This is a classic attempt to misuse privilege as a sword rather than shield;

when it was in NorthWestern's interest to disclose to the SEC in hope of more lenient treatment

it did so; now that it fears that the same documents will confirm its liability to Plaintiffs, it

wishes to hide them. Moreover, Plaintiffs suspect that at least some of the allegedly

inadvertently produced documents that NorthWestern has demanded the return of were disclosed

---

[9]         REDACTED          . All references to that
document have been redacted from the version of the letter attached as Brewer Decl. Exh. 18.

[10]    Incredibly, NorthWestern has neither produced nor even logged its final settlement agreement with the SEC
(the non-public document by which it agreed to the entry of the Cease and Desist Order). It should be
compelled to produce this as well.

16

to the SEC, destroying any possible basis for a return obligation, but NorthWestern has failed to make it possible to determine which of the Bates-number ranges for the documents it demands the return of correlate with the privilege log entries where disclosure to the SEC has now been admitted.

**Documents Not Logged Before the March 23 Deadline**.    As noted above, NorthWestern's purported supplemental log of April 5 (*see* Brewer Decl. Exh. 8) lists approximately 120 previously unlogged items, an unspecified 30 of which are subject to the Demand Letter and the remainder of which have apparently never been produced. When a claim of privilege is not made by the court-imposed deadline for producing a log, any privilege is waived, and these documents must therefore all be produced. *Get-A-Grip, II, Inc. v. Hornell Brewing Co.*, 2000 U.S. Dist. LEXIS 11961, at *10 (E.D. Pa. Aug. 8, 2000) (because log was provided after court-imposed deadline, "any claim of attorney-client privilege and/or the work product doctrine have been deemed waived as untimely asserted").

**Documents Not Privileged on the Face of the Log**. On March 23, 2007, the final deadline imposed by the Special Master, NorthWestern provided Magten with a privilege log. Pursuant to Fed.R.Civ.P. 26(b)(5)(a), a party who claims privilege over documents is required to disclose the basis for making such a claim and "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Following Magten's initial review of NorthWestern's privilege log, which listed more than 1600 documents, Magten identified approximately 275 items listed on the privilege log that simply do not appear to be privileged based on the information provided on the face of the log and thus are inconsistent with any claimed right to privilege.

17

Based on Magten's review of the privilege log (*see* Brewer Decl. Exh. 7), which Magten reviewed in conjunction with the "name reference key" provided by NorthWestern, Magten compiled an initial list of documents that on the face of the log appear to be non-privileged. On April 5, Magten sent a letter to NorthWestern's counsel attaching the initial list of such documents. *See* Brewer Decl. Exh. 19.    Upon further review of the privilege log, Magten compiled a second list of documents that appear not to be privileged and sent another letter to NorthWestern on April 10 attaching that list. *See* Brewer Decl. Exh. 20.

The documents contained on both lists provided to NorthWestern include two types of documents: (i) documents where no lawyer is shown as associated with the document and (ii) documents that are shown (based on the information NorthWestern provided in the accompanying names index) as having been communicated to or from third parties outside any attorney/client relationship NorthWestern or its subsidiaries might have had. An example of a document that appears to be non-privileged based on the description of the log is item 572. Item 572 is identified as an email sent by Michael Neiman, an employee at NorthWestern, to, among others, Reiner Boehning, who is identified as an employee of Credit Suisse First Boston ("CSFB"). While Paul Hastings, counsel for NorthWestern, is copied on this correspondence, there can be no privilege since a third party (CSFB) is a recipient of the email. Another example is item 727, which is identified on the privilege log as an email correspondence sent by an individual at the law firm of Bryan Cave to, among others, employees of NorthWestern as well as an individual identified as an employee of Cavallo Capital. Once again, no privilege can be asserted for this communication. A third example (and final illustration for purposes of this Motion) is item 1182, which is identified as an email sent by James McCarrick of Paul Hastings to, among others, Alta Yen, identified on the "names reference key" as an employee of GE

18

Capital. Of course, "[t]he attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed." *United States v. Rockwell International*, 897 F.2d 1255, 1265 (3rd Cir. 1990). Moreover, there are numerous cases specifically holding that sharing confidential communications with a company's outside auditors (as was the case with many of the other documents at issue here) waives the attorney-client privilege. *See Union Pacific Resources Group, Inc. v. Pennzoil Company*, 1997 U.S. Dist. LEXIS 24216, at *16-17 (D. Del. Sep. 2, 1997). There can be no privilege for these documents, as well as the other 275 documents listed by Magten in its letters to NorthWestern.

Since sending NorthWestern the April 5 and April 10 letters, NorthWestern has refused to respond to Magten's requests to produce these non-privileged documents.

## D.    Immediate Production Should be Ordered of Documents Produced in Illegible Form.

After an initial review of the first few installments of documents received from NorthWestern, it came to Magten's attention that there was a technical glitch affecting a portion of the documents. Specifically, many if not all of the Excel spreadsheets produced by NorthWestern cannot be viewed as a complete spreadsheet because the documents are cut off both on-screen and when printed, and the missing pieces cannot easily be matched up. Upon learning of this problem, counsel for Magten consulted its technical support analysts to better understand the technical nature of the problem  -- the purpose of which was to be able to communicate to NorthWestern the steps it needed to take to correct the problem and ensure that the problem does not continue to occur with Excel spreadsheets produced in future installments. Accordingly, on January 26, 2007, Magten sent NorthWestern a letter detailing the problem with the Excel documents and attached as an exhibit an illustrative list of documents from the earlier

tranches of productions that presented this exact problem (the "January 26 Letter"). *See* Brewer Decl. Exh. 21. The January 26 Letter was clear that the attached list of problem documents was not comprehensive, did not reflect review of the more recently-received installments and noted that the problem needed to be corrected in all future productions "so that neither of us needs to repeat this exercise."

After more than a month passed and NorthWestern failed to respond to the January 26 Letter, counsel for Magten sent NorthWestern a follow-up email, stressing the time sensitive nature of the issue and asking for an immediate response. On March 13, more than six weeks after Magten sent the January 26 Letter, NorthWestern produced a disc containing an installment of reformatted documents. However, the reformatted documents produced were only those that were identified in the January 26 Letter by way of illustration. Moreover, since the January 26 Letter, NorthWestern continued to produce documents in an unreadable format and took no steps to replace any other problem documents in its March 13 response.

On March 14, 2007, Magten sent a response letter to NorthWestern expressing its disappointment with NorthWestern's failure to adequately address the problem of the illegible Excel documents and noted that, given NorthWestern's upcoming discovery deadline of March 16, Magten expected that NorthWestern would replace all problem documents by the end of the day on March 16. *See* Brewer Decl. Exh. 22. NorthWestern responded on March 16 by feigning indignation that the March 16 deadline was inappropriate, claiming that it was not incumbent on it to determine which documents were illegible and refusing to take steps to correct the problem. In response, on March 19 Magten sent a letter to NorthWestern regarding NorthWestern's inappropriate response. *See* Brewer Decl. Exh. 23. Magten noted that at no time prior to March 13 did NorthWestern let Magten know that it was unwilling to comply with Magten's requests

and stressed the disturbing fact that NorthWestern made no effort to avoid producing additional Excel documents in an illegible form after we alerted NorthWestern to the problem.

Due to NorthWestern's inadequate response and attention to the issue at hand, Magten had no practical alternative but to compile a complete list of the bates-numbers of the illegible Excel documents and provide that list to NorthWestern so that they may be immediately replaced. Accordingly, by follow-up letter on March 28, Magten sent NorthWestern a nearly complete list of illegible Excel documents (with the exception of any problem documents contained in NorthWestern's belated production of 25,000 pages made on March 23). *See* Brewer Decl. Exh. 24. In the March 28 letter, Magten requested that NorthWestern inform Magten if it anticipated that the provision of replacement documents would take more than five days to complete so that Magten can prioritize particular items.

Given the upcoming fact discovery deadline and in effort to streamline the process, on March 30, Magten sent NorthWestern a letter attaching a list of documents that Magten identified as a priority for reformatting, as well as additional problem documents from the final installment of production. *See* Brewer Decl. Exh. 25.

After further telephone conversations and correspondence with NorthWestern's counsel in which the possibility of a compromise was discussed, the parties reached an impasse. Consequently, on April 11, 2007, Magten sent a final letter to NorthWestern stressing that the expense and burden on NorthWestern of replacing the Excel documents was the result of NorthWestern's choice to proceed in a fashion (using the problematic format) that NorthWestern knew was virtually guaranteed to render them illegible. *See* Brewer Decl. Exh. 26. The alleged burden on NorthWestern complying at this point in time is the result of its failure to deal with the issue at any time between late January and the March 16 deadline for the completion of

21

document production. Magten would have long since obtained legible copies had NorthWestern not been dilatory. Thus, NorthWestern should be compelled to reformat and replace all problem documents immediately.

**E.    The Period to Complete Deposition Discovery Should Be Extended to Allow Review of the Subject Documents.**

The Subject Documents, especially those relating to the SEC investigation, are critical to Plaintiffs' ability to efficiently prepare for depositions scheduled to be completed within the next several weeks. As many of the deponents are third parties, the depositions are scheduled at various locations throughout the Midwest. Unless the Subject Documents are produced in time to permit counsel and the witnesses to prepare to address all relevant topics and documents during the initial deposition, it will likely be necessary to recall witnesses to testify concerning the Subject Documents if they are produced following the deposition. However, many of the witnesses are third parties who will appear pursuant to subpoena, and they may not be subject to recall. Accordingly, the Plaintiffs request that the date for completing deposition discovery be extended beyond the deadline currently set by the Scheduling Order in this case, D.I. 94, until a reasonable date after the production of the documents that are the subject of this Motion.

**F.    Plaintiffs' Reasonable Fees and Other Expenses Should Be Assessed Against NorthWestern.**

Finally, Plaintiffs seek reimbursement for the fees, costs and other reasonable expenses (including, without limitation, their pro-rata share of the fees for the services of the Special Master and court reporter) they have incurred in connection with this Motion, as sanctions against NorthWestern for its failure to fully comply with its discovery obligations.

22

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the entry of orders to (a) shorten the briefing schedule under Rule 7.1.2 and set an expedited hearing date in the form of the proposed order attached as tab B to the Motion; (b) determine that NorthWestern is not entitled to the return of any of the materials specified in the Demand Letter and its follow-ups, and that Plaintiffs are entitled to retain those materials and use them for purposes of the litigation; (c) compel NorthWestern to produce all documents requested by this Motion, including (i) all previously withheld documents on its privilege log which were listed in the attachment to its April 9, 2007 letter as having been disclosed to the SEC, (ii) all withheld documents not identified on a privilege log by March 23, 2007, including without limitation all of those listed on the purported April 5, 2007 supplement to the log; and (iii) all previously withheld documents on its privilege log listed in the attachments to Magten's letters dated April 5 and April 10; (d) compel NorthWestern to produce legible replacement copies of all documents specified in the attachments to Magten's letters dated March 28 and 30; (e) extend the deadline for the completion of deposition discovery to permit Plaintiffs a reasonable opportunity to review the documents that are the subject of this Motion and to then question deponents regarding them; and (f) assess Plaintiffs' reasonable fees and costs for preparing this Motion, together with other appropriate expenses (including Plaintiffs' pro-rata share of the fees for the services of the Special Master and court reporter), against NorthWestern as sanctions.

120087.01600/40168316v.1

Dated:  Wilmington, Delaware
April 13, 2007

**BLANK ROME LLP**

*Dale R. Dubé*

Dale R. Dubé (DE No. 2863)
Bonnie G. Fatell (DE No. 3809)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management
Corporation

**SMITH, KATZENSTEIN & FURLOW, LLP**

/s/  Kathleen M. Miller

Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone:  (302) 652-8400
Facsimile:  (302) 652-8405

-and-

**NIXON PEABODY LLP**
John V. Snellings
Amanda Darwin
100 Summer Street
Boston, MA 02110
Telephone:  (617) 345-1201
Facsimile:  (866) 947-1732

Counsel for Law Debenture Trust
Company of New York

24