## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1494 (JJF) |
| NORTHWESTERN CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-499 (JJF) |
| MICHAEL J. HANSON and ERNIE J. KINDT, | ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JENNIFER A. BAGNATO

JENNIFER A. BAGNATO, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a member of the bar of the United States District Court for the Southern District of New York, and an associate at the firm of Curtis, Mallet-Prevost, Colt & Mosle LLP, counsel for defendant NorthWestern Corporation ("NorthWestern") in the above-referenced action.  I submit this declaration in support of NorthWestern Corporation's Opposition to Plaintiffs' Emergency Motion.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a letter dated December 11, 2006 from counsel for NorthWestern to counsel for Magten Asset Management Corporation ("Magten").

3.      Attached hereto as Exhibit 2 is a true and correct copy of a letter dated December 14, 2006 from counsel for Magten to counsel for NorthWestern.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the subpoena for documents served by Plaintiffs upon the SEC on March 27, 2007.

5.      From the beginning of its document production, NorthWestern has produced its electronically stored documents as "tiffs." I have been informed that tiffs are images of a document as it would look when printed out page by page. I understand that the advantages of producing documents as tiffs are that they can be easily numbered and there is no way to change or delete data in a tiff. These advantages have made tiff images the most common way for parties to produce documents.

6.      I have also learned that a tiffing certain documents, known as Excel spreadsheets, does create a problem during document production. Specifically, if an Excel spreadsheet is not formatted correctly for printing before it is converted to a tiff, the rows and columns expand and are scattered throughout several, and sometimes hundreds, of pages.

7.      Another method of producing documents is to produce them in "native format." I have been informed that that native format means that the document is produced as a copy of the actual Excel file – as opposed to a tiff, which is a copy of a printout. Production of documents in native format is not common practice and it presents several problems. First, I understand that it is not possible to Bates number native files. The lack of Bates numbers on a document could be problematic if a party wanted to introduce the document at a deposition or reference it in a brief. Second, a party with access to a native file can make changes or deletions to the data or the information contained therein. Further, any such changes would not be readily

apparent to anyone viewing the document. Instead, changes could only be determined though a line by line comparison between the changed version and the original file.

8.    In order to provide legible copies of Excel spreadsheets as tiffs, someone must open the Excel file in native format, adjust the column widths and row heights, set the proper print area, and make other various adjustments to the format of the document so that it may be printed in a cohesive page by page format. In some cases, with large documents containing significant amounts of data, it can take several hours to reformat just one Excel spreadsheet.

9.    Attached hereto as Exhibit 4 is a true and correct copy of a letter dated March 13, 2007 from counsel for NorthWestern to counsel for Magten.

10.    Attached hereto as Exhibit 5 is a true and correct copy of a letter dated March 16, 2007 from counsel for NorthWestern to counsel for Magten.

11.    Attached hereto as Exhibit 6 is a true and correct copy of another letter dated March 16, 2007 from counsel for NorthWestern to counsel for Magten.

12.    On March 28, 2007, I received a letter from Magten's counsel, John Brewer, listing over 3200 documents which needed to be reformatted. After receipt of the letter, I telephoned Mr. Brewer. During the telephone conversation, I stated NorthWestern's position that it is unreasonable to reformat every single one of the documents listed in the March 28 letter. I also stated that NorthWestern would not reformat any repeats that may be on the list. Since Mr. Brewer's letter offered to prioritize the list of 3200 documents, I asked that he do so and to provide us with this priority list.

13.    By letter dated March 30, 2007, Magten provided a list of 63 Excel spreadsheets to NorthWestern. On April 2, 2007, I telephoned Mr. Brewer to discuss this list.

Specifically, I asked him whether he knew if Magten would need more documents reformatted than those 63 listed in his March 30 letter. Mr. Brewer stated that at that time it was hard to tell whether Magten needed more that the 63 documents to be reformatted. He stated that, for example, he could not tell now from looking at NorthWestern's production of Excel documents whether Magten's expert would need additional documents Excel sheets to be reformatted.

14.   Attached hereto as Exhibit 7 is a true and correct copy of a letter dated April 3, 2007 from counsel for NorthWestern to counsel for Magten.

15.   Attached hereto as Exhibit 8 is a true and correct copy of a letter dated April 27, 2007 from counsel for Magten to counsel for NorthWestern.

I declare under the penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
       April 27, 2007


_____
Jennifer A. Bagnato

# EXHIBIT 1

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL info@cm-p.com
INTERNET www.cm-p.com

WRITER'S DIRECT:
TEL.: 212-696-6196

December 11, 2006

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

> Re:   *Magten Asset Management Corp. and Law*
> *Debenture Trust Co. v. NorthWestern Corp.*;
> C.A. No. 04-1494-JJF

Dear Bonnie:

I am receipt of your letters dated December 4 and 5 regarding document discovery and depositions. We disagree with your contention that NorthWestern has been dilatory in responding to Magten's discovery requests. To the contrary, since your requests became operative on September 29, NorthWestern has submitted its Responses and Objections to Plaintiffs' First Request for Production of Documents, produced documents and explored with you ways to cut down the time and expense of an enormous document production by entering into stipulations where appropriate.

With respect to the proposed stipulation, once we have had an opportunity to review the draft stipulation which you are preparing, we will give you our views as to how to best represent the value of the support agreements between NorthWestern and Clark Fork. Because discovery is consolidated in these three actions, we believe you are correct that all defendants will have to agree to the stipulation.

With respect to a timetable for responding to the remainder of the requests that are not the subject of the proposed stipulation, we hope to have additional documents to you later this week. We do not agree that all of the documents produced to the SEC are necessarily relevant to the issues in this litigation. However, to the extent that the production of any of these documents are called for, and they are otherwise relevant and not privileged, they will be produced. In addition, we are advised that no documents were produced to the McGreevy plaintiffs in their lawsuit involving the Transfer. We will endeavor to continue to produce documents responsive to your requests on a continuing basis. However, until we have agreed on

3302797v1

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 2

Bonnie Steingart, Esq.
December 11, 2006

the scope of production, including any possible stipulation, we cannot advise you of the date upon which we expect NorthWestern's document production to be completed.

With respect to request number 8, we do not recall reaching an agreement as to how to specifically narrow this request. We would suggest limiting the request to documents covering the QUIPS and/or the QUIPS Indenture which relate to the Transfer or the impact of the Transfer on the QUIPS holders.

Your understanding of our discussion regarding our response to requests 12, 19 and 30 is accurate – we will produce responsive documents subject to our general objections.

With respect to the six witnesses you currently anticipate deposing, please be advised that they are no longer employed by NorthWestern or its subsidiaries and we do not represent them and are not authorized to accept service on their behalf. As soon as we learn the identity of counsel for these witnesses, we will pass it along. Your primary contact for Mr. Hanson, as well as Mr. Kindt should continue to be the Browning, Kaleczyc firm. We will take under advisement your request for the names of the individuals who have received Wells notices.

On a related matter, we have not yet received any of the correspondence you or your local counsel have had with non-parties regarding subpoenas.

Yours truly,

Joseph D. Pizzurro

cc: Gary L. Kaplan, Esq.
    John W. Brewer, Esq.
    Bijan Amini, Esq.
    Jesse H. Austin, III, Esq.
    Victoria W. Counihan, Esq.
    Dennis E. Glazer, Esq.
    David A. Jenkins, Esq.
    Paul Spagnoletti, Esq.
    Denise Seastone Kraft, Esq.
    Adam G. Landis, Esq.
    Dennis A. Meloro, Esq.
    Curtis S. Miller, Esq.
    Kathleen M. Miller, Esq.
    John V. Snellings, Esq.
    Dale R. Dubé, Esq.
    Stanley T. Kaleczyc, Esq.
    Kimberly A. Beatty, Esq.

# EXHIBIT 2

Fried, Frank, Harris, Shriver & Jacobson LLP

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8004
Fax: 212.859.8583
steinbo@ffhsj.com

December 14, 2006

## VIA ELECTRONIC MAIL

Joseph Pizzuro, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

Re:     *Magten Asset Management Corp. and Law Debenture Trust Co. v. Northwestern Corp.; C.A. No. 04-1494-JJF*

Dear Joe:

I write to express my disappointment with the positions taken in your letter dated December 11, which regrettably leave us with no choice but to file a motion to compel.

As to your continuing refusal to even provide a date by which you will complete your production of documents, there appears to be nothing to be said that has not already been said, except to note that your attempt to tie your obligation to commit to such a date with final agreement on our withdrawal of certain requests in return for an acceptable stipulation is brand new, and was not mentioned in any of our prior discussions. Obviously you could provide us with a date by which you could complete production of all documents other than those which would be unnecessary if agreement is reached on the terms we have discussed (with the caveat that the need to produce additional documents might affect the timing), but you have not done so.

I am, frankly, even more troubled by your position with respect to documents your client has already produced to the SEC. You do not deny that these documents have long since been assembled in a form in which they could readily be produced to us and do not require privilege review before production. There is no good reason why they have not already been produced to us, or why you cannot now produce them immediately. Especially given the focus in Judge Case's decision on the threshold fraud issue, which relates to exactly the same false and misleading NorthWestern financial statements your client has publicly admitted are the subject of the SEC's

Fried, Frank, Harris, Shriver & Jacobson LLP

December 14, 2006
Page 2

inquiry, we cannot imagine that there are any documents in the SEC production which would not be relevant to this litigation. We are also highly skeptical that there are any such documents which would not be responsive to one or more of the outstanding requests as to which you have indicated you will produce responsive documents.

Given the general professionalism we have previously experienced from you and your firm and the fact that working out issues like these consensually is usually to the benefit of all parties to a litigation, we are somewhat puzzled as to the reason for the continued delay and stonewalling. It suggests some motive on the part of your client above and beyond the generic tendency sometimes displayed by defendants to favor delay for its own sake. In particular, we have begun to wonder whether your client is hoping to keep certain damaging information out of view until the Montana Public Service Commision and other regulators have completed their review of NorthWestern's proposed transaction with BBI. Your client should assume that we will take any and all steps necessary to ensure prompt production of these materials.

Yours truly,

Bonnie Steingart

cc:     Gary L. Kaplan, Esquire
        John W. Brewer, Esquire
        Dale R. Dubé, Esquire
        Bijan Amini, Esquire
        Steven J. Reisman, Esquire
        Jesse H. Austin, III, Esquire
        Victoria W. Counihan, Esquire
        Nancy E. Delaney, Esquire
        Karol K. Denniston, Esquire
        Dennis E. Glazer, Esquire
        Miriam K. Harwood, Esquire
        David A. Jenkins, Esquire
        Paul Spagnoletti, Esquire
        Stanley T. Kaleczyc, Esquire
        Kimberly A. Beatty, Esquire

Fried, Frank, Harris, Shriver & Jacobson LLP

December 14, 2006
Page 3

Denise Seastone Kraft, Esquire
Adam G. Landis, Esquire
Dennis A. Meloro, Esquire
Curtis S. Miller, Esquire
Kathleen M. Miller, Esquire
John V. Snellings, Esquire

**EXHIBIT 3**

]IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | C.A. No. 04-1494-(JJF) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | C.A. Action No. 05-499 (JJF) |

## NOTICE OF SERVICE OF SUBPOENA
## (SECURITIES AND EXCHANGE COMMISSION)

PLEASE TAKE NOTICE that on March 27, 2007, a subpoena in the form attached hereto as Exhibit A was served upon the Securities and Exchange Commission by personal service upon its agent, Debbie Sheffield, at the offices of the Securities and Exchange Commission, 1801 California Street, Suite 1500, Denver, CO 80202-2656.

DATED: March 30, 2007                    BLANK ROME LLP


                                         Dale R. Dubé
                                         _____
                                         Dale R. Dubé  (No. 2863)
                                         Bonnie G. Fatell (No. 3809)
                                         David W. Carickhoff, Jr. (No. 3715)
                                         1201 Market Street, Suite 800
                                         Wilmington, DE 19801
                                         Telephone:   (302) 425-6400
                                         Facsimile:   (302) 425-6464

120087.01600/40168085v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2007, I served by hand delivery and electronic filing the NOTICE OF SERVICE OF SUBPOENA using CM/ECF which will send notification of such filing(s) to the following:

### BY EMAIL AND HAND DELIVERY

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

David A. Jenkins, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

I also certify that, on this 30th day of March, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

### BY EMAIL AND FEDERAL EXPRESS

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110-1832

Dale R. Dubé (No. 2863)

120087.01600/40168085v.1

# EXHIBIT  A

EPS Judicial Process Service, Inc.
29-27 41ᵗʰ Avenue, Suite 812
Long Island City, NY 11101
Telephone: 718-472-2900
Facsimile: 718-472-2909

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
------------------------------------------------------------------X
MAGTEN ASSET MANAGEMENT CORPORATION,
& LAW DEBENTURE TRUST COMPANY OF
NEW YORK,

                Plaintiff (s),

    -against-

NORTHWESTERN CORPORATION,

                Defendant (s).
------------------------------------------------------------------X
MAGTEN ASSET MANAGEMENT CORPORATION,

                Plaintiff (s),

    -against-

MIKE J. HANSON and ERNIE J. KINDT,

                Defendant (s).
------------------------------------------------------------------X

Index No. 04-1494-JJF
Pending in the U.S. District
Court for the District of
Delaware
<u>AFFIDAVIT OF SERVICE</u>

Index No. 05-499-JJF
Pending in the U.S. District
Court for the District of
Delaware
<u>AFFIDAVIT OF SERVICE</u>

STATE OF COLORADO    )
                       :s.s.:
COUNTY OF DENVER    )

    BRIAN M. OLDS, being duly sworn, deposes and says:

    I am not a party to this action, am over the age of eighteen years of age and reside in the State of Colorado.

    I am an agent for EPS Judicial Process Service, Inc. and received the Subpoena in a Civil Case for the above entitled-action to be served upon Securities and Exchange Commission.

On the 27th day of March, 2007, at approximately 3:40 p.m. at 1801 California Street, Suite 1500, Denver, Colorado, I served a true copy of the SUBPOENA IN A CIVIL CASE, in the above-entitled action upon, SECURITIES AND EXCHANGE COMMISSION, by personally delivering to and leaving thereat, a true copy of the above mentioned document with Debbie Sheffield. At time of service, Ms. Sheffield identified herself as the Administrative Assistant for Securities and Exchange Commission and as a person authorized to accept service of process for Securities and Exchange Commission. Also at time of service, I tendered Ms. Sheffield the $50.00 witness fee and traveling expenses for Securities and Exchange Commission.

Ms. Sheffield is a Caucasian female, approximately 50 years of age, 5'6" tall, 145 lbs, with light hair, dark eyes and wore glasses.

Sworn to before me this
29th day of March, 2007

_____
NOTARY PUBLIC

BRIAN M. OLDS

DONALD D. COLEMAN
NOTARY PUBLIC
STATE OF COLORADO

My Commission Expires 01/19/2010

A088 Subpoena in a Civil Case (12/06)

## Issued by the
# United States District Court
### DISTRICT OF COLORADO

Magten Asset Management Corporation
& Law Debenture Trust Company
of New York,

        Plaintiffs

    v.

NorthWestern Corporation,

      Defendant

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 04-1494-JJF
Pending in the U.S. District Court for the District of
Delaware

Magten Asset Management Corporation

    Plaintiff

    v.

Mike J. Hanson and Ernie J. Kindt,

    Defendants

Civil Action No. 05-499-JJF
Pending in the U.S. District Court for the District of
Delaware

To:  Securities and Exchange Commission
Donald M. Hoerl, Acting Regional Director
1801 California Street Suite 1500
Denver, CO 80202-2656

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time
specified below to testify in the above adversary proceeding.

| PLACE | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above adversary proceeding.

| PLACE | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or
objects at the place, date, and time specified below (list documents or objects): See attached Schedule

| PLACE  Hunter & Geist, Inc.<br>1900 Grant Street<br>Suite 1800<br>Denver, CO 80203 | DATE AND TIME<br>Friday, April 13, 2007 at 4:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|

Any subpoenaed organization not a party to this adversary proceeding shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify, Fed.R.Civ.P. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| Attorney for Magten Asset Management Corporation | March 27, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY  10004
(212) 859-8000

B255 (11/97) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| | | |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty and perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect
a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.
(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

Pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, made applicable in cases under the Bankruptcy Code by Rule 9016 of the Federal Rules of Bankruptcy Procedure, Law Debenture Trust Company of New York ("Law Debenture") and Magten Asset Management Corporation ("Magten", together with Law Debenture, the "Plaintiffs") request that the Securities and Exchange Commission (the "SEC") produce for examination, inspection and copying at the offices of Hunter & Geist, Inc., 1900 Grant Street, Suite 1800, Denver, Colorado at 4 p.m. on April 13, 2007 all of the documents described below which are in the possession, custody or control of the SEC, or of any persons acting on its behalf.

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1. The term "you" and "your" means or refers to the SEC, as well as all divisions and/or offices thereof acting in concert with or under the direction of the SEC, or purporting to act on the SEC's behalf or under its control.

2. "All" means "any and all," and "any" means "any and all."

3. "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

7.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

8.    "NorthWestern Growth" refers to NorthWestern Growth Corporation and includes any investment, operating company or subsidiary thereof, including, without limitation, Expanets Inc. and Blue Dot Services Inc.

9.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited

partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

10.    "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

11.    "Restatement" refers to NorthWestern's restatement of its quarterly financials for the periods ending March 31, 2002, June 30, 2002, and Sept. 30, 2002, as well as the approximate $880 million of asset impairment charges for the fiscal year ending December 31, 2002, as announced in NorthWestern's press release dated April 16, 2003.

12.    "SEC" refers to the Securities and Exchange Commission and includes any division or office thereof and any present or former officer, employee, agent or other individual acting or purporting to act on its behalf or under its control.

13.    "SEC Investigation" refers to any formal or informal investigation or inquiry conducted by the SEC, concerning NorthWestern, NorthWestern Growth, any current or former NorthWestern or NorthWestern Growth employee, and/or the Transfer, including, without limitation, the issuance of "Wells notices" and NorthWestern's Restatement.

14.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002.  Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

3

15.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing.  If any answer or part of any answer is based upon information and belief rather than personal knowledge, you shall state that it is made on that basis.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity.  If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of the SEC, or any documents that were generated or received by the SEC or otherwise came into existence or were utilized by the SEC through the date of production.

6.    A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.    A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

4

8.  If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

    (a) the date of the document;

    (b) the name of each person to whom the document is addressed;

    (c) the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

    (d) the name of each person who signed or authored the document;

    (e) the title and job description of each person identified in (b), (c), and (d) above;

    (f) the subject of the document and the number of pages in the document;

    (g) the specific privilege claimed and the grounds for any such claim; and

    (h) the name and address of the person who has custody of the document.

9.  If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10. All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11. Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, created, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

5

12.     Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

### REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All document requests, information requests, and/or subpoenas issued by the SEC to NorthWestern in connection with the SEC Investigation.

### REQUEST NO. 2

All documents provided to the SEC by NorthWestern concerning or in connection with the SEC Investigation.

### REQUEST NO. 3

All written communications between NorthWestern on the one hand and the SEC on the other hand, including without limitation (a) any report or presentation by NorthWestern to the SEC, concerning or in connection with the SEC Investigation, and (b) any "Wells notice" issued by the SEC to NorthWestern in connection with the SEC Investigation.

### REQUEST NO. 4

All transcriptions and video recordings of formal or informal testimony before the SEC concerning or in connection with the SEC Investigation. If any testimony otherwise responsive to this Request has not been transcribed or videotaped, please produce any audio or other recording of such testimony.

### REQUEST NO. 5

With respect to Request No. 4 above, all documents referenced in such transcriptions or other recordings, whether or not formally designated as an exhibit. If any such document is

designated as an exhibit, Plaintiffs request that the document be produced bearing the exhibit

number referenced in the transcription or other recording.

# EXHIBIT 4

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
IOI PARK AVENUE
NEW YORK, NEW YORK IOI78-OO6I

FRANKFURT    MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 2I2-696-6000
FACSIMILE 2I2-697-I559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (2I2) 696-8895
E-MAIL JBAGNATO@CM-P.COM

March 13, 2007

**VIA HAND DELIVERY**

John W. Brewer, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

> Re: *Magten Asset Management Corp. and Law*
> *Debenture Trust Co. v. NorthWestern Corp.*;
> C.A. No. 04-1494-JJF

Dear John:

Enclosed please find a CD containing reformatted documents as requested in your letter to Joseph Pizzurro dated January 26, 2007.

Sincerely,

*Jn Bagnato*

Jennifer A. Bagnato

Cc:  Paul Spagnoletti, Esq.
     Stanley T. Kaleczyc, Esq.
     (with enclosure via Federal Express)

**EXHIBIT 5**

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON      PARIS
LONDON       STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

March 16, 2007

**VIA HAND DELIVERY**

Jordanna Nadritch, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

     Re: *Magten Asset Management Corp. and Law*
        *Debenture Trust Co. v. NorthWestern Corp.;*
        <u>C.A. No. 04-1494-JJF</u>

Dear Jordanna:

    In connection with the letter I sent to you via email today, enclosed please find a CD containing reformatted Excel spreadsheets Bates numbered NOR264850 and NOR307914 referenced in your March 13 letter.

          Sincerely,

          Jennifer A. Bagnato

Cc: Paul Spagnoletti, Esq.
   Stanley T. Kaleczyc, Esq.
   (with enclosure via Federal Express)

# EXHIBIT 6

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON      PARIS
LONDON       STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

March 16, 2007

**VIA EMAIL**

Jordanna Nadritch, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980

    Re: *Magten Asset Management Corp. and Law*
       *Debenture Trust Co. v. NorthWestern Corp.*;
       <u>C.A. No. 04-1494-JJF</u>

Dear Jordanna:

    I write in response to your March 14 letter.

    John Brewer's January 26 letter listed 27 Excel spreadsheets that you were having difficulty viewing. As you have acknowledged, we provided reformatted versions of each document on March 13, prior to the discovery cut-off date of today. In your March 14 letter, you identified two additional Excel spreadsheets with which you were having difficulty viewing. Today we are hand delivering to you reformatted versions of the Excel spreadsheets Bates numbered NOR264850 and NOR307914. These reformatted documents, like those we provided to you on March 13, are in an easily readable format for both on-screen viewing and printing. Our response to your inquiries has been prompt and we disagree with your assertion to the contrary.

    Now you assert that your specific list of "problematic documents" was "merely illustrative" and imply that it is NorthWestern's obligation to search through the nearly 500,000 documents produced, and figure out which ones you have a need for, but cannot read, and reformat them. You have made no attempt to identify with any specificity which documents you are having difficulties viewing. Your demand, two days before the discovery cut-off, that we reformat these Excel spreadsheets is as unreasonable as it is impossible to comply with. It is not incumbent on us to determine which spreadsheets you need and cannot read.

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW                Page 2                      Jordanna Nadritch, Esq.
                                                                           March 16, 2007

    Each time you have complained that there was a problem viewing any part of our
production, we have responded promptly and, when necessary, sent you a replacement CD.
Because you have obviously reviewed each of our voluminous productions when made, it is
clearly bad faith to come to us at the eleventh hour and demand that we produce all documents
you allege you cannot read within forty-eight hours without identifying a single document.
Please recall that it was plaintiffs who pushed for an early discovery cut-off date.

             Sincerely,

             Jennifer A. Bagnato

Cc:  Joseph D. Pizzurro
   Nancy E. Delaney
   Victoria Counihan
   Gary Kaplan
   Bonnie Steingart
   John W. Brewer
   Dale R. Dubé
   John V. Snellings

3491863v2

**EXHIBIT 7**

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON      PARIS
LONDON       STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: (212) 696-8895
E-MAIL JBAGNATO@CM-P.COM

April 3, 2007

**VIA EMAIL**

John W. Brewer, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

> Re: *Magten Asset Management Corp. and Law*
> *Debenture Trust Co. v. NorthWestern Corp.*;
> <u>C.A. No. 04-1494-JJF</u>

Dear John:

       I write in connection with our telephone conversation yesterday afternoon related to the Excel spreadsheets. I briefly summarize our conversation and raise several points in further response.

       During our telephone conversation, I inquired about your letter of Friday, March 30. The March 30 letter contains a list of documents labeled First Priority List of Problematic Excel Documents, which you describe as an initial list of priority items for reformatting. I inquired how many more documents, if any, in addition to the First Priority List, you may request be reformatted. You stated that at this point you are unsure of how many additional documents you would need reformatted. You stated that, for example, as the case continues to the expert phase, you may need other documents reformatted that you cannot foresee now.

       I then explained that the reformatting of Excel spreadsheets is an expensive and time-consuming process. In your March 28 letter, you identify over 3200 Excel documents which you ask to be reformatted. And in your March 30 letter, you identify an additional 43 Excel documents. As I told you, we think it is unreasonable and unduly burdensome, from a time and cost perspective, for NorthWestern to reformat every single one of these documents. I asked whether you would consider paying for the expense of reformatting the documents. You stated that you would consider this proposition and understood our position on reformatting. You also stated that it may be your position that since we produced the Excel spreadsheets,

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW                Page 2                                John W. Brewer
                                                                                     April 3, 2007

presumably after a determination that they are responsive, you are therefore entitled to legible copies of each and every one of them.

For several reasons, we continue to believe that any request to reformat every Excel document in our production is unreasonable. First, despite our request, you have given us no assurances that the documents listed in your March 28 letter are not duplicates. In fact, a quick review of the March 28 list reveals that documents numbered NOR038733 and NOR038737 are exactly the same document. It is clear that instead of considering which documents you actually needed, you simply listed every Excel document in the production.

Second, we disagree with the position that you are entitled to legible copies of every Excel sheet merely because we produced them. We have consistently taken the position that the overwhelming majority of the documents produced are not relevant to any claim by Magten in this litigation. But even if they were, your unreasonable request to reformat every Excel spreadsheet renders the production of these documents unduly burdensome. Further, given the burden and expense of reformatting the electronic versions of the Excel spreadsheets, we believe that these documents are not "reasonably accessible" under Fed. R. Civ. P. 26(b)(2)(B).

Finally, you stated during our telephone conversation that you found it problematic that we continued to produce improperly formatted Excel spreadsheets after you notified us of the problem on January 26. But the technical problems associated with producing Excel spreadsheets are not unique to this production. As you are undoubtedly aware, when an Excel document is converted to electronic format, the display of data in columns and rows is scattered over numerous, and sometimes hundreds, of pages. In some cases it can take over an hour to reformat just one Excel spreadsheet into a readable electronic version. As I told you, it is unlikely that we could have done anything proactively to ensure the production of legible Excel documents along with our production of electronic documents.

In any event, your position is even more unsettling because it implies that we ignored your request until we provided reformatted documents on March 13 and that we were doing nothing at all during this six week period. Nothing could be further from the truth. From January 26 to March 13, we produced over 240,000 pages of documents. At the same time, we reformatted 27 Excel spreadsheets listed in your January 26 letter, which we produced to you on March 13 in easily readable and printable versions. And, just a few days later, on March 16, we provided an additional two reformatted Excel documents that Jordanna Nadritch identified in her March 14 letter – before the March 16 discovery cut-off date. Your complaints about the timing of our production are baseless. Despite the rhetoric in your letters, we believed you would act in good faith to identify the Excel spreadsheets you deemed relevant. Indeed, we believed your two requests for a total of 29 Excel spreadsheets were just that.

In sum, we have been responsive and diligent throughout this document production phase and have responded promptly to your requests relating to document production issues. You are not entitled to a reformatted version of every document listed in your March 28 letter. If you continue to insist that we reformat every Excel document, we will seek appropriate protection with the Court. If, however, you can give us your assurance that the 29 Excel sheets

already produced, and the 63 Excel sheets identified on your First Priority List, are your good faith attempt to identify all of the Excel spreadsheets you deem relevant and that need to be reformatted, we will undertake to reformat the 63 Excel documents on your First Priority List as soon as possible.

Very truly yours,

Jennifer A. Bagnato

Cc:     Joseph Pizzurro
        Nancy Delaney
        Bonnie Steingart
        Gary Kaplan
        Jordanna Nadritch

# EXHIBIT 8

**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8736
Fax: 212-859-4000
brewejo@ffhsj.com

April 27, 2007

VIA EMAIL

Joseph Pizzurro
Nancy Delaney
Jennifer A. Bagnato
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

Dear Counsel:

I write with respect to several different deficiencies in NorthWestern's document production to date.

Before addressing those, I also wanted to mention (without prejudice to our respective positions in the pending motions regarding your demands for the return or destruction of certain documents) that I am advised that upon initial review there appears to be a problem with at least one of the disks you sent us a few days ago. Specifically, I am told that the Bates range NOR335494 - NOR336414 is missing. Since this does not appear to correspond to any of the documents in dispute, we assume there was simply a technical copying glitch at your end.

As to the issues with the prior production: first, at Mr. Drook's deposition Wednesday he testified that one of the primary reasons for the going-flat transaction (rather than continuing to hold the assets indirectly through equity ownership of the subsidiary) was a PUHCA compliance concern. As was discussed at his deposition, the minutes of the August 7, 2002 board meeting do not reference such a concern and a document from the previous January (Drook Exh. 3) indicated that an exemption had been obtained making the going-flat transaction unnecessary from a PUHCA standpoint. We are not aware of any other documents in your production indicating that the perceived demands of PUHCA compliance was a motivation for the going-flat transaction. Further to Bonnie's request on the record at the deposition, if there are any such documents, please

Fried, Frank, Harris, Shriver & Jacobson LLP

Joseph Pizzurro                                    April 27, 2007
Nancy Delaney                                      Page 2
Jennifer A. Bagnato

produce them immediately or confirm that they have already been produced and provide
the Bates-numbers.

Second, you have produced a document titled "NorthWestern Corporation Staff
Meeting/Executive Committee Meeting Minutes" dated January 28, 2002
(NOR364802-04). It appears that these meetings were held regularly and that minutes
thereof were created in the ordinary course, but this is the only set of minutes of such
meetings that we have found in your production. Please produce the other minutes of
such meetings immediately or confirm they have been produced and identify the
relevant Bates numbers.

Third, your request for the return of certain allegedly privileged documents, which is
now the subject of pending motion practice, has raised other concerns about the
completeness of your production of nonprivileged documents. With respect to the
special committee report on Mr. Hylland, you have demanded (based on the Bates-
number ranges in your requests) the return not only of the report itself but also of the
exhibits, most of which are not even arguably privileged and cannot be made privileged
by appending them to an allegedly privileged document or moving them from their
original location to the legal department's files. As you know, prior to your initial
return demand we had raised the issue of the incompleteness of the sets of exhibits,
most of which could not have be the subject of any colorable good-faith claim of
privilege even if they had not been produced to the SEC. If your production had
otherwise been complete, copies of the nonprivileged exhibits, such as relevant
underlying emails, memos and the like generated in the course of Expanets' and
NorthWestern's businesses during the 2002 time period being investigated by the
special committee, would also be contained elsewhere in your production.

Using such other copies of these nonprivileged documents which are outside the scope
of your return demands would make it easier for everyone to proceed with non-party
depositions while we are awaiting decision on the pending motions. However, we have
only been able to locate other copies (with Bates numbers not subject to any of your
pending return demands) of the documents corresponding with Exhibits 37, 39, 42, 44,
45, 46, 51, 52, 53, 54, 55, 57, 58, 59, 60, and 64. Please produce immediately copies of
all other documents not subject to a claim of privilege on a freestanding basis which are
either referenced as exhibits to the Hylland report or otherwise referenced therein, or
confirm that they have been produced and provide us with the Bates numbers.
Narrowing the Bates ranges in your return demands to exclude exhibits attached to the
various copies of the report might be a partial interim solution to this problem, but as
noted above we had already discovered prior to your first return demand that the various
sets of these exhibits in your production were incomplete.

Fried, Frank, Harris, Shriver & Jacobson LLP

Joseph Pizzurro                                    April 27, 2007
Nancy Delaney                                      Page 3
Jennifer A. Bagnato

A similar issue is presented by the draft report on Mr. Charters that is subject to your
return demand.  Without prejudice to our respective positions on the status of that
document as such, based on our review prior to your demand letters we had observed
that it refers to and/or quotes from a number of underlying non-privileged emails which
we have been unable to locate anywhere else in your production.  Such emails include:

- An email dated April 8, 2002 from Merle Lewis to John Charters.

- An email dated May 8, 2002 from Travis Gjoraas.

- An email dated April 27, 2002 from Dick Hylland to John Charters.

- An email dated August 31, 2002 from Martin Snella to John Charters.

- An email dated September 11, 2002 from John Charters to Dick Hylland.

- An email chain dated October 11, 2002 including email  Ms. Reggie Vegliante
  sent to John Charters, who in turn forwarded it to Dick Hylland on October 14,
  2002.

- An email chain dated October 23, 2002 including an email from John Charters
  to several people, including Rick Fresia, Martin Snella, and Christopher
  Younger, cc'ing Hylland, Lewis, and Orme,  which included multiple responses
  from Fresia.

Please produce these emails immediately, or confirm that they have been produced and
provide the Bates numbers.

If your client has lost, discarded or destroyed any of the materials referenced above in
connection with either this document or the Hylland report, it will, of course, have

Fried, Frank, Harris, Shriver & Jacobson LLP

Joseph Pizzurro                                    April 27, 2007
Nancy Delaney                                      Page 4
Jennifer A. Bagnato

waived its right to withhold the document under Rule 26(b)(3) to the extent necessary
for us to have access to the underlying relevant and nonprivileged facts not otherwise
available to us.

As you know, there are depositions that are scheduled to go forward next week. To the
extent that it would be possible to provide the documents to us on Sunday, it would be
meaningful, and we would make sure that there will be someone at Fried Frank to
receive and process the documents as soon as they arrive.

                                        Very truly yours,

                                        John W. Brewer

cc: Gary Kaplan
    Bonnie Steingart
    Dale R. Dube
    John V. Snellings
    Kathleen M. Miller
    Victoria Counihan

549325