# Unreported Decisions

Case 1:04-cv-01494-JJF    Document 180-3    Filed 05/03/2007    Page 1 of 18

**Westlaw.**

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1994 WL 114902 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

C
White v. Chrysler Corp.
E.D.Pa.,1994.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Annie WHITE,
v.
CHRYSLER CORP., et al.
**Civ. A. No. 93-5535.**

April 4, 1994.

Herbert Monheit, Louis T. Silverman, Herbert Monheit, P.C., Bruce L. Sobel, Philadelphia, PA, for plaintiff.
Brett L. Messinger, Mannino, Walsh & Griffith, P.C., Philadelphia, PA, for Chrysler Corp., T/A and D/B/A Renault and AMC.
Donald M. Davis, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for Baker AMC, Jeep, Renault.

MEMORANDUM
PADOVA, District Judge.
*1 On March 21, 1994, Plaintiff served notice to take the deposition of two corporate officials of Defendant, Chrysler Corporation ("Chrysler"), at the office of Plaintiff's counsel in Philadelphia, Pennsylvania. Pursuant to Federal Rule of Civil Procedure 26(c), Chrysler now moves for a protective order to have the depositions taken near Chrysler's offices located in Highland Park, Michigan. For the reasons set forth below, I shall grant Chrysler's motion, but require that Chrysler pay one-half of Plaintiff's reasonable transportation expenses.

DISCUSSION

Rule 26 provides that, upon motion and for good cause shown, a court may order that discovery be taken at a designated time and location. Fed.R.Civ.P. 26(c)(2). The court has broad discretion to determine the location of a deposition, and may consider the relative expenses of the parties, and may order that expenses be paid by the opposing party. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2112 (1970).

The deposition of a corporate officer or agent should generally be taken at the corporation's principal place of business. See, e.g., Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co., 136 F.R.D. 385, 392 (E.D.Pa.1991); Shapiro v. Delta Boats Inc., No. 89-4267, 1990 WL 11629, at *1 (E.D.Pa. Feb. 9, 1990). However, based on equitable considerations, this general rule may be altered. In this case, Plaintiff's entire contact with Defendant took place in Pennsylvania. In addition, Chrysler is a large corporation whose employees often must travel for company business. Plaintiff, by contrast, is an individual, upon whom travel expenses will necessarily create a greater financial hardship. Further, Plaintiff has noticed the deposition of only two Chrysler employees. Based on these factors, I conclude that the depositions shall be taken in Highland Park, Michigan, but Chrysler shall pay one-half of Plaintiff's reasonable transportation expenses incurred to conduct the depositions outside Philadelphia, Pennsylvania.

An appropriate order follows.

ORDER

AND NOW, this 1st day of April 1994, it is hereby ORDERED that Defendant, Chrysler Corporation's motion for a protective order (Document No. 20) is granted and that the depositions shall be conducted in Highland Park, Michigan;

it is further hereby ordered that Defendant shall reimburse one-half of Plaintiff's reasonable transportation expenses incurred to conduct the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 2
Not Reported in F.Supp., 1994 WL 114902 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

depositions outside Philadelphia, Pennsylvania.

E.D.Pa.,1994.
White v. Chrysler Corp.
Not Reported in F.Supp., 1994 WL 114902 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1990 WL 4411 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Muehlberger v. Maxwell
E.D.Pa.,1990.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Marcyann MUEHLBERGER
v.
Robert A. MAXWELL and M.E. Sabosik Associates, Inc.
**CIV. A. No. 89-2185.**

Jan. 19, 1990.

Jeffrey R. Dimmich, Snyder, Dimmich & Guldin, P.C., Allentown, Pa., for plaintiff.
James J. Oliver, Wright, Manning Kinkead & Oliver, Norristown, Pa., for defendant.

MEMORANDUM-ORDER
RICHARD A. POWERS, III, United States Magistrate.
*1 Presently before me is plaintiff's motion for sanctions for defendant, Robert A. Maxwell's, failure to appear for depositions. It is admitted in defendant's reply that plaintiff was injured in an automobile accident when she was struck from behind by a vehicle driven by the defendant, Maxwell, and owned by the defendant, M.E. Sabosik Associates, Inc. However, despite four (4) scheduled depositions.[FN1] Mr. Maxwell was never produced, as counsel for the defendants cancelled these depositions. Plaintiff requests the following: all of plaintiff's requests for admission directed to defendant, Maxwell, numbered 1 through 9, be deemed admitted; the affirmative defense for comparative negligence and assumption of the risk be stricken and removed from the case; the defendant, Maxwell, be barred from offering any testimony at the time of trial; and reasonable costs of the motion be awarded.

In their reply, defendants erroneously posit that they have no duty to produce Maxwell, a former employee of M.E. Sabosik Associates, Inc., and, therefore, are not subject to sanctions under Rule 37 of the Federal Rules of Civil Procedure. However, the fact that Robert A. Maxwell is a *party* to these proceedings seems to be ignored by his co-defendant. Further, a party seeking discovery may determine the place for a deposition of the other party to an action wherever he wishes, subject to the Court's power to grant a protective order designating a different location under Rule 26(c)(2). *Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich.1987); *Pinkham v. Paul,* 91 F.R.D. 613, 614 (D.Minn.1981). Defendants' supposition that Maxwell must be subpoenaed for deposition, rather than noticed, is flawed. "[A] subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party." Wright and Miller, *Federal Practice & Procedure, Civil,* § 2107 (1970). Furthermore, "a party who fails to appear on notice ... is liable to the penalties of Rule 37(d)." *Id.*

Defendant's use of *Frasier v. Twentieth Century-Fox Film Corporation,* 22 F.R.D. 194 (D.Neb.1958), is also inapposite to the case at bar.
In *Frasier,* the Court determined that a *non-party witness* who is a former officer, director or employee of a defendant corporation need not be produced by the defendant corporation. *Id.* at 197 (emphasis supplied). However, the plaintiff in the action had already served the witness with a subpoena; therefore, his presence did not depend upon the notice to defendant corporation. *Id.*

In this case, no motion for a protective order concerning the location of the depositions, per Fed.R.Civ.P. 26(c)(2), was ever forwarded to the Court by the defendants. Furthermore, no correspondence was appended to defendants' reply to the motion for sanctions which would illustrate defendants' objection on the record to the scheduled Allentown depositions.[FN2] In addition, as plaintiff's counsel points out, Mr. Maxwell's eyewitness testimony as to the events of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1990 WL 4411 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

accident are invaluable to both plaintiff and defendants.

\*2 In any event, deposing the defendant, Maxwell in Allentown does not appear to be overly burdensome or costly as Maxwell resides in Bricktown, NJ, no great distance. Furthermore, although it is generally presumed that defendant will be examined at his residence or place of business or employment, *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989); *Farquhar,* 116 F.R.D. at 72; *Fortune Management, Inc. v. Bly,* 118 F.R.D. 21, 22 (D.Mass.1987), the court may order any convenient place for the examination. *Pinkham,* 91 F.R.D. at 615. I would additionally note that the district court "has great discretion in designating the location of the taking of a deposition." *South Seas Catamaran, Inc. v. Motor Vessel Leeway,* 120 F.R.D. 17, 21 (D.N.J.1988) (citation omitted).

Defendant Maxwell shall cooperate fully in completing discovery. Any further refusal by Mr. Maxwell to appear for his scheduled deposition will result in serious sanctions by the Court as provided by Fed.R.Civ.P. 37.

Accordingly, an appropriate Order follows.

ORDER

Now, this 18th day of January, 1990, in consideration of Plaintiff's Motion for Sanctions (Document # 6) and defendants' reply thereto (Document # 7), IT IS ORDERED that:

1. Plaintiff's motion is DENIED without prejudice.

2. Defendants shall produce Robert A. Maxwell for a deposition in Allentown, PA within ten (10) days.

3. Future failure to comply with the discovery process or this Order will result in sanctions.

4. Plaintiff's reasonable costs for the preparation of this motion will be assessed against the defendants.

5. Plaintiff's counsel shall file an affidavit setting forth the itemized expenses of this motion in ten (10) days.

> FN1. The depositions of Maxwell were scheduled on the following dates: July 27, 1989; September 7, 1989; October 17, 1989 and November 14, 1989.
>
> FN2. In the only letter available to me attached to plaintiff's motion and dated October 23, 1989, defendants' attorney simply stated that Mr. Maxwell could not be effectively located and that efforts to locate him were ongoing. *See Plaintiff's Motion for Sanctions Under Federal Rule of Civil Procedure 37,* Exhibit A.

E.D.Pa.,1990.
Muehlberger v. Maxwell
Not Reported in F.Supp., 1990 WL 4411 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                          Page 1

Not Reported in A.2d, 1994 WL 274004 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

H
Barrett Estate.
Del.Ch.,1994.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
Re Dorothy BARRETT ESTATE
**No. RW-76.**

June 1, 1994.

Gilbert F. Shelsby, Jr., Mason, Ketterman & Morgan, Wilmington.
James D. Griffin, Griffin & Hackett, P.A., Georgetown.
RICHARD KIGER, Master in Chancery.
*1 As a follow-up on our telephone discussion of last week regarding the locus of a deposition of a party bringing an action in Sussex County, Delaware, the case I mentioned to you in the course of that discussion is *Schreiber v. Carney,* Del.Ch., C.A. No. 6202, Hartnett, V.C. (Dec. 3, 1982). While *Schreiber* discusses the place of deposition of corporate defendants, it does not go into the same subject for plaintiffs, and so to the extent that I cited it for such matters my recollection of it was at fault.

In reconsidering the subject today, I have not found any help in either the Rules of this Court or the Civil Rules for Superior Court. The most useful short treatment of the subject I have found is in *Kostek v. 477 Corporation,* Cn.Super., 316 A.2d 423 (1974). Judge Rubinow's statement in *Kostek* that "There are no reported Connecticut cases that considers this question" applies equally well to the Delaware cases, reported or unreported, so far as I can find. Without repeating it here, the lengthy quotation in *Kostek,* at page 424, from a note a Note at 74 Harvard Law Review 940 (1961), makes the point very well that ordinarily a plaintiff may expect to be deposed at the place where the suit was filed.

In support of this proposition, *Kostek* cites *Anthony v. RKO Radio Pictures, Inc.,* S.D.N.Y., 8 F.R.D. 422 (1948). *Anthony* has been cited, so far as I can tell, only once in this jurisdiction. In *Ellis Air Lines v. Bellanca Aircraft Corporation,* D.Del., 17 F.R.D. 395 (1955), Judge Rodney noted that a court has considerable discretion in determining where a deposition of a plaintiff should be held if it is objected that it would be a hardship or unreasonably burdensome for the plaintiff to appear for the deposition in the district where suit was filed. In the case before the District Court, an officer of the plaintiff would have had to travel from Alaska to Delaware, although there was reason to believe that the deposition would be quite short and that the witness in question would not be called to appear at the trial.

Another reason for entering a protective order is that the plaintiff had no realistic choice of forum, and therefore should not be punished, in effect, for filing in the only possible jurisdiction. See *Kovalsky v. Avis Rent-A-Car, Inc.,* D.Puerto Rico, 48 F.R.D. 453 (1969), holding that the plaintiff, who lived in New Jersey, had no choice of forum other than Puerto Rico, and that it would be unreasonable to require her to travel there for her deposition.

In an essay on discovery, Professor Wright states that
As a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit. Since he has selected the forum, he will not be heard to complain about having to appear there for a deposition. But this is at best a general rule, and is not adhered to if the plaintiff can show good cause for not being required to come to the district where the action is pending. Thus a protective order will be granted if the plaintiff is physically and financially unable to come to the forum or if to do so would cause unusual and serious hardship to the plaintiff. The general principle that the plaintiff must come to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 2
Not Reported in A.2d, 1994 WL 274004 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

forum he has chosen loses force if he had no choice of forum to begin with. Commonly where a sufficient showing is made that examination at the designated place will cause undue hardship, the court makes an order in the alternative, providing that the examination be held at some other place or that the party seeking the examination pay travel expenses for the deponent to the place he has chosen or that the deposition be taken on written interrogatories rather than orally, thus leaving the choice of method to the party who wishes the examination.

**\*2** (Footnotes omitted.) Wright, *Discovery,* 35 F.R.D. 39, 59 (1963).

In the present case, I think it is beyond dispute that there was no alternative choice of forum. Mrs. Barrett died a domiciliary of Delaware and her estate had to be probated here, and so Delaware was the only forum in which to bring a number of charges in connection with the estate and matters predating Mrs. Barrett's death. Having said that, the hardship to the challengers, the plaintiffs, if you will, is minimal. They are not travelling from New Jersey to Puerto Rico, or from Alaska to Delaware. Their journey is from somewhere in the State of Maryland to Georgetown, Delaware. This may be inconvenient for them, but so would it be inconvenient for Mr. Griffin and his client to travel to Baltimore. There being no compelling reason to depart from the principle that a party who brings suit in a jurisdiction may be compelled to appear for a deposition there, I continue to hold the view that the depositions of the plaintiffs should be conducted in Sussex County, the parties not having been able to agree upon another site for the depositions. This is consistent with the general comments I made in the teleconference. Consequently, the plaintiffs shall make themselves available for depositions in Sussex County.

IT IS SO ORDERED.

Del.Ch.,1994.
Barrett Estate
Not Reported in A.2d, 1994 WL 274004 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Slip Copy                                                                                                      Page 1

Slip Copy, 2007 WL 188014 (N.D.Ill.)
**(Cite as: Slip Copy)**

Fast Food Gourmet v. Little Lady Foods
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
FAST FOOD GOURMET, Plaintiff,
v.
LITTLE LADY FOODS, Defendant.
No. 05 C 6022.

Jan. 23, 2007.

Richard Harvey Lehman, Matthew David Tanner, Tanner & Lehman, Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, for Plaintiff.
Thomas R. Dee, Michael Derek Zolner, Vedder, Price Kaufman & Kammholz, P.C., Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**
JEFFREY COLE, United States Magistrate Judge.
*1 In late November 2006, the defendants moved to compel the deposition of four of plaintiff's corporate officers in the Northern District of Illinois. Conceding the general rule that a plaintiff's designated 30(b)(6) witness ought to be deposed in the forum selected by the plaintiff, the plaintiff objected on the ground that it is in bankruptcy and has no funds to finance the travel of any out-of-town witnesses. The defendants contended that the plaintiff's counsel's retention agreement obligates them to advance these sorts of "costs." The plaintiff's lawyers had a different view of what their agreement obligated them to do.

After an extended discussion in court in November, the parties reached a partial accord and agreed that Mr. Crouse would be deposed in Chicago. Since then, the defendants have agreed to travel to Oregon to take the deposition of David Heggestad due to health considerations. The parties have not, however, been able to agree on the location for the other two corporate officers, and the plaintiff has renewed its motion.

As in almost all discovery disputes, the matter ultimately falls within the extraordinarily broad range of discretion invested in judges by the Federal Rules of Civil Procedure. *Cf. Crawford-El v. Britton,* 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Semien v. Life Insurance Co. of N.A.,* 436 F.3d 805, 813 (7th Cir.2006); Rule 26(c), Federal Rules of Civil Procedure.[FN1] Discretion denotes the absence of a hard and fast rule. *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931); *Pruitt v. Mote,* 472 F.3d 484, 2006 WL 3802822 (7th Cir.2006); *Rogers v. Loether,* 467 F.2d 1110, 1111-12 (7th Cir.1972) (Stevens, J.). Indeed, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd,* 55 F.3d 239 (7th Cir.1995) with *United States v. Williams,* 81 F.3d 1434 (7th Cir.1996). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir.2006) (Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

> FN1. Rule 26(c)(2) allows a court, upon a showing of good cause, to issue a protective order specifying the time and place of deposition. A protective order can be issued to protect a party from "undue burden or expense." The plaintiff concedes that the court has "substantial discretion" to specify the time and place of any deposition. (*Plaintiff's Response,* at 2).

An exercise of discretion requires a consideration of the factors relevant to that exercise. *United States v. Cunningham,* 429 F.3d 673, 679 (7th Cir.2005) (Posner, J.). In exercising discretion in this case, there are a number of factors to be considered, including the plaintiff's claim of financial hardship,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 2

Slip Copy, 2007 WL 188014 (N.D.Ill.)
**(Cite as: Slip Copy)**

the plaintiff's choice of forum, the plaintiff's counsel's retention agreement (which includes a provision for the advance of costs), and the relative detriments to the parties resulting from either a grant or denial of the motion. Of course, the parties have provided cases that support, in varying degrees, their respective positions. But all are fact specific and ultimately rely on the application of general principles, which are not in dispute.

On January 21, 2005, the plaintiff retained counsel to pursue claims against Little Lady Foods and other potential parties including Kraft Foods. At the time of the retention agreement, the plaintiff was in bankruptcy. Consequently, the retention agreement was approved by the bankruptcy trustee. Not surprisingly, the agreement provided that the plaintiff "will not be obligated to pay any costs or attorneys' fees unless a recovery is obtained in this case." The agreement went on to provide that counsel "will be entitled to reimburse themselves for out-of-pocket costs incurred (including but not limited to costs incurred for court reporter fees, ... filing fees, expert witness fees and travel expenses) out of any recovery, and such reimbursement will be deducted from the balance remaining after the Firm's compensation has been calculated." (Parenthesis in original).

*2 Given the text of the agreement and the context in which it came into being, it is reasonable to conclude that the parties envisioned that its counsel would be advancing the costs essential to commence the litigation and to see it through to its end. The bankrupt estate presumably was incapable of funding that endeavor, and the plaintiff's counsel made an informed, economic judgment that the case had sufficient merit to warrant the risk accompanying the advancing of costs to sustain the case. In light of that obligation, the argument that the plaintiff lacks the resources to underwrite the travel costs of the two witnesses seems beside the point. Disposition of the present motion, however, does not hinge on this interpretation of the retention agreement.

Ordinarily, a defendant is entitled to examine a plaintiff in the forum in which the plaintiff sues. However, if special circumstances are shown, such as *undue* hardship, burden or expense to the plaintiff which outweigh any prejudice to the defendant, the general rule may yield to the exigencies of the particular case. *See* 8 Wright & Miller, Federal Practice and Procedure § 2112 (1970). The party seeking relief has the burden of persuasion under Rule 26. *Trading Technologies Intern., Inc. v. eSpeed, Inc.,* 2005 WL 1300778, *1 (N.D.Ill. April 28, 2005) (Moran, J.); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 351, 360-361 (N.D.Ill.2005) (collecting cases).

The plea *ad misericordiam* that the plaintiff "has no funds, nor any ability to finance travel to and/or lodging in Chicago"-(*Response*, at 2, 3, 4; *Reply*, at 3 ("The corporation ... has no money to fund its officer's travel."))-is said to require the relaxation of the general preference for depositions of the plaintiff to take place in the forum chosen by the plaintiff. The difficulty is that Mr. Crouse's declaration, on which the motion is based, does not support the motion's ultimate conclusion. It says that the plaintiff has "virtually no funds...." Mr. Crouse goes on to explain that what this means is that there is "not more than a few thousand dollars on hand...." (*Crouse Affidavit,* at ¶ 3). [FN2] For all that appears, this amount is sufficient to finance travel to Chicago, and lodging may not even be necessary-although oddly it may ultimately be cheaper if the witnesses stay over night.

> FN2. The Clerk's office in Kansas where the bankruptcy is pending has informed me there is approximately $2,562.71 on hand, according to the last trustee's report.

Even a cursory review of online airfares reveals that travel from Aspen to Chicago can be arranged for as little as $373, or less if one spends the night in Chicago. This fare was obtained by randomly selecting Travelocity.com and selecting a date. (It may be that there are cheaper fares). It thus would appear that the $2,650 that the plaintiff has on hand is indeed sufficient to cover travel and lodging, even at the Ritz Carlton, whose website reflects a room rate of $390 for the night of 2/12/07. If one's tastes are a bit more basic, the cost saving will be substantial. For example, the Fairfield Inn on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2007 WL 188014 (N.D.Ill.)
**(Cite as: Slip Copy)**

Ontario quotes an online rate of $129 for 2/12/07.[FN3] Since there is no estimate by the plaintiff of anticipated travel expenses, it cannot be said that the funds "on hand" are inadequate. Any uncertainty on this score cannot be resolved in the plaintiff's favor since it is the efficient cause of that uncertainty. *Cf. United States v. Goodwin,* 449 F.3d 766, 772 (7th Cir.2006) (Posner, J.). *Compare R.H. Stearns Co. v. United States,* 291 U.S. 54, 61-62, 54 S.Ct. 325, 78 L.Ed. 647 (1934) (Cardozo, J.) (" 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified...." ' ").

   FN3. This date has no particular meaning. It was one I arbitrarily selected.

*3 There is nothing unfair or unreasonable about requiring the plaintiff to expend the funds "on hand" to further its own case since the claims may well be the sole, if not predominate asset of the estate. The small amount of money on hand is, as Mr. Crouse points out in his declaration, demonstrably inadequate even to begin to satisfy the tiniest fraction of the plaintiff's debts, and there is no contention that the funds are urgently needed for any purpose, let alone one that surpasses in importance to the estate, the progress of this case. Only by a successful conclusion to this case can the plaintiff hope to repay its creditors and recover for the harm it claims has been done to it by the defendants.

Finally, the plaintiff discounts the importance of its selection of Illinois as the forum by contending that it really had "no choice" in the matter since the forum selection clause in the August 23, 2002 contract that is the subject of Count III mandated that suit be brought here. Where the plaintiff "has no choice of forum," the significance to be accorded the plaintiff's selection of the forum is properly diminished. *See e.g., Ellis Air Lines v. Bellanca Aircraft Corp.,* 17 F.R.D. 395, 396 (D.Del.1955); *Abdullah v. Sheridan Square Press, Inc.,* 154 F.R.D. 591, 592 (S.D.N.Y.1994). But that is not quite the situation here.

The plaintiff's selection of the forum was dictated not by extrinsic circumstances over which it had no control, but by the forum selection clause of the contract over which it did. Like all sophisticated contracting parties, the plaintiff gave up certain things in exchange for other things it valued more. *Compare Carbajal v. H & R Block Tax Services, Inc.,* 372 F.3d 903, 907 (7th Cir.2004) (Easterbrook, J.) ("Second, no general doctrine of federal law prevents people from waiving statutory rights (whether substantive or procedural) in exchange for other things they value more, such as lower prices or reduced disputation.") (Parenthesis in original); *United States v. Miller,* 450 F.3d 270, 272 (7th Cir.2006) (Easterbrook, J.). One of those things was the right to sue in a forum other than Illinois.

But that does not mean that the plaintiff's decision was not voluntary or that it had "no control" over where to bring the suit. Nonetheless, it is true that the reasons that allow attributing primacy to the plaintiff's choice of forum do not exist here in the same sense or to the same degree that they do in cases where a plaintiff chooses among available forums. Thus, the choice of forum, while not outcome-determinative, cannot be wholly dismissed either.

When all things are considered, it seems to me that it is a more appropriate exercise of discretion to require the two witnesses to come to Chicago rather than requiring two sets of lawyers to travel to the witness' places of residence. Consequently, the defendants' motion to compel [76] is granted.

N.D.Ill.,2007.
Fast Food Gourmet v. Little Lady Foods
Slip Copy, 2007 WL 188014 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                                      Page 1
Not Reported in A.2d, 1987 WL 28308 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Braunsteins v. Mart Assoc.
Del.Super,1987.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
BRAUNSTEINS et al.
v.
MART ASSOC., et al.
Submitted: Nov. 18, 1987.
Decided: Nov. 25, 1987.

Philip B. Bartoshesky, Biggs and Battaglia, Wilmington.
J.R. Julian, J.R. Julian Professional Association, Wilmington.
POPPITI, Judge.
*1 The matter is presently before the Court on the application of La Nuova D & B S.p.A and Dibiten S.p.A. (hereinafter "La Nuova") for a protective order to impose, as a condition of taking the depositions of representatives of La Nuova taking place in Wilmington, Delaware a requirement that GAF pay La Nuova all travel and related expenses.

Pursuant to Superior Court Civil Rule 30(b)(6), GAF noticed the depositions of representatives of La Nuova in Wilmington, Delaware. La Nuova filed a Motion for Protective Order alleging inconvenience and requesting that if the depositions are to be taken in Wilmington, that GAF pay reasonable costs incurred by members of La Nuova traveling from Milan, Italy and staying in Wilmington, Delaware. On October 1, 1987, an office conference was held where it was agreed GAF would vacate its Notice of Deposition without prejudice and each party would address the issue of payment of reasonable costs of travel.

Having reviewed the submitted letter memoranda and the applicable case law on the subject I am satisfied that La Nuova should travel to Wilmington to be deposed and that they should be responsible for any expenses incurred thereby.

In support of their position, La Nuova relys upon *Layton v. Lee,* Del.Super., 196 A.2d 578 (1963), for the proposition that the Court has the power to grant the relief requested by La Nuova. It is undisputed that pursuant to Superior Court Civil Rule 26(c) the Court may, for "good cause", issue an order to protect a party from *inter alia* "undue burden or expense." *See also Layton v. Lee, supra,* (Superior Court Civil Rule 30(b) was replaced by Rule 26(c) after the *Layton* decision). The application of this rule, however, lies within the sound discretion of the trial judge on a case by case basis. *Papen v. Suburban Propane Gas Corp.,* Del.Super., 229 A.2d 567 (1967), rev'd on other grounds, Del.Sup., 245 A.2d 795 (1968).

In *Layton,* the Court held that defendant's inability to attend the deposition in Wilmington for financial reasons was "good cause" for the issuance of a protective order. *Layton v. Lee,* 196 A.2d at 581.
In the present case the record is completely devoid of and I find no such compelling reason to grant the protective order. In this regard there is no issue regarding the financial position of La Nuova, nor has La Nuova offered any other evidence of either undue burden or hardship. Simply stated La Nuova has failed to make any affirmative showing that good cause exists. *See,* 70 ALR 2d 685, Annotation: Depositions-Limiting or Terminating at 701.

La Nuova argues that the Court should apply a " fundamental fairness test" similar to that applied in a Rule 30(h) application. While I am not satisfied that the analysis would be any different under a test of "fundamental fairness", I am satisfied that the " good cause" "undue hardship" analysis of *Layton v. Lee* is well established in this jurisdiction. *See, Griffin et al. v. Todd, et al.* C.A. No. 86C-AU-166, July 27, 1987, Taylor, J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                           Page 2
Not Reported in A.2d, 1987 WL 28308 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

*2 Further, while it is generally accepted that depositions of agents and officers of a corporation are ordinarily taken at the corporation's principle place of business, Wright & Miller, *Federal Practice and Procedure:* Civil Section 2112, this rule is not strictly applied and it is in the Court's sound discretion to tailor discovery matters on a case by case basis. In this instance, where the principal place of business of the deponent is in Italy, but all other parties are located in Delaware, the cause of action arose in Delaware and more importantly the jurisdiction of the Delaware courts was invoked by La Nuova by filing cross-claims against other defendants, including GAF, in the Delaware courts, La Nuova should submit to discovery in this jurisdiction. *See, Fischer & Porter v. Sheffield Corporation,* D.Del., 31 F.R.D. 534, 538 (1962). When the relative burdens of each party are weighed, the scales are weighted in GAF's favor. *Cf. Gitto v. "Italia", Societa' Anonima Di Navigazione,* E.D.N.Y.Dist.Ct., 28 F.Supp. 309 (1939).

Having stated the above, the application for a protective order is HEREBY DENIED.

IT IS SO ORDERED.

Del.Super,1987.
Braunsteins v. Mart Ass'n
Not Reported in A.2d, 1987 WL 28308 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.                                                                                     Page 1
Not Reported in F.Supp., 1994 WL 14839 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

C
Dahlstrom Mfg. Co., Inc. v. Storage Technology Corp.
W.D.N.Y.,1994.
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.
DAHLSTROM MANUFACTURING COMPANY, INC., Plaintiff,
v.
STORAGE TECHNOLOGY CORPORATION, Defendant.
No. 93-CV-0509E(F).

Jan. 19, 1994.

Michael E. Ferdman, Darryl J. Colosi, Buffalo, NY, for plaintiff.
Ann W. Herman, Buffalo, NY, for defendant.

MEMORANDUM and ORDER

ELFVIN, District Judge.

*1 In this suite for wrongful termination of a contract, defendant Storage Technology Corporation ("Storage") presently moves for an order transferring this action to the United States District Court for the District of Colorado so that it may there be joined with Civil No. 93-M-1372, *Storage Technology Corporation v. Dahlstrom Manufacturing Corporation, Inc.,* a pending and earlier-filed declaratory judgment action which involves identical parties and issues as the instant suit. The motion will be granted.

In general, the first-commenced suit has priority over later-filed suits absent a showing of an imbalance of convenience or of some other special circumstances in favor of proceeding in and with the later suit, with such left to the sound discretion of the district courts. *William Gluckin Co. v. International Playtex Corp.,* 407 F.2d 177-178 (2d Cir.1969). Such presumed priority, as a principle of sound judicial administration, helps to prevent a multiplicity of actions and to achieve resolution of all disputes arising out of common matters in a single lawsuit, by giving a court-some single court-precedence over another court. *Cf., Asset Allocation & Mgt. v. Western Employers Ins.,* 892 F.2d 566, 572 (7th Cir.1989). Here, not only was the suit in Colorado filed first, but the Colorado court has already asserted its priority by denying on October 4, 1993 the motion by Dahlstrom Manufacturing Company, Inc. ("Dahlstrom") to stay the action pending therein. Therefore, the principle of comity, as well as that of judicial economy as manifested by the "first-filed" rule, counsels transfer of this suit to Colorado.

Dahlstrom opposes the transfer, claiming that a " special circumstance" exists in this case, rendering the first-filed rule inapplicable. Dahlstrom's supporting memorandum described the purported circumstance as follows:
"At [a May 27, 1993 settlement] meeting, Dahlstrom advised StorageTek that it had prepared a draft complaint which it did not wish to file and which it did not intend to file at that time. Dahlstrom wanted to settle this matter out of court. Richard Bland, StorageTek's attorney, requested to see a copy of the complaint. He explained that he would use the complaint to assist him in convincing StorageTek management to settle this matter.
"On the day after the settlement meeting, Dahlstrom's attorney delivered the draft complaint to Mr. Bland by telefax and by mail. In advising StorageTek about the draft complaint and in making it available to StorageTek, Dahlstrom was attempting to avoid litigation. The cover letter which accompanied the draft complaint stated, in relevant part:
'However, at the same time I provide this courtesy copy of the Summons and Complaint to you, it is Dahlstrom's hope that litigation in this matter can be avoided, as we explained in yesterday's meeting with you and Andy Dodd at Dahlstrom.'
"(Please see Exhibit 1 to the Affidavit of Michael E. Ferdman.)
*2 "Upon receipt of the draft complaint [on the next

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2

Not Reported in F.Supp., 1994 WL 14839 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

business day], StorageTek responded by filing a declaratory action of its own in Colorado State Court, without the benefit of notice to Dahlstrom." Memorandum of Law on Behalf of Dahlstrom Manufacturing Company, Inc. in Opposition to Motion to Stay and Transfer Action (filed November 5, 1993); see also Affidavit of Michael E. Ferdman, Esq. (sworn to November 5, 1993).

Dahlstrom argues that, under such circumstances, not only should the first-filed rule be afforded no weight, *Gibbs & Hill, Inc. v. Herbert International, Inc.*, 745 F.Supp. 993, 996 (S.D.N.Y.1990), but the equities should mandate proceeding with the present suit, *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), cert. denied, 440 U.S. 908 (1979). Dahlstrom also maintains that StorageTek has failed to meet its burden of establishing that there should be a change of forum "for the convenience of parties and witnesses, in the interest of justice" under 28 U.S.C. § 1404(a).

Those considerations raised by Dahlstrom indeed are plausible and equitable bases for denying StorageTek's motion. The Colorado court's denial of stay has no binding effect on this Court which is not precluded from denying the instant motion and asserting in return the priority of this suit over the Colorado action. *National Equipment Rental, Ltd. v., Fowler*, 287 F.2d 43 (2d Cir.1961). The conduct of StorageTek prior to the commencement of the Colorado suit can well be an equitable basis for proceeding in this suit. Further, while the Colorado court is more familiar with the governing law of this case-*i.e.*, the Colorado law-, New York is the locus of one of the operative facts herein-*i.e.*, the May 28, 1991 meeting, in which StorageTek had allegedly agreed not to terminate its contractual relationship with Dahlstrom prematurely. Moreover, contrary to the Colorado court's observations that "there is little to distinguish the posture of the two suits" and that "[n]o scheduling order has been entered in either proceeding," this Court had already presided over a preliminary hearing and had issued a scheduling order by the time of the filing of the Colorado magistrate judge's recommendation making the above observations.

However, not to mention the unseemliness of the conflict between the coordinating federal courts, should this Court decide to assert priority over the Colorado court, such determination would hardly serve the overriding purpose of the priority rules-*i.e.*, prevention of duplicative litigations. Short of an injunction prohibiting the parties from proceeding in Colorado, this Court's determination can be expected to have no tangible, effect upon the proceedings in Colorado and, therefore, this Court's denial of a stay would result in two identical lawsuits in separate districts proceeding simultaneously and asserting precedence over each other. Such wasteful "yo-yoing" of legal actions must be avoided.

*3 In determining Dahlstrom's motion to stay, the Colorado court was faced with essentially the same issues this Court now faces which were addressed to its discretion and, after a full-hearing, the Colorado court decided not to stay its proceeding, having exercised its discretion in determining its priority over the within action. In this connection, it is of no little moment that Dahlstrom, despite the opportunity it had, chose not to challenge such exercise of discretion by the magistrate judge in Colorado when it was expressed in his recommendation. Under the circumstances, there is no sufficient reason for this Court now to ignore the Colorado court's unchallenged discretionary determination.

Also before the Court is StorageTek's motion objecting to and seeking review of the Decision and Order of the Honorable Leslie G. Foschio, United States Magistrate Judge for the Western District of New York, filed october 26, 1993. In the said Decision and Order, Judge Foschio denied Dahlstrom's motion to compel depositions of three StorageTek employees to take place in Buffalo, rather than in StorageTek's principal place of business in Colorado, subject to the requirement that StorageTek reimburse Dahlstrom for the reasonable travel and accommodation expenses of its counsel, as well as for its representative, in conducting the depositions in Colorado. StorageTek claims that such allowance of expense was not warranted because Dahlstrom had failed to demonstrate the special circumstances needed to justify such award. However, magistrate judges are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 3
Not Reported in F.Supp., 1994 WL 14839 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

afforded broad discretion in resolving discovery disputes and their decisions in such matters are not subject to reconsideration unless they are shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Dahlstrom is in a dire financial condition and it had argued strenuously in front of Judge Foschio that it could afford neither the expenses of depositions in Colorado nor having its President spend his time away from this area, assisting depositions in Colorado, during the period of sensitive management activities. In denying Dahlstrom's motion, Judge Foschio struck a delicate balance between the parties' divergent positions by requiring the reimbursement of expenses. It cannot be said that such determination was clearly erroneous or contrary to law. *See, e.g., Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D.Del.1962) (requiring defendant to pay plaintiff's and its attorneys' travelling expenses and maintenance incurred in their participation in depositions taking place in defendants' principal place of business).

Accordingly, it is hereby ORDERED that the defendant's motion in objecting to and seeking review of the Decision and Order of Judge Foschio is denied and that the defendant's motion to transfer this suit to the United States District Court for the District of Colorado is granted.

W.D.N.Y.,1994.
Dahlstrom Mfg. Co., Inc. v. Storage Technology Corp.
Not Reported in F.Supp., 1994 WL 14839 (W.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOCUS - 3 of 5 DOCUMENTS


Positive
As of: May 03, 2007

ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware corporation, Plaintiff, v. DANIEL D. CROWLEY; DONALD J. AMARAL; WILLIAM J. CASEY; L. PETER SMITH; and SANDRA L. SMOLEY, Defendants.

Civ. No. 04-1565-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2005 U.S. Dist. LEXIS 9885*

**May 25, 2005, Decided**

**SUBSEQUENT HISTORY:** Related proceeding at *Genesis Ins. Co. v. Crowley, 2007 U.S. Dist. LEXIS 7362 (D. Colo., Feb. 1, 2007)*

**COUNSEL:** [*1] For Chapter 11 Trustee Arlin M. Adams Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation, a Delaware Corporation and of Coram Inc., a Delaware Corporation, Plaintiff: Rolin P. Bissell, Glenn Christopher Mandalas, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Daniel D. Crowley, Defendant: Jeffrey C. Wisler, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For Donald J. Amaral, William J. Casey, L. Peter Smith, Sandra L. Smoley, Defendants: Peter J. Walsh, Jr, Potter Anderson & Corroon, LLP, Wilmington, DE.

**OPINION:**

**MEMORANDUM ORDER**

At Wilmington this 25th day of May, 2005, having reviewed defendants' motions to transfer, and the papers submitted in connection therewith;

IT IS ORDERED that said motions (D.I. 3, 15) are denied, for the reasons that follow:

1. **Background facts.** On August 8, 2000, Coram Healthcare Corporation and Coram, Inc. (hereafter "Coram") filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware, together with a proposed plan of reorganization. In December 2000, the bankruptcy court denied confirmation of the plan, based in part on the fact that defendant Crowley had a [*2] conflict of interest by reason of his position as CEO of Coram and his contractual relationship with one of Coram's three major lenders. n1 After denying confirmation of Coram's second proposed plan of reorganization, n2 the bankruptcy court entered an order appointing plaintiff Chapter 11 Trustee of Coram. On October 27, 2004, the bankruptcy court confirmed the Trustee's plan of reorganization, which plan was implemented on December 1, 2004. Coram is now a private company owned by its former lenders. Under the Trustee's plan as approved by the bankruptcy court, the right to pursue causes of action against Coram's former directors was reserved to the Trustee for the benefit of Coram's former unsecured trade creditors and its former common shareholders.

n1 It is alleged that between November 30, 1999, when Crowley became CEO, and July 31, 2000, Crowley caused Coram to pay certain lenders approximately $ 60 million.

n2 The bankruptcy court found in this regard that the Outside Directors, the remaining defendants herein, had done nothing in response to the court's order denying confirmation of the first plan of reorganization.

Case 1:04-cv-01494-JJF    Document 180-3    Filed 05/03/2007    Page 17 of 18

Page 2
2005 U.S. Dist. LEXIS 9885, *

[*3]

2. **Standard of review.** Under *28 U.S.C. § 1404 (a)*, a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*; *Affymetrix, Inc. v. Synteni. Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998)*.

3. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001)*; *Shutte, 431 F.2d at 25*. [*4]

4. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard. Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998)*; *Cypress Semiconductor Corp. v. Integrated Circuit Sys., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001)*; *Continental Cas. Co. v. American Home Assurance Com., 61 F. Supp.2d 128, 131 (D. Del. 1999)*. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993)*.

5. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. Although emphasizing that "there is no [*5] definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

6. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations [*6] omitted).

7. **Analysis.** Defendants move to transfer this case to the District of Colorado. In support of their motions, defendants recite several facts. First, none of the defendants live in or near Delaware. n3 Coram, now a private company, is incorporated in Delaware with its principal place of business in Denver, Colorado. Coram's employees and business records are located as well in Denver, Colorado. Plaintiff, Coram's Chapter 11 Trustee, resides in Philadelphia. According to defendants, these facts compel the transfer of this case to Colorado because no one involved in the litigation has a direct connection to the District of Delaware.

> n3 Three of the defendants, Mr. Casey, Mr. Crowley and Ms. Smoley, live in California, while Mr. Amaral lives in Nevada and Mr. Smith lives in Illinois.

8. I respectfully disagree. Coram (through its directors) chose Delaware as its place of incorporation and chose to file for bankruptcy protection in Delaware's bankruptcy court. The bankruptcy court appointed plaintiff [*7] the Chapter 11 Trustee and gave him the authority to commence the instant proceedings against the company's former fiduciaries. These facts demonstrate a substantial connection to Delaware. Moreover, given the fact that most discovery will be taken in the same fashion regardless of where trial may proceed, n4 the convenience of the defendants is not a compelling factor. For these reasons, and consistent with my practice, I decline to transfer this case on the record presented. n5

> n4 Depositions generally do not last more than 7 hours; the parties should be able to work out convenient places for their location. Document production may well be in electronic format.

n5 Employees of parties must make themselves available for purposes of depositions and trial. It is not apparent to me whether the employees of Coram (in its present corporate form) are subject to this court's jurisdiction. However, neither is it apparent at this stage of the proceedings whether they will voluntarily appear as witnesses, under the circumstances at bar. Therefore, I will reconsider my decision not to transfer **only** if specifically identified, critical witnesses decline to testify in Delaware and cannot be compelled to do so.

[*8]

5/25/05

Sue L. Robinson

United States District Judge