# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MAGTEN ASSET MANAGEMENT CORP.       )
and LAW DEBENTURE TRUST COMPANY      )
OF NEW YORK,                         )
                                     )
          Plaintiffs,                )
                                     ) Civil Action
v.                                   ) No. 04-1494-JJF
                                     )
NORTHWESTERN CORPORATION,            )
                                     )
          Defendant.                 )
------------------------------------)
MAGTEN ASSET MANAGEMENT CORP.,       )
                                     )
          Plaintiff,                 )
                                     ) Civil Action
v.                                   ) No. 05-499-JJF
                                     )
MIKE J. HANSON and ERNIE J. KINDT,   )
                                     )
          Defendants.                )

                    Potter, Anderson & Corroon LLP
                    1313 North Market Street
                    Wilmington, Delaware

                    Tuesday, July 10, 2007
                    2:00 p.m.


BEFORE:   JOHN E. JAMES, ESQ.
          SPECIAL DISCOVERY MASTER


              TRANSCRIPT OF PROCEEDINGS


                    WILCOX & FETZER
         1330 King Street - Wilmington Delaware  19801
                    (302) 655-0477
                    www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



ORIGINAL

```
 1  APPEARANCES: (VIA TELECONFERENCE)

 2       DALE R. DUBE, ESQ.
         BLANK ROME LLP.
 3         Chase Manhattan Centre
           1201 Market Street - Suite 800
 4         Wilmington, Delaware  19801
           For the Plaintiff Magten Asset
 5         Management  Corp.
                  - and -
 6       BONNIE STEINGART, ESQ.
         GARY KAPLAN, ESQ.
 7       FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
           One New York Plaza
 8         New York, New York  10004-1980
           For the Plaintiff Magten Asset
 9         Management Corp.

10       KATHLEEN M. MILLER, ESQ.
         SMITH KATZENSTEIN & FURLOW
11         800 Delaware Avenue
           Wilmington, Delaware  19899
12                - and -
         JOHN V. SNELLINGS, ESQ.
13       NIXON PEABODY LLP
           100 Summer Street
14         Boston, Massachusetts  02110-2131
           For the Plaintiff Law Debenture Trust
15         Company of New York

16       VICTORIA W. COUNIHAN, ESQ.
         GREENBERG TRAURIG LLP
17         The Nemours Building
           1007 North Orange Street - Suite 1200
18         Wilmington, Delaware  19801
                  - and -
19       NANCY E. DELANEY, ESQ.
         CURTIS MALLET-PREVOST COLT & MOSLE LLP
20         101 Park Avenue
           New York, New York  10178-0061
21         For Defendant NorthWestern Corporation

22

23

24
```



**WILCOX & FETZER LTD.**
Registered Professional Reporters

1    APPEARANCES:   (Cont'd - VIA TELECONFERENCE)

2        DENISE KRAFT, ESQ.
         EDWARDS ANGELL PALMER & DODGE LLC
3          919 North Market Street - Suite 1500
           Wilmington, Delaware  19801
4              - and -
         STANLEY KALECZYC, ESQ.
5        KIMBERLY BEATTY, ESQ.
         BROWNING KALECZYC BERRY & HOVEN, P.C.
6          139 North Last Chance Gulch
           Helena, Montana  59624
7          For the Defendants Mike J. Hanson
           and Ernie J. Kindt

8

9                    - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          SPECIAL DISCOVERY MASTER JAMES:  This is

2  Special Master James and this is a telephone

3  conference that's taking place at 2:00 p.m. on

4  July the 10th in response to an application from the

5  defendants in the case with respect to some written

6  discovery requests, specifically Magten Asset

7  Management Corporation's objection to NorthWestern

8  Corporation's third request for production of

9  documents, and also the opposition to the subpoena

10  served by Messrs. Hanson and Kindt on I guess

11  Mr. Embry.

12          And we'll start, as I indicated, with

13  NorthWestern Corporation and Mr. Hanson and Kindt to

14  the extent they have some additional argument.  There

15  are basically three questions that this matter raises

16  and I would like each side to address them.  The first

17  question is in the motion papers that -- where in the

18  motion papers that were the subject of the May 18

19  hearing, was there an application on behalf of the

20  defendants to take the additional written discovery

21  that's at issue here, either the subpoena or the third

22  request for production of documents beyond the time

23  for the cutoff with respect to written discovery?

24         Secondly, to the extent there is something



1    in the record where that application was made, where

2    in either the transcript from May 18th or in the

3    reports and recommendations is there support for the

4    proposition that I ruled that further written

5    discovery could go forward after the May 2, I believe,

6    cutoff and extend to the end of June?

7         And then, lastly, to the extent there is

8    support that I granted an extension on the written

9    discovery period as well as the oral discovery period,

10   I want each side to address the merits of the

11   particular request for production of documents and the

12   objections made by Magten and Law Debenture.

13   Specifically from the perspective of Magten and Law

14   Debenture Trust Company of New York, what is the basis

15   for your objections and from the perspective of the

16   defendants, why are those objections not well-founded?

17        So, Ms. Delaney, you can go ahead with

18   those three questions.

19        MS. DELANEY:  Thank you, Mr. James.

20        First, there was nothing in our motion

21   papers that requested any additional time for written

22   discovery.  However, there was an outstanding

23   discovery item that had been served upon plaintiffs at

24   the time that we met on May 18th, and on page 91 to 93

1   of the record there is a reference to that.   It's

2   colloquy between Mr. Pizzurro and Ms. Steingart where

3   Mr. Pizzurro notes that we served interrogatories and

4   document requests which were due on May 11th and

5   Ms. Steingart responded "We will respond."

6          Now, that May 11th response to

7   interrogatories was beyond the May 1 date, but the

8   parties agreed that that response would be submitted.

9   We didn't get that response, however, immediately

10  after May 18th.  We didn't actually receive a response

11  until June 1, I believe.  So that is the only record

12  evidence that we have on this issue of additional

13  written discovery.  There was nothing in your report

14  and recommendation.

15         With respect to the merits, when we did

16  receive the response to our interrogatories on June 1

17  we noted that the plaintiffs specifically used and

18  used many times the phrase that these things were

19  being produced pursuant to investment authority that

20  they had.  So the third request that we sent

21  immediately, within one week of receiving those

22  responses on June 1, all went really to one question

23  and that was what documents did they have that showed

24  the investment authority on behalf of Magten for these

1  unrelated entities?

2           And as you have in front of you,

3  plaintiffs objected on the basis that these responses

4  were untimely; that the cutoff date was May 1. And we

5  do admit that this is beyond what was contemplated

6  originally, but it was our understanding that

7  plaintiffs' implicit agreement, actually their verbal

8  agreement that they would produce pursuant to the

9  outstanding interrogatories, which they did respond to

10 on June 1, was their understanding as well that

11 document discovery had been extended.

12          SPECIAL DISCOVERY MASTER JAMES: Okay.

13 With respect to the merits of the discovery, of course

14 Magten has objected to the discovery. Why are

15 there -- and apart from the untimeliness objection,

16 they have objections to the merits.

17          Are there any other aspects of their

18 objections that you want to address?

19          MS. DELANEY: I think I've addressed the

20 deadline issue. And most of their objection, in fact,

21 if not all, went to the timeliness.

22          However, as we have put in our letter

23 dated July 9th, we don't believe that there is any

24 burden on plaintiffs. These are a discrete set of 13

1    requests that go to a specific item of investment

2    authority with respect to identifying accounts. So we

3    aren't asking the plaintiffs to go through what we

4    understand to be a difficult exercise to come up with

5    the documents that would evidence their authority and

6    also provide evidence of their standing to bring this

7    lawsuit on behalf of what appear in their document

8    requests and interrogatory responses to be unrelated

9    accounts.

10              SPECIAL DISCOVERY MASTER JAMES:  Why can't

11    you get the same information through the deposition of

12    Mr. Embry, who I guess is a 30(b)(6) witness?

13              MS. DELANEY:  Well, I believe we attempted

14    to get that information, at least counsel for

15    Mr. Hanson and Mr. Kindt attempted by including the

16    document request in their subpoena.  And although they

17    might be able to address that more thoroughly, that

18    request was also denied, which leads us to believe

19    that we're not going to get an answer and it may be

20    that Mr. Embry won't remember the details of what

21    might be written in a contract between Magten Asset

22    Management and these particular clients as he sits at

23    a deposition later this week.  It may be something

24    that really is only evidenced by a writing or best

1  evidenced at least by a writing.

2      SPECIAL DISCOVERY MASTER JAMES:  This case

3  has been pending for some time and I'm a little

4  surprised that this issue hadn't come up before.

5      Do you have an explanation as to why these

6  requests were made at the eleventh hour or perhaps in

7  Magten's view at 2:00 a.m. in the morning?

8      MS. DELANEY:  Correct, Your Honor.  These

9  are late responses.  But, again, it wasn't until June

10  1 that we got a response that specifically and

11  repeatedly mentioned that Magten had investment

12  authority over these accounts.  This is in response to

13  reviewing the documents that they had produced earlier

14  in May.

15      And that's what triggered this inquiry.

16      MR. KALECZYC:  This is Stan Kaleczyc in

17  Helena.

18      In addition to the points that Nancy

19  Delaney has just raised, first we have been attempting

20  to take Mr. Embry's deposition for quite some time and

21  well in advance of the May 1 original discovery

22  cutoff.  For a variety of reasons, we were always told

23  that Mr. Embry was not available and, therefore, we

24  were not able to take his deposition during that time

1  frame.  Had we taken his deposition or been able to

2  schedule definitively his deposition during that time,

3  this issue may have come to a head at that point.

4  That's number one.

5           Number two, then when we had the hearing

6  in front of you and there was the order to extend

7  discovery to June 30th, counsel for Magten was

8  gracious enough to agree and consent to having

9  Mr. Embry's deposition taken after the June 30th

10  cutoff because of the impossibility of scheduling his

11  deposition before that time given the other

12  depositions, as well as the schedule of counsel,

13  including myself and Ms. Beatty.  So it was not until

14  June, as Nancy Delaney pointed out, that for the first

15  time this investment authority issue was raised.  And

16  it is a matter that we do want to probe in Mr. Embry's

17  deposition that will be taken Thursday morning and,

18  therefore, we thought it was appropriate that for

19  purposes of that deposition he provide us the

20  documents.

21           Now, when we noticed Mr. Embry's

22  deposition we did not notice him as a 30(b)(6) witness

23  per se, but we did not believe that that was necessary

24  because the record, I believe, is clear and there are

**W&F**

**WILCOX & FETZER LTD.**
Registered Professional Reporters

1  certainly documents on file with the Secretary of

2  State's office in Delaware indicating that Mr. Embry

3  is the chairman and/or chief executive officer of

4  Magten Asset Management Corporation and we understand

5  from reading the deposition transcript that Mr. Embry

6  gave in another related matter that he is the only

7  officer of Magten and, therefore, he uniquely would

8  have possession of that information and, therefore,

9  there would be no need to designate a different

10  30.(b)(6) witness since he is effectively Magten for

11  these purposes and has the information that we're

12  seeking.

13         The suggestion of untimeliness I don't

14  think is totally appropriate given that we have been

15  attempting to address this issue with Mr. Embry well

16  before the May 1 original discovery cutoff.

17         SPECIAL DISCOVERY MASTER JAMES:  The

18  documents that you're seeking, is it your

19  understanding, Mr. Kaleczyc, that they're only in the

20  possession of Mr. Embry qua Mr. Embry as an individual

21  as opposed to being within the possession of a party

22  to the suit, i.e. Magten?

23         MR. KALECZYC:  Quite honestly, Special

24  Master James, we don't know if they are in the

1    possession of Mr. Embry as Mr. Embry or Mr. Embry as

2    the chairman and CEO of Magten Asset Management

3    Corporation.

4         SPECIAL DISCOVERY MASTER JAMES:  Okay.  So

5    as I understand the lay of the land here, your clients

6    at least have noticed a regular 30(b)(1) deposition of

7    Mr. Embry pursuant to a Rule 45 subpoena.

8         Is NorthWestern also seeking, has it filed

9    a notice of deposition for a regular 30(b)(1)

10   deposition or is their deposition a 30(b)(6) that's

11   going to take place on the 12th?

12        MS. DELANEY:  We are attending the

13   deposition as noticed and we'll be available to ask

14   questions, but we have not served a separate notice of

15   deposition or subpoena.

16        SPECIAL DISCOVERY MASTER JAMES:  So the

17   only notice of deposition that's outstanding is the

18   one that was filed by Mr. Kaleczyc's clients?

19        MS. DELANEY:  That's correct.

20        SPECIAL DISCOVERY MASTER JAMES:  Okay.  Is

21   there a plan to take the deposition of the

22   corporation?

23        MR. KALECZYC:  Well, Mr. James, if you

24   rule today that we cannot take the deposition of the

1  corporation or consider the deposition of Mr. Embry on

2  Thursday to cover those matters, then I suppose we

3  would seek separate leave from you to then take a

4  30(b)(6) deposition of Magten.  And I am assuming that

5  Mr. Embry would be their 30(b)(6) witness since he is

6  the only officer, only employee of Magten based upon

7  the information that we have, unless Ms. Steingart can

8  represent to the contrary.

9         SPECIAL DISCOVERY MASTER JAMES:  Thank

10 you.

11        Ms. Steingart, let's hear from you.

12        MS. STEINGART:  Okay.  I guess we'll start

13 with --

14        SPECIAL DISCOVERY MASTER JAMES:  Why don't

15 you start with my three questions?

16        MS. STEINGART:  Right.  Certainly there

17 was nothing in the motion papers filed with respect to

18 the request to extend discovery that dealt with the

19 extension of document requests or document discovery

20 and, indeed, the defendants as we pointed out in our

21 letter to you of this morning, sir, both NorthWestern

22 and Hanson and Kindt opposed extension of any kind of

23 discovery.  And I think that the record is clear that

24 the discovery that we were discussing on the record,

1    both Mr. Pizzurro and myself, was the late-served

2    discovery that was already extant that NorthWestern

3    had provided and we indicated that in light of the

4    fact that the Special Master was going to extend the

5    discovery cutoff for the taking of depositions that we

6    would respond to that discovery which was extant and

7    late filed by NorthWestern.

8              There was no request during that hearing

9    for NorthWestern to file additional discovery

10   requests.  Indeed, as Ms. Delaney admits on the phone

11   here, that was not even contemplated by them.

12             Also, I've located paragraph 30 of your

13   order, sir, and paragraph 30 of your order which

14   embodies the record ruling from May 18th indicates,

15   I'll quote, "Accordingly, as reflected in the bench

16   ruling that appears at page 191, line 21 through page

17   199, line 7 each side would be permitted to take 15

18   depositions and the revised back deposition cutoff

19   date would be moved from May 2nd to June 30, 2007,"

20   close quote.

21             So I think it's fairly clear that the

22   ruling was to extend deposition discovery at our

23   request, but we agreed during the hearing to respond

24   to the outstanding document requests that had been

1    posed by NorthWestern.  I think that takes care of the

2    first two questions, sir, that you asked.

3                The third question, the merits of the

4    request -- and I would like to bifurcate this, if I

5    may.  The first letter that was written to you, sir,

6    was written by NorthWestern and NorthWestern was

7    addressing their document requests, which were of

8    course filed out of time and relate to documents and

9    to issues that not only go to the beginning of this

10   case but go to claims that NorthWestern filed in the

11   bankruptcy and for which NorthWestern has also taken,

12   has already taken discovery.

13                So I just really don't even understand the

14   genesis of these questions.  There are certainly posed

15   late.  They're certainly not relevant to the issues in

16   this proceeding and they're certainly free to ask

17   Mr. Embry about them.

18                So I think that the requests are not

19   well-taken not only because they're out of time but

20   because they don't have relevance to the issues that

21   are being presented here.

22                SPECIAL DISCOVERY MASTER JAMES:  Let me

23   stop you there.  Let me stop you there, if I may

24   please.

1    You say they aren't relevant, but you do

2   say that they can ask Mr. Embry about the subject

3   matters in those requests.  So as I understand it,

4   when the deposition goes forward on the 12th you will

5   not be seeking -- and I'm not sure I know how you

6   could -- to interpose an objection to their making

7   inquiries into the subject areas that are within the

8   document requests or the subpoena requests.

9        Am I correct on that?

10       -- MS. STEINGART:  You are correct.  And I

11  think that if I did so, I would be violating Delaware

12  practice in this regard.

13       You know, as long as the questions are not

14  scandalous or humiliating or in some way harassing, I

15  think that the witness is required, unless the

16  material is privileged, to be permitted to answer the

17  question.  So that's my, you know, that's my

18  understanding.  So certainly they could ask these

19  questions.

20       I am confused about the back and forth

21  concerning what notice Mr. Embry is appearing on

22  Thursday pursuant to, and you'll excuse my poor

23  grammar.  NorthWestern was the only defendant that

24  timely filed a notice of deposition and that notice of

**W&F**
WILCOX & FETZER LTD.
Registered Professional Reporters

1   deposition was a 30(b)(6) deposition on Magten and

2   that is the deposition for which Mr. Embry is

3   appearing.

4             The subpoena that was served in June by

5   Hanson and Kindt is not timely.  It's not timely as an

6   issue of fact discovery and it's not timely as an

7   issue of deposition notice.  So Mr. Embry is appearing

8   as the representative of Magten as far as I understand

9   it in response to the only notice of deposition that

10   was timely served in this case, which was the one that

11   was served by NorthWestern when discovery was being

12   served back and forth.  And as Stan explains, the

13   timing for Mr. Embry's deposition is the result of the

14   schedules of both the witness and counsel for

15   NorthWestern.  We were perfectly willing and able to

16   make him available during June and happy to do so.

17             But to the extent that it accommodated

18   others, we were also more than happy to make that

19   accommodation.  But if it happened at that time -- as

20   you can imagine, we scheduled it at a time before the

21   subpoena from Hanson and Kindt ever came.  So it

22   couldn't possibly be pursuant to that subpoena that

23   we're doing this deposition.

24             SPECIAL DISCOVERY MASTER JAMES:  Are you

1    telling me that no new notices of deposition were

2    filed after May the 2nd?  I ordered that the

3    deposition discovery period, the fact deposition

4    discovery period would be extended to June 30, 2007.

5        Of course, as of May the 18th as I

6    understand it a number of notices of deposition had

7    been filed.  I can't recall whether a notice had been

8    filed for Mr. Embry.  I believe it had been, and it

9    was probably NorthWestern's 30(b)(6).

10        MS. STEINGART:  Right.

11        SPECIAL DISCOVERY MASTER JAMES:  Have any

12    other deposition notices been filed by either side

13    since May the 18th other than the one that is

14    referenced here today that was filed by Mr. Hanson and

15    Mr. Kindt on Mr. Embry?

16        MS. STEINGART:  Right.  That was the only

17    deposition notice or subpoena that was filed after the

18    hearing before you and it was at the hearing, at the

19    conclusion of it that we had discussion with counsel

20    to schedule Mr. Embry's deposition.  And so that

21    discussion was had and the timing of it was discussed

22    before that subpoena was ever served because we were

23    arranging the discovery pursuant to NorthWestern's

24    subpoena.

1      SPECIAL DISCOVERY MASTER JAMES:  You mean

2  NorthWestern's notice of deposition?

3      MS. STEINGART:  Exactly.  I'm sorry.

4  Thank you, sir.  NorthWestern's notice of deposition.

5      SPECIAL DISCOVERY MASTER JAMES:  Okay.

6  Anything else?

7      MS. STEINGART:  That's all.

8      SPECIAL DISCOVERY MASTER JAMES:  Anything

9  from Mr. Kaleczyc or Ms. Delaney?

10      MR. KALECZYC:  This is Stan Kaleczyc.

11      My recollection is a little bit different

12  than Ms. Steingart's.  And that is, that we had

13  originally filed a notice of deposition of Mr. Embry

14  in April and that deposition did not go forward

15  because of various scheduling and related issues that

16  came up at that time.

17      Then my recollection is that after May 18

18  we did file an amended notice of that deposition

19  rescheduling it for July 12th after the date was

20  confirmed with Ms. Steingart that Mr. Embry would be

21  available on July 12th.  And then also the subpoena

22  was issued after we had an opportunity to review the

23  responses to the requests -- excuse me -- responses to

24  the discovery served by NorthWestern where this vague

1  term of investment authority was first raised in the

2  answers to that discovery and that precipitated not

3  only NorthWestern's third set of discovery requests

4  but also the subpoena that we filed.

5           And, again, as Ms. Delaney had originally

6  pointed out, we think that this is very relevant to

7  the question of the standing of Magten to sue

8  Mr. Hanson and Mr. Kindt.

9           SPECIAL DISCOVERY MASTER JAMES:

10  Ms. Delaney?

11           MS. DELANEY:  I would just briefly join in

12  the relevance, Your Honor.  I believe that these

13  documents would be critical to the issue.

14           As to whether or not Magten has standing,

15  they have asserted since the inception of this

16  litigation that they are the holder of 33, somewhere

17  between 33 or more percent of the QUIPS that are at

18  issue here and I think it is extremely relevant that

19  we be permitted to determine pursuant to what

20  investment authority that they claim that they have.

21  You know, can we see those documents that create that

22  authority?

23           SPECIAL DISCOVERY MASTER JAMES:

24  Ms. Steingart, do you have something?



21

1          MS. STEINGART:  Yes, if I might.  Thank

2    you, sir.

3          NorthWestern, certainly NorthWestern and

4    Hanson and Kindt, but certainly NorthWestern has had a

5    list of the accounts in which the QUIPS are held and

6    in which the QUIPS were purchased for years.  This

7    isn't the first they have heard that Magten as an

8    investment advisor or as an investment fund has

9    invested on behalf of a number of entities and it is

10   through those investments that Magten holds the QUIPS

11   and it's because of the investment authority in these

12   agreements that Magten is seeking the relief here.

13          This has been, this has been on the table

14   since Magten first filed its proof of claims in the

15   bankruptcy, through two depositions that have already

16   occurred in this matter in ancillary proceedings.

17          So for NorthWestern to say that there has

18   been some response to an interrogatory or a document

19   request where lo and behold Magten has purchased the

20   QUIPS because it had investment authority, you know,

21   that just is a little hard to take at this point.

22   This has always been on the table.  This has always

23   been the case.  This is really a non-issue because

24   there's no, you know, there can be no dispute about

1  the investment authority that Mr. Embry has or that

2  actually it is to Magten, but certainly they can ask

3  about it at the deposition.

4         As I understand, this is a deposition of

5  Magten, a 30(b)(6).  If what both NorthWestern and

6  Hanson and Kindt are saying now no, it is not a

7  30(b)(6), this is just Mr. Embry individually, you

8  know, they can take their choice, but my view is that

9  as far as I understand it the notice to which we are

10 producing Mr. Embry is a 30(b)(6) of Magten.

11        SPECIAL DISCOVERY MASTER JAMES:

12 Mr. Kaleczyc, I have a question for you.

13        The subpoena that you filed, if you filed

14 it, back in April to which you were alluding a minute

15 ago, did that particular -- well, first of all, did

16 you actually file the subpoena?

17        MR. KALECZYC:  Well, certainly in April of

18 this year it was a notice of deposition.  There was no

19 subpoena with it at that time.  The only subpoena is

20 the subpoena that is dated I believe June 18th.

21        SPECIAL DISCOVERY MASTER JAMES:  Okay.

22 Thank you.

23        MR. KALECZYC:  But at this point,

24 Mr. James, I think given the representations of

1    Ms. Steingart and the discussion that we have had,

2    this has become almost a moot technical issue in terms

3    of 30(b)(1) versus 30(b)(6).  It's clear that

4    Mr. Embry is appearing pursuant to a 30(b)(6)

5    deposition and I think we will all be proceeding on

6    that basis.

7             MS. DELANEY:  And that's acceptable to

8    NorthWestern as well.

9             SPECIAL DISCOVERY MASTER JAMES:  All

10   right.  That takes one issue off my platter then.

11            I'm prepared to issue a ruling on this.  I

12   think everyone has conceded or recognized that there

13   was no application by the defendants for additional

14   time, for an extension of time to take additional

15   factual discovery through June the 30th.  So there's

16   no question that the third request for production of

17   documents directed to Magten is untimely.

18            I certainly have it within my discretion

19   to allow this discovery if there is good cause shown.

20   I don't think there is good cause here.  This is one

21   of those classic cases of no good deed goes

22   unpunished.  In this instance, Magten voluntarily

23   agreed to answer the interrogatories propounded by the

24   defendants which arguably were not timely.  They went

1  ahead in good faith and did that in part in

2  consideration for the extension of the fact deposition

3  discovery period in which they had a much greater

4  interest than the defendants.

5       And apparently it was the answers to

6  interrogatories that they gave in May that triggered

7  this subsequent interest in these particular

8  documents.  I have to be -- I'm a little skeptical of

9  the fact that the information that is now being sought

10 was not previously available at some point in this

11 litigation based on what I am hearing from at least

12 Ms. Steingart and I haven't heard anything to the

13 contrary from the defendants.  Certainly there was

14 enough information about this aspect of the QUIPS that

15 was available to the defendants to timely propound

16 discovery requests that have now been filed late and

17 are incorporated in the third request for production

18 of documents or the subpoena duces tecum that Messrs.

19 Hanson and Kindt have filed.

20      Having looked at the document requests, I

21 do see the relevance, but at this point that's not an

22 issue for me to decide.  The question is whether the

23 discovery that's sought through the depositions is

24 reasonably calculated to lead to the production of

1    admissible evidence.  Ms. Steingart has indicated that

2    she doesn't intend to prevent any questioning of

3    Mr. Embry in his Rule 30(b)(6) capacity about the

4    subject matter that is contained within the subpoena

5    duces tecum and within the third request for

6    production of documents, so to that extent the

7    defendants are not prejudiced in obtaining whatever

8    information they can from Mr. Embry about the subject.

9    And since he seems to be the principal actor for

10   Magten, he probably has extensive knowledge about this

11   issue, notwithstanding that he may not be presented

12   with any paper by the defendants to refresh his

13   recollection.

14          As to the notice of deposition filed by

15   Messrs. Hanson and Kindt, that is now moot because

16   Mr. Kaleczyc has indicated that they're willing to

17   proceed with a 30(b)(6) deposition, so I don't have to

18   address that issue.

19          So I believe that I've dealt with all of

20   the issues that were raised by this emergency

21   application, unless someone else has something to

22   raise.

23          Hearing nothing, then this hearing is

24   adjourned.



**WILCOX & FETZER LTD.**
Registered Professional Reporters

26

1          Thank you very much.

2          (Proceedings concluded at 2:33 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

1   State of Delaware.   )
                         )
2   New Castle County   )

5                  CERTIFICATE OF REPORTER

7       I, Kurt A. Fetzer, Registered Diplomate

8   Reporter and Notary Public, do hereby certify that the

9   foregoing record, pages 1 to 26 inclusive, is a true

10   and accurate transcript of my stenographic notes taken

11   on July 10, 2007, in the above-captioned matter.

13       IN WITNESS WHEREOF, I have hereunto set my hand

14   and seal this 11th day of July, 2007, at Wilmington.

18          Kurt A. Fetzer, RDR, CRR

19          Certification No. 100-RPR

20          (Expires January 31, 2008)



**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

ORIGINAL