# Exhibit 38

# Expert Report of Paul A. Marcus

September 19, 2007


Huron Consulting Group

**Huron**
CONSULTING GROUP

- "The Commission views the financial condition of NorthWestern with great concern. The Commission approved NorthWestern as the purchaser of MPC's transmission and distribution systems. Since that approval the financial condition of NorthWestern has spiraled down due to non-utility activities at CornerStone Propane, Expanets, and Blue Dot. The Commission is dismayed at the erosion of NorthWestern's credit ratings to either the lowest investment grade or to junk status. The performance of the non-utility entities and the resulting threats to the provision of utility service is unacceptable to this Commission. The cost of borrowing money has been increased due to losses at the non-utility companies."[216]

- "The Commission is primarily responsible to ensure that regulated energy services provided to Montana consumers are safe, adequate and reliable at rates that are just and reasonable. NorthWestern's ability to fulfill these requirements is placed at risk by its current financial conditions. Serious questions exist about the ability and commitment of NorthWestern to pursue adequate and necessary maintenance, repair and replacement of critical utility infrastructure when potential bankruptcy and survival occupy the attention of the board of directors and management."[217]

- "Because the Commission has continuing concerns about the performance and prospects of Applicant's non-utility businesses, and the implications of their financial performance for utility customers, the following conditions are expressly added to this Order..." These included a requirement that proceeds from the sale of non-utility assets must be used for debt reduction, disapproval of further investments in the subsidiaries, a maintenance plan and budget for the public utility infrastructure within 45 days.[218]

124. These comments were made by the MPSC in January 2003, before the restated financials were disclosed and without full knowledge of NorthWestern's financial deterioration. Full knowledge would have only served to increase the commission's concerns. As it was regarding the first mortgage bonds, the MPSC was aware of a

---

[216] Department of Public Service Regulation before the Public Service Commission of the State of Montana, In the Matter of the Application of NorthWestern Corporation for Authority to Consummate a Credit Agreement and Issue $390 Million in Principal Amount of Secured Long-Term Notes in the Form of First Mortgage Bonds, Final Order, January 27, 2003, pp. 5-6 (NOR001610-11).

[217] Department of Public Service Regulation before the Public Service Commission of the State of Montana, In the Matter of the Application of NorthWestern Corporation for Authority to Consummate a Credit Agreement and Issue $390 Million in Principal Amount of Secured Long-Term Notes in the Form of First Mortgage Bonds, Final Order, January 27, 2003, p. 9 (NOR001614).

[218] Department of Public Service Regulation before the Public Service Commission of the State of Montana, In the Matter of the Application of NorthWestern Corporation for Authority to Consummate a Credit Agreement and Issue $390 Million in Principal Amount of Secured Long-Term Notes in the Form of First Mortgage Bonds, Final Order, January 27, 2003, pp. 8-9 (NOR001613-14).



subset of the negative news, but faced with a Hobson's choice approved the bonds. However, as described above, much of this information was known to NorthWestern's management and should have been disclosed to the public prior to the transfer. I would expect, based on the above reaction, that the MPSC would have been equally upset and concerned about the transfer of assets had they been fully informed of NorthWestern's financial difficulties at the time of the transfer.

125. Additionally supporting my belief is the fact that the negative consequences to Montana Power as a result of the acquisition by NorthWestern stand in stark contrast to the assurances provided to the MPSC by Michael Hanson prior to the acquisition. When asked to "address financial capability under two aspects: financial strength and financial flexibility", Mr. Hanson stated that,

> In general, we believe that capital will be no more expensive with NorthWestern as owner of MPC than is the case today. As I indicated, NorthWestern has enjoyed consistent access to capital on reasonable terms. While our corporate structure may seem complex on first examination, it assures separation of the utility related financings from other activities, and it should not create any new or additional concerns for this Commission because MPC has itself had significant non-utility operations.[219]

126. A final point that would have created yet another impediment to the transfer, further taxing the Company's liquidity, is the potential for a cross-default and acceleration on the $40 million of notes.[220] As NorthWestern would have likely been in default under its CSFB $280 million facility, it is my understanding from counsel that the transfer would, under these circumstances, lead to an event of default on the $40 million outstanding Montana Unsecured Medium Term Notes.[221]

---

[219] Department of Public Service Regulation before the Montana Public Service Commission of the State of Montana, Joint Application of the Montana Power Company and NorthWestern Corporation, Supplemental Filing, August, 27, 2001, MJH-9 (NOR044711).
[220] The Montana Power Company to Citibank, N.A., Trustee, Indenture, Dated as of December 1, 1989, Section 801(d), pp. 45-46.
[221] NorthWestern Form 10-Q/A for the period September 30, 2003 filed April 15, 2003, pp. 52-53.