# EXHIBIT 20

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

---------------------------------------- X

MAGTEN ASSET MANAGEMENT CORPORATION and

LAW DEBENTURE TRUST COMPANY OF NEW YORK,

              Plaintiffs,

   -vs-

NORTHWESTERN CORPORATION,

              Defendant.

Civil Action No. C.A. No. 04-1494 (JJF)

---------------------------------------- X

MAGTEN ASSET MANAGEMENT CORP.,

              Plaintiff,

   -vs-

MICHAEL J. HANSON and ERNIE J. KINDT,

              Defendants.

Civil Action No. C.S. No. 05-499 (JJF)

---------------------------------------- X

DATE:     November 8, 2007

TIME:     9:00 a.m.

      Deposition of ROBERT W. BERLINER, held at the offices of Curtis, Mallet-Prevost, Colt & Mosle, 101 Park Avenue, New York, New York,

- ROBERT W. BERLINER -

wasn't going to address the issues related to the going flat transaction and the solvency or insolvency of Northwestern that for some reasons, that were apparently legal reasons, counsel had restricted my attention to just this particular hypothetical assumption and that's the linkage.

Q. So you understood -- am I correct that you understood that counsel was specifically not asking you to opine regarding the solvency of Northwestern?

MR. KAPLAN: Object to the form.

A. Not because they said that in so many words but because this is all that I was asked to do, so obviously I wasn't asked to address the solvency of Northwestern.

Q. Did you question that in the conversation that we're now referring to that you had with your colleagues, did you question why you were not being asked to offer an opinion regarding solvency or insolvency of Northwestern?

A. Yes.

Q. What did they tell you?

A. They told me that this isn't our area of expertise and that may have been a reason why we

- ROBERT W. BERLINER -

weren't asked to address it. But I never did find out by conversations with counsel as to the reason or not.

This was what I was asked to do. It was relatively easy to do it, and so I felt somewhat delighted that this is all I had to do because I was concerned about being able to render my report by the 19th of September.

Q. What else was discussed regarding the allegations in this paragraph, Paragraph 51 of the Amended Complaint, during the conversation we're referring to?

A. Nothing else.

Q. You testified a moment ago that in that conversation you remarked that much of what you had read in the deposition testimony seemed to be irrelevant to the issues that you were being asked to opine on.

Do you recall saying that?

A. Yes.

Q. Why did you feel that way?

A. Because I wasn't being asked to express any opinions such as the ones you've asked me about relating to the solvency or insolvency of

1  - ROBERT W. BERLINER -
2  Northwestern or any of the ramifications relating
3  to the going flat transaction.
4      Q.   You did rely, however -- strike that.
5           Your report reflects that you did review
6  deposition transcripts taken in this case, correct?
7      A.   Correct.
8      Q.   Did you view those as irrelevant to any
9  of the opinions that you've offered in this case?
10     A.   No.
11     Q.   Okay.  But irrelevant to Opinion
12 Number 4, is that what I understand; is that
13 correct?
14          MR. KAPLAN:  Object to form.
15     A.   Yes.
16          MS. DELANEY:  Are you expecting any
17 males to join us?  There is apparently a
18 Mr. Schwartz here to join the deposition.  Does
19 anyone know who he is?
20     Q.   Off the record.
21          (Whereupon, there was a brief recess in
22 the proceedings.)
23     Q.   Mr. Berliner, prior to your retention by
24 Fried, Frank and Storch Amini in this case, had you
25 ever been employed by Magten Asset Corporation?

Page 44

- ROBERT W. BERLINER -

the second case that you referred to, which I believe was 1993, in which a disqualification motion was made?

A. Yes. It was a class action case involving the Republic Bank, maybe the First Republic Bank. I don't remember the exact name of -- Texas, not New York.

Q. Do you recall what court that was in?

A. Yes. It was a court in Texas.

Q. Do you recall whether --

A. Dallas, I believe. I believe federal court in Dallas.

Q. Earlier, if you recall, we were discussing a discussion you had with your colleagues regarding the allegations in Paragraph 51 of the Complaint.

Do you recall that testimony?

A. Not in the Complaint in this litigation, but the First Amended Complaint.

Q. Yes, sir, the First Amended Complaint.

A. Yes, sir.

Q. Do you remember that testimony?

A. Yes.

Q. Sir, do you recall whether or not either

- ROBERT W. BERLINER -

of your colleagues, Mr. Holmes or Mr. Schwitter, had done a preliminary analysis of Northwestern solvency either before or after the going flat transaction?

    A.    I recall we did not.

    Q.    You did not?

    A.    No.

    Q.    No one at your organization did; is that correct?

    A.    That's correct.

    Q.    Do you know if any such preliminary analysis was ever done by anyone in the employ of the plaintiffs in this case?

    A.    No, I don't.

    Q.    Sir, if we look back again at Page 4 of your report, Opinion Number 1. Opinion Number 1 states, "The consolidated financial statements of NW," -- Northwestern, "originally filed with the SEC Forms 10-Q for the quarters ended March 31st, June 30th and September 30th, 2002, were materially false and misleading as a result of various violations of GAAP and SEC regulations."

    Sir, did you or do you have an understanding as to why -- strike that.