# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NORTHWESTERN CORPORATION,<br><br>　　　　Defendants. | C.A. No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>　　　　Defendants. | C.A. No. 05-499-JJF |

## DEFENDANTS MICHAEL J. HANSON AND ERNIE J. KINDT'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO STRIKE AND EXCLUDE EXPERT WITNESSES

　　　　　　　　　　　　　　　　Denise Seastone Kraft (#2778)
　　　　　　　　　　　　　　　　EDWARDS ANGELL PALMER & DODGE LLP
　　　　　　　　　　　　　　　　919 North Market Street, 15th Fl.
　　　　　　　　　　　　　　　　Wilmington, DE  19801
　　　　　　　　　　　　　　　　(302) 777-7770
　　　　　　　　　　　　　　　　　*Counsel to Michael J. Hanson*
　　　　　　　　　　　　　　　　　*and Ernie J. Kindt*

OF COUNSEL:

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY
 & HOVEN, P.C.
139 North Last Chance Gulch
Helena, MT  59624
(406) 443-6820

January 10, 2008

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| SUMMARY OF ARGUMENT | 1 |
| ARGUMENT | 3 |
|    I.  MR. MARCUS FAILS TO APPLY SCIENTIFICALLY VALID REASONING OR METHODOLOGY AND ENGAGES IN IMPERMISSIBLE AND UNFOUNDED SPECULATION. | 3 |
|    II.  MR. BERLINER IS NOT QUALIFIED OR CAPABLE TO OPINE ON ISSUES OF BUSINESS VALUATION, AND HIS REPORT DOES NOT APPLY A LEGITIMATE METHODOLOGY. | 9 |
|    III.  PLAINTIFF'S EXPERTS DO NOT PROVIDE ANY TESTIMONY THAT IS HELPFUL TO THE TRIER OF FACT. | 12 |
| CONCLUSION | 14 |

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allen v. International Business Machines Corp.*, No. Civ.A. 94-264 JJF, 1997 WL 34501372
  (D. Del. Dec. 18, 1997) ............................................................................................. 7, 9

*Arnold v. Loose*, 352 F.2d 959 (3d Cir.1965) ............................................................... 10

*Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316 (3d Cir. 2003) ..................... 4, 9

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725(VM), 2003 WL
  1878246 (S.D.N.Y. Apr. 11, 2003) ................................................................................ 6

*CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229 (E.D. Ca. 2005) ..... 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ....................... 3, 4, 7, 12, 14

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ........................................... 3, 8, 11

*Georgia Cas. & Sur. Co. v. Atmos Energy Corp.*, No. 4:05-CV-87 (CDL), 2007 WL 4287720
  (M.D. Ga. Dec. 4, 2007) ................................................................................................. 6

*In re Long Island Lighting Co.*, 197 F.2d 709 (2d Cir. 1952) ........................................ 5

*In re Nanovation Technologies, Inc.*, 364 B.R. 308 (N.D. Ill. 2007) ........................... 11

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ............................... 3, 7, 12

*In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999) ........................................................ 8

*Kohler v. C.I.R.*, Nos. 4621-03, 4649-03, 4622-03, 4646-03, 2006 WL 2059210 (U.S. Tax Ct.
  Jul. 25, 2006) ................................................................................................................ 11

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ................................... 3, 4, 11

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794 (N.D. Ill. 2005) .............. 10

*McKesson Corp. v. Islamic Republic of Iran*, 116 F.Supp.2d 13 (D.D.C. 2000) ........ 11

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989) ....... 10

*Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3d Cir. 2003) ........................ 8

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, No. C.A. 02-148 GMS, 2004 WL 2127192
  (D. Del. Sept. 15, 2004) ................................................................................................. 6

*Physicians Dialysis Ventures, Inc. v. Griffith*, No. 06-2468 (MLC), 2007 WL 3125197
  (D.N.J. Oct. 24, 2007) ................................................................................................... 11
*RLI Ins. Co. v. Indian River School Dist.*, No. 05-858-JJF, 2007 WL 4292109 (D. Del. Dec. 4,
  2007) ......................................................................................................................... 4, 12
*Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d. Cir. 2002) ........................................... 8
*United States v. Benson*, 941 F.2d 598 (7th Cir. 1991) ................................................................ 9
*United States v. Downing*, 753 F.2d 1224 (3d Cir.1985) ............................................................ 12
*United States v. Stevens*, 935 F.2d 1380 (3d Cir.1991) ................................................................ 6
*Watkins v. Schriver*, 52 F.3d 769 (8th Cir. 1995) ....................................................................... 10

**Other Authorities**

29 Charles Alan Wright, Aruthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND
  PROCEDURE § 6265 (1997) ........................................................................................... 9
Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,
  138 F.R.D. 631 (1991) .................................................................................................. 14

**Rules**

Fed. R. Evid. 702 ............................................................................................... 3, 7, 8, 12

Defendants Michael J. Hanson and Ernie J. Kindt ("Hanson and Kindt" or "Defendants") respectfully submit this brief in support of their motion in limine to strike and exclude the expert testimony proffered by Paul A. Marcus and Robert W. Berliner.

## SUMMARY OF ARGUMENT

Plaintiff Magten Asset Management Corporation ("Magten") has proffered the same two expert witnesses to testify in this action as well as the separate action against NorthWestern Corporation ("NorthWestern"). For the reasons stated below, both of these experts should be excluded under Rule 702 of the Federal Rules of Evidence.

Paul A. Marcus is a financial analyst and consultant. (D.I. 292, Expert Report of Paul A. Marcus (hereinafter "Marcus Report") at 4-5.) Mr. Marcus has submitted an expert report that purports to analyze alleged misstatements and omissions that were made by NorthWestern in certain financial statements and public disclosures, and assess the impact that these misstatements and omissions have had on NorthWestern's invested capital and availability of additional capital. (*Id*. at 3.) Mr. Marcus contends that this analysis "explains what would have happened had the true information been put into the marketplace," and illustrates whether, under those conditions, NorthWestern could have participated in the transfer of assets that occurred on November 15, 2002 from Clark Fork and Blackfoot, LLC ("Clark Fork") to NorthWestern (the "Transaction"). (Deposition of Paul A. Marcus (hereinafter "Marcus Dep.") at 13, 17, 42-44, attached as Exhibit A.) However, Mr. Marcus's testimony is wholly unreliable, because it does not apply any stated methodology that can be duplicated or tested for validity. Instead, Mr. Marcus's results are based on nothing more than his idiosyncratic, subjective judgments. Because his testimony is founded on unsupported speculation rather than scientific process, it must be excluded from evidence under Rule 702.

Magten's other expert witness, Robert W. Berliner, is a certified public accountant who professes to analyze whether Northwestern violated generally accepted accounting principles ("GAAP") in various public filings in 2002, whether Northwestern knowingly made a variety of false and misleading disclosures in its publicly-issued financial reports during 2002, what effect this alleged misconduct would have had on NorthWestern's debt covenants, and what effect that the Transaction would have had on Clark Fork's assets and liabilities if Clark Fork had remained

1

directly obligated for the quarterly income preferred stock ("QUIPS") that Magten purchased five months after the Transaction occurred. (D.I. 291, Expert Report of Robert W. Berliner (hereinafter "Berliner Report") at 1-2, 4.) However, substantial portions of Mr. Berliner's report are unreliable and inadmissible because Mr. Berliner admits that he is not qualified to perform the analysis that underlies many of his conclusions. (Deposition of Robert W. Berliner (hereinafter "Berliner Dep.") at 36-37, 40, 54, 165-66, attached as Exhibit B.) By attempting to perform a goodwill impairment analysis that requires the skill of a certified appraiser, Mr. Berliner exceeded his knowledge and ability as a CPA and failed to apply generally accepted appraisal standards outlined by the Uniform Standards of Professional Appraisal Practice ("USPAP"). Therefore, Mr. Berliner's report must also be excluded under Rule 702.

      Furthermore, while Mr. Marcus and Mr. Berliner opine at length on the subject of alleged wrongdoing by NorthWestern, they do not address any facts or formulate any opinions that relate to the liability of Defendants Hanson and Kindt on the one-count breach of fiduciary duty claim asserted against them. Indeed, neither expert formulates any opinion that is helpful to determine whether Defendants owed a fiduciary duty to Magten as a future creditor who purchased QUIPSs after the Transaction took place, or whether an alleged fiduciary duty was breached. (Marcus Dep. at 155-56, 191; Berliner Dep. at 147, 150.) Nor does either expert formulate any opinion that relates to Defendants' knowledge of any alleged wrongdoing in connection with the Transaction. (Marcus Dep. at 163-68, 175, 199-201; Berliner Dep. at 146-152, 158-59.) Neither expert even addresses whether NorthWestern or Clark Fork was insolvent or in the zone of insolvency at the time of the Transaction, which is the linchpin of Magten's claim that Defendants Hanson and Kindt breached a fiduciary duty to Magten. (Marcus Dep. at 18-19; Berliner Dep. 30-31.) Indeed, Mr. Berliner testified that determining solvency "isn't our area of expertise" and admitted that he "felt somewhat delighted" that he was not asked to undertake such an analysis. (Berliner Dep. 30-31.) Simply put, the reports submitted by Mr. Berliner and Mr. Marcus relate solely to the action against NorthWestern, and will not assist in determining the liability of Defendants Hanson and Kindt. As a result, Defendants Hanson and Kindt will be prejudiced if the testimony or reports of either Mr. Marcus or Mr. Berliner are admitted. Therefore, their testimony must be excluded.

## ARGUMENT

The testimony proffered by Magten's expert witnesses is inadmissible under Fed. R. Evid. 702, as well as the Supreme Court decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. The Rules provide that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Therefore, expert testimony is inadmissible if it does not meet two related requirements: (1) it must be based on the reliable scientific, technical, or specialized knowledge of a qualified expert; and (2) it must assist the trier of fact to understand or determine a relevant fact at issue. *Daubert*, 509 U.S. at 592-93; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999). This imposes a "rigorous gatekeeping function" upon trial judges. *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000). The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility. *Daubert*, 509 U.S. at 592 n.10; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743-44 & fn.9 (3d Cir. 1994). For the reasons set forth below, Magten cannot satisfy this burden of proof.

### I. MR. MARCUS FAILS TO APPLY SCIENTIFICALLY VALID REASONING OR METHODOLOGY AND ENGAGES IN IMPERMISSIBLE AND UNFOUNDED SPECULATION.

Mr. Marcus's proffered testimony must be stricken and excluded because it is based on unfounded speculation and does not apply a scientific methodology that can be reproduced or tested. In *Daubert*, the Supreme Court held that in order to ensure the reliability of expert testimony, such testimony must be grounded in methods and procedures of science that can be tested and validated — in other words, it must be supported by the "scientific method." 509 U.S. at 590 & fn.9. In *Kumho Tire Co.*, the Court clarified that the same standard applies to all expert testimony, regardless of whether it relates to "scientific," "technical," or "other specialized" matters. 526 U.S. at 147-48. Therefore, Mr. Marcus's proffered testimony, which is ostensibly

3

based on his specialized knowledge as a financial planner and consultant, is subject to the standard of evidentiary reliability set forth in *Daubert*.

The Court has not adopted a "definitive checklist or test" for determining the reliability of expert testimony, because the inquiry is meant to be a flexible one that varies depending upon the field of expertise in question. *Kumho Tire Co.*, 526 U.S. at 150-52. However, the Court has found it helpful to consider the following factors: whether the theories and techniques employed by the expert have been tested, have been subjected to peer review and publication, have a known error rate, are subject to set standards governing their application, and have enjoyed widespread acceptance. *Daubert*, 509 U.S. at 593-94; *Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (noting that "this list provides an ample starting point" for an analysis of reliability). Of course, this means that the expert's knowledge must be based on more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 593-94.

Mr. Marcus's report fails by any measure to satisfy the requirements of Rule 702, because his testimony consists entirely of broad, conclusory pronouncements on matters of pure speculation, without setting forth any defined methodology to explain his conclusions. In his report, Mr. Marcus contemplates whether, if NorthWestern had not made alleged misrepresentations and omissions in its financial statements and public disclosures in 2002, Montana state regulators and securities holders would have "impeded" the Transaction and prevented it from happening. (Marcus Report at 5-6; Marcus Dep. at 42-54.) Mr. Marcus ultimately comes to the conclusion that "[h]ad the true information been disclosed to the public . . . the equity offering would not have occurred . . . ." (Marcus Report at 5-6.) However, the reasoning and assumptions employed by Mr. Marcus in his report are impermissibly vague and imprecise. *See RLI Ins. Co. v. Indian River School Dist.*, No. 05-858-JJF, 2007 WL 4292109, at *6 (D. Del. Dec. 4, 2007) (Farnan, J.) (excluding report where "the overarching methodology used . . . [was] hardly apparent").

Mr. Marcus surmises that if alleged misstatements and omissions were not made by NorthWestern, "a number of things . . . would have happened, which would have included things like lawsuits being instituted, regulatory actions taking place, [and] Trustees being contacted to start lawsuits." (Marcus Dep. at 48.) The "regulatory actions" that Mr. Marcus contemplates are

4

actions by the Attorney General's office and the Montana Public Service Commission ("MPSC"). (*Id*. at 59.) It is clear, however, that an expert witness may not be called to offer an opinion on how a regulatory body would act under various circumstances. In *CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1234-36 (E.D. Ca. 2005), an expert attempted to opine on the "typical" conduct of the FCC in order to illustrate how the FCC would react to the defendant's alleged wrongdoing. The expert based his conclusions on legal sources as well as his experience of practicing before the FCC. *Id*. at 1236-37. The court rejected this testimony, finding that the expert's testimony "about how the FCC will likely apply statutory and case law precedent to [the defendant], whether based on his interpretations of the law or his experience, are in any circumstances utterly unhelpful to the Court." *Id*. at 1236 (internal citation omitted). Because any legal proceeding is by nature unpredictable, the court recognized that expert opinions that purport to predict the actions of a regulatory body are inherently unreliable and speculative. *Id*. at 1236-37; *see also In re Long Island Lighting Co.*, 197 F.2d 709 (2d Cir. 1952) (rejecting assertion that regulatory body would have denied reorganization plan if alleged fraud had come to light, because "[n]o one could predict what the Public Service Commission would determine until it acted").

Mr. Marcus's analysis is especially unreliable, because it is based purely on supposition rather than experience, and is not supported by any legal sources. Mr. Marcus has no personal experience dealing with the Montana Public Service Commission ("MPSC") and no significant familiarity with the regulatory framework in which it operates. (Marcus Dep. at 35-42, 186-87.) Mr. Marcus based his assumption that the MPSC would intervene solely on his "understanding of commissions in general," and his belief that "if that information had been in the public domain, that they would have done whatever they could have to protect their constituents." (*Id*. at 61-62.) Despite these broad assertions, however, Mr. Marcus admits that he does not know if the MPSC would have had the authority to step in and impede the Transaction — much less whether it would have chosen to do so. (*Id*. at 61-62, 68-70.) In addition, Mr. Marcus admits that he does not know whether the Montana Attorney General's office could or would have impeded the Transaction. (*Id*. at 181-82.)

5

In an attempt to avoid exclusion of Mr. Marcus's improper testimony, Magten has attempted to characterize Marcus's report as one that tells the jury "as a practical matter . . . how the utility business operates," (D.I. 288 at 35 fn.36, Case No. 04-1494), as opposed to one that predicts the conduct of a regulatory body.  Magten likens Mr. Marcus's report to others where experts were permitted to testify on general facts relating to regulatory bodies and their governing statutes.  *See Georgia Cas. & Sur. Co. v. Atmos Energy Corp.*, No. 4:05-CV-87 (CDL), 2007 WL 4287720, at *4 (M.D. Ga. Dec. 4, 2007) (limiting expert testimony to "the purpose and meaning of the regulations" at issue, but not "whether any regulatory violations actually occurred"); *Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, *4 (S.D.N.Y. Apr. 11, 2003) (permitting expert to give juror a "general overview" of the Commodity Futures Trading Commission and its purpose).  However, as discussed above, Magten completely mischaracterizes Mr. Marcus's testimony.  Unlike the cases cited above, Mr. Marcus does not provide a "general overview" of the MPSC and its regulatory scheme, but purports to foretell that the MPSC would have "impeded" the transaction.

Magten appears to concede the futility of Mr. Marcus's attempt to predict the MPSC's conduct by stating that "[i]f Mr. Marcus cannot be absolutely certain how the MPSC would have ruled . . . neither can anyone else."  (D.I. 288 at 36, Case No. 04-1494.)  Nevertheless, Magten argues that "anyone with common sense (with or without the benefit of expert testimony) can see that obtaining MPSC approval . . . would have been more challenging . . . [.]"  (*Id.*)  Because Magten admits that Mr. Marcus's testimony on this issue is a matter of common sense, it is not the proper subject of expert testimony.  *See United States v. Stevens*, 935 F.2d 1380, 1399-1400 (3d Cir.1991) (excluding expert testimony regarding facts that jury could have ascertained through common sense); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, No. C.A. 02-148 GMS, 2004 WL 2127192, at *10 (D. Del. Sept. 15, 2004) (finding that expert testimony was impermissible where subject matter was "within the jury's common knowledge, common sense and common experience").

The methodology that Mr. Marcus utilized to reach its conclusion that the Transaction would have been "impeded" is also faulty because Mr. Marcus does not point to any securities holders who would have challenged the Transaction apart from QUIPS holders, and he does not

6

explain how they could have prevented the Transaction from occurring other than to say that they could "file a lawsuit," "approach a Trustee . . . [who] for fiduciary reasons has to protect their interests," or "go to a utility commission and stir up the pot, so to speak." (*Id*. at 52-54, 57-58.) However, Mr. Marcus also admits that "I don't know what the ultimate conclusion of those legal battles or decisions would be." (*Id*. at 49.) Therefore, not only are these purported impediments speculative in nature, but Mr. Marcus did not even attempt to analyze the likelihood of the success of any such challenges. Given the high degree of uncertainty that underlies Mr. Marcus's testimony, it is completely unreliable and is wholly inadequate to satisfy Rule 702. *See Allen v. International Business Machines Corp.*, No. Civ.A. 94-264 JJF, 1997 WL 34501372, at *43 (D. Del. Dec. 18, 1997) ("it is well recognized that an expert opinion must be based on facts, rather than premised on unsupported assumptions and speculation").

Moreover, Mr. Marcus fails to uniformly employ the assumptions that underlie his analysis. Courts have held that "any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Paoli R.R. Yard PCB Litig*., 35 F.3d at 745. In 2003, NorthWestern implemented a turnaround process to address its worsening financial condition, but Mr. Marcus discounted the effect that this program would have had, because "[f]irst and foremost, the company . . . still did go bankrupt; so we know that's a fact." (Marcus Dep. at 91-92.) However, Mr. Marcus erred because he failed to determine if or when NorthWestern would have declared bankruptcy under the fundamental assumption that underlies his analysis — that the Transaction never took place. (*Id*. at 94-96.) Mr. Marcus could not undertake such an analysis because he has admitted that he does not know what caused NorthWestern to file for bankruptcy. (Marcus Dep. at 99.) By overlooking potential corrective measures on the basis of NorthWestern's real-life bankruptcy, without analyzing how NorthWestern's solvency would be affected under his principal assumption that the Transaction did not occur, Mr. Marcus has failed to apply a legitimate and reliable methodology, opting instead to engage in wild speculation.

The reliability of Mr. Marcus's report is further called into question by the fact that he, in turn, relied upon the analyses and findings contained in Mr. Berliner's expert report. (Marcus

7

Report at 4; Marcus Dep. at 25, 70-77.) In particular, Mr. Marcus concludes that the Transaction would not have been possible because NorthWestern would have defaulted on certain financial covenants. (Marcus Report at 6.) Mr. Marcus did not independently arrive at this conclusion, but merely adopted Mr. Berliner's analysis. (Marcus Dep. at 25, 70-77.) As discussed below, Mr. Berliner's report is also unreliable under Rule 702 and should be excluded from evidence. Therefore, Mr. Marcus's derivative findings are similarly unreliable and must be excluded.

Finally, Mr. Marcus's testimony is inherently unreliable because it is based upon unsupportable assumptions that were simply spoon-fed by Plaintiff's counsel. Expert testimony may not be "based on assumptions lacking any factual foundation in the record." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d. Cir. 2002). In his report, Mr. Marcus states that "[a]ssuming Clark Fork remained liable for the QUIPS obligations, Clark Fork would not have had the financial ability to meet those obligations." (Marcus Report at 7.) However, Mr. Marcus has no independent opinion on whether or not Clark Fork would have remained liable for QUIPS obligations if the Transaction had not occurred, and he was simply "asked to make that assumption by counsel." (Marcus Dep. at 191-92.) Mr. Marcus's opinion is unreliable and unhelpful because it is based upon information and assumptions supplied by counsel and not independently reviewed. *See In re TMI Litigation*, 193 F.3d 613, 697-98 (3d Cir. 1999) (affirming exclusion of expert testimony based solely on information provided by counsel); *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 449 (3d Cir. 2003) (same).

Mr. Marcus's entire methodology "can be described, in essence, as an idiosyncratic or subjective judgment in which the result can neither be duplicated nor tested for validity." *Elcock*, 233 F.3d at 746 (reversing admission of testimony from economist that relied upon subjective and untestable criteria). At the end of the day, Mr. Marcus's report is nothing more than an impermissible effort to plug holes in Magten's case through speculation and supposition. Therefore, it is inadmissible under Rule 702 and must be excluded from evidence.

//
//
//

8

## II. MR. BERLINER IS NOT QUALIFIED OR CAPABLE TO OPINE ON ISSUES OF BUSINESS VALUATION, AND HIS REPORT DOES NOT APPLY A LEGITIMATE METHODOLOGY.

Significant portions of Mr. Berliner's proffered report exceed his qualifications as a certified public accountant, and therefore his report must be stricken. Not all opinions that happen to be held by an expert are "expert opinions." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). While an expert may be qualified to address issues within his knowledge and capabilities, opinions that fall outside the expert's area of expertise are unreliable and therefore inadmissible. *Calhoun*, 350 F.3d 316 at 322-24 (upholding, in three instances, the trial court's decisions to limit the testimony of plaintiff's expert witnesses as outside of their area of expertise); *Allen*, 1997 WL 34501372 at *43 (adopting Magistrate's finding that expert was unqualified to provide opinion that "should be given by a medical causation expert, not a psychologist"); *see also* 29 Charles A. Wright. et al., Federal Practice & Procedure § 6265 at p. 255-56 & nn. 34 & 35 (1997) ("Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony.").

Mr. Berliner is not accredited to perform business valuations by any organization or professional society. (Berliner Dep. at 36.) Mr. Berliner does not consider himself to be an expert in business valuation and has never been found to be qualified to testify as an expert on issues of business valuation. (*Id*. at 37, 54.) Mr. Berliner put it succinctly when he acknowledged that "I don't do valuations." (*Id*. at 165.) Indeed, Mr. Berliner is not familiar with the Uniform Standards of Professional Appraisal Practice ("USPAP"), which are the generally accepted standards for professional appraisal practice in North America, and he did not review these standards in connection with his report. (*Id*. at 40, 166.) Nevertheless, Mr. Berliner's report attempts to surpass his area of expertise by purporting to revise and correct a goodwill impairment valuation performed by the American Appraisers Association ("AAA"), an entity that is certified to perform business valuations. (Berliner Report at 2-1 - 2-22 & Attachment A-1 – A-21.)

As an initial matter, Mr. Berliner admits that only a professional appraiser who is bound by the USPAP procedures is authorized to prepare a goodwill impairment valuation. (Berliner

9

Dep. at 68-69.) The role of an accounting firm is to "satisfy[] itself as to the assumptions used and the credibility of the appraiser," and if the accounting firm has a problem with the valuation, they may "engage their own appraiser to perform a valuation to compare to . . . ." (*Id*. at 73.) It is undisputed that a CPA, such as Mr. Berliner, cannot independently conduct an alternative valuation. (*Id*. at 73-74.) Indeed, until now, Mr. Berliner has never been employed to review or revise an appraisal in connection with a goodwill impairment analysis. (*Id*. at 76.)

Mr. Berliner attempts to sidestep these issues by claiming that he did not perform an actual appraisal, but simply "modified" the appraisal performed by AAA to use different input values. (*Id*. at 74-75.) However, Mr. Berliner actually did far more than this when computing his alternative valuation. The valuation performed by AAA reflected a valuation date of January 1, 2002, but Mr. Berliner conducted a completely new goodwill impairment analysis to purportedly reflect the valuation as of June 30, 2002 — six months after the effective date adopted by NorthWestern. (*Id*. at 123-137.)

By taking it upon himself to create an alternative appraisal that substantially alters the original, Mr. Berliner has gone well outside of his area of expertise as a CPA. *See, eg., Arnold v. Loose*, 352 F.2d 959, 962 (3d Cir.1965) (holding that an orthopedic doctor lacked expertise to testify whether a diabetic coma caused an accident); *Watkins v. Schriver*, 52 F.3d 769, 771 (8th Cir. 1995) (affirming exclusion of neurologist's testimony about the cause of a neck injury); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (excluding economist's opinion on whether defendant's conduct "was contrary to good faith and fair dealing"). For example, the requirements for accreditation with the American Society of Appraisers ("ASA") are strenuous, and include "completion of five years' experience in business appraisals, passing three technical exams, an ethics and the Uniform Standards of Professional Appraisal Practice ("USPAP") exam, and the submission of two appraisals for evaluation." *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 801 fn.4 (N.D. Ill. 2005). Mr. Berliner's experience as a CPA is insufficient to allow him to step into the shoes of an accredited appraiser. Because Mr. Berliner does not possess the "level of intellectual rigor that

10

characterizes the practice of an expert" in the field of business valuations, his testimony should be excluded.[1]  *See Kumho Tire Co.*, 526 U.S. at 152; *Elcock*, 233 F.3d at 741.

Moreover, Mr. Berliner's alternative valuation is unreliable because it failed to apply a legitimate methodology.  Mr. Berliner admits that AAA followed standard USPAP procedures in its appraisal, and that he did not follow these procedures in his revisions.  (Berliner Dep. at 54-55.)  The USPAP guidelines contain specific standards for performing business appraisals, and Mr. Berliner's failure to apply these procedures in and of itself renders his valuation unreliable.  *See McKesson Corp. v. Islamic Republic of Iran*, 116 F.Supp.2d 13, 23 fn.6 (D.D.C. 2000) (finding that appraiser's credibility was undermined where "in performing his valuation, he had violated the ethics rules established in the Uniform Standards of Professional Appraisal Practice" which represent the "appropriate appraisal ethics and practices."); *In re Nanovation Technologies, Inc.*, 364 B.R. 308, 317 (N.D. Ill. 2007) (recognizing that valuations performed for transactional purposes should generally comply with USPAP guidelines); *Kohler v. C.I.R.*, Nos. 4621-03, 4649-03, 4622-03, 4646-03, 2006 WL 2059210, at *12 (U.S. Tax Ct. Jul. 25, 2006) (giving no weight to report that "was not prepared in accordance with all USPAP standards").

Instead of adhering to USPAP guidelines, Mr. Berliner altered the valuation "to conform to reality, as I saw it."  (*Id*. at 71.)  In doing so, Mr. Berliner failed to take into account all relevant approaches for which sufficient reliable data are available, as he would be required to do under the USPAP procedures.  USPAP Standard Rule 9.4A (Berliner Dep. Ex. 5, attached as Exhibit C).  Of the relevant approaches to valuation, Mr. Berliner did not consider the market approach, because "that would have been very costly and time-consuming.  And it was not something that I could do within the time frame that I was given to develop this report."  (Berliner Dep. at 76-77.)  Mr. Berliner's proposed alternative valuation does not confirm to

---

[1]  In one case, a court allowed a CPA to testify on business valuation where she was also "an accredited business appraiser who has been actively involved in the preparation for business valuations for more than seven years" and "has formulated expert opinions on at least sixty (60) engagements and signed seventeen (17) business valuation reports."  *Physicians Dialysis Ventures, Inc. v. Griffith*, No. 06-2468 (MLC), 2007 WL 3125197, at *10-11 (D.N.J. Oct. 24, 2007).  As discussed above, Mr. Berliner possesses no such expertise.

11

USPAP guidelines and is unreliable. Therefore, Mr. Berliner's report must be excluded from evidence.

### III. PLAINTIFF'S EXPERTS DO NOT PROVIDE ANY TESTIMONY THAT IS HELPFUL TO THE TRIER OF FACT.

It is well-settled that to be admissible, expert testimony must not only be reliable, but it must also assist the trier of fact. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. In order to aid the factfinder, expert scientific testimony must fit and be relevant to the "disputed factual issues of the case." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 743 (citing *United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir.1985)); *Daubert*, 509 U.S. at 591-92. In their proffered testimony, Mr. Berliner and Mr. Marcus examine the effect of alleged wrongdoing committed by NorthWestern, but they completely fail to address any facts or formulate any opinions that relate to the liability of Defendants Hanson and Kindt for an alleged breach of an alleged fiduciary duty owed to Magten. NorthWestern is not a party to the action against Defendants Hanson and Kindt, and the proffered testimony relating to NorthWestern simply does not fit this case. *See RLI Ins. Co.*, 2007 WL 4292109 at *4-5 (excluding expert's report because it was "largely irrelevant to the claims at issue").

Neither Mr. Marcus nor Mr. Berliner formulate any opinions on the principal facts at issue in this case: whether Defendants owed a fiduciary duty to Magten, or whether any alleged fiduciary duty was in fact breached by Defendants' conduct. Nor does either Mr. Marcus or Mr. Berliner formulate any opinion on Defendants' knowledge of any alleged wrongdoing in connection with the Transaction.

Mr. Marcus has admitted that he did not prepare his expert report to be used in the present action, that he was unaware that it would be used in connection with this case, and that he does not even have a general understanding of the allegations against Defendants Hanson and Kindt. (Marcus Dep. at 155-56, 191.) Mr. Marcus has also admitted that any reference in his report to actions taken by management of NorthWestern is "a general characterization. I did not analyze each individual manager's contribution to the information that was not in the marketplace." (Marcus Dep. at 167-68, 175.) Mr. Marcus does not have any opinion on whether any statements made by Defendants or any other individual officers of Clark Fork were true at

the time they made them, and he was not asked to make any such determinations. (Marcus Dep. at 163-66, 199-201.) Therefore, Mr. Marcus's report would not assist the factfinder in any way to resolve the disputed facts of this case.

Similarly, Mr. Berliner has no view on whether Defendants Hanson and Kindt breached any fiduciary duties to Magten or anyone else. (Berliner Dep. at 147, 150.) Mr. Berliner's report does not "address any allegations against any specific individuals," and therefore does not render any opinion on Defendants' knowledge of any alleged wrongdoing in connection with the Transaction, commission of any alleged violation of GAAP, alleged failure to timely recognize any goodwill impairment, or alleged involvement in any failure to provide adequate consideration with respect to the Transaction. (*Id*. at 146-150, 158-59.) Mr. Berliner has no basis to believe that either Defendant was responsible for any of these allegedly wrongful acts that form the basis of Magten's Complaint. (*Id*. at 150-152.) Mr. Berliner admits that any references to "NorthWestern's management" contained in his report do not, in fact, refer to Defendants Hanson or Kindt, but rather only to other officers of NorthWestern. (*Id*. at 156-58.) Mr. Berliner testified that the neither depositions of Defendants Hanson nor Kindt were even useful or relevant to his analysis. (*Id*. at 155-56.)

Neither expert even addresses whether either NorthWestern or Clark Fork were insolvent or in the zone of insolvency at the time of the Transaction, which is a principal allegation of the Complaint and is the linchpin of Magten's claim that Defendants Hanson and Kindt breached a fiduciary duty to Magten. (Marcus Dep. at 18-19; Berliner Dep. at 26-27, 44-45.) Indeed, Mr. Marcus testified "I was never asked to perform any form of insolvency analysis." Marcus Dep. at 19. Likewise, Mr. Berliner testified he was specifically asked *not* to address this issue. (Berliner Dep. at 30-32.) Moreover, Mr. Berliner is not qualified to render expert opinions related to solvency. *Id.* at 30-31 (*testifying*, "this isn't our area of expertise"). In fact, Mr. Berliner testified that he "felt somewhat delighted that this is all I had to do." *Id.* at 31. Simply put, the testimony submitted by Mr. Berliner and Mr. Marcus relate solely to the separate action against NorthWestern, and will not assist in determining the liability of Defendants Hanson and Kindt. Because their testimony is irrelevant and fails to fit the facts of this case, it would be unhelpful to the jury and should be excluded.

13

Further, the testimony proffered by Plaintiff's experts is inadmissible under Fed. R. Evid. 403, which calls for exclusion of evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Daubert*, 509 U.S. at 595 (cautioning that judges assessing expert testimony under Rule 702 "should be also be mindful of other applicable rules"). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice . . . exercises more control over experts than over lay witnesses." *Id*. (quoting Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631 (1991)). It would be grossly prejudicial to permit Plaintiff's experts to opine at length about alleged wrongdoing by NorthWestern when this wrongdoing is unrelated to the liability of Defendants Hanson and Kindt for an alleged breach of an alleged fiduciary duty.

## CONCLUSION

For the reasons stated above, Defendants Hanson and Kindt respectfully request that the Court strike and exclude all expert testimony proffered by Mr. Marcus and Mr. Berliner.

EDWARDS ANGELL PALMER & DODGE LLP

*/s/ Denise Seastone Kraft*
Denise Seastone Kraft (#2778)
919 North Market Street
Wilmington, DE 19801
(302) 777-7770
dkraft@eapdlaw.com
  *Counsel to Michael J. Hanson*
  *and Ernie J. Kindt*

OF COUNSEL:

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
Helena, MT 59624
(406) 443-6820

January 10, 2008

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 10, 2008, the attached **DEFENDANTS MICHAEL J. HANSON AND ERNIE J. KINDT'S BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO STRIKE EXPERT WITNESSES** was electronically filed with the Clerk of the Court using its CM/ECF system, which will send notification of such filing(s) to the following counsel of record:

> Victoria Watson Counihan, Esquire
> Greenberg Traurig, LLP
>
> Dale R. Dubé, Esquire
> Blank Rome LLP
>
> Kathleen M. Miller, Esquire
> Smith, Katzenstein & Furlow LLP

In addition, the undersigned forwarded a copy of same in the manner indicated below to:

**BY E-MAIL AND HAND-DELIVERY**

| | |
|---|---|
| Victoria W. Counihan, Esquire<br>Greenberg Traurig, LLP<br>The Nemours Building<br>1007 North Orange Street, Suite 1200<br>Wilmington, DE  19801 | Dale R. Dubé, Esquire<br>Blank Rome LLP<br>1201 Market Street, Suite 800<br>Wilmington, DE  19801 |

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
Wilmington, DE  19801

BY E-MAIL AND FIRST-CLASS MAIL

| | |
|---|---|
| Steven J. Reisman, Esquire<br>Joseph D. Pizzurro, Esquire<br>Nancy E. Delaney, Esquire<br>Miriam K. Harwood, Esquire<br>Curtis, Mallet-Prevost, Colt & Mosle, LLP<br>101 Park Avenue<br>New York, NY  10178-0061 | John Snellings, Esquire<br>Nixon Peabody, LLP<br>100 Summer Street<br>Boston, MA  02110-2131 |

15

Bonnie Steingart, Esquire
Gary L. Kaplan, Esquire
John W. Brewer, Esquire
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY  10004-1980


                                            /s/ *Denise Seastone Kraft*
                                            Denise Seastone Kraft (#2778)
                                            Edwards Angell Palmer & Dodge LLP
                                            Wilmington, DE  19801
                                            (302) 777-7770
                                            *dkraft@eapdlaw.com*