AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Magten Asset Management Corporation and
Law Debenture Trust Company of New York,
    Plaintiffs,

v.

NorthWestern Corporation,
    Defendant.

Magten Asset Management Corporation,
    Plaintiff,

v.

Michael J. Hanson and Ernie J. Kindt,
    Defendants.

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 04-1494-(JJF)
Pending in the U.S. District Court for the
District of Delaware

Civion Action No. 05-499 (JJF)
Pending in the U.S. District Court for the
District of Delaware

TO: Records Custodian
    PAUL HASTINGS JANOFSKY & WALKER LLP
    875 15th Street, N.W.
    Washington, DC 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. *

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Fried Frank Harris Shriver & Jacobson LLP<br>1001 Pennsylvania Ave., NW, Washington, DC 20004* | 9.00 a.m.<br>February 15, 2008* |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents identified in attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| Fried Frank Harris Shriver & Jacobson LLP<br>1001 Pennsylvania Ave., NW, Washington, DC 20004 | 5:00 p.m.<br>February 5, 2008 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /s/ Dale R. Dube  Attorney for Plaintiff Magten Asset Management Corp. | 1/25/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dale R. Dube, Esquire, Blank Rome LLP, 1201 Market Street, Suite 800,
Wilmington, DE 19801    (302) 425-6467

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

* Deponent will not be required to appear if the documents are produced by the date and time specified herein.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE 1/25/08 | PLACE Paul Hastings, et al., 875 15th Street, N.W., Washington, D.C. 20005 |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Records Custodian Paul Hastings, et al., | Served by hand on Kathryn M. Medina, who was authorized to accept service on behalf of Records Custodian. |
| SERVED BY (PRINT NAME) | TITLE |
| Joseph R. DeSantis | Coordinator, Managing Attorney's Office |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    January 28, 2008
                    DATE

SIGNATURE OF SERVER
1001 Pennsylvania Avenue, N.W.,
Suite 800, Washington, D.C. 20004-2505
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1)(A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

### DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1. The term "you" and "your" means or refers to Charles A. Patrizia, Esq., in his individual capacity, as well as Paul Hastings, as well as all persons and/or entities affiliated with either of them, acting in concert with or under the direction of either of them, or purporting to act on either of their behalfs.

2. "Acquisition" means the transaction that occurred on or about February 15, 2002 pursuant to which NorthWestern acquired 100% of the equity interest in Clark Fork.

3. "All" means "any and all," and "any" means "any and all."

4. "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

5. "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

7. "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal

notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

8.  "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

9.  "Paul Hastings" means Paul Hastings Janofsky & Walker LLP, its agents, attorneys, representatives and all other persons acting on its behalf.

10. "Patrizia Declaration" means the Declaration of Charles A. Patrizia in Support of NorthWestern's Motion for Summary Judgment, dated November 27, 2007, and submitted to the Court in the above-referenced action.

11. "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

12. "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

13. "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1. Every request shall be answered separately and fully in writing.

2. If any part of a request is objected to, the reasons for the objection should be stated with particularity. If an objection is made to part of any item or category, the part should be specified.

3. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4. References to the singular shall include the plural, and references to the plural shall include the singular.

5. The documents covered by this request include all documents in the possession, custody or control of Charles A. Patrizia and/or Paul Hastings, or any documents that were generated or received by Charles A. Patrizia and/or Paul Hastings or otherwise came into existence or were utilized by Charles A. Patrizia and/or Paul Hastings through the date of production. This request also calls for the production of documents kept or maintained by counsel for Charles A. Patrizia and/or Paul Hastings.

6. A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7. A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8. If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

    (a) the date of the document;

    (b) the name of each person to whom the document is addressed;

    (c) the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

    (d) the name of each person who signed or authored the document;

    (e) the title and job description of each person identified in (b), (c), and (d) above;

    (f) the subject of the document and the number of pages in the document;

    (g) the specific privilege claimed and the grounds for any such claim; and

    (h) the name and address of the person who has custody of the document.

9. If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10. All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11. Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12. Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the following statements in ¶ 2 of the Patrizia Declaration:

(a) "I was personally involved in that representation"; and

(b) "I advised NorthWestern on regulatory issues relating to the potential application of the Public Utility Holding Company Act of 1935 ("PUHCA") to the Transaction and to the corporate structures related to the Transaction."

### REQUEST NO. 2

All documents relating to or concerning the following statements in ¶ 3 of the Patrizia Declaration:

(a) "The second step, which was completed on November 15, 2002, involved the transfer of all MPLLC's assets, except those specifically related to the Milltown Dam, to the parent company level at NorthWestern";

(b) "[T]he assumption by NorthWestern of MPLLC liabilities";

(c) "[T]he entry by NorthWestern into support agreements with MPLLC";

(d) "The Milltown Dam was associated with an active Superfund site, and NorthWestern sought to continue to segregate that potential liability from the remaining MPLLC operations";

(e) "NorthWestern did not want to move assets associated with Milltown Dam to the parent company level"; and

(f) "This two-step process was contemplated from the very beginning of the Transaction."

**REQUEST NO. 3**

With respect to ¶ 4 of the Patrizia Declaration, all documents relating to or concerning the "reasonable and legitimate business objectives of NorthWestern: (i) to avoid burdensome and duplicative regulation; and (ii) to address the interests of rating agencies and capital markets, which preferred that NorthWestern hold the MPLLC assets at the parent level."

**REQUEST NO. 4**

All documents relating to or concerning the following statements in ¶ 6 of the Patrizia Declaration:

(a) "NorthWestern preferred that the Transaction not result in its becoming a registered utility holding company, and therefore sought to structure the Transaction in a way that would avoid that possibility"; and

6

(b) "MPC preferred that the initial sale be in the form of a 'stock' rather than an 'asset' transaction, and the presence of certain assets in MPLLC would make MPLLC an 'electric utility company' for PUHCA purposes."

### REQUEST NO. 5

With respect to ¶ 8 of the Patrizia Declaration, all documents relating to or concerning the statement that: "Specifically, the transfer of the MPLLC assets to the parent level at NorthWestern provided greater transparency into NorthWestern's utility operations and was viewed favorably by the rating agencies and the capital markets."

### REQUEST NO. 6

All documents relating to or concerning the following statements in ¶ 9 of the Patrizia Declaration:

(a) "Because the transfer of assets could not be completed until NorthWestern had identified all of the MPLLC assets (including bills of sale and deeds, where applicable) and obtained various consents and regulatory approvals, there was inevitably some time between the initial acquisition of MPLLC (the first step in the Transaction), and the structural restoration of NorthWestern as a 'flat' utility company"; and

(b) "In that circumstance, unless it otherwise qualified for an exemption from PUHCA, NorthWestern would have been subject to federal regulation and oversight under PUHCA."

### REQUEST NO. 7

All documents relating to or concerning NorthWestern's exemption from PUHCA as referenced in ¶ 9 of the Patrizia Declaration, including all documents submitted by NorthWestern to any regulatory agency concerning NorthWestern's exemption from PUHCA.

**REQUEST NO. 8**

All documents relating to or concerning the following statements in ¶ 10 of the Patrizia Declaration:

(a) "The regulatory implications of the two-step process had been identified at the very earliest stages of considering the Transaction, and NorthWestern explored throughout the Transaction period the possible bases on which it would qualify for exemption from PUHCA regulation";

(b) "Ultimately, by the end of 2001, it became clear in discussions with the SEC staff that because of various factors, including the relative size of NorthWestern's utility businesses in Montana, South Dakota, and Nebraska following the acquisition of MPLLC, NorthWestern would not meet the quantitative standards historically used by the SEC staff under sections 3(a)(1) and 3(a)(2) of PUHCA";

(c) "After further discussion of the issues with the SEC staff, in February 2002 NorthWestern filed an application for an exemption under Section 3(a)(3) of PUHCA to address its status during the period necessary to complete the structural restoration"; and

(d) "In the application, NorthWestern showed that, given the lines of business it was then conducting and the historic gross revenues of those various businesses, NorthWestern was only 'incidentally a holding company, being primarily engaged or interested in one or more businesses other than the business of public-utility company and … not deriving, directly or indirectly, any material part of its income from any one or more subsidiary companies, the principal business of which is that of a public-utility company.'"

8

**REQUEST NO. 9**

All documents relating to or concerning the following statements in ¶ 11 of the Patrizia Declaration:

(a) "NorthWestern's application for a 3(a)(3) exemption was effective upon its good faith filing with the Securities and Exchange Commission, and remained in place until the MPLLC assets were transferred to the parent company level in November 2002 and the Milltown Dam thereafter qualified as an EWG"; and

(b) "In this respect, the 3(a)(3) exemption was 'temporary' and had always been intended to be 'temporary' – not because there was any specific time limitation under PUHCA, but rather because NorthWestern had always intended to return promptly to its original 'flat' structure, and once the necessary steps were taken to do so, the exemption was no longer necessary."

**REQUEST NO. 10**

All documents relating to or concerning any communications from any regulatory agency stating that NorthWestern was not entitled to the exemption under PUHCA that it obtained as referenced in Mike Hanson and Eric Jacobsen's January 28, 2002 Memorandum to NorthWestern's Board of Directors (NOR142389-NOR142392).

**REQUEST NO. 11**

All documents relating to or concerning NorthWestern's determination that it would not proceed with the Acquisition if it was unable to either (i) isolate the Milltown Dam assets and/or (ii) effectuate the Transfer.

9

**REQUEST NO. 12**

All documents relating to or concerning any communication from any regulatory agency to NorthWestern that NorthWestern would be in violation of any regulatory requirement by virtue of holding the Transferred Assets in a subsidiary.

**REQUEST NO. 13**

All documents relating to or concerning any factual or legal issue which Charles A. Patrizia may testify about at the forthcoming trial in the above-referenced action.

**REQUEST NO. 14**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the structure of the Acquisition and/or the Transfer.

**REQUEST NO. 15**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about NorthWestern's "reasonable and legitimate business objectives" relating to the Acquisition and/or the Transfer, as such phrase is used in the Patrizia Declaration.

**REQUEST NO. 16**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about any regulatory issues impacting the structure or timing of the Acquisition and/or the Transfer.

**REQUEST NO. 17**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to

NorthWestern, about the interests or potential reactions of rating agencies and capital markets with respect to the Acquisition and/or the Transfer.

**REQUEST NO. 18**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the timing of effectuating the Transfer following the Acquisition.

**REQUEST NO. 19**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the potential impact of the accuracy or inaccuracy of NorthWestern's publicly issued financial statements on the Acquisition and/or the Transfer.