# EXHIBIT 1

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

### Exhibit No. [12] to Proposed Pre-Trial Order

#### NorthWestern's Witness List
#### (Local Civil Rule 16.3(c)(7))

NorthWestern may call any of the following witnesses at trial. In addition to those

specifically listed below, NorthWestern may also call any witness listed by Plaintiffs.

NorthWestern also reserves the right to call additional witnesses necessitated by any of the

Court's pre-trial rulings and to rely upon the Plaintiffs' Designations of Witnesses by Deposition,

if NorthWestern so chooses.

Live Witnesses

Charles Patrizia

Christopher Kearns

Bruce Bingham

1

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES – 1/22/08**

Counter Designations for Plaintiffs' Designations of Witnesses by Deposition (with transcript

designations)

**Michael Hanson**

p. 11 line 12 – p. 12 line 25
p. 21 line 15 – p. 22 line 11
p. 64 line 6 – p. 64 line 11
p. 64 line 14 – p. 64 line 25
p. 84 line 7
p. 98 line 16 – p. 98 line 25
p. 107 line 16 – p. 107 line 21
p. 120 line 7 – p. 120 line 13
p. 127 line 16 – p. 127 line 25
p. 213 line 13 – p. 214 line 4
p. 252 line 1 – p. 254 line 15

**Merle Lewis**

p. 65 line 20 – p. 66 line 4
p. 66 line 16
p. 123 line 23 – p123 line 25
p. 126 line 19 – p. 127 line 14
p. 129 line 23
p. 132 line 15 – p. 132 line 19
p. 135 line 22
p. 138 line 3
p. 140 line 23
p. 141 line 13
p. 162 line 8
p. 174 line 15 – p. 174 line 16
p. 175 line 10 – p. 175 line 11
p. 182 line 4 – p. 182 line 5
p. 192 line 14 – p. 192 line 15

**Richard Hylland**

p. 17 line 25 – p.18 line 22
p. 24 line 14
p. 25 line 22 - p. 25 line 24
p. 56 line 11
p. 58 line 3 – p. 58 line 13
p. 65 line 23 – p. 65 line 24
p. 66 line 17 – p. 66 line 18
p. 66 line 23

2

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 74 line 6
p. 86 line 9
p. 87 line 5
p. 87 line 21
p. 88 line 10 – p. 88 line 11
p. 95 line 12
p. 95 line 22
p. 112 line 11
p. 123 line 1
p. 184 line 5 – p. 185 line 15
p. 185 line 18 – p. 185 line 21
p. 287 line 19 – p. 287 line 20

**Michael Nieman**

p. 22 line 16 – p. 22 line 23
p. 44 line 2 – p. 44 line 17
p. 57 line 18 – p. 57 line 25
p. 67 line 10 – p. 67 line 19
p. 91 line 11 – p. 91 line 21
Errata Sheet

**Gary Drook**

p. 15 line 7
p. 16 line 3 – p. 16 line 8
p. 17 line 7
p. 19 line 5 – p. 19 line 6
p. 20 line 2
p. 30 line 15 – p. 30 line 17
p. 55 line 18 – p. 55 line 19
p. 65 line 17 – p. 66 line 8
p. 67 line 20 – p. 67 line 24
p. 75 line 22
p. 84 line 25 – p. 85 line 5
p. 102 line 23 – p. 103 line 9
p. 103 line 10 – p. 103 line 22
p. 108 line 3 – p. 109 line 3
p. 129 line 22 – p. 130 line 8
p. 138 line 19 – p. 138 line 22
p. 144 line 14 – p. 144 line 23
p. 144 line 24 – p. 145 line 3
p. 149 line 17 – p. 152 line 9
p. 152 line 19 – p. 153 line 20
p. 154 line 6 – p. 154 line 18

3

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 168 line 24 – p. 169 line 21

**Rick Fresia**

p. 21 line 22 – p. 21 line 25
p. 22 line 1-p. 22 line 20
p. 24 line 19 – p. 24 line 22
p. 24 line 23- p. 24 line 25
p. 28 line 20 – p. 28 line 16
p. 33 line 18 – p. 33 line 21
p. 33 line 15 – p. 34 line 12
p. 35 line 13
p. 43 line 5 – p. 43 line 14
p. 45 line 22 – p. 46 line 14
p. 49 line 22 – p. 50 line 11
p. 53 line 14 – p. 53 line 25
p. 57 line 25 – p. 58 line 7
p. 58 line 25 – p. 59 line 9
p. 77 line 14 – p. 78 line 4
p. 78 line 10 – p. 78 line 14
p. 80 line 12 –  p. 81. line 14
p. 81 line 15 – p. 82 line 1
p. 86 line 12 – p. 86 line 21
p. 89 line 11 – p. 90 line 15
p. 92 line 7 – p. 92 line 16
p. 96 line 16 - p. 96 line 18
p. 104 line 4 – p. 104 line 11

**Eric Jacobsen**

p. 14 line 9 – p. 14 line 13
p. 16 line 2 – p. 16 line 20
p. 17 line 1 – p. 17 line 17
p. 20 line 10 – p. 20 line 17
p. 20 line 18 – p. 21 line 24
p. 52 line 9 – p. 52 line 13
p. 60 line 15
p. 60 line 25
p. 61 line 17 – p. 61 line 18
p. 61 line 24
p. 63 line 3
p. 81 line 23
p. 82 line 24 – p. 82 line 25
p. 145 line 9
p. 146 line 11
p. 146 line 23

4

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 148 line 15
p. 149  line 6
p. 153 line 11
p. 165 line 19
p. 166 line 15
p. 166 line 17 – p. 167 line 4
p. 169 line 24 – p. 169 line 25
p. 170 line 17 – p. 170 line 18
p. 171 line 12 – p. 171 line 13
p. 171 line 24


**Kendall Kliewer**

p. 8 line 8 – p. 8 line 17
p. 16 line 20 – p. 16 line 25
p. 36 line 15 – p. 36 line 16
p. 39 line 6 – p. 39 line 19
p. 40 line 16 p. 40 line 19
p. 42 line 3 – p. 43 line 20
p. 56 line 18 – p. 56 line 20
p. 80 line 3 – p. 80 line 18
p. 84 line 24 – p. 85 line 13
p. 99 line 3 – p. 99 line 11
p. 110 line 1 – p. 112 line 22
p. 113 line 7 – p. 113 line 15
p. 117 line 21 – p. 117 line 23
p. 137 line 23 – p. 138 line 16
p. 139 line 6 – p. 139 line 9
p. 151 line 23 – p. 151 line 25
p. 165 line 12 – p. 165 line 13
p. 174 line 18 – p. 174 line 19
p. 176 line 9 – p. 177 line 3
p. 177 line 16 – p. 177 line 23
p. 177 line 24 – p. 178 line 8
p. 178 line 11 – p. 178 line 15
p. 178 line 20 – p. 178 line 24
p. 179 line 11 – p. 179 line 13
p. 181 line 6 – p. 181 line 9
p. 183 line 4 – p. 183 line 6
p. 183 line 14- p. 183 line 21
p. 185 line 12 – p. 185 line 15
p. 189 line 16 – p. 189 line 17
p. 191 line 10 – p.191 line 12
p. 191 line 16 – p. 192 line 1
p. 210 line 1 – p. 210 line 5

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 213 line 4 – p. 213 line 11
p. 218 line 19 – p. 220 line 2
p. 237 line 3
p. 239 line 12 – p. 239 line 19
p. 240 line 5 – p. 241 line 21
Errata Sheet

**Ernie Kindt**

p. 13 line 13 – p. 13 line 17
p. 14 line 7 – p. 14 line 9
p. 16 line 16 – p. 16 line 25
p. 17 line 19
p. 19 line 6
p. 20 line 19 – p. 21 line 3
p. 24 line 16 – p. 24 line 17
p. 25 line 1
p. 26 line 1 – p. 26 line 2
p. 27 line 11
p. 30 line 6 – p. 30 line 8
p. 30 line 20 – p. 30 line 21
p. 31 line 23
p. 33 line 1
p. 33 line 17
p. 36 line 2
p. 36 line 15 – p. 36 line 16
p. 37 line 13 – p. 37 line 14
p. 38 line 17 – p. 38 line 18
p. 38 line 25
p. 39 line 1
p. 39 line 21
p. 40 line 1 – p. 40 line 2
p. 42 line 2
p. 42 line 23
p. 43 line 7 – p. 43 line 12
p. 43 line 20
p. 44 line 7
p. 44 line 16
p. 46 line 21
p. 47 line 4 – p. 47 line 6
p. 48 line 25
p. 51 line 25
p. 53 line 1
p. 53 line 4
p. 53 line 16
p. 53 line 24 – p. 53 line 25

6

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 54 line 8 – p. 54 line 12
p. 55 line 1 – p. 55 line 4
p. 56 line 15 – p.56 line 17
p. 57 line 2 – p. 57 line 3
p. 57 line 22 – p. 57 line 23
p. 58 line 7 – p. 58 line 10
p. 61 line 3 – p. 61 line 9
p. 62 line 14
p. 62 line 19
p. 63 line 19 – p. 63 line 23
p. 64 line 6 – p. 64 line 7
p. 64 line 17
p. 65 line 10 – p. 65 line 11
p. 65 line 23 – p65 line 25
p. 66 line 18 – p. 66 line 24
p. 67 line 8 – p. 67 line 12
p. 69 line 21 – p. 69 line 23
p. 70 line 25 – p. 71 line 2
p. 71 line 11
p. 75 line 14
p. 78 line 14 – p. 78 line 16
p. 79 line 5 – p. 79 line 10
p. 82 line 11
p. 83 line 5 – p. 87 line 6
p. 90 line 13 – p. 90 line 24
p. 91 line 1
p. 91 line 9 – p. 91 line 10

**Bart Thielbar**

p. 7 line 11 – p. 7 line 21
p. 8 line 2 – p. 8 line 11
p. 10 line 9 – p. 10 line 20
p. 12 line 8 – p. 12 line 10
p. 13 line 15 – p. 13 line 18
p. 13 line 19 – p. 14 line 1
p. 17 line 13 – p. 17 line 25
p. 19 line 21 – p. 19 line 23
p. 20 line 16 – p. 20 line 19
p. 21 line 6 – p. 20 line 7
p. 29 line 17 – p. 29 line 22
p. 36 line 6 – p. 36 line 11
p. 39 line 7 – p. 39 line 11
p. 40 lien 25
p. 41 line 1
p. 41 line 22 – p. 42 line 1

7

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 42 line 16 – p. 43 line 14
p. 51 line 18
p. 58 line 1
p. 61 line 22 – p. 62 line 3
p. 62 line 22 – p. 62 line 24
p. 64 line 10 – p. 64 line 11
p. 64 line 19
p. 65 line 7 – p. 65 line 9
p. 67 line 18 – p. 67 line 19
p. 79 line 24 – p. 79 line 25
p. 80 line 1 – p. 80 line 13
p. 84 line 14 – p. 84 line 20
p. 87 line 12 – p. 87 line 13
p. 88 line 2 – p. 88 line 4
p. 89 line 9
p. 101 line 4 – p. 104 line 16
p. 106 line 8 – p. 106 line 12
p. 115 line 24 – p. 115 line 25
p. 132 line 5
p. 133 line 4 – p. 133 line 5
p. 135 line 17 – p. 135 line 18
p. 136 line 4
p. 136 line 10
p. 137 line 10 – p. 137 line 12
p. 137 line 13 – p. 137 line 17
p. 138 line 1 – p. 138 line 5
p. 143 line 19 – p. 144 line 9
p. 144 line 13 – p. 145 line 2
p. 145 line 15 – p. 145 line 21
p. 146 line 2 – p. 146 line 8
p. 148 line 7 – p. 148 line 10
p. 149 line 20 – p. 150 line 6
p. 157 line 13 – p. 157 line 14


**Mary Beth Lewicki**

p. 34 line 3 – p. 34 line 4
p. 44 line 13 – p. 44 line 23
p. 48 line 22
p. 51 line 6 – p. 51 line 20
p. 59 line 23 – p. 60 line 15
p. 63 line 23 – p. 63 line 25
p. 67 line 22 – p. 67 line 25
p. 73 line 7 – p. 73 line 9
p. 75 line 14 – p. 76 line 4

**NORTHWESTERN'S PRELIMINARY DRAFT FOR DISCUSSION PURPOSES –
1/22/08**

p. 77 line 4 – p. 77 line 5
p. 78 line 11
p. 71 line 5 – p. 72 line 10
p. 81 line 23 – p. 82 line 17
p. 89 line 25 – p. 90 line 18
p. 92 line 23 – p. 93 line 6
p. 96 line 15 – p. 97 line 11
p. 97 line 18 – p. 98 line 7
p. 99 line 22 – p. 99 line 24
p. 100 line 9 – p. 100 line 19

9

# EXHIBIT 2

## Exhibit No. [13] to Proposed Pre-Trial Order

## Defendants' Hanson and Kindt Witness List
## (Local Civil Rule 16.3(c)(7))

Defendants Hanson and Kindt may call any of the following witnesses at trial. In addition to those specifically listed below, Defendants Hanson and Kindt may also call any witness listed by Plaintiff. Defendants Hanson and Kindt also reserve the right to call additional witnesses to provide foundational testimony if Plaintiff contests the authenticity or admissibility of any materials selected to be used at trial, as well as any additional witnesses necessitated by any of the Court's pre-trial rulings. Hanson and Kindt reserve the right to designate deposition excerpts they expect to present at trial and to counter-designate deposition excerpts related to Magten's designations in advance of trial on a date as ordered by the Court[B1].

1. Talton Embry (Magten, live and/or by deposition)

2. Michael J. Hanson (live and by deposition)

3. Ernie J. Kindt (live and by deposition)

4. Bart Thielbar (by deposition)

5. Charles Patrizia (live and/or by affidavit)

6. Steven Scherf (expert, live and by expert report [see report attached to declaration dated November 30, 2007])

1

DEFENDANTS' HANSON AND KINDT PRELIMINARY DRAFT FOR DISCUSSION PURPOSES – 1/22/08

    7.      Bruce Bingham (see expert report was served on Plaintiffs on October 17,

2007

    8.      Chris Kearns (see expert report was served on Plaintiffs on October 17,

2007

    9.      Kendall Kliewer (NorthWestern, live and/or by deposition)

    10.    Michel Nieman (NorthWestern, live and/or by deposition)

    11.    Any other witness identified in the final pretrial order by Plaintiff.

    12.    Any witness needed for impeachment or rebuttal.

    13.    Any witness needed to provide foundational testimony.

    14.    Any witness necessitated by any of the Court's rulings on the pending

motions for summary judgment, the pending Daubert motions, or any motions in limine
or other pre-trial rulings.

Defendants Hanson and Kindt reserve the right to object to the testimony of any witness
listed by Plaintiff in Exhibit [11] to this proposed Pre-Trial Order or to the designation of
any deposition excerpts identified by Plaintiff in Exhibit [11]. Defendants Hanson and
Kindt also reserve the right to designate counter-excerpts from any deposition excerpts
identified by Plaintiff in Exhibit [11].

# EXHIBIT 3

**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com



Direct Line: 212.859.8736
Fax: 212.859.4000
brewejo@ffhsj.com

January 25, 2008

## VIA EMAIL

Joseph Pizzurro
Nancy Delaney
Myles Bartley
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

Dennis E. Glazer
Paul Spagnoletti
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

### Re: Magten et al. v. NorthWestern Corp.

Dear Counsel:

I am writing with respect to various issues raised by NorthWestern's intention to call Charles A. Patrizia of Paul Hastings as a witness at trial, as set forth in the initial witness list that we received at approximately 6:30 p.m. on Tuesday, January 22. I am copying counsel from Davis Polk on this letter because that firm has previously represented Paul Hastings in its capacity as a potential third-party witness in this litigation (as well as in the separate litigation now on appeal in the Third Circuit) and we do not know whether or not they represent Mr. Patrizia in his individual capacity as a designated trial witness. If there are other counsel for Mr. Patrizia or Paul Hastings with whom we should communicate on these issues, please let us know.

Joe Pizzurro and Bonnie Steingart agreed last spring that to the extent NorthWestern designated any trial witnesses who had not been deposed during fact discovery, they would be made available for deposition. It is therefore now necessary to schedule Mr. Patrizia's deposition. In order to move things forward, we are today serving a Rule 45 subpoena (a courtesy copy of which is attached) setting that deposition for Friday, February 15, 2008 at Fried Frank's Washington, D.C. offices. We are willing to hold the deposition in New York or another mutually convenient location, and are also willing to be flexible with respect to the date, within the fairly narrow confines of what is practical given the trial date.

Fried, Frank, Harris, Shriver & Jacobson LLP

January 25, 2008
Page 2

However, it is clear both from Mr. Patrizia's declaration dated November 27, 2007 submitted with NorthWestern's summary judgment motion (the "Patrizia Declaration") as well as the nature of his role with respect to the transactions at issue that Mr. Patrizia's testimony will necessarily waive attorney-client privilege. Indeed, privilege has already been waived by the proferring of the Patrizia Declaration to the Court. Mr. Patrizia is apparently not being offered as an expert witness (and could not be, given that the various deadlines for the designation of experts and disclosure of expert reports have long since passed) but as a fact witness, apparently to testify as to NorthWestern's subjective purpose, intent, and state of mind in structuring the various transactions as it did and carrying them out when it did. The only possible basis on which he could have admissible personal knowledge of NorthWestern's state of mind is as a result of communications he had with NorthWestern's employees in his capacity as a lawyer. (Paragraph 2 of the Patrizia Declaration confirms that the basis for his knowledge is information he learned in his capacity as a lawyer representing NorthWestern.) Moreover, it appears from the declaration that Mr. Patrizia may testify that NorthWestern structured the transactions and their timing in the fashion that it did as a result of legal advice it received from Mr. Patrizia or other Paul Hastings lawyers, thus putting that advice in issue. Indeed, the entire claim that NorthWestern should be presumed to have lacked fraudulent intent because it was motivated by a supposed desire to evade the regulatory requirements of PUHCA is a classic advice-of-counsel defense, which necessarily comes at the price of a waiver of privilege as to the entire relevant subject matter.

Under these circumstances, plaintiffs cannot adequately prepare for trial, and cannot prepare for the deposition of Mr. Patrizia, without timely access to all documents evidencing communications between NorthWestern and Mr. Patrizia and his colleagues and all documents evidencing the advice Mr. Patrizia and his colleagues gave NorthWestern with respect to the structuring and timing of the transactions at issue. The names of Mr. Patrizia and his colleagues are ubiquitous on NorthWestern's privilege log. We hereby request that all such documents on the privilege log not previously produced in connection with the Special Master's various rulings of last spring be produced to us forthwith, but in no event later than 5:00 p.m. on Friday, February 1, 2008.

Additionally, we are serving today narrowly-focused document subpoenas on Mr. Patrizia and Paul Hastings seeking documents relating to the apparent subject matter of his testimony (copies attached) and will also be serving a follow-up document request on NorthWestern covering the same ground. With respect to the latter, this is a belt-and-suspenders precaution on our part, as we presume that most, if not all, relevant documents would be responsive to our earlier document requests and accordingly have either already been produced or will be produced pursuant to the request made in the preceding paragraph for documents listed on the privilege log. Given the timing of trial,

Fried, Frank, Harris, Shriver & Jacobson LLP

January 25, 2008
Page 3

the default 30-day response period of Fed. R. Civ. P. 34(b) is obviously impractical and
we request that NorthWestern agree to a shortened schedule that would make its
response due on Tuesday, February 5, 2008.

Finally, we note that all of the foregoing is without prejudice to our right to seek
to exclude or limit Mr. Patrizia's testimony on any ground, including the ground that
production now of relevant documents withheld on privilege grounds last spring is
insufficient to cure the prejudice to plaintiffs of the unavailability of those documents
when taking the depositions of the former NorthWestern officers (most or all of whom
we understand to be outside the range of the trial court's subpoena power) with whom
Mr. Patrizia and his colleagues had relevant conversations and to whom they gave
relevant advice.

Sincerely,

John W. Brewer

cc:    Bonnie Steingart
       Gary Kaplan
       Dale R. Dubé
       John V. Snellings
       Kathleen M. Miller
       Victoria Counihan
       Denise Seastone Kraft
       Stanley T. Kaleczyc
       Kimberly A. Beatty

609744

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

**SUBPOENA IN A CIVIL CASE**

Magten Asset Management Corporation and
Law Debenture Trust Company of New York,
Plaintiffs,

v.

NorthWestern Corporation,
Defendant.

Magten Asset Management Corporation,
Plaintiff,

v.

Michael J. Hanson and Ernie J. Kindt,
Defendants.

Civil Action No. 04-1494-(JJF)
Pending in the U.S. District Court for the
District of Delaware

Civion Action No. 05-499 (JJF)
Pending in the U.S. District Court for the
District of Delaware

TO: Charles A. Patrizia, Esquire
PAUL HASTINGS JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Fried Frank Harris Shriver & Jacobson LLP<br>1001 Pennsylvania Ave., NW, Washington, DC 20004 | DATE AND TIME  9:00 a.m.<br>February 15, 2008 |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents identified in attached Schedule A.

| PLACE    Fried Frank Harris Shriver & Jacobson LLP<br>1001 Pennsylvania Ave., NW, Washington, DC 20004 | DATE AND TIME  5:00 p.m.<br>February 5, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Dale R. Dube*    Attorney for Plaintiff<br>Magten Asset Management Corp. | 1/25/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dale R. Dube, Esq., Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801
(302) 425-6467

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.    The term "you" and "your" means or refers to Charles A. Patrizia, Esq., in his individual capacity, as well as Paul Hastings, as well as all persons and/or entities affiliated with either of them, acting in concert with or under the direction of either of them, or purporting to act on either of their behalfs.

2.    "Acquisition" means the transaction that occurred on or about February 15, 2002 pursuant to which NorthWestern acquired 100% of the equity interest in Clark Fork.

3.    "All" means "any and all," and "any" means "any and all."

4.    "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

7.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal

notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

8.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

9.    "Paul Hastings" means Paul Hastings Janofsky & Walker LLP, its agents, attorneys, representatives and all other persons acting on its behalf.

10.    "Patrizia Declaration" means the Declaration of Charles A. Patrizia in Support of NorthWestern's Motion for Summary Judgment, dated November 27, 2007, and submitted to the Court in the above-referenced action.

11.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

12.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

13.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity. If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of Charles A. Patrizia and/or Paul Hastings, or any documents that were generated or received by Charles A. Patrizia and/or Paul Hastings or otherwise came into existence or were utilized by Charles A. Patrizia and/or Paul Hastings through the date of production. This request also calls for the production of documents kept or maintained by counsel for Charles A. Patrizia and/or Paul Hastings.

3

6.      A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.      A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.      If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

      (a)      the date of the document;

      (b)      the name of each person to whom the document is addressed;

      (c)      the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

      (d)      the name of each person who signed or authored the document;

      (e)      the title and job description of each person identified in (b), (c), and (d) above;

      (f)      the subject of the document and the number of pages in the document;

      (g)      the specific privilege claimed and the grounds for any such claim; and

      (h)      the name and address of the person who has custody of the document.

9.      If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

4

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the following statements in ¶ 2 of the Patrizia Declaration:

(a) "I was personally involved in that representation"; and

(b) "I advised NorthWestern on regulatory issues relating to the potential application of the Public Utility Holding Company Act of 1935 ("PUHCA") to the Transaction and to the corporate structures related to the Transaction."

### REQUEST NO. 2

All documents relating to or concerning the following statements in ¶ 3 of the Patrizia Declaration:

5

(a) "The second step, which was completed on November 15, 2002, involved the transfer of all MPLLC's assets, except those specifically related to the Milltown Dam, to the parent company level at NorthWestern";

(b) "[T]he assumption by NorthWestern of MPLLC liabilities";

(c) "[T]he entry by NorthWestern into support agreements with MPLLC";

(d) "The Milltown Dam was associated with an active Superfund site, and NorthWestern sought to continue to segregate that potential liability from the remaining MPLLC operations";

(e) "NorthWestern did not want to move assets associated with Milltown Dam to the parent company level"; and

(f) "This two-step process was contemplated from the very beginning of the Transaction."

## REQUEST NO. 3

With respect to ¶ 4 of the Patrizia Declaration, all documents relating to or concerning the "reasonable and legitimate business objectives of NorthWestern: (i) to avoid burdensome and duplicative regulation; and (ii) to address the interests of rating agencies and capital markets, which preferred that NorthWestern hold the MPLLC assets at the parent level."

## REQUEST NO. 4

All documents relating to or concerning the following statements in ¶ 6 of the Patrizia Declaration:

(a) "NorthWestern preferred that the Transaction not result in its becoming a registered utility holding company, and therefore sought to structure the Transaction in a way that would avoid that possibility"; and

6

(b) "MPC preferred that the initial sale be in the form of a 'stock' rather than an 'asset' transaction, and the presence of certain assets in MPLLC would make MPLLC an 'electric utility company' for PUHCA purposes."

## REQUEST NO. 5

With respect to ¶ 8 of the Patrizia Declaration, all documents relating to or concerning the statement that: "Specifically, the transfer of the MPLLC assets to the parent level at NorthWestern provided greater transparency into NorthWestern's utility operations and was viewed favorably by the rating agencies and the capital markets."

## REQUEST NO. 6

All documents relating to or concerning the following statements in ¶ 9 of the Patrizia Declaration:

(a) "Because the transfer of assets could not be completed until NorthWestern had identified all of the MPLLC assets (including bills of sale and deeds, where applicable) and obtained various consents and regulatory approvals, there was inevitably some time between the initial acquisition of MPLLC (the first step in the Transaction), and the structural restoration of NorthWestern as a 'flat' utility company"; and

(b) "In that circumstance, unless it otherwise qualified for an exemption from PUHCA, NorthWestern would have been subject to federal regulation and oversight under PUHCA."

## REQUEST NO. 7

All documents relating to or concerning NorthWestern's exemption from PUHCA as referenced in ¶ 9 of the Patrizia Declaration, including all documents submitted by NorthWestern to any regulatory agency concerning NorthWestern's exemption from PUHCA.

7

**REQUEST NO. 8**

All documents relating to or concerning the following statements in ¶ 10 of the Patrizia Declaration:

(a) "The regulatory implications of the two-step process had been identified at the very earliest stages of considering the Transaction, and NorthWestern explored throughout the Transaction period the possible bases on which it would qualify for exemption from PUHCA regulation";

(b) "Ultimately, by the end of 2001, it became clear in discussions with the SEC staff that because of various factors, including the relative size of NorthWestern's utility businesses in Montana, South Dakota, and Nebraska following the acquisition of MPLLC, NorthWestern would not meet the quantitative standards historically used by the SEC staff under sections 3(a)(1) and 3(a)(2) of PUHCA";

(c) "After further discussion of the issues with the SEC staff, in February 2002 NorthWestern filed an application for an exemption under Section 3(a)(3) of PUHCA to address its status during the period necessary to complete the structural restoration"; and

(d) "In the application, NorthWestern showed that, given the lines of business it was then conducting and the historic gross revenues of those various businesses, NorthWestern was only 'incidentally a holding company, being primarily engaged or interested in one or more businesses other than the business of public-utility company and ... not deriving, directly or indirectly, any material part of its income from any one or more subsidiary companies, the principal business of which is that of a public-utility company.'"

8

**REQUEST NO. 9**

All documents relating to or concerning the following statements in ¶ 11 of the Patrizia Declaration:

(a) "NorthWestern's application for a 3(a)(3) exemption was effective upon its good faith filing with the Securities and Exchange Commission, and remained in place until the MPLLC assets were transferred to the parent company level in November 2002 and the Milltown Dam thereafter qualified as an EWG"; and

(b) "In this respect, the 3(a)(3) exemption was 'temporary' and had always been intended to be 'temporary' – not because there was any specific time limitation under PUHCA, but rather because NorthWestern had always intended to return promptly to its original 'flat' structure, and once the necessary steps were taken to do so, the exemption was no longer necessary."

**REQUEST NO. 10**

All documents relating to or concerning any communications from any regulatory agency stating that NorthWestern was not entitled to the exemption under PUHCA that it obtained as referenced in Mike Hanson and Eric Jacobsen's January 28, 2002 Memorandum to NorthWestern's Board of Directors (NOR142389-NOR142392).

**REQUEST NO. 11**

All documents relating to or concerning NorthWestern's determination that it would not proceed with the Acquisition if it was unable to either (i) isolate the Milltown Dam assets and/or (ii) effectuate the Transfer.

9

**REQUEST NO. 12**

All documents relating to or concerning any communication from any regulatory agency to NorthWestern that NorthWestern would be in violation of any regulatory requirement by virtue of holding the Transferred Assets in a subsidiary.

**REQUEST NO. 13**

All documents relating to or concerning any factual or legal issue which Charles A. Patrizia may testify about at the forthcoming trial in the above-referenced action.

**REQUEST NO. 14**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the structure of the Acquisition and/or the Transfer.

**REQUEST NO. 15**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about NorthWestern's "reasonable and legitimate business objectives" relating to the Acquisition and/or the Transfer, as such phrase is used in the Patrizia Declaration.

**REQUEST NO. 16**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about any regulatory issues impacting the structure or timing of the Acquisition and/or the Transfer.

**REQUEST NO. 17**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to

10

NorthWestern, about the interests or potential reactions of rating agencies and capital markets with respect to the Acquisition and/or the Transfer.

## REQUEST NO. 18

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the timing of effectuating the Transfer following the Acquisition.

## REQUEST NO. 19

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the potential impact of the accuracy or inaccuracy of NorthWestern's publicly issued financial statements on the Acquisition and/or the Transfer.

11

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

**SUBPOENA IN A CIVIL CASE**

Magten Asset Management Corporation and
Law Debenture Trust Company of New York,
        Plaintiffs,

        v.                                          Civil Action No. 04-1494-(JJF)
NorthWestern Corporation,                           Pending in the U.S. District Court for the
                Defendant.                          District of Delaware

Magten Asset Management Corporation,
        Plaintiff,

        v.                                          Civion Action No. 05-499 (JJF)
Michael J. Hanson and Ernie J. Kindt,               Pending in the U.S. District Court for the
                Defendants.                         District of Delaware

TO:   Records Custodian
      PAUL HASTINGS JANOFSKY & WALKER LLP
      875 15th Street, N.W.
      Washington, DC 20005

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. ✶

| PLACE OF DEPOSITION        Fried Frank Harris Shriver & Jacobson LLP 1001 Pennsylvania Ave., NW, Washington, DC 20004* | DATE AND TIME 9.00 a.m. February 15, 2008* |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    Documents identified in attached Schedule A.

| PLACE        Fried Frank Harris Shriver & Jacobson LLP 1001 Pennsylvania Ave., NW, Washington, DC 20004 | DATE AND TIME 5:00 p.m. February 5, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)        Attorney for Plaintiff Magten Asset Management Corp. | DATE 1/25/08 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
   Dale R. Dube, Esquire, Blank Rome LLP, 1201 Market Street, Suite 800,
   Wilmington, DE 19801      (302) 425-6467

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

\* Deponent will not be required to appear if the documents are produced by the date and time specified herein.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Schedule A

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.    The term "you" and "your" means or refers to Charles A. Patrizia, Esq., in his individual capacity, as well as Paul Hastings, as well as all persons and/or entities affiliated with either of them, acting in concert with or under the direction of either of them, or purporting to act on either of their behalfs.

2.    "Acquisition" means the transaction that occurred on or about February 15, 2002 pursuant to which NorthWestern acquired 100% of the equity interest in Clark Fork.

3.    "All" means "any and all," and "any" means "any and all."

4.    "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

7.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal

notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

8.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

9.    "Paul Hastings" means Paul Hastings Janofsky & Walker LLP, its agents, attorneys, representatives and all other persons acting on its behalf.

10.    "Patrizia Declaration" means the Declaration of Charles A. Patrizia in Support of NorthWestern's Motion for Summary Judgment, dated November 27, 2007, and submitted to the Court in the above-referenced action.

11.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

2

12.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002.  Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

13.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity.  If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of Charles A. Patrizia and/or Paul Hastings, or any documents that were generated or received by Charles A. Patrizia and/or Paul Hastings or otherwise came into existence or were utilized by Charles A. Patrizia and/or Paul Hastings through the date of production.  This request also calls for the production of documents kept or maintained by counsel for Charles A. Patrizia and/or Paul Hastings.

3

6.    A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.    A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.    If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

      (a)    the date of the document;

      (b)    the name of each person to whom the document is addressed;

      (c)    the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

      (d)    the name of each person who signed or authored the document;

      (e)    the title and job description of each person identified in (b), (c), and (d) above;

      (f)    the subject of the document and the number of pages in the document;

      (g)    the specific privilege claimed and the grounds for any such claim; and

      (h)    the name and address of the person who has custody of the document.

9.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

4

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the following statements in ¶ 2 of the Patrizia Declaration:

(a) "I was personally involved in that representation"; and

(b) "I advised NorthWestern on regulatory issues relating to the potential application of the Public Utility Holding Company Act of 1935 ("PUHCA") to the Transaction and to the corporate structures related to the Transaction."

### REQUEST NO. 2

All documents relating to or concerning the following statements in ¶ 3 of the Patrizia Declaration:

5

(a) "The second step, which was completed on November 15, 2002, involved the transfer of all MPLLC's assets, except those specifically related to the Milltown Dam, to the parent company level at NorthWestern";

(b) "[T]he assumption by NorthWestern of MPLLC liabilities";

(c) "[T]he entry by NorthWestern into support agreements with MPLLC";

(d) "The Milltown Dam was associated with an active Superfund site, and NorthWestern sought to continue to segregate that potential liability from the remaining MPLLC operations";

(e) "NorthWestern did not want to move assets associated with Milltown Dam to the parent company level"; and

(f) "This two-step process was contemplated from the very beginning of the Transaction."

**REQUEST NO. 3**

With respect to ¶ 4 of the Patrizia Declaration, all documents relating to or concerning the "reasonable and legitimate business objectives of NorthWestern: (i) to avoid burdensome and duplicative regulation; and (ii) to address the interests of rating agencies and capital markets, which preferred that NorthWestern hold the MPLLC assets at the parent level."

**REQUEST NO. 4**

All documents relating to or concerning the following statements in ¶ 6 of the Patrizia Declaration:

(a) "NorthWestern preferred that the Transaction not result in its becoming a registered utility holding company, and therefore sought to structure the Transaction in a way that would avoid that possibility"; and

6

(b) "MPC preferred that the initial sale be in the form of a 'stock' rather than an 'asset' transaction, and the presence of certain assets in MPLLC would make MPLLC an 'electric utility company' for PUHCA purposes."

**REQUEST NO. 5**

With respect to ¶ 8 of the Patrizia Declaration, all documents relating to or concerning the statement that: "Specifically, the transfer of the MPLLC assets to the parent level at NorthWestern provided greater transparency into NorthWestern's utility operations and was viewed favorably by the rating agencies and the capital markets."

**REQUEST NO. 6**

All documents relating to or concerning the following statements in ¶ 9 of the Patrizia Declaration:

(a) "Because the transfer of assets could not be completed until NorthWestern had identified all of the MPLLC assets (including bills of sale and deeds, where applicable) and obtained various consents and regulatory approvals, there was inevitably some time between the initial acquisition of MPLLC (the first step in the Transaction), and the structural restoration of NorthWestern as a 'flat' utility company"; and

(b) "In that circumstance, unless it otherwise qualified for an exemption from PUHCA, NorthWestern would have been subject to federal regulation and oversight under PUHCA."

**REQUEST NO. 7**

All documents relating to or concerning NorthWestern's exemption from PUHCA as referenced in ¶ 9 of the Patrizia Declaration, including all documents submitted by NorthWestern to any regulatory agency concerning NorthWestern's exemption from PUHCA.

7

**REQUEST NO. 8**

All documents relating to or concerning the following statements in ¶ 10 of the Patrizia Declaration:

(a) "The regulatory implications of the two-step process had been identified at the very earliest stages of considering the Transaction, and NorthWestern explored throughout the Transaction period the possible bases on which it would qualify for exemption from PUHCA regulation";

(b) "Ultimately, by the end of 2001, it became clear in discussions with the SEC staff that because of various factors, including the relative size of NorthWestern's utility businesses in Montana, South Dakota, and Nebraska following the acquisition of MPLLC, NorthWestern would not meet the quantitative standards historically used by the SEC staff under sections 3(a)(1) and 3(a)(2) of PUHCA";

(c) "After further discussion of the issues with the SEC staff, in February 2002 NorthWestern filed an application for an exemption under Section 3(a)(3) of PUHCA to address its status during the period necessary to complete the structural restoration"; and

(d) "In the application, NorthWestern showed that, given the lines of business it was then conducting and the historic gross revenues of those various businesses, NorthWestern was only 'incidentally a holding company, being primarily engaged or interested in one or more businesses other than the business of public-utility company and ... not deriving, directly or indirectly, any material part of its income from any one or more subsidiary companies, the principal business of which is that of a public-utility company.'"

8

**REQUEST NO. 9**

All documents relating to or concerning the following statements in ¶ 11 of the Patrizia Declaration:

(a) "NorthWestern's application for a 3(a)(3) exemption was effective upon its good faith filing with the Securities and Exchange Commission, and remained in place until the MPLLC assets were transferred to the parent company level in November 2002 and the Milltown Dam thereafter qualified as an EWG"; and

(b) "In this respect, the 3(a)(3) exemption was 'temporary' and had always been intended to be 'temporary' – not because there was any specific time limitation under PUHCA, but rather because NorthWestern had always intended to return promptly to its original 'flat' structure, and once the necessary steps were taken to do so, the exemption was no longer necessary."

**REQUEST NO. 10**

All documents relating to or concerning any communications from any regulatory agency stating that NorthWestern was not entitled to the exemption under PUHCA that it obtained as referenced in Mike Hanson and Eric Jacobsen's January 28, 2002 Memorandum to NorthWestern's Board of Directors (NOR142389-NOR142392).

**REQUEST NO. 11**

All documents relating to or concerning NorthWestern's determination that it would not proceed with the Acquisition if it was unable to either (i) isolate the Milltown Dam assets and/or (ii) effectuate the Transfer.

9

**REQUEST NO. 12**

All documents relating to or concerning any communication from any regulatory agency to NorthWestern that NorthWestern would be in violation of any regulatory requirement by virtue of holding the Transferred Assets in a subsidiary.

**REQUEST NO. 13**

All documents relating to or concerning any factual or legal issue which Charles A. Patrizia may testify about at the forthcoming trial in the above-referenced action.

**REQUEST NO. 14**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the structure of the Acquisition and/or the Transfer.

**REQUEST NO. 15**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about NorthWestern's "reasonable and legitimate business objectives" relating to the Acquisition and/or the Transfer, as such phrase is used in the Patrizia Declaration.

**REQUEST NO. 16**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about any regulatory issues impacting the structure or timing of the Acquisition and/or the Transfer.

**REQUEST NO. 17**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to

10

NorthWestern, about the interests or potential reactions of rating agencies and capital markets with respect to the Acquisition and/or the Transfer.

**REQUEST NO. 18**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the timing of effectuating the Transfer following the Acquisition.

**REQUEST NO. 19**

All documents constituting or concerning any communications between or involving you and/or NorthWestern, including any legal or other professional advice provided to NorthWestern, about the potential impact of the accuracy or inaccuracy of NorthWestern's publicly issued financial statements on the Acquisition and/or the Transfer.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. AND LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>                    Plaintiffs,<br>    v.<br><br>NORTHWESTERN CORPORATION,<br><br>                    Defendant. | Civil Action No. 04-1494 (JJF) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>                    Plaintiff,<br>    v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>                    Defendants. | Civil Action No. 05-499 (JJF) |

**PLAINTIFFS' FOURTH REQUEST FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT NORTHWESTERN CORPORATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Law Debenture

Trust Company of New York and Magten Asset Management Corporation (collectively referred

to as "Plaintiffs") request that NorthWestern Corporation ("NorthWestern") produce for

examination, inspection and copying at the offices of Fried, Frank, Harris, Shriver & Jacobson

LLP, One New York Plaza, New York, New York at 5:00 p.m. on February 5, 2008 all of the

documents described below which are in the possession, custody or control of NorthWestern, or

of any persons acting on its behalf, including Charles A. Patrizia and/or Paul, Hastings, Janofsky

& Walker LLP ("Paul Hastings").

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.     The term "you" and "your" means or refers to NorthWestern, as well as all persons and/or entities affiliated with NorthWestern, acting in concert with or under the direction of NorthWestern, or purporting to act on NorthWestern's behalf, including Charles A. Patrizia, Esq., in his individual capacity, and Paul Hastings, as well as all persons and/or entities affiliated with either of Charles A. Patrizia and/or Paul Hastings, acting in concert with or under the direction of Charles A. Patrizia and/or Paul Hastings, or purporting to act on Charles A. Patrizia and/or Paul Hastings behalfs.

2.     "Acquisition" means the transaction that occurred on or about February 15, 2002 pursuant to which NorthWestern acquired 100% of the equity interest in Clark Fork.

3.     "All" means "any and all," and "any" means "any and all."

4.     "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

5.     "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

2

7.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

8.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

9.    "Paul Hastings" means Paul Hastings Janofsky & Walker LLP, its agents, attorneys, representatives and all other persons acting on its behalf.

10.    "Patrizia Declaration" means the Declaration of Charles A. Patrizia in Support of NorthWestern's Motion for Summary Judgment, dated November 27, 2007, and submitted to the Court in the above-referenced action.

11.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited

3

partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

12.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

13.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity. If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of NorthWestern, or any documents that were generated or received by NorthWestern or otherwise came into existence or were utilized by NorthWestern through the date of production. This request also calls for the production of documents kept or maintained by counsel for NorthWestern, including Charles A. Patrizia, Esq., in his individual capacity, and

4

Paul Hastings, as well as all persons and/or entities affiliated with either of Charles A. Patrizia and/or Paul Hastings, acting in concert with or under the direction of Charles A. Patrizia and/or Paul Hastings, or purporting to act on Charles A. Patrizia and/or Paul Hastings behalfs.

6.    A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.    A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.    If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

        (a)    the date of the document;

        (b)    the name of each person to whom the document is addressed;

        (c)    the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

        (d)    the name of each person who signed or authored the document;

        (e)    the title and job description of each person identified in (b), (c), and (d) above;

        (f)    the subject of the document and the number of pages in the document;

        (g)    the specific privilege claimed and the grounds for any such claim; and

        (h)    the name and address of the person who has custody of the document.

9.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s)

5

should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

13.    Each request for production of documents herein shall only be deemed requested to the extent that such documents have not already been produced to Plaintiffs.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the following statements in ¶ 2 of the Patrizia Declaration:

(a) "I was personally involved in that representation"; and

(b) "I advised NorthWestern on regulatory issues relating to the potential application of the Public Utility Holding Company Act of 1935 ("PUHCA") to the Transaction and to the corporate structures related to the Transaction."

6

**REQUEST NO. 2**

All documents relating to or concerning the following statements in ¶ 3 of the Patrizia Declaration:

(a) "The second step, which was completed on November 15, 2002, involved the transfer of all MPLLC's assets, except those specifically related to the Milltown Dam, to the parent company level at NorthWestern";

(b) "[T]he assumption by NorthWestern of MPLLC liabilities";

(c) "[T]he entry by NorthWestern into support agreements with MPLLC";

(d) "The Milltown Dam was associated with an active Superfund site, and NorthWestern sought to continue to segregate that potential liability from the remaining MPLLC operations";

(e) "NorthWestern did not want to move assets associated with Milltown Dam to the parent company level"; and

(f) "This two-step process was contemplated from the very beginning of the Transaction."

**REQUEST NO. 3**

With respect to ¶ 4 of the Patrizia Declaration, all documents relating to or concerning the "reasonable and legitimate business objectives of NorthWestern: (i) to avoid burdensome and duplicative regulation; and (ii) to address the interests of rating agencies and capital markets, which preferred that NorthWestern hold the MPLLC assets at the parent level."

**REQUEST NO. 4**

All documents relating to or concerning the following statements in ¶ 6 of the Patrizia Declaration:

7

(a) "NorthWestern preferred that the Transaction not result in its becoming a registered

utility holding company, and therefore sought to structure the Transaction in a way that

would avoid that possibility"; and

(b) "MPC preferred that the initial sale be in the form of a 'stock' rather than an 'asset'

transaction, and the presence of certain assets in MPLLC would make MPLLC an

'electric utility company' for PUHCA purposes."

### REQUEST NO. 5

With respect to ¶ 8 of the Patrizia Declaration, all documents relating to or concerning the

statement that: "Specifically, the transfer of the MPLLC assets to the parent level at

NorthWestern provided greater transparency into NorthWestern's utility operations and was

viewed favorably by the rating agencies and the capital markets."

### REQUEST NO. 6

All documents relating to or concerning the following statements in ¶ 9 of the Patrizia

Declaration:

(a) "Because the transfer of assets could not be completed until NorthWestern had

identified all of the MPLLC assets (including bills of sale and deeds, where applicable)

and obtained various consents and regulatory approvals, there was inevitably some time

between the initial acquisition of MPLLC (the first step in the Transaction), and the

structural restoration of NorthWestern as a 'flat' utility company"; and

(b) "In that circumstance, unless it otherwise qualified for an exemption from PUHCA,

NorthWestern would have been subject to federal regulation and oversight under

PUHCA."

8

**REQUEST NO. 7**

All documents relating to or concerning your exemption from PUHCA as referenced in ¶ 9 of the Patrizia Declaration, including all documents submitted by you to any regulatory agency concerning your exemption from PUHCA.

**REQUEST NO. 8**

All documents relating to or concerning the following statements in ¶ 10 of the Patrizia Declaration:

(a) "The regulatory implications of the two-step process had been identified at the very earliest stages of considering the Transaction, and NorthWestern explored throughout the Transaction period the possible bases on which it would qualify for exemption from PUHCA regulation";

(b) "Ultimately, by the end of 2001, it became clear in discussions with the SEC staff that because of various factors, including the relative size of NorthWestern's utility businesses in Montana, South Dakota, and Nebraska following the acquisition of MPLLC, NorthWestern would not meet the quantitative standards historically used by the SEC staff under sections 3(a)(1) and 3(a)(2) of PUHCA";

(c) "After further discussion of the issues with the SEC staff, in February 2002 NorthWestern filed an application for an exemption under Section 3(a)(3) of PUHCA to address its status during the period necessary to complete the structural restoration"; and

(d) "In the application, NorthWestern showed that, given the lines of business it was then conducting and the historic gross revenues of those various businesses, NorthWestern was only 'incidentally a holding company, being primarily engaged or interested in one or more businesses other than the business of public-utility company and ... not deriving,

9

directly or indirectly, any material part of its income from any one or more subsidiary

companies, the principal business of which is that of a public-utility company.'"

## REQUEST NO. 9

All documents relating to or concerning the following statements in ¶ 11 of the Patrizia

Declaration:

(a) "NorthWestern's application for a 3(a)(3) exemption was effective upon its good faith

filing with the Securities and Exchange Commission, and remained in place until the

MPLLC assets were transferred to the parent company level in November 2002 and the

Milltown Dam thereafter qualified as an EWG"; and

(b) "In this respect, the 3(a)(3) exemption was 'temporary' and had always been intended

to be 'temporary' – not because there was any specific time limitation under PUHCA, but

rather because NorthWestern had always intended to return promptly to its original 'flat'

structure, and once the necessary steps were taken to do so, the exemption was no longer

necessary."

## REQUEST NO. 10

All documents relating to or concerning any communications from any regulatory agency

stating that you were not entitled to the exemption under PUHCA that you obtained as

referenced in Mike Hanson and Eric Jacobsen's January 28, 2002 Memorandum to

NorthWestern's Board of Directors (NOR142389-NOR142392).

## REQUEST NO. 11

All documents relating to or concerning your determination that you would not proceed

with the Acquisition if you were unable to either (i) isolate the Milltown Dam assets and/or (ii)

effectuate the Transfer.

10

**REQUEST NO. 12**

All documents relating to or concerning any communication from any regulatory agency to you that you would be in violation of any regulatory requirement by virtue of holding the Transferred Assets in a subsidiary.

**REQUEST NO. 13**

All documents relating to or concerning any factual or legal issue which Charles A. Patrizia may testify about at the forthcoming trial in the above-referenced action.

**REQUEST NO. 14**

All documents constituting or concerning any communications between or involving you, Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice provided to you, about the structure of the Acquisition and/or the Transfer.

**REQUEST NO. 15**

All documents constituting or concerning any communications between or involving you, Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice provided to you, about your "reasonable and legitimate business objectives" relating to the Acquisition and/or the Transfer, as such phrase is used in the Patrizia Declaration.

**REQUEST NO. 16**

All documents constituting or concerning any communications between or involving you, Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice provided to you, about any regulatory issues impacting the structure or timing of the Acquisition and/or the Transfer.

**REQUEST NO. 17**

All documents constituting or concerning any communications between or involving you, Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice

11

provided to you, about the interests or potential reactions of rating agencies and capital markets

with respect to the Acquisition and/or the Transfer.

**REQUEST NO. 18**

All documents constituting or concerning any communications between or involving you,

Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice

provided to you, about the timing of effectuating the Transfer following the Acquisition.

**REQUEST NO. 19**

All documents constituting or concerning any communications between or involving you,

Charles A. Patrizia and/or Paul Hastings, including any legal or other professional advice

provided to you, about the potential impact of the accuracy or inaccuracy of your publicly issued

financial statements on the Acquisition and/or the Transfer.

Dated:  Wilmington, Delaware
       January 25, 2008

**BLANK ROME LLP**

/s/ Dale R. Dubé
Dale R. Dubé (DE No. 2863)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:    (302) 425-6464

– and –

**FRIED, FRANK, HARRIS, SHRIVER &**
**JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:    (212) 859-4000

Counsel for Magten Asset Management
    Corporation

12

– and –

**SMITH, KATZENSTEIN & FURLOW, LLP**
Kathleen M. Miller (No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Courier 19801
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

– and –

**NIXON PEABODY LLP**
John V. Snellings
Amanda D. Darwin
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Attorneys for Law Debenture Trust Company of
New York

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2008, I served Plaintiffs' Fourth Request for Production of Documents to Defendant NorthWestern Corporation to the following in the manner indicated:

### EMAIL AND HAND DELIVERY

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

### BY EMAIL AND FEDERAL EXPRESS

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Myles Bartley, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

_____
Dale R. Dubé  (No. 2863)

120087.01600/40173160v.1